JAMES G. KREISSMAN (Bar No. 206740)
jkreissman@stblaw.com
SIMONA G. STRAUSS (Bar No. 203062)
sstrauss@stblaw.com
SIMPSON THACHER & BARTLETT LLP
2475 Hanover Street
Palo Alto, California  94304
Telephone: (650) 251-5000
Facsimile:  (650) 251-5002

JONATHAN K. YOUNGWOOD (admitted *pro hac vice*)
jyoungwood@stblaw.com
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York  10017
Telephone: (212) 455-2000
Facsimile:  (212) 455-2502

*Attorneys for Defendants*
*Twitter, Inc., Richard Costolo and Anthony Noto*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DORIS SHENWICK, as Trustee for the DORIS SHENWICK TRUST, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TWITTER, INC., RICHARD COSTOLO and ANTHONY NOTO,<br><br>Defendants. | Case No. 3:16-CV-05314-JST<br><br>(Consolidated with 3:16-cv-05439-JST)<br><br>CLASS ACTION<br><br>**AMENDED ANSWER** |

The Consolidated Amended Complaint (the "Complaint") in this litigation arises out of Plaintiff's alleged purchase of the common stock of Twitter, Inc. ("Twitter"). Pursuant to this Court's October 16, 2017 Order in this matter, certain allegations and claims asserted in the Complaint were dismissed, including but not limited to allegations and claims that Defendants allegedly concealed the allegedly "low-quality" nature of Twitter's user growth and the success of new product initiatives in driving user engagement and user growth during the alleged class period. *See* Order, Dkt. No. 113 (Oct. 16, 2017), at 26 n.22, 30-31, 33-35. Accordingly, substantial portions of the Complaint do not require a response. Notwithstanding, defendants Twitter, Richard Costolo and Anthony Noto (collectively, "Defendants"), by and through their undersigned counsel, respond to the Complaint as follows.

### GENERAL DENIAL

Defendants deny any and all liability under Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 and Securities and Exchange Commission ("SEC") Rule 10b-5.

The Complaint contains purported excerpts from, and references to, a number of documents and third-party publications. Such documents and third-party publications speak for themselves, and Defendants refer to the respective documents and third-party publications for the contents thereof.

Any allegations contained in the Complaint that state a legal conclusion do not require a response and, to the extent that any response is required, such allegations are denied.

Defendants generally deny any averments in the Complaint's table of contents, headings, subheadings, unnumbered paragraphs, footnotes, appendices, and exhibits.

Any allegation that is not specifically admitted below is hereby denied.

### STATEMENT WITH RESPECT TO PUBLICLY AVAILABLE DOCUMENTS

The Complaint cites to and quotes from a number of publicly available documents. Defendants refer Plaintiff to those documents for the statements made therein but did not search for or review those documents to determine whether Plaintiff correctly quoted or interpreted them.

## **SPECIFIC RESPONSES**

1.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1.

2.    Defendants deny all allegations in Paragraph 2, except admit that (a) lead plaintiff KBC Asset Management NV ("Plaintiff") has filed the Complaint against Defendants, which speaks for itself, and (b) Defendants from time to time made statements to the media, securities analysts and investors orally, in press releases, and/or in filings with the SEC during the alleged class period.

3.    Defendants lack knowledge or information sufficient to form a belief as to what metric(s) "were closely tracked" by investors or analysts or what any investor or analyst worried about or why.  Defendants deny all other allegations in Paragraph 3, except admit that (a) Twitter conducted a meeting, referred to as "Analyst Day," with certain securities analysts in November 2014; (b) "monthly active users" ("MAUs") is a metric of user growth that Twitter tracked at various times; (c) "Timeline Views" ("TLVs") is a metric of user engagement that Twitter tracked at various times; (d) Twitter reported MAUs and TLVs in its Form S-1 Registration Statement, filed with the SEC, as amended, on or around November 4, 2013; (e) Twitter held a stockholder meeting in May 2014; and (f) Defendant Costolo and other Twitter employees bought and sold Twitter stock at various times.

4.    Defendants deny all allegations in Paragraph 4, except lack knowledge or information sufficient to form a belief as to what any confidential witness "confirmed" to Plaintiff.

5.    Defendants lack knowledge or information sufficient to form a belief as to what investors naturally wanted to know.  Defendants deny all other allegations in Paragraph 5, except admit that Twitter received a letter from the SEC in April 2015, and refer to that letter, Twitter's first quarter 2015 earnings release, Twitter's response to the SEC's April 2015 letter, the transcripts of Twitter's quarterly earnings calls, Twitter's Analyst Day presentations, and the *Wall Street Journal* article cited in paragraph 5 for the contents thereof.

TWITTER DEFENDANTS' AM. ANSWER TO CONSOL. COMPL.                    CASE NO. 3:16-CV-05314-JST

6.      Defendants lack knowledge or information sufficient to form a belief as to what analysts concluded from statements made on Twitter's fourth quarter 2014 or first quarter 2015 earnings call, or as to what unidentified "witness accounts" observed or reported to Plaintiff. Defendants deny all other allegations in Paragraph 6, except refer to the transcript of Twitter's fourth quarter 2014 and first quarter 2015 earnings call and the news articles and analyst reports cited in Paragraph 6 for the contents thereof.

7.      Defendants lack knowledge or information sufficient to form a belief as to what "[n]umerous witness accounts" observed or reported to Plaintiff.  Defendants deny all allegations in Paragraph 7, except refer to the *Vanity Fair* article cited in Paragraph 7 for the contents thereof.

8.      Defendants lack knowledge or information sufficient to form a belief as to how investors reacted to any statements Twitter made.  Defendants deny all other allegations in Paragraph 8, except admit that (a) Defendant Costolo was formerly Twitter's Chief Executive Officer, and (b) Twitter's stock price declined from the beginning of the alleged class period to the end of the alleged class period, and refer to the transcript of Twitter's July 2015 second quarter earnings call for the contents thereof and to public market sources for a record of Twitter's stock price on relevant days.

9.      Paragraph 9 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9, except admit that the Complaint purports to assert claims pursuant to Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 and SEC Rule 10b-5.

10.     Paragraph 10 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10, except deny that Defendants prepared or disseminated materially false and misleading information.

11.     Paragraph 11 asserts legal conclusions to which no response is required.  To the extent a response is required, Defendants deny all allegations in Paragraph 11.

3

12.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12, except deny that Plaintiff was damaged by the conduct alleged in the Complaint.

13.     Defendants admit the allegations in Paragraph 13.

14.     Paragraph 14 asserts legal conclusions regarding Defendant Costolo's alleged status as a "control person" under the Securities and Exchange Act of 1934 as to which no response is required.  To the extent a response is required, Defendants deny that allegation. Defendants deny all other allegations in Paragraph 14, except admit that Defendant Costolo was (a) CEO of Twitter during the part of the alleged class period from February 6, 2015 until July 1, 2015, and (b) a member of Twitter's Board of Directors throughout the alleged class period. Further, to the extent Paragraph 14 purports to incorporate by reference Paragraphs 79-111, Defendants herein incorporate by reference their answers to those Paragraphs.

15.     Paragraph 15 asserts legal conclusions regarding Defendant Noto's alleged status as a "control person" under the Securities and Exchange Act of 1934 as to which no response is required.  To the extent a response is required, Defendants deny that allegation.  Defendants deny all other allegations in Paragraph 15, except admit that Defendant Noto was Chief Financial Officer of Twitter during the alleged class period.  Further, to the extent Paragraph 15 purports to incorporate by reference Paragraphs 79-111, Defendants herein incorporate by reference their answers to those Paragraphs.

16.     Defendants admit that the Complaint refers to Defendants Costolo and Noto as the "Individual Defendants."

17.     Defendants deny all allegations in Paragraph 17.

18.     Defendants admit that the Complaint refers to Defendants Twitter, Costolo, and Noto as the "Defendants."

19.     Defendants admit the allegations in Paragraph 19.

20.     Defendants deny all allegations in Paragraph 20, except admit that Twitter measured its financial health and growth prospects using a variety of metrics, including those relating to monthly active users ("MAUs") and TLVs, at different points in time and that user

growth, user engagement, and advertising revenue have historically been relevant aspects of Twitter's business, and refer to the transcript of Twitter's fourth quarter 2013 earnings call for the contents thereof.

21. Defendants deny all allegations in Paragraph 21, except admit that (a) MAU and TLV were used to measure different user characteristics, and (b) Twitter considered MAU a key metric, and refer to Twitter's Form S-1 Registration Statement filed with the SEC for the contents thereof.

22. Defendants deny all allegations in Paragraph 22, except admit that Twitter tracked user churn internally in various ways at various points in time, and lack knowledge or information sufficient to form a belief as to how "other social media companies" describe their user bases.

23. Defendants deny all allegations in Paragraph 23, except admit that (a) Twitter's main source of revenue comes from selling advertisements on its platform, and (b) user growth and user engagement are factors that may affect advertising revenue, and refer to Twitter's public filings with the SEC, Twitter's Analyst Day presentations, and the *Wall Street Journal* article cited in Paragraph 23 for the contents thereof.

24. Defendants deny all allegations in Paragraph 24, except admit that neither MAU nor user engagement provides a complete picture of Twitter's business, and lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in the second and third sentences in Paragraph 24, and refer to Twitter's Form S-1 Registration Statement filed with the SEC and to the transcript of the September 2015 Deutsche Bank Technology Conference cited in Paragraph 24 for the contents thereof.

25. Defendants deny all allegations in Paragraph 25, except lack knowledge or information sufficient to form a belief as to what any particular investor or analyst subjectively considered "vital" to "evaluate the Company's current financial condition and future prospects," and refer to Twitter's Form S-1 Registration Statement filed with the SEC and to the transcript of Twitter's first quarter 2014 earnings call for the contents thereof.

26.     Defendants deny all allegations in Paragraph 26, except admit that Twitter hosted a meeting for certain analysts referred to as Analyst Day in November 2014, and refer to the transcripts of Twitter's second and third quarter 2014 earnings calls and to the analyst report cited in Paragraph 26 for the contents thereof.

27.     Defendants deny all allegations in Paragraph 27, except refer to the transcripts of Twitter's first and third quarter 2014 earnings calls for the contents thereof.

28.     Defendants deny all allegations in Paragraph 28, except lack knowledge or information sufficient to form a belief as to what was important to any particular investor, and refer to the transcript of March 3, 2015 Morgan Stanley Investor Conference for the contents thereof.

29.     Defendants deny all allegations in Paragraph 29, except admit that Twitter held an Analyst Day on or about November 12, 2014, and refer to Twitter's Analyst Day presentations for the contents thereof.

30.     Defendants deny all allegations in Paragraph 30, except refer to Twitter's Analyst Day presentations for the contents thereof.

31.     Defendants deny all allegations in Paragraph 31, except refer to Twitter's Analyst Day presentations for the contents thereof.

32.     Defendants lack knowledge or information sufficient to form a belief as to what any analyst believed, concluded, or reported based on Twitter's Analyst Day presentations. Defendants deny all other allegations in Paragraph 32, except refer to the analyst reports cited in Paragraph 32 for the contents thereof and to public market sources for a record of Twitter's stock price on relevant days.

33.     Defendants deny all allegations in Paragraph 33, except refer to Twitter's Analyst Day presentations, and to the *Business Insider* article cited in Paragraph 33 for the contents thereof.

34.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34, except refer to the analyst reports cited in Paragraph 34 for the contents thereof.

35.    Defendants lack knowledge or information sufficient to form a belief as to what metric(s) any particular analyst believed or reported "should be key to proving" Twitter's success.  Defendants admit that Evan Williams is a co-founder of Twitter and is currently a member of Twitter's board of directors.  Defendants deny all other allegations in Paragraph 35, except refer to the analyst report and *Fortune* article cited in Paragraph 35 for the contents thereof.

36.    Defendants deny all allegations in Paragraph 36, except lack knowledge or information sufficient to form a belief as to what was "a common user engagement metric disclosed by social media companies," and refer to Twitter's Form S-1 Registration Statement filed with the SEC, Analyst Day presentations, third quarter 2016 shareholder letter, and transcript of its third quarter 2016 earnings call for the contents thereof.  Further, to the extent Paragraph 36 purports to incorporate by reference Paragraph 124, Defendants herein incorporate by reference their answer to that Paragraph.

37.    Defendants deny all allegations in Paragraph 37, except admit that at Analyst Day Defendants made statements about user engagement, metrics related to daily active users ("DAU"), and Twitter's potential growth, and refer to Twitter's Analyst Day presentations for the contents thereof.

38.    Defendants deny all allegations in Paragraph 38, except admit that at Analyst Day, Twitter discussed certain hypothetical growth opportunities, including hypothetical growth opportunities associated with the DAU/MAU ratio for certain markets, and refer to Twitter's Analyst Day presentations for the contents thereof.

39.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39, except refer to the analyst reports cited in Paragraph 39 for the contents thereof.

40.    Defendants deny all allegations in Paragraph 40.

41.    Defendants deny all allegations in Paragraph 41, except admit that Twitter released its financial results for the fourth quarter of 2014 and held a conference call with

7

investors and analysts to discuss those results on February 5, 2015, and refer to those financial results and to the transcript of the fourth quarter 2014 earnings call for the contents thereof.

42. Defendants lack knowledge or information sufficient to form a belief as to whether analysts sought more information on user engagement.  Defendants deny all other allegations in Paragraph 42, except refer to the transcript of Twitter's fourth quarter 2014 earnings call and to the *Wall Street Journal* article and analyst report cited in Paragraph 42 for the contents thereof.

43. Defendants deny all allegations in Paragraph 43, except refer to the transcript of Twitter's fourth quarter 2014 earnings call for the contents thereof.

44. Defendants lack knowledge or information sufficient to form a belief as to what investors knew during the alleged class period.  Defendants deny all other allegations in Paragraph 44, except admit that (a) Twitter filed its 2014 Form 10-K with the SEC on or around March 2, 2015, and (b) the SEC sent Twitter a letter in April 2015, and refer to Twitter's public filings with the SEC and to the SEC's April 2015 letter to Twitter for the contents thereof.

45. Defendants deny all allegations in Paragraph 45, except admit that Twitter held its first quarter 2015 earnings call on April 28, 2015, and refer to the transcript of Twitter's first quarter 2015 earnings call for the contents thereof.

46. Defendants lack knowledge or information sufficient to form a belief as to what any confidential witness said or "confirmed" to Plaintiff.  Defendants deny all other allegations in Paragraph 46, except admit that certain Twitter employees tracked and discussed metrics relating to DAU at various points in time, and refer to the transcript of Twitter's first quarter 2016 earnings call for the contents thereof.  Further, to the extent Paragraph 46 purports to incorporate by reference Paragraph 85(b), Defendants herein incorporate by reference their answer to Paragraph 85(b).

47. Defendants lack knowledge or information sufficient to form a belief as to whether any confidential witness is a former Twitter employee or what any confidential witness allegedly "confirmed" or "reported" to Plaintiff.  Defendants deny all other allegations in

Paragraph 47. Further, to the extent Paragraph 47 purports to incorporate by reference Paragraphs 67-77, Defendants herein incorporate by reference their answers to those Paragraphs.

48. Defendants deny all allegations in Paragraph 48, except admit that the primary way that Twitter generates revenue is through the sale of advertisements on its platform, and refer to Twitter's Form S-1 Registration Statement filed with the SEC and to the *Wall Street Journal* article cited in Paragraph 48 for the contents thereof.

49. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49, except refer to the analyst reports cited in Paragraph 49 for the contents thereof.

50. Defendants deny all allegations in Paragraph 50.

51. Defendants deny all allegations in Paragraph 51, except refer to the *Wall Street Journal* article cited in Paragraph 51 for the contents thereof.

52. Defendants lack knowledge or information sufficient to form a belief as to what analysts believed following Twitter's fourth quarter 2014 earnings call. Defendants deny all other allegations in Paragraph 52, except refer to the transcript of Twitter's fourth quarter 2014 earnings call and to the analyst reports cited in Paragraph 52 for the contents thereof. Further, to the extent Paragraph 52 purports to incorporate by reference Paragraph 86, Defendants herein incorporate by reference their answer to that Paragraph.

53. Defendants deny all allegations in Paragraph 53, except admit that Twitter held its first quarter 2015 earnings call on April 28, 2015, and refer to the transcript of that earnings call for the contents thereof. Further, to the extent Paragraph 53 purports to incorporate by reference Paragraph 102, Defendants herein incorporate by reference their answer to that Paragraph.

54. Defendants deny all allegations in Paragraph 54, except refer to the transcript of Twitter's first quarter 2015 earnings call for the contents thereof.

55. Defendants lack knowledge or information sufficient to form a belief as to what any confidential witness observed during the alleged class period while at Twitter, or "confirmed" or said to Plaintiff. Defendants deny all other allegations in Paragraph 55, except refer to the *Forbes* article cited in Paragraph 55 for the contents thereof.

56.    Defendants lack knowledge or information sufficient to form a belief as to what any confidential witness "explained" or "confirmed" to Plaintiff.  Defendants deny all other allegations in Paragraph 56, except refer to the analyst report cited in Paragraph 56 for the contents thereof.

57.    Defendants lack knowledge or information sufficient to form a belief as to what any confidential witness observed while at Twitter, or "confirmed" or "explained" or said to Plaintiff.  Defendants deny all other allegations in Paragraph 57.

58.    Defendants deny all allegations in Paragraph 58.

59.    Defendants lack knowledge or information sufficient to form a belief as to what mattered to any particular investor or analyst, or as to what any confidential witness observed while at Twitter or told Plaintiff.  Defendants deny all other allegations in Paragraph 59, except refer to the analyst report cited in Paragraph 59 for the contents thereof.

60.    Defendants deny all allegations in Paragraph 60, except admit that (a) Twitter held its second quarter 2015 earnings call on July 28, 2015 to discuss its second quarter 2015 financial results and (b) at the time of that call, Jack Dorsey was Twitter's interim Chief Executive Officer, and refer to the transcript of that call for the contents thereof.

61.    Defendants deny all allegations in Paragraph 61, except refer to the transcript of Twitter's second quarter 2015 earnings call for the contents thereof.

62.    Defendants deny all allegations in Paragraph 62, except refer to the transcript of Twitter's second quarter 2015 earnings call for the contents thereof.

63.    Defendants lack knowledge or information sufficient to form a belief as to how investors or analysts responded to any "news" or statements Defendants made on Twitter's second quarter 2015 earnings call.  Defendants deny all other allegations in Paragraph 63, except refer to the analyst report cited in Paragraph 63 for the contents thereof and to public market sources for a record of the trading volume and price of Twitter's stock on relevant days.

64.    Defendants deny all allegations in Paragraph 64, except refer to the *Wall Street Journal* article cited in Paragraph 64 for the contents thereof.

65.    Defendants deny all allegations in Paragraph 65.

TWITTER DEFENDANTS' AM. ANSWER TO CONSOL. COMPL.                    CASE NO. 3:16-CV-05314-JST

66.    Defendants lack knowledge or information sufficient to form a belief as to whether any "former Twitter employees" provided information to Plaintiff, what information they provided to Plaintiff, or their alleged dates of employment at Twitter.  The remaining allegations in Paragraph 66 assert legal conclusions as to which no response is required.  To the extent a response is required, Defendants deny those allegations.

67.    Defendants lack knowledge or information sufficient to form a belief as to whether confidential witness 1 ("CW-1") provided information to Plaintiff; what information CW-1 provided to Plaintiff; CW-1's alleged dates of employment at Twitter; CW-1's roles, responsibilities or job function while allegedly at Twitter; to or with whom CW-1 spoke or what CW-1 may have discussed with any such person while at Twitter; what information CW-1 observed or viewed while at Twitter; what CW-1 believed or thought; or what was "internally thought" by unidentified Twitter employees.  Defendants deny all other allegations in Paragraph 67, except admit that (a) Twitter's headquarters were in San Francisco during the alleged class period; (b) Twitter disclosed hypothetical DAU and MAU growth scenarios at Analyst Day; (c) certain Twitter employees tracked and discussed metrics relating to DAU, MAU, and TLV at various points during the alleged class period; (d) Twitter had an objective of increasing user engagement during the alleged class period; and (e) Twitter held Product Leadership meetings from time to time during the alleged class period, at which various metrics were discussed, and refer to Twitter's public filings with the SEC and to Twitter's Analyst Day presentations for the contents thereof.

68.    Defendants lack knowledge or information sufficient to form a belief as to whether confidential witness 2 ("CW-2") provided information to Plaintiff; what information CW-2 provided to Plaintiff; CW-2's alleged dates of employment at Twitter; CW-2's roles, responsibilities or job function while allegedly at Twitter; to or with whom CW-2 spoke or what CW-2 may have discussed with any such person while at Twitter; what information CW-2 observed or viewed while at Twitter; what meetings CW-2 may have attended while at Twitter and what was said or disclosed at such meetings; or what "concerns" any unidentified Twitter employee may have had about any Twitter metric.  Defendants deny all other allegations in

11

Paragraph 68, except admit that (a) certain Twitter employees calculated, tracked and/or discussed metrics relating to DAU and MAU at various points during the alleged class period, and (b) Tea Time meetings were held at Twitter from time to time during the alleged class period, at which various metrics were discussed from time to time.

69.    Defendants lack knowledge or information sufficient to form a belief as to whether confidential witness 3 ("CW-3") provided information to Plaintiff; what information CW-3 provided to Plaintiff; CW-3's alleged dates of employment at Twitter; CW-3's roles, responsibilities or job function while allegedly at Twitter; to or with whom CW-3 spoke or what CW-3 may have discussed with any such person while at Twitter; what information CW-3 observed or viewed while at Twitter; what meetings CW-3 may have attended while at Twitter and what was said or disclosed at such meetings; or what "concerns" any unidentified Twitter employee may have had about any Twitter metric. Defendants deny all other allegations in Paragraph 69.

70.    Defendants lack knowledge or information sufficient to form a belief as to whether confidential witness 4 ("CW-4") provided information to Plaintiff; what information CW-4 provided to Plaintiff; CW-4's alleged dates of employment at Twitter; CW-4's roles, responsibilities or job function while allegedly at Twitter; to or with whom CW-4 spoke or what CW-4 may have discussed with any such person while at Twitter; what information CW-4 observed or viewed while at Twitter; or what meetings CW-4 may have attended while at Twitter and what was said or disclosed at such meetings. Defendants deny all other allegations in Paragraph 70.

71.    Defendants lack knowledge or information sufficient to form a belief as to whether confidential witness 5 ("CW-5") provided information to Plaintiff; what information CW-5 provided to Plaintiff; CW-5's alleged dates of employment at Twitter; CW-5's roles, responsibilities or job function while at Twitter; to or with whom CW-5 spoke or what CW-5 may have discussed with any such person while at Twitter; what information CW-5 observed or viewed while at Twitter; or what meetings CW-5 may have attended while at Twitter and what was said or disclosed at such meetings. Defendants deny all other allegations in Paragraph 71,

except admit that certain Twitter employees tracked, discussed and/or analyzed a number of different metrics, including metrics relating to DAU and MAU, at various points during the alleged class period.

72.    Defendants lack knowledge or information sufficient to form a belief as to whether confidential witness 6 ("CW-6") provided information to Plaintiff; what information CW-6 provided to Plaintiff; CW-6's alleged dates of employment at Twitter; CW-6's roles, responsibilities or job function while allegedly at Twitter; to or with whom CW-6 spoke or what CW-6 may have discussed with any such person while at Twitter; what information CW-6 observed or viewed while at Twitter; what meetings CW-6 may have attended while at Twitter and what was said or disclosed at such meetings; or what "concerns" any unidentified Twitter employee may have had about any Twitter metric.  Defendants deny all other allegations in Paragraph 72, except admit that certain Twitter employees calculated, tracked and/or discussed various user growth and user engagement metrics at various points during the alleged class period.

73.    Defendants lack knowledge or information sufficient to form a belief as to whether confidential witness 7 ("CW-7") provided information to Plaintiff; what information CW-7 provided to Plaintiff; CW-7's alleged dates of employment at Twitter; CW-7's roles, responsibilities or job function while allegedly at Twitter; to or with whom CW-7 spoke or what CW-7 may have discussed with any such person while at Twitter; what information CW-7 observed or viewed while at Twitter; or whether any unidentified "growth projects" at Twitter were "stalled or deprioritized."  Defendants deny all other allegations in Paragraph 73, except admit that (a) promoted trends are trends on Twitter's platform promoted by Twitter's advertising partners; (b) promoted accounts are suggested accounts for Twitter users to follow; (c) Twitter's advertisement system did not display an ad for every viewer and instead used algorithms to calculate how many advertisements to send to a user; and (d) certain Twitter employees referred to the number of advertisements sent to each user as "Ad Load."

74.    Defendants lack knowledge or information sufficient to form a belief as to whether confidential witness 8 ("CW-8") provided information to Plaintiff; what information

TWITTER DEFENDANTS' AM. ANSWER TO CONSOL. COMPL.                                    CASE NO. 3:16-CV-05314-JST

CW-8 provided to Plaintiff; CW-8's alleged dates of employment at Twitter; CW-8's roles, responsibilities or job function while allegedly at Twitter; to or with whom CW-8 spoke or what CW-8 may have discussed with any such person while at Twitter; or what information CW-8 observed or viewed while at Twitter.  Defendants deny all other allegations in Paragraph 74, except admit that (a) certain Twitter employees discussed Twitter server capacity from time to time during the alleged class period; (b) user growth was a positive number for Twitter server capacity purposes; and (c) user attrition was a negative number for Twitter server capacity purposes.

75.     Defendants lack knowledge or information sufficient to form a belief as to whether confidential witness 9 ("CW-9") provided information to Plaintiff; what information CW-9 provided to Plaintiff; CW-9's alleged dates of employment at Twitter; CW-9's roles, responsibilities or job function while allegedly at Twitter; to or with whom CW-9 spoke or what CW-9 may have discussed with any such person while at Twitter; what information CW-9 observed or viewed while at Twitter; or what unidentified "user numbers" or "data" was "broadly available" to unidentified Twitter employees.  Defendants deny all other allegations in Paragraph 75, except admit that certain user growth and user engagement metrics were available to certain Twitter employees at various times during the alleged class period in various formats, including formats known internally at Twitter as "dashboards."

76.     Defendants lack knowledge or information sufficient to form a belief as to whether confidential witness 10 ("CW-10") provided information to Plaintiff; what information CW-10 provided to Plaintiff; CW-10's alleged dates of employment at Twitter; CW-10's roles, responsibilities or job function while allegedly at Twitter; to or with whom CW-10 spoke or what CW-10 may have discussed with any such person while at Twitter; or what information CW-10 observed or viewed while at Twitter.  Defendants deny all other allegations in Paragraph 76, except admit that certain user growth and user engagement metrics were available to certain Twitter employees at various times during the alleged class period in various formats, including formats known internally at Twitter as "dashboards."

Case 4:16-cv-05314-JST    Document 119    Filed 12/08/17    Page 16 of 38

77.     Defendants lack knowledge or information sufficient to form a belief as to whether confidential witness 11 ("CW-11") provided information to Plaintiff; what information CW-11 provided to Plaintiff; CW-11's alleged dates of employment at Twitter; CW-11's roles, responsibilities or job function while allegedly at Twitter; to or with whom CW-11 spoke or what CW-11 may have discussed with any such person while at Twitter; or what information CW-11 observed or viewed while at Twitter.  Defendants deny all other allegations in Paragraph 77, except admit that advertising engagement is one metric that, among other things, measures the effectiveness of ads and the frequency with which customers interact with ads.

78.     Paragraph 78 purports to summarize and recite excerpts of a *Vanity Fair* article. Defendants lack knowledge or information sufficient to form a belief as to the person or persons with whom the author of the article spoke or had contact, or what was reported to the author. Defendants deny all other allegations in Paragraph 78, except admit that (a) Tea Time meetings were held at Twitter from time to time during the alleged class period, at which various metrics, including metrics relating to MAU, were discussed from time to time, and (b) Gabriel Stricker was employed by Twitter during the alleged class period, and refer to the *Vanity Fair* article cited in Paragraph 78 for its contents.

79.     Defendants admit the allegations in Paragraph 79, except deny that "the Company forecast strong MAU growth in the first quarter of 2015" or that "Twitter blamed lower than expected MAU growth on quarter-specific factors that impacted [its] net ads [sic] in Q4, which include seasonality and a couple of issues related to the launch of iOS8," and refer to Twitter's public filings with the SEC and to the transcript of Twitter's fourth quarter 2014 earnings call for the contents thereof.

80.     Defendants admit the allegations in Paragraph 80.

81.     Defendants deny all allegations in Paragraph 81, except refer to public market sources for a record of the trading volume and price of Twitter's stock on relevant days.

82.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 82, except refer to the analyst report cited in Paragraph 82 for the contents thereof.

TWITTER DEFENDANTS' AM. ANSWER TO CONSOL. COMPL.                    CASE NO. 3:16-CV-05314-JST

83.     Defendants deny all allegations in Paragraph 83.

84.     Defendants deny all allegations in Paragraph 84, except refer to Twitter's 2014 Form 10-K filed with the SEC and to the transcript of Twitter's fourth quarter 2014 earnings call for the contents thereof.

85.     Defendants deny all allegations in Paragraph 85.

(a)     Defendants lack knowledge or information sufficient to form a belief as to what any confidential witness observed while at Twitter, or reported to Plaintiff. as alleged in Paragraph 85(a).  Defendants deny all allegations in Paragraph 85(a), except admit that certain Twitter employees calculated, tracked and/or discussed metrics relating to DAU and MAU from time to time during the alleged class period.  To the extent Paragraph 85(a) purports to incorporate by reference Paragraphs 67, 68, and 71, Defendants herein incorporate by reference their answers to those Paragraphs.

(b)     Defendants deny all allegations in Paragraph 85(b), except refer to Twitter's Analyst Day presentations, the transcripts of Twitter's fourth quarter 2015 and first quarter 2016 earnings calls, and the transcript of the December 8, 2015 Barclays Global Technology Brokers Conference for the contents thereof.

(c)     Paragraph 85(c) asserts legal conclusions about material information as to which no response is required.  To the extent a response is required, Defendants deny those allegations.  Defendants lack knowledge or information sufficient to form a belief as to what metric(s) any investor "closely tracked."  Defendants deny all other allegations in Paragraph 85(c), except admit that Twitter filed its 2014 Form 10-K on March 2, 2015, and refer to that filing for the contents thereof.  Further, to the extent that Paragraph 85(c) purports to incorporate by reference Paragraphs 19-25 and 33-39, Defendants herein incorporate by reference their answers to those Paragraphs.

(d)     Defendants lack knowledge or information sufficient to form a belief as to what any analyst considered important as alleged in Paragraph 85(d).  Defendants deny all other allegations in Paragraph 85(d), except refer to Twitter's public filings with the SEC, to the transcript of the September 16, 2015 Deutsche Bank Technology Conference, and to the analyst

16

reports cited in Paragraph 85(d) for the contents thereof.  Further, to the extent Paragraph 85(d) purports to incorporate by reference Paragraphs 20-25, Defendants herein incorporate by reference their answers to those Paragraphs.

(e)    Paragraph 85(e) consists entirely of allegations that have been dismissed from the case and as to which no response is required.

(f)    Defendants deny all allegations in Paragraph 85(f).  Further, to the extent Paragraph 85(f) incorporates by reference Paragraph 86 and 87, Defendants herein incorporate by reference their answers to those Paragraphs.

(g)    Defendants lack knowledge or information sufficient to form a belief as to what was "particularly important" to any analyst or investor in projecting Twitter's revenue growth, and as to what any confidential witness observed while at Twitter or reported to Plaintiff as alleged in Paragraph 85(g).  Defendants deny all other allegations in Paragraph 85(g), except admit that Twitter's main source of revenue comes from selling advertisements on its platform, and refer to Twitter's public filings with the SEC for the contents thereof.  Further, to the extent Paragraph 85(g) purports to incorporate by reference Paragraph 23, Defendants herein incorporate by reference their answer to that Paragraph.

(h)    Defendants deny all allegations in Paragraph 85(h), except admit that one of Twitter's goals was to increase user engagement, and refer to the *Business Insider* article cited in Paragraph 85(h) and to Twitter's Analyst Day presentations for the contents thereof.

(i)    Paragraph 85(i) asserts legal conclusions regarding what constitutes "false and misleading" statements as to which no response is required.  To the extent a response is required, Defendants deny those allegations.  Defendants lack knowledge or information sufficient to form a belief as to what CW-11 observed while at Twitter or reported to Plaintiff. Defendants deny all other allegations in Paragraph 85(i), except admit that (a) Twitter measured user engagement in a number of different ways during the alleged class period; (b) advertising engagement is one metric Twitter used to measure, among other things, the effectiveness of ads and the frequency with which customers interact with ads; (c) advertising engagements are "helpful to investors to understand" and "monitor" trends in user engagement; and (d)

advertising engagements grew year-over-year during the two quarters during the alleged class period, and refer to Twitter's public filings with the SEC and to the transcripts of Twitter's fourth quarter 2014 and first quarter 2015 earnings calls for the contents thereof.  Further, to the extent Paragraph 85(i) purports to incorporate by reference Paragraphs 113-117, Defendants herein incorporate by reference their answers to those Paragraphs.

(j)      Defendants deny all allegations in Paragraph 85(j), except admit that at Analyst Day, Twitter discussed certain hypothetical growth opportunities, including hypothetical growth opportunities associated with the DAU/MAU ratio, and refer to Twitter's Analyst Day presentations for their contents.

86.      Defendants lack knowledge or information sufficient to form a belief as to what "impression" any analyst or investor was left with following Twitter's fourth quarter 2014 earnings call.  Defendants deny all other allegations in Paragraph 86, except admit that (a) at Analyst Day, Twitter reported that the average DAU/MAU ratio for its top 20 markets over the first three quarters of 2014 was 48%; (b) on the third quarter 2014 earnings call, Twitter reported that its top 20 markets made up 80% of Twitter's overall user base; and (c) on the fourth quarter 2014 earnings call, Twitter reported that TLVs-per-MAU were up 3% year-over-year, better than Twitter's outlook, and refer to Twitter's public filings with the SEC, to the transcript of Twitter's fourth quarter 2014, and to the *Wall Street Journal* article and analyst reports cited in Paragraph 86 for the contents thereof.

87.      Defendants deny all allegations in Paragraph 87.

(a)      Defendants lack knowledge or information sufficient to form a belief as to whether CW-1, CW-2, CW-4, CW-5, CW-7, or CW-11 provided information to Plaintiff; what information those CWs provided to Plaintiff; to or with whom those CWs spoke or what they talked about while at Twitter; or what information those CWs observed or viewed while at Twitter as alleged in Paragraph 87(a).  Defendants deny all allegations in Paragraph 87(a), except admit that certain Twitter employees met from time to time during the alleged class period to discuss various metrics, including metrics based upon or related to MAU and DAU.

(b)      Defendants lack knowledge or information sufficient to form a belief as to the basis for any third-party article or report cited in Paragraph 87(b).  Defendants deny all other allegations in Paragraph 87(b), except refer to the analyst report, and the *Forbes* and *Wall Street Journal* articles cited in Paragraph 87(b) for the contents thereof.

(c)      Defendants deny all allegations in Paragraph 87(c), except admit that certain Twitter users used third party applications that may have automatically contacted Twitter's servers for regular updates, and that Twitter counted such users as MAUs during the alleged class period, and refer to Twitter's 2014 Form 10-K, filed with the SEC, for the contents thereof.

(d)      Defendants deny all allegations in Paragraph 87(d), except admit that Twitter lost certain users as a result of an iOS 8 integration issue, and refer to the transcript of Twitter's fourth quarter 2014 earnings call and to the *Quartz* article cited in Paragraph 87(d) for the contents thereof.

(e)      Defendants lack knowledge or information sufficient to form a belief as to what CW-1 observed while at Twitter, or "explained" or said to Plaintiff as alleged in Paragraph 87(e).  Defendants deny all other allegations in Paragraph 87(e).  Further, to the extent Paragraph 87(e) purports to incorporate by reference Paragraphs 7, 57, 67 and 78, Defendants herein incorporate by reference their answers to those Paragraphs.

(f)      Defendants deny all allegations in Paragraph 87(f), except refer to Twitter's fourth quarter 2014 earnings call and to Twitter's response to the SEC's April 2015 letter for the contents thereof.  Further, to the extent Paragraph 87(f) purports to incorporate by reference Paragraph 85(i), Defendants herein incorporate by reference their answer to that Paragraph.

(g)      Defendants lack knowledge or information sufficient to form a belief as to what CW-7 observed while at Twitter or reported to Plaintiff as alleged in Paragraph 87(g).  Defendants deny all allegations in Paragraph 87(g), except admit that (a) Twitter's primary revenue source comes from selling advertisements on its platform, and (b) Twitter's advertisement system did not display an ad for every viewer, and instead used algorithms to

calculate how many advertisements to send to a user, and refer to the transcripts of Twitter's fourth quarter 2014 and second quarter 2015 earnings calls and to the *Wall Street Journal* and *Stratechery* articles cited in Paragraph 87(g) for the contents thereof.  Defendants lack knowledge or information sufficient to form a belief as to what CW-1 or CW-8 observed while at Twitter, or what either of them "noted" or said to Plaintiff.

(h)     Defendants deny all other allegations in Paragraph 87(h), except refer to the transcripts of the March 3, 2015 Morgan Stanley Investor Conference, the September 16, 2015 Deutsche Bank Technology Conference, and the December 8, 2015 Barclays Global Technology Conference for the contents thereof.

88.     Defendants deny all allegations in Paragraph 88, except refer to the transcripts of Twitter's fourth quarter 2014 earnings call and the February 12, 2015 Goldman Sachs Technology & Internet Conference, and to Twitter's Analyst Day presentations, for the contents thereof.

89.     Defendants deny all allegations in Paragraph 89.

(a)     Defendants lack knowledge or information sufficient to form a belief as to what CWs 1, 3, 6 or 8 observed while at Twitter, or reported to Plaintiff as alleged in Paragraph 89(a).  Defendants deny all other allegations in Paragraph 89(a), except admit that some of Twitter's MAU growth during the alleged class period was the results of Twitter re-engaging existing users.

(b)     Defendants lack knowledge or information sufficient to form a belief as to what "other witness accounts" reported to Plaintiff as alleged in Paragraph 89(b).  Defendants deny all other allegations in Paragraph 89(b), except refer to the *Vanity Fair* article cited in Paragraph 89(b) for the contents thereof.  Further, to the extent Paragraph 89(b) purports to incorporate by reference Paragraph 78, Defendants herein incorporate by reference their answer to that Paragraph.

(c)     Defendants lack knowledge or information sufficient to form a belief as to what "other witness accounts from inside" Twitter reported to Plaintiff as alleged in Paragraph 89(c).  Defendants deny all other allegations in Paragraph 89(c), except refer to the transcript of

Twitter's second quarter 2015 earnings call and to the *Vanity Fair* article cited in Paragraph 89(c) for the contents thereof. Further, to the extent Paragraph 89(c) purports to incorporate by reference Paragraph 105, Defendants herein incorporate by reference their answer to that Paragraph.

(d)     Defendants deny all allegations in Paragraph 89(d), except refer to the transcript of the September 16, 2015 Deutsche Bank Technology Conference and the December 8, 2015 Barclays Global Technology Brokers Conference for the contents thereof.

(e)     Paragraph 89(e) consists entirely of allegations that have been dismissed from the case and as to which no response is required.

(f)     Paragraph 89(f) consists entirely of allegations that have been dismissed from the case and as to which no response is required.

(g)     Defendants deny all allegations in Paragraph 89(g), except refer to the transcripts of Twitter's second quarter 2015 earnings call and the September 2015 Deutsche Bank Technology Conference for the contents thereof.

90.     Defendants deny all allegations in Paragraph 90, except admit that (a) Twitter filed its 2014 Form 10-K with the SEC on March 2, 2015, and (b) Defendants Costolo and Noto signed Twitter's 2014 Form 10-K, and refer to that filing for the contents thereof.

91.     Defendants deny all allegations in Paragraph 91, except admit that Twitter filed a 2014 Form 10-K, and refer to Twitter's 2014 Form 10-K for its complete "NOTE REGARDING KEY METRICS."

92.     Defendants admit the allegations in Paragraph 92, and refer to Twitter's 2014 Form 10-K filing with the SEC for the contents thereof.

93.     Defendants deny all allegations in Paragraph 93.

(a)     Defendants deny all allegations in Paragraph 93(a).

(b)     Paragraph 93(b) contains allegations regarding SEC disclosure rules and "key indicators" of financial performance which have been dismissed from the case and as to which no response is required. To the extent a response is required, Defendants deny those allegations. Defendants deny all other allegations in Paragraph 93(b), except admit that (a)

Twitter received a letter from the SEC in April 2015, and (b) Twitter responded to the SEC's April 2015 letter in May 2015, and refer to Twitter's public filings with the SEC for the contents thereof. Further, to the extent that Paragraph 93(b) purports to incorporate by reference Paragraphs 23-25 and 114-117, Defendants herein incorporate by reference their answers to those Paragraphs.

(c)    Defendants deny all allegations in Paragraph 93(c), except refer to Twitter's 2014 Form 10-K filed with the SEC for the contents thereof.

94.    Paragraph 94 contains allegations regarding SEC disclosure rules that have been dismissed from the case and as to which no response is required. To the extent a response is required, Defendants deny those allegations. Defendants deny all other allegations in Paragraph 94, except refer to Twitter's Analyst Day presentations for the contents thereof. Further, to the extent Paragraph 94 purports to incorporate by reference Paragraphs 29 and 125-126, Defendants herein incorporate by reference their answers to those Paragraphs.

95.    Defendants deny all allegations in Paragraph 95.

96.    Defendants lack knowledge or information sufficient to form a belief as to what CWs 1, 2, 5, 6, 7 and 8 observed while at Twitter, or what any of them told Plaintiff. Defendants deny all other allegations in Paragraph 96.

97.    Defendants lack knowledge or information sufficient to form a belief as to what "other witness accounts" reported to Plaintiff. Defendants deny all other allegations in Paragraph 97, except refer to the *Vanity Fair* article cited in Paragraph 97 for the contents thereof. Further, to the extent Paragraph 97 purports to incorporate by reference Paragraph 78, Defendants herein incorporate by reference their answer to that Paragraph.

98.    Defendants admit the allegations in Paragraph 98, except deny that Twitter reported non-GAAP income of $47 million, and refer to Twitter's first quarter 2015 earnings report filed with the SEC and to the transcript of Twitter's first quarter 2015 earnings call for the contents thereof.

99.     Defendants admit the allegations in Paragraph 99, except deny that "the Company noted that current DAU was 'similar' to DAU as of Analyst Day," and refer to the transcript of Twitter's first quarter 2015 earnings call for the contents thereof.

100.    Defendants lack knowledge or information sufficient to form a belief as to the growth targets or beliefs of any analyst.  Defendants deny all other allegations in Paragraph 100, except refer to Twitter's first quarter 2015 earnings statement, to the transcript of Twitter's first quarter 2015 earnings call, and to the analyst report cited in Paragraph 100 for the contents thereof, and to public market sources for a record of the price of Twitter's stock on relevant days. Further, to the extent Paragraph 100 purports to incorporate by reference Paragraph 136, Defendants herein incorporate by reference their answer to that Paragraph.

101.    Defendants deny all allegations in Paragraph 101.

102.    Defendants deny all allegations in Paragraph 102.

(a)     Paragraph 102(a) asserts legal conclusions regarding the materiality of the alleged decline in the DAU/MAU ratio for Twitter's top 20 markets as to which no response is required.  To the extent a response is required, Defendants deny those allegations.  Defendants deny all other allegations in Paragraph 102(a), except admit that Twitter disclosed its third quarter 2016 financial results on October 27, 2016, which included a discussion of changes in average DAUs from the prior quarter and year-over-year, and refer to that filing and to Twitter's other public filings with the SEC for the contents thereof.

(b)     Defendants lack knowledge or information sufficient to form a belief as to what information CW-5 or CW-11 observed or viewed while at Twitter, or what they said to Plaintiff as alleged in Paragraph 102(b).  Defendants deny all other allegations in Paragraph 102(b).

(c)     Defendants lack knowledge or information sufficient to form a belief as to what any analyst noted or reported, except refer to the analyst report cited in Paragraph 102(c) for the contents thereof.

103.    Defendants deny all allegations in Paragraph 103, except refer to the transcripts of Twitter's first quarter 2015 earnings call, the March 3, 2015 Morgan Stanley Technology Media

& Telecom Conference, and the May 20, 2015 JP Morgan Global Technology, Media & Telecom Conference for the contents thereof.

104.   Defendants deny all allegations in Paragraph 104.

(a)   Paragraph 104(a) asserts legal conclusions about material information as to which no response is required.  Defendants further lack knowledge or information sufficient to form a belief as to what metric(s) investors or analysts tracked.  Defendants deny all other allegations in Paragraph 104(a), except admit that certain Twitter employees tracked various measures of user engagement at various times during the alleged class period, and refer to Twitter's public filings with the SEC, and to the transcript of Twitter's first quarter 2015 earnings call for the contents thereof.  Further, to the extent Paragraph 104(a) purports to incorporate by reference Paragraphs 19-25 and 33-39, Defendants herein incorporate by reference their answers to those Paragraphs.

(b)   Paragraph 104(b) asserts legal conclusions about material information as to which no response is required.  To the extent a response is required, Defendants deny those allegations.  Defendants further lack knowledge or information sufficient to form a belief as to what information investors or analysts considered important.  Defendants deny all other allegations in Paragraph 104(b), except refer to Twitter's Form S-1 Registration Statement filed with the SEC, to the transcript of the September 16, 2015 Deutsche Bank Technology Conference, and to the analyst report cited in Paragraph 104(b) for the contents thereof.

(c)   Defendants deny all allegations in Paragraph 104(c), except admit that Twitter's main source of revenue comes from selling advertisements on its platform, and refer to Twitter's public filings with the SEC for the contents thereof.  Further, to the extent Paragraph 104(c) incorporates by reference Paragraph 23 and 73, Defendants herein incorporate by reference their answers to those Paragraphs.

(d)   Defendants lack knowledge or information sufficient to form a belief as to what information the CWs provided to Plaintiff, or what information the CWs observed or viewed while at Twitter as alleged in Paragraph 104(d).  Defendants deny all allegations in Paragraph 104(d).  Further, to the extent Paragraph 104(d) purports to incorporate by reference

TWITTER DEFENDANTS' AM. ANSWER TO CONSOL. COMPL.                    CASE NO. 3:16-CV-05314-JST

Paragraphs 67, 68, 70 and 71, Defendants herein incorporate by reference their answers to those Paragraphs.

(e)     Defendants deny all allegations in Paragraph 104(e).  Further, to the extent Paragraph 104(e) purports to incorporate by reference Paragraph 85(b), Defendants herein incorporate by reference their answer to that Paragraph.

(f)     Defendants deny all allegations in Paragraph 104(f), except refer to Twitter's public filings with the SEC, including Twitter's response to the SEC's April 2015 letter, and to the transcript of Twitter's first quarter 2015 earnings call, for the contents thereof. Further, to the extent Paragraph 104(f) purports to incorporate by reference Paragraph 85(i), Defendants herein incorporate by reference their answer to that Paragraph.

(g)     Paragraph 104(g) consists entirely of allegations that have been dismissed from the case and as to which no response is required.

(h)     Defendants deny all allegations in Paragraph 104(h).  Further, to the extent Paragraph 104(h) purports to incorporate by reference Paragraphs 87(e) and 87(h), Defendants herein incorporate by reference their answers to those Paragraphs.

(i)     Defendants deny all allegations in Paragraph 104(i).  Further, to the extent Paragraph 104(i) purports to incorporate by reference Paragraph 87(c), Defendants herein incorporate by reference their answer to that Paragraph.

(j)     Defendants deny all allegations in Paragraph 104(j).  Further, to the extent Paragraph 104(j) purports to incorporate by reference Paragraphs 67 and 87(e), Defendants herein incorporate by reference their answers to those Paragraphs.

(k)     Defendants deny all allegations in Paragraph 104(k), except refer to the transcripts of Twitter's first and second quarter 2015 earnings calls and the September 2015 Deutsche Bank Technology Conference for the contents thereof.  Further, to the extent Paragraph 104(k) purports to incorporate by reference Paragraph 89(g), Defendants herein incorporate by reference their answer to that Paragraph.

(l)     Defendants deny all allegations in Paragraph 104(*l*), except admit that Twitter's primary source of revenue during the alleged class period came from selling

advertisements on its platform, and refer to the transcript of Twitter's first quarter 2015 earnings call for the contents thereof. Further, to the extent Paragraph 104(*l*) purports to incorporate by reference Paragraph 87(g), Defendants herein incorporate by reference their answer to that Paragraph.

105. Defendants lack knowledge or information sufficient to form a belief as to any analyst growth target or the reason(s) for those targets, or any analyst's reaction to Twitter's first or second quarter 2015 earnings statements or earnings calls. Defendants deny all other allegations in Paragraph 105, except refer to the transcripts of Twitter's first and second quarter 2015 earnings calls, to Twitter's public filings with the SEC, and to the analyst report cited in Paragraph 105 for the contents thereof.

106. Defendants deny all allegations in Paragraph 106.

(a) Paragraph 106(a) consists entirely of allegations that have been dismissed from the case and as to which no response is required.

(b) Defendants lack knowledge or information sufficient to form a belief as to what "other witness accounts from inside" Twitter observed while at Twitter, or reported to Plaintiff as alleged in Paragraph 106(b). Defendants deny all other allegations in Paragraph 106(b), except refer to the transcript of Twitter's second quarter 2015 earnings call and to the *Vanity Fair* article cited in Paragraph 106(b) for the contents thereof.

107. Paragraph 107 consists entirely of allegations that have been dismissed from the case and as to which no response is required.

108. Defendants deny all allegations in Paragraph 108, except admit that (a) Twitter filed its first quarter 2015 Form 10-Q with the SEC on or around May 11, 2015, and (b) Defendants Costolo and Noto signed Twitter's first quarter 2015 Form 10-Q, and refer to that filing for the contents thereof.

109. Defendants deny all allegations in Paragraph 109, except admit that Twitter filed a Form 10-Q for the first quarter 2015, and refer to Twitter's first quarter 2015 Form 10-Q for its complete "NOTE REGARDING KEY METRICS."

110. Defendants deny all allegations in Paragraph 110.

(a)     Defendants deny all allegations in Paragraph 110(a), except refer to Twitter's first quarter 2015 Form 10-Q for the contents thereof.  Further, to the extent Paragraph 110(a) purports to incorporate by reference Paragraphs 46 and 47, Defendants herein incorporate by reference their answers to those Paragraphs.

(b)     Defendants deny all allegations in Paragraph 110(b), except refer to Twitter's first quarter 2015 Form 10-Q for the contents thereof.

(c)     Defendants deny all allegations in Paragraph 110(c), except admit that (a) Twitter received a letter from the SEC in April 2015, and (b) Twitter responded to that letter, and refer to those letters for the contents thereof.

111.    Paragraph 111 consists entirely of allegations that have been dismissed from the case and as to which no response is required.

112.    Paragraph 112 consists entirely of allegations that have been dismissed from the case and as to which no response is required.

113.    Defendants deny all allegations in Paragraph 113, except admit that the SEC sent Twitter a letter in April 2015, and refer to that letter, publicly filed with the SEC, for the contents thereof.

114.    Defendants admit that Twitter responded to the SEC's April 2015 letter, and refer to Twitter's response, publicly filed with the SEC, for the contents thereof.

115.    Defendants deny all allegations in Paragraph 115, except admit that certain Twitter employees at various times discussed advertising engagements in connection with, among other things, monetization metrics, and refer to the transcript of Twitter's first quarter 2015 earnings call for the contents thereof.

116.    Defendants deny all allegations in Paragraph 116.  Further, to the extent Paragraph 116 purports to incorporate by reference Paragraphs 46-47 and 85(i), Defendants herein incorporate by reference their answers to those Paragraphs.

117.    Defendants deny all allegations in Paragraph 117.

118.    Defendants lack knowledge or information sufficient to form a belief as to whether the "SEC has warned companies that choose to provide user metrics that providing user

numbers 'to illustrate the size and growth of their businesses' without necessary context is misleading," except refer to the transcript of the November 2013 speech by former SEC chairwoman Mary Jo White cited in Paragraph 118 for the contents thereof.  Defendants deny all other allegations in Paragraph 118.

119.    Defendants deny all allegations in Paragraph 119.

120.    Defendants lack knowledge or information sufficient to form a belief as to what any CW told Plaintiff, or what any CW believed or "agreed" with.  Defendants deny all other allegations in Paragraph 120.

121.    Defendants deny all allegations in Paragraph 121, except refer to the *CIO* article cited in Paragraph 121 for the contents thereof.

122.    Defendants deny all allegations in Paragraph 122, except admit that Evan Williams co-founded Twitter and was a board member of Twitter, and refer to the *Fortune* article cited in Paragraph 122 for the contents thereof.

123.    Defendants lack knowledge or information sufficient to form a belief as to (a) the contents of any January 2015 blog post from Evan Williams; (b) whether any such post allegedly criticized "the MAU metric"; (c) what Mr. Williams thought or believed regarding MAU or other metrics, including whether any metric was "superior" to any other metric; (d) whether Mr. Williams had a new company and the number of users of that company; and (e) whether Mr. Williams stated that the reported number of users of his new company were misleading because they were less engaged than average users.  To the extent Paragraph 123 alleges that Twitter's reported MAU figures were misleading, Defendants deny those allegations.

124.    Defendants lack knowledge or information sufficient to form a belief as to what metrics any of Twitter's alleged "direct peers" or "social media/networking companies" disclosed, to whom, or when.  Defendants deny all other allegations in Paragraph 124.

125.    Paragraph 125 consists entirely of allegations that have been dismissed from the case and as to which no response is required.

126.    Paragraph 126 consists entirely of allegations that have been dismissed from the case and as to which no response is required.

127.    Defendants lack knowledge or information sufficient to form a belief as to what unidentified "issues critical to" Twitter's success are referred to in Paragraph 127 that Defendants Costolo or Noto were supposedly "responsible for, and remained well informed of."  Defendants deny all allegations in Paragraph 127, except admit that (a) Defendant Costolo was Twitter's CEO from the beginning of the alleged class period to July 1, 2015; (b) Defendant Noto was Twitter's CFO throughout the alleged class period; and (c) Twitter had a goal of increasing user engagement during the alleged class period, and refer to transcripts of Twitter's fourth quarter 2014 and first quarter 2015 earnings calls and to Twitter's public filings with the SEC for the contents thereof.

128.    Paragraph 128 asserts legal conclusions regarding what Defendants Costolo and Noto "can be presumed" to know, their "knowledge" of certain alleged facts, and what they were "aware" of, as to which no response is required.  To the extent a response is required, Defendants deny those allegations.  Defendants deny all other allegations in Paragraph 128, except refer to the transcripts of Twitter's class period earnings calls, and to Twitter's public filings with the SEC for the contents thereof.

129.    Paragraph 129 asserts legal conclusions regarding what is "indicative of scienter" as to which no response is required.  To the extent a response is required, Defendants deny those allegations.  Defendants deny all other allegations in Paragraph 129.

130.    Defendants lack knowledge or information sufficient to form a belief as to what any analyst or the "tech industry media" believed was the reason or cause of Defendant Costolo's resignation, or as to whether "Wall Street" was satisfied with Defendant Costolo's "performance" at Twitter.  Defendants deny all other allegations in Paragraph 130, except refer to the article cited in Paragraph 130 for the contents thereof.

131.    Defendants lack knowledge or information sufficient to form a belief as to what CW-1 observed while at Twitter or to or with whom CW-1 spoke, at what time, and what CW-1 may have discussed with any such person, or what was "internally thought" by unidentified individuals at Twitter during the alleged class period.  Defendants deny all other allegations in Paragraph 131.

132. Defendants deny all allegations in Paragraph 132, except admit that (a) Gabriel Stricker was at one point Twitter's Chief of Corporate Communications, and (b) Twitter disclosed on or about July 16, 2015 that Mr. Stricker was leaving Twitter, and refer to the *Vanity Fair* article cited in Paragraph 132 for the contents thereof.

133. Defendants lack knowledge or information sufficient to form a belief as to what any analyst or "media commentator" "observed," believed, or "warned." Defendants deny all other allegations in Paragraph 133, except admit that (a) Rishi Garg was at one point Twitter's Vice President of Corporate Development; (b) Christian Oestlien was at one point Vice President of Product Management at Twitter; (c) Todd Jackson was at one point employed at Twitter; and (d) April Underwood was at one point employed at Twitter and left Twitter in February 2015, and refer to the news articles cited in Paragraph 133 for the contents thereof.

134. Paragraph 134 asserts legal conclusions about cognizable damages under the "federal securities laws" as to which no response is required. To the extent a response is required, Defendants deny those allegations. Defendants deny all other allegations in Paragraph 134.

135. Defendants admit the allegations in Paragraph 135, and refer to Twitter's April 28, 2015 press release, filed with the SEC, and to Twitter's first quarter 2015 earnings call for the contents thereof.

136. Defendants lack knowledge or information sufficient to form a belief as to what any unidentified "commentator" "linked" to any alleged decline in Twitter's stock price. Defendants deny all other allegations in Paragraph 136, except refer to public market sources for a record of the trading volume and price of Twitter's stock on relevant days.

137. Defendants deny all allegations in Paragraph 137. Further, to the extent Paragraph 137 purports to incorporate by reference other Paragraphs of the Complaint, including Paragraphs 51, 55, 59, 67, 86, 87(c), 87(d), 87(e), 87(h), and 103, Defendants herein incorporate by reference their answers to those Paragraphs.

138. Defendants deny all allegations in Paragraph 138, except admit that Twitter issued an earnings press release on July 28, 2015, and held a conference call with analysts and investors

30

that day, and refer to the press release and to the transcript of Twitter's second quarter 2015 earnings call for the contents thereof.  Further, to the extent Paragraph 138 purports to incorporate by reference Paragraphs 98-107, Defendants herein incorporate by reference their answers to those Paragraphs.

139.    Defendants lack knowledge or information sufficient to form a belief as to what unidentified "commentators" and "securities analysts" "linked" to the alleged decline in Twitter stock.  Defendants deny all other allegations in Paragraph 139, except refer to public market sources for a record of the trading volume and price of Twitter's stock on relevant days.  Further, to the extent Paragraph 139 purports to incorporate by reference Paragraph 60-62, Defendants herein incorporate by reference their answers to those Paragraphs.

140.    Defendants lack knowledge or information sufficient to form a belief as to what unidentified "news" the "market absorbed."  To the extent Paragraph 140 purports to allege that Twitter's stock declined as a result of any allegations in the Complaint, Defendants deny those allegations, and refer to public market sources for a record of the trading volume and price of Twitter's stock on relevant days.

141.    Defendants deny all allegations in Paragraph 141.

142.    Defendants lack knowledge or information sufficient to form a belief as to any "economic losses" suffered by Plaintiff or any putative class member.  Defendant deny all allegations in Paragraph 142.

143.    Paragraph 143 asserts legal conclusions regarding the "presumption of reliance pursuant to *Basic Inc. v. Levinson*, 485 U.S. 224 (1988)" and regarding what information "would induce a reasonable investor," as to which no response is required.  To the extent a response is required, Defendants deny those allegations.  Defendants further lack knowledge or information sufficient to form a belief as to whether, when, and to what extent Plaintiff or any unidentified putative class member purchased Twitter stock during the alleged class period, and what, if anything, Plaintiff or any unidentified putative class member relied upon when purchasing Twitter stock during the alleged class period.  Defendants deny all other allegations in Paragraph 143.

144.    Paragraph 144 asserts legal conclusions regarding the alleged efficiency of the New York Stock Exchange, as to which no response is required.  To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to that allegation. Defendants deny all other allegations in Paragraph 144, except admit that (a) Twitter's stock was listed on the New York Stock Exchange during the alleged class period; (b) Twitter periodically filed public reports with the SEC during the alleged class period; and (c) Twitter communicated with investors during the alleged class period, including through press releases and on earnings calls, and refer to Twitter's public filings with the SEC, and to transcripts of Twitter's class period earnings calls for the contents thereof.

145.    Paragraph 145 asserts legal conclusions regarding the putative class's alleged entitlement to a "presumption of reliance under *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972)" as to which no response is required.  To the extent a response is required, Defendants deny all allegations in Paragraph 145.

146.    Paragraph 146 asserts legal conclusions as to which no response is required.  To the extent a response is required, Defendants deny all allegations in Paragraph 146.

147.    Paragraph 147 asserts legal conclusions as to which no response is required.  To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 147.

148.    Paragraph 148 asserts legal conclusions as to which no response is required.  To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 148.

149.    Paragraph 149 asserts legal conclusions as to which no response is required.  To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 149.

150.    Paragraph 150 asserts legal conclusions as to which no response is required.  To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to whether any statement identified in Paragraph 150 is a "statement[] of current or

historical fact" for purposes of the federal statutory Safe Harbor provision.  Defendants deny all other allegations in Paragraph 150.

151.    Paragraph 151 asserts legal conclusions as to which no response is required.  To the extent a response is required, Defendants deny the allegations in Paragraph 151, except lack knowledge or information sufficient to form a belief as to what unidentified cautionary language is or is not "meaningful" for purposes of the federal statutory Safe Harbor provision.

152.    Paragraph 152 asserts legal conclusions as to which no response is required.  To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to what in the abstract constitutes "meaningful risk disclosures" for purposes of the federal statutory Safe Harbor provision.  Defendants deny all other allegations in Paragraph 152.

153.    Paragraph 153 asserts legal conclusions as to which no response is required.  To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 153.

154.    Paragraph 154 asserts legal conclusions as to which no response is required.  To the extent a response is required, Defendants deny all allegations in Paragraph 154.

155.    Paragraph 155 asserts legal conclusions as to which no response is required.  To the extent a response is required, Defendants deny all allegations in Paragraph 155.

156.    Paragraph 156 asserts legal conclusions as to which no response is required.  To the extent a response is required, Defendants deny all allegations in Paragraph 156, except admit that (a) Defendant Costolo was Twitter's CEO during the alleged class period until July 1, 2015; (b) Defendant Noto was Twitter's CFO throughout the alleged class period; (c) Twitter was a publicly held company registered with the SEC during the alleged class period; and (d) Twitter stock was traded on the New York Stock Exchange during the alleged class period.

157.    Defendants deny all allegations in Paragraph 157.

158.    Paragraph 158 asserts legal conclusions as to which no response is required.  To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 158, and refer to the Complaint, which speaks for itself.

159.    Paragraph 159 asserts legal conclusions as to which no response is required.  To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 159, except admit that Twitter's stock is traded on the New York Stock Exchange.

160.    Paragraph 160 asserts legal conclusions as to which no response is required.  To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 160, except deny that (a) Defendants violated the federal securities laws; (b) Defendants "omitted and/or misrepresented material facts"; (c) Defendants "knew or recklessly disregarded that their statements were false"; (d) Defendants' "statements and/or omissions artificially inflated the price of Twitter common stock"; and (e) any putative class member was allegedly harmed by any allegations pleaded in the Complaint.

161.    Paragraph 161 asserts legal conclusions as to which no response is required.  To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to whether Plaintiff's claims are typical of those of any unidentified putative class member.  Defendants deny all other allegations in Paragraph 161.

162.    Paragraph 162 asserts legal conclusions as to which no response is required.  To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 162.

163.    Paragraph 163 asserts legal conclusions as to which no response is required.  To the extent a response is required, Defendants deny all allegations in Paragraph 163, except lack knowledge or information sufficient to form a belief as to whether any putative class members suffered any losses and the size of their alleged losses.

164.    Defendants herein incorporate by reference their answers to Paragraph 1-163.

165.    Defendants deny all allegations in Paragraph 165.

166.    (a)    Defendants deny all allegations in Paragraph 166(a).

(b)    Defendants deny all allegations in Paragraph 166(b).

(c)    Defendants deny all allegations in Paragraph 166(c).

167.    Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 167, except deny that Defendants made any misleading statements or that any such statements artificially and falsely inflated Twitter's stock price.

168.    Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 168, except deny that Defendants committed any "wrongful conduct."

169.    Defendants incorporate by reference their answers to Paragraph 1-168.

170.    Paragraph 170 asserts legal conclusions as to which no response is required.  To the extent a response is required, Defendants deny all allegations in Paragraph 170.

The Complaint's Prayer for Relief asserts legal conclusions as to which no response is required.  To the extent a response is required, Defendants deny that Plaintiff or any member of the putative class is entitled to any form of recovery from Defendants for the allegations set forth in the Complaint.

Defendants admit that Plaintiff purports to demand a jury trial.

## DEFENSES

Without assuming any burden of proof, persuasion, or production not otherwise legally assigned to Defendants as to any element of Plaintiff's claims, brought individually and on behalf of the putative class, Defendants assert the following defenses:

### FIRST DEFENSE

Defendants bespoke caution about the risks of investing in Twitter during earnings calls and in Twitter's public filings with the SEC, including in extensive risk disclosures describing in detail the risks associated with Twitter's business and the social media industry generally.

### SECOND DEFENSE

Defendants are not liable to Plaintiff or members of the putative class to the extent that certain alleged misstatements were forward-looking statements, were identified as such, and were accompanied by meaningful cautionary language identifying important factors that could cause actual results to differ materially from those in the forward-looking statements, and are accordingly rendered non-actionable under the safe harbor provisions of the Private Securities Litigation Reform Act.  For example, in its 2014 Form 10-K and first quarter 2015 Form 10-Q, Twitter disclosed on

Page 3 of both forms that certain statements therein were "forward-looking statements" about, *inter alia*, Twitter's "ability to attract and retain users and increase the level of engagement of our users"; "ability to develop or acquire new products and services, improve [its] existing products and services and increase the value of our products and services"; "business strategies, including [its] plans for growth"; "ability to attract advertisers to [its] platform and increase the amount that advertisers spend with [Twitter]"; "expectations regarding [its] growth rate and the continued usage of [its] mobile applications"; "ability to increase [its] revenue and [its] revenue growth rate"; and "ability to improve user monetization, including of [its] logged out and syndicated audiences," among other things, and further cautioned investors that (i) "the foregoing list may not contain all of the forward-looking statements made"; (ii) they "should not rely upon forward-looking statements as predictions of future events"; (iii) Twitter had "based the forward-looking statements . . . primarily on [its] current expectations and projections about future events and trends that [it] believe[s] may affect [its] business, financial condition, operating results, cash flows or prospects"; (iv) the "outcome of the events described in these forward-looking statements is subject to risks, uncertainties and other factors described in the section titled "Risk Factors" and elsewhere . . ."; (v) "it is not possible to predict for [Twitter] to predict all risks and uncertainties that could have an impact on the forward-looking statements contained" therein; and (vi) Twitter "cannot assure you that the results, events and circumstances reflected in the forward-looking statements will be achieved or occur, and actual results, events or circumstances could differ materially from those described in the forward-looking statements."  Defendants made similar cautionary statements at the outset of Twitter's fourth quarter 2014 and first quarter 2015 earnings calls and in connection with their Analyst Day presentations. Defendants further told investors that they "undert[ook] no obligation to update any forward-looking statements made . . . to reflect events or circumstances after the date" on which any forward-looking statements were made "or to reflect new information or the occurrence of unanticipated events, except as required by law," and cautioned investors that they "should not place undue reliance on [Twitter's] forward-looking statements."

**THIRD DEFENSE**

The claims of Plaintiff and members of the putative class are barred, in whole or in part, because information that Defendants allegedly concealed was in fact already disclosed and/or was in the public domain at the time any challenged statements were made and, as such, was at all times reflected in the price of Twitter's stock.  In other words, the truth was on the market.  For example, certain information that Plaintiff alleges was omitted concerns "robot" accounts, "spam" users and "organic" growth.  That information, however, was fully disclosed by Defendants and others and was thus publicly available.  Thus, on information and belief, the market was fully aware of and had incorporated this information in Twitter's stock price.

**FOURTH DEFENSE**

Defendants are entitled to recover contribution and/or indemnity from others for any liability they incur as a result of any of the alleged misrepresentations, omissions, and conduct alleged in the Complaint.

**FIFTH DEFENSE**

Plaintiff and members of the putative class are not entitled to any recovery from Defendants to the extent that Plaintiff or members of the putative class (i) purchased Twitter stock with actual or constructive knowledge of the facts that they now allege were misrepresented or omitted, and thus waived any claim related thereto, or, alternatively, (ii) would have purchased Twitter stock even with full knowledge of the facts that they now allege were misrepresented or omitted.  For example, certain information Plaintiff alleges was omitted concerns "robot" accounts, "spam" users and "organic" growth that Defendants fully disclosed and, on information and belief, was or should have been known to investors prior to their purchases of Twitter stock.

Dated:  December 8, 2017

SIMPSON THACHER & BARTLETT LLP

__/s/ James G. Kreissman_____
James G. Kreissman (Bar No. 206740)

*Attorneys for Defendants*
*Twitter, Inc., Richard Costolo and Anthony Noto*