# EXHIBIT 3

                                                                   Pages 1 - 12

              UNITED STATES DISTRICT COURT

           NORTHERN DISTRICT OF CALIFORNIA

      BEFORE THE HONORABLE JON S. TIGAR, JUDGE

DORIS SHENWICK, et al.,          )
                                     )
        Plaintiffs,          )
                                     )
  VS.                                 ) NO. C C 16-5314 JST
                                   )
TWITTER, INC., et al.,            )
                                   )  San Francisco, California
        Defendants.          )
                                   )
_____)

                                Thursday, December 22, 2016

                TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For KBC Asset Management:
                BLEICHMAR FONTI & AULD LLP
                1901 Harrison Street
                Suite 1100
                Oakland, California  94612
         BY:   LESLEY E. WEAVER, ESQ.
                and
                BLEICHMAR FONTI & AULD LLP
                Times Square Tower
                7 Times Square
                27th Floor
                New York City, New York  10036
         BY:   JOSEPH A. FONTI, ESQ.
                and
                MOTLEY RICE LLC
                28 Bridgeside Boulevard
                Mt. Pleasant, South Carolina  29464
         BY:   GREGG S. LEVIN, ESQ.

Reported By:  BELLE BALL, CSR 8785, CRR, RDR
             Official Reporter, U.S. District Court

(Appearances continued, next page)

**APPEARANCES, CONTINUED:**

For National Elevator Industry Pension Fund:
              ROBBINS, GELLER, RUDMAN & DOWD LLP
              655 West Broadway
              Suite 1900
              San Diego, California 92101
     BY: DANIELLE S. MYERS, ESQ.

For Twitter Defendants:
              SIMPSON, THACHER & BARTLETT
              2550 Hanover Street
              Palo Alto, California 94304
     BY: SIMONA G. STRAUSS, ESQ.

<u>**Thursday - December 22, 2016**</u>                              <u>**2:03 p.m.**</u>

<u>**P R O C E E D I N G S**</u>

**THE CLERK:** Calling Civil Case 16-5314, Doris Shenwick, et al. versus Twitter Incorporated, et al.

Counsel, will you please step forward and make your appearances.

**MS. WEAVER:** Good morning, Your Honor. My name is Lesley Weaver. I'm with Bleichmar, Fonti & Auld, out of Oakland California. I am local counsel for KBC Asset Management. And with me --

**MR. LEVIN:** Hi, I'm Gregg Levin, Your Honor, with the law firm of Motley Rice in Charleston, South Carolina, here for KBC Asset Management, one of the lead Plaintiff moveants.

**MR. FONTI:** Good morning, Your Honor. I'm Ms. Weaver's partner, Joseph Fonti, from the Bleichmar, Fonti, et al. firm.

**MS. MYERS:** Good afternoon, Your Honor. Danielle Myers from Robbins Geller on behalf of moveant, National Elevator Industry Pension Fund.

**MS. STRAUSS:** Good afternoon, Your Honor. Simona Strauss from Simpson Thatcher here for the Twitter Defendants.

**THE COURT:** You are outnumbered.

**MS. STRAUSS:** Indeed I am.

**THE COURT:** Yeah. Well, it's my belief that I could have taken this off calendar and just granted the motions to consolidate, and appointed KBC Asset Management as lead

```
 1   plaintiff.  But I like to leave these things on calendar to see
 2   if someone comes wandering in the door to tell me not to do
 3   that.  It doesn't look like that's going to happen.
 4        That's what I'm going to do when I get off the bench, unless
 5   someone wants to tell me otherwise.
 6        (No response)
 7        THE COURT:  Okay.  So, your case has gotten some press.  I
 8   have no idea yet how big it is.  Do you have an ICMC date on
 9   calendar?  Am I going to see you again some time soon?
10        MS. WEAVER:  No, Your Honor, I don't believe we do.  That
11   would be helpful, I think.
12        THE COURT:  Okay.
13        MS. STRAUSS:  Your Honor, there were two securities actions
14   that were filed.  In one we had a stipulation to continue the
15   CMC, and Your Honor signed that stipulation.  In the other
16   action, there is a CMC that's currently scheduled for February.
17        So my suggestion would be to wait until maybe 30 days after
18   a decision on the anticipated motion to dismiss to have a CMC in
19   the consolidated action.
20        THE COURT:  Yeah.  Is there currently a deadline for the
21   filing of a motion to dismiss?
22        MR. LEVIN:  No, Your Honor.  We actually talked about a
23   schedule, but I didn't want to be presumptuous until my client
24   was actually appointed.  We did have a brief discussion about a
25   schedule.
```

1     I would like, on behalf of my client, 60 days to prepare a
2 consolidated amended complaint.  And if Your Honor would indulge
3 me I would like that 60 days to begin to run on January 2nd so I
4 don't have to bring somebody in during the Christmas week, if I
5 can avoid that.
6     I would, if Your Honor would like me to, but I was hoping
7 that we would file our complaint, our consolidated amended
8 complaint on March 2nd.  And then we were going to work out a
9 briefing schedule on what we would anticipate would be a motion
10 to dismiss from -- using March 2nd.  March 2nd is the first
11 Thursday in March.
12     **THE COURT:**  How much of that have you heard before?
13     **MS. STRAUSS:**  I heard this just before the case was called,
14 Your Honor.  What I would like to do, I think that counsel can
15 negotiate and come up with a schedule and propose it to
16 Your Honor within a couple weeks, for Your Honor's signature.
17     **THE COURT:**  Yeah.  I don't -- my standard operating
18 procedure is unless I think the case is moving significantly
19 more slowly than it ought to -- and that's not a securities
20 case, that's any case -- I would rather have experienced lawyers
21 who know what's happening in their cases set the deadlines in
22 the case.  Particularly for larger cases.  So that seems to make
23 sense to me.
24     Why don't I let the two of you negotiate.  I will expect you
25 to file either a stipulated schedule or compose -- or competing

1  proposed schedules by -- Mr. Noble, what is the second Friday in
2  January?
3      **THE CLERK:** Your Honor, that would be Friday the 13th.
4      **THE COURT:** Our lucky day. By January 13th, 2017. Or, of
5  course, you are welcome to file it before that.
6      Let me just say a couple things about how I decide cases,
7  since it's possible that we will be spending a lot of time
8  together, and these remarks will help you get closer to victory,
9  simultaneously.
10     One is I'm a baseball arbitration person. And I mean that
11 in this way. Not that I'm so much of a sports fan, but just as
12 a mode of deciding things, I have been told that baseball
13 arbitration works in the following way.
14     If the player and the owner get into a dispute -- I'm sorry,
15 I have a cold. I hope you can hear me. The player and the
16 owner get into a dispute over the player's salary. It goes to
17 arbitration, and the arbitrators are required to take one of the
18 positions of the parties and adopt it.
19     So by way of example, if -- if someone knowledgeable about
20 the market would conclude that the player should be paid
21 $3 million a year, and the owner says it should be one, and the
22 player says it should be four, the arbitrators will choose four.
23 Not because they don't know that they're overpaying the player
24 by a million; they do know that; they're experienced. But their
25 hands are tied and they think that would be better than

1  underpaying the player by two million.
2      It's not always possible, but whenever I can I'll choose one
3  of the positions given to me by the parties as a way of
4  educating you about not negotiating with the Court.  I'm going
5  to assume if you take a position, it's really your best
6  position.  And after we go through a few iterations of this, if
7  that doesn't make sense, then it probably will down the road.
8      I'm not a big setter, necessarily, of as many
9  case-management conferences as some other people.  But I like to
10 be involved in my cases.  So if you jointly send me an email --
11 if you can't even get to the point of sending a joint email, you
12 are going to have to file a motion.  There's nothing I can do
13 about that.  But if you jointly send me an email and say:  We
14 would really like ten minutes of the Court's time, I can
15 probably make myself available to you.  At least a couple days a
16 week I'm in here at 7:15 or 7:30 in the morning, so I can get to
17 you before the Court day starts, even if I'm in trial.
18     Seems like enough for now.  I don't even have an operative
19 complaint.  I will later.
20     **MR. LEVIN:**  I do have a little housekeeping matter I just
21 wanted to raise with the Court.
22     In the context of people filing referrals, and calling me
23 and telling me I'm filing referrals with my motion, one
24 particular firm came to me and said:  Gregg, we've done a lot of
25 investigations -- the Robbins Geller firm -- we've done a lot of

```
1    investigation here.  Obviously we are not going to be lead, but
2    we would like to see if there is some role that we could play.
3         THE COURT:  Could I stop you?
4         MR. LEVIN:  I'm sorry?
5         THE COURT:  May I stop you?
6         MR. LEVIN:  Sure.
7         THE COURT:  Is someone from the Robbins Geller firm here?
8         MR. LEVIN:  Yes.
9         MS. MYERS:  Yes.
10        THE COURT:  Oh, okay.  Go ahead.
11        MR. LEVIN:  I wouldn't bring this up if they weren't here.
12   What I didn't want to do is get in a position four or five
13   years down the road -- and again, not to get ahead of myself --
14   where Your Honor is scrutinizing time records, and sees an entry
15   for a Robbins Geller lawyer or a Robbins Geller II lawyer in
16   connection with preparation of the complaint, and say:  That
17   never came up; that arrangement never came up.
18        So in the interest of full disclosure, I wanted to just
19   ascertain whether the Court had any problem if I associated them
20   as -- on an as-appropriate basis, understanding that it's
21   ultimately my responsibility, once I'm appointed, to ensure
22   there's no duplication, and it doesn't go overboard, and so on,
23   and so forth.
24        THE COURT:  Let's put that in a case management statement
25   and talk about it at a case management conference.  I do much
```

|    |                                                                          |
|----|--------------------------------------------------------------------------|
| 1  | better on take-home exams than pop quizzes.                              |
| 2  | **MR. LEVIN:**  Okay.  Thank you, Your Honor.  I appreciate              |
| 3  | that.                                                                    |
| 4  | **THE COURT:**  Let me say one other thing, which you've                 |
| 5  | probably inferred from the question that I just asked you and            |
| 6  | the question that I asked Ms. Strauss a second ago.                      |
| 7  | If anybody asks me to do something or wants to talk about                |
| 8  | something, I'll assume that they already raised with it their            |
| 9  | opponents before they came in here.  Because when I was a                |
| 10 | lawyer, I hated it so much if my opponent made a request to the          |
| 11 | Court, and they hadn't run it by me beforehand, because now I            |
| 12 | think:  Maybe the judge thinks I'm unreasonable if I don't go            |
| 13 | along with it.  But it wasn't fair to me, because I never had            |
| 14 | chance to think about it or argue with them.                             |
| 15 | So I'll ask that question often.  I'm not impugning you by               |
| 16 | asking the question.  I always ask the question.  If I forget to         |
| 17 | ask the question, and you were injured by my not asking the              |
| 18 | question because the other side is making requests of the Court          |
| 19 | that you didn't know about, you can say:  Your Honor, that was           |
| 20 | never raised with the Court before I got here.  And then we will         |
| 21 | just stop.  So, that's another rule of the road.                         |
| 22 | I would think that it might be beneficial to set an initial              |
| 23 | case-management conference before we hear the motions to                 |
| 24 | dismiss, because you don't know what you don't know.  You just           |
| 25 | raised something, for example, that I might want to talk about           |

|    |                                                                                |
|----|--------------------------------------------------------------------------------|
| 1  | right away.  And so I like the lawyers that just talk to each                  |
| 2  | other, and figure out a Wednesday afternoon when I'm going to be               |
| 3  | here.  Mr. Noble knows when I'm going to be here.  And let's                   |
| 4  | just chat.                                                                     |
| 5  |     If it only takes ten minutes, that's fine.  You don't have |
| 6  | to come to court from South Carolina or wherever you all are                   |
| 7  | from.  You can appear by telephone if you like.  If you want to                |
| 8  | come, that's fine, too.                                                        |
| 9  |     When I was in practice, my clients usually were willing to |
| 10 | pay for me to be there in front of the judge, and I like to be                 |
| 11 | in front of the judge.  So either way is fine with me.  I really               |
| 12 | don't care.                                                                    |
| 13 |     And you can put that proposed date in the schedule that    |
| 14 | you're going to file on the 11th or before the -- excuse me --                 |
| 15 | by the 11th of January.                                                        |
| 16 | **MR. LEVIN:**  Was it the 11th or 13th?                                       |
| 17 | **THE COURT:**  No, 13th.  That was probably Freudian.                         |
| 18 | **MR. LEVIN:**  Understood.                                                    |
| 19 | **THE COURT:**  Anything else?                                                 |
| 20 | **MR. LEVIN:**  No, Your Honor.  Thank you for your time.                      |
| 21 | **THE COURT:**  Ms. Strauss?                                                   |
| 22 | **MS. STRAUSS:**  Yes, two points of clarification.                            |
| 23 |     One, when you said you wanted a CMC, was that after the    |
| 24 | complaint was filed?  Or after the motion to dismiss was fully                 |
| 25 | briefed but before the hearing date on the motion to dismiss?                  |

1    **THE COURT:** It's Mr. Levin, is it not?

2    **MR. LEVIN:** Yes, it is.

3    **THE COURT:** Why don't you and Mr. Levin talk about that.

4    **MS. STRAUSS:** Okay.

5    **THE COURT:** Part of the benefit of a case management

6 settlement conference is it forces the lawyers to talk to each

7 other before they see the judge. And that produces a different

8 kind of conversation than if you don't have that set of

9 circumstances.

10    So, you can put that on the table. I'm agnostic about that.

11    **MS. STRAUSS:** And Your Honor, one other point. And I don't

12 know if this is the appropriate time to raise it, but I will.

13    There are three actions that have been related to this

14 action. There are three derivative actions. And there are two

15 different case management conferences for those three different

16 cases.

17    **THE COURT:** Uh-huh.

18    **MS. STRAUSS:** And there is a pending motion for

19 consolidation.

20    **THE COURT:** Well, all the lawyers in all those cases are not

21 here, probably.

22    **MS. STRAUSS:** They're not. It's actually the Plaintiffs who

23 filed the motion for consolidation. Your Honor had said that

24 you could not sign that motion until after they are related.

25 They have since been related, and so I just wanted to point that

```
 1  out.  But we can do something with that.
 2      THE COURT:  Well, a lawyer in your shoes would probably make
 3  a motion to get all those cases on one date.
 4      MS. STRAUSS:  Will do, Your Honor.  Thank you.
 5      THE COURT:  Yeah.  Anything else?
 6      Thank you.  Have a good holiday. I'll see you all in the new
 7  year.
 8      MR. LEVIN:  Thank you.
 9      MS. STRAUSS:  You as well.
10      (Proceedings concluded)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**CERTIFICATE OF REPORTER**

I, BELLE BALL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/ Belle Ball*

Wednesday, December 28, 2016

Belle Ball, CSR 8785, CRR, RDR