| ROBBINS GELLER RUDMAN<br>& DOWD LLP<br>655 West Broadway, Suite 1900<br>San Diego, CA 92101-8498<br>Telephone: 619/231-1058 | COOLEY LLP<br>101 California Street, 5th Floor<br>San Francisco, CA 94111-5800<br>Telephone: 415/693-2000 |
|---|---|

March 5, 2019

VIA ECF

The Honorable Sallie Kim
U.S.D.C., Northern District of California
San Francisco Courthouse, Courtroom A – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re: *In re Twitter Inc. Sec. Litig.*, Case No. 3:16-cv-05314-JST (SK)

Dear Judge Kim:

Pursuant to the Court's Standing Order and December 6, 2018 Administrative Order, the following is a cover page and joint letter concerning a discovery dispute in the matter captioned below.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| In re TWITTER INC. SECURITIES LITIGATION | Case No. 3:16-cv-05314-JST (SK) |
| This Document Relates To:<br><br>ALL ACTIONS. | CLASS ACTION |

Counsel for the parties hereby attest that:

1. We have met and conferred about this dispute and have been unable to reach agreement; and

2. We have complied with §9 of the Northern District of California, Guidelines for Professional Conduct ("N.D. Guidelines").

Plaintiffs' Position. Plaintiffs respectfully request leave to depose defendant Anthony Noto for up to 14 hours, and an order denying defendants' request to limit Jack Dorsey's deposition to three hours. On February 8, 2019, plaintiffs advised defendants that they intended to depose Noto and Dorsey and asked for dates on which each of those witnesses was available. Flouting the Court's Standing Order, defendants still have not provided plaintiffs with available deposition dates for defendant Noto. Plaintiffs also advised defendants that they would require two seven-hour days to complete Noto's deposition. On February 12, 2019, defendants refused to agree to a two-day deposition for Noto and further demanded that Dorsey's deposition be limited to three hours.[1]

1. Plaintiffs Require Up to 14 Hours to Depose Defendant Noto. Simply put, Noto is the most important witness in this action and, given the volume of critical documents that he authored, plaintiffs cannot fairly examine him in seven hours. Rule 30(d)(1) sets a presumptive seven-hour limit on depositions, but it mandates that a court "***must allow additional time*** consistent with Rule 26(b)(1)" "if needed to fairly examine the deponent."[2] Indeed, in complex securities cases such as this, it is common practice for defendants to sit for more than the minimum seven hours.[3] The Court may consider a variety of factors in determining whether to extend a deposition, including the importance of the witness to the case and whether the witness will be questioned about numerous or lengthy documents.[4] As shown below, Noto satisfies these factors,[5] and plaintiffs need up to 14

---

[1] During a meet and confer and to avoid burdening the Court with unnecessary motion practice, plaintiffs offered a compromise proposal, proposing to limit Dorsey's deposition to three hours in exchange for up to 14 hours with Noto. Defendants flatly rejected plaintiffs' proposed compromise and offered no proposal of their own.
[2] Fed. R. Civ. P. 30(d)(1). Emphasis added here and throughout, unless otherwise indicated.
[3] *See* Order, *In re Northpoint Commc'ns Grp. Inc. Sec. Litig.*, No. C-01-1473-WHA, (N.D. Cal. Feb. 21, 2003) (two days); Order at 1, *Hsu v. Puma Biotechnology, Inc.*, No. 8:15-cv-00865-AG-JCG (C.D. Cal. Sept. 17, 2017) (14 hours for defendant CEO); Order, *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288 (DLC), (S.D.N.Y. Jan. 30, 2004) (21 hours); Order, *New England Health Care Emps Pension Fund v. Fruit of the Loom*, No. 1:98CV99-M, (W.D. Ky. Nov. 24, 2003) (21 hours).
[4] *See Rutherford v. Palo Verde Health Care Dist.*, 2014 WL 12631849, at *2 (C.D. Cal. 2014) (granting a two-day deposition based in part on the "voluminous" production of documents); *Fleming v. Coverstone*, 2009 WL 4040066, at *1 (S.D. Cal. 2009); *Greater New York Taxi Ass'n v. City of New York*, 2017 WL 4012051, at *8 (S.D.N.Y. 2017); *City of Raton v. Ark. River Power*

hours to fairly examine him.[6]

As the principal individual involved in the alleged conduct underlying plaintiffs' securities claims, "the significance of [Noto's] testimony . . . can hardly be overstated."[7] As Twitter's CFO for the entirety of the Class Period and one of the two Individual Defendants in the case, Noto spoke during each of the investor calls referenced in the Complaint and signed each of Twitter's Class-Period SEC filings. A hands-on manager, Noto met at least weekly with his direct reports to discuss Twitter's user metrics and was directly involved in decisions about whether, when and how Twitter should publicly disclose its user metrics. Indeed, defendants concede that he is central to the case. Noto is one of only six people identified in defendants' Rule 26(a)(1) disclosures who is "likely to have discoverable information that defendants may use to support their claims or defenses." Significantly, Noto is the ***only*** person listed in defendants' Rule 26(a)(1) disclosures who defendants say has information about more than one relevant subject; defendants list three subjects – two relating to defendants' ad engagement defense on which defendant Noto, ***alone***, has relevant information. This is not surprising given that Noto made, reviewed, or approved ***every*** one of the numerous false or misleading statements at issue in the case.[8] To fairly examine Noto on ***each*** of

---

*Auth.*, 2009 U.S. Dist. LEXIS 43711, at *21 (D.N.M. 2009).

[5] Defendants incorrectly suggest that the factors in the advisory committee note to Rule 30 are exclusive. *See Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 2015 WL 4458903, at *3 (S.D. Ind. 2015): "***[T]he Magistrate Judge treated the considerations in the advisory committee notes as the exclusive factors in the analysis. This was improper***."); *Blackmon v. Bd. of Cty. Comm'rs of Sedgwick Cty.*, 2011 WL 663195, at *2 (D. Kan. 2011) (same).

[6] Defendants assert that this motion is "premature" and should be stayed until after Noto's deposition begins. Courts, however, recognize that the more efficient approach is to address the matter beforehand. *See, e.g.*, *Valley Forge Ins. Co. v. Hartford Iron & Metal, Inc.*, 2016 WL 11033846, at *3 (N.D. Ind. 2016) (finding it "most prudent to approve the extended deposition in advance of conducting the deposition"); *Black v. Owen*, 2014 WL 12812162, at *4 (D. Conn. 2014) (finding that prospectively allowing 14 hours for deposition "will be more efficient both in cost and time than continued motion practice by counsel"); *Schmidt v. Levi Strauss & Co.*, 2006 WL 2192054, at *2 (N.D. Cal. 2006) ("***Fed. R. Civ .P. 30 does not require that available time limits be exhausted before a party may move for relief***.").

[7] *See California Earthquake Auth. v. Metro. W. Sec., LLC*, 2012 WL 5880342, at *4 (E.D. Cal. 2012) (good cause to extend the non-defendant CIO's deposition to an "additional full day" where he was a central witness in the case).

[8] Defendants claim plaintiffs' "entire case" involves just "two investor calls and two SEC filings."

these statements ***and*** the three expansive subjects listed in defendants' Rule 26(a)(1) disclosures, plaintiffs require up to 14 hours. "[T]he magnitude of the factual issues" in which Noto was involved weigh in favor of allowing additional time.[9]

To date, defendants have produced over ***20,000*** relevant documents for which Noto is the custodian, author, sender, or recipient – almost 15% of defendants' entire production and ***nearly twice*** as many documents as any other witness plaintiffs have deposed to date in this case.[10] The volume of Noto's documents is consistent with his expansive role as the CFO of Twitter during the Class Period. Noto was responsible for Twitter's finances, revenues, user growth, marketing and investor relations. Noto's documents are not just voluminous, but some of the most critical documents in the case. Indeed, Noto actually chose the user metrics Twitter tracked internally and presented to investors.[11]

The factors set forth in Rule 26(b)(2)(C) (iii) weigh in favor of additional time: this is a case in which the stakes are high, both sides have significant resources and Noto is the central figure in the case. "Should the case go to trial, it is reasonable to predict that he could testify for more than a day. ***The presumptive length of depositions provided in Rule 30, which are more than adequate for the general run of simpler litigation, was not designed for a witness of this significance in a***

---

But Noto actually spoke on 13 investor calls and signed or approved six SEC filings during the relevant period. *See, e.g.*, ECF No. 81, ¶¶26-28, 29-38, n.10, 42, 44-45, 52-53, 60-62, 79, 84, 85(b), 85(c), 85(d), 90-91, 98, 102-103, n.43, 103(k), 109, 113-117, 138; *Northpoint*, *infra.* (Alsup, J.) (allowing two 14-hour depositions in securities case with four-month class period).

[9] *See California Earthquake Auth.*, 2012 WL 5880342, at *4; *see also Valley Forge*, 2016 WL 11033846, at *3 (allowing two-day deposition for non-defendant witness included on a "plethora" of documents and communications).

[10] Of those, Noto authored almost 6,000 documents, more than twice as many as any of the 11 people deposed to date. It is important to note that "***the volume of material gives a rough measure of [the witness's] importance to the case***." *Arista Records LLC v. Lime Grp. LLC*, 2008 WL 1752254, at *2 (S.D.N.Y. 2008) (allowing 17 hours to depose witness).

[11] *See, e.g.*, Ex. 1 at 261:5-262:14 ("Q. Okay. Who chose the major growth drivers to present on this slide [shown to the public]? [Objection omitted] THE WITNESS: Anthony Noto."); TWTR_SHEN_00152413 (email from Noto explaining he set up a team to "evaluate all of [Twitter's] metrics and to decide what metrics we want to use internally and externally").

***case of this magnitude***." *Arista Records LLC*, 2008 WL 1752254, at *2.[12]

2. Dorsey's Deposition Should Be Seven Hours. Defendants do not even come close to meeting their burden of showing good cause for limiting Dorsey's deposition.[13] Dorsey founded Twitter, was a member of Twitter's Board of Directors throughout the Class Period, became its CEO when defendant Costolo left the Company during the Class Period and was involved in the decision to "come clean" at the end of the Class Period. *See* ECF No. 81, ¶¶60-62, 132. Dorsey sent, received, authored or is the custodian for almost 5,000 documents. This Court has already rejected defendants' previous claim that Dorsey had only limited involvement and was an "'apex' custodian," holding: "The Court does not agree that Dorsey's involvement is limited. . . . Dorsey is also the person who notified the public of the true state of affairs of Twitter's metrics." ECF No. 139 at 2. Plaintiffs need seven hours to fairly examine Dorsey and defendants cannot show good cause why his deposition should be limited to fewer than seven hours.[14]

---

[12] Sadly, defendants ***again*** attempt to distract the Court by reflexively blaming plaintiffs, claiming that plaintiffs' counsel "wasted time" at depositions. Defendants' only "evidence" of this is their counsel's own lengthy self-serving speeches. *See, e.g.*, Ex. 2 at 238:21-242:9. ***Remarkably***, it was often the deponent himself who sought to waste time. *See, e.g.*, Ex. 2 at 245:6-12 ("A. Does the time I spend reading [this document] count against your time? Q. It does. A. Great. I'll read this."). Nor are defendants correct that it is improper to read a sentence of a document to a deponent. *See, e.g.*, *Eivaz v. Edwards*, 2014 WL 4698652, at *15-*16 (E.D. Wis. 2014), *on reconsideration*, 2015 WL 59347 (E.D. Wis. 2015) (rejecting the identical "document-reading" argument defendants make here: "***Many of the documents were read as foundation for additional questions***. . . . [I]f anyone was wasting time, it was Eivaz with his evasive, argumentative and non-responsive answers to many of the questions posed to him."); *In re A.H. Robins Co., Inc.*, 575 F. Supp. 718, 725 (D. Kan. 1983) ("Robins' objection to document reference and reading is primarily an objection to the authentication of the various exhibits used to examine the deponents. . . . In most instances the information from the documents provided the subject matter for further interrogation of the deponents or direct impeachment material, but in some cases the information was provided as unqualified substantive evidence. The Court sees no problem with these procedures.").

[13] *See, e.g.*, *In re Transpacific Passenger Air Transp. Antitrust Litig.*, 2014 WL 939287, at *2 (N.D. Cal. 2014) (party resisting deposition has burden to show good cause).

[14] Defendants' apex-witness argument is especially unavailing here, where Judge Tigar held: "[W]hen an apex witness has personal knowledge of facts relevant to the lawsuit – even if that witness is a corporate president or CEO – [he] is subject to deposition." *Opperman v. Path, Inc.*, 2015 WL 5852962, at *1 (N.D. Cal. 2015) ("'The Court does not doubt that [the CEO] is a busy person with substantial responsibilities. But that fact does not control where, as here, there is a substantial basis to believe that he may have relevant information to which Plaintiff is entitled under the Federal Rules.'").

Defendants' Position. In addition to the seventeen depositions Plaintiffs have already noticed, Plaintiffs now seek leave to depose Anthony Noto, former CFO of Twitter and current CEO of SoFi, for a full ***fourteen*** hours—double the amount of time permitted by the Federal Rules. Moreover, though Plaintiffs concede that they need only three hours to depose Jack Dorsey, current CEO of both Twitter and Square, they nonetheless demand seven hours of his time even though he became CEO ***after*** any of Defendants' alleged misstatements or omissions and 27 days before the end of the Class Period. Because Plaintiffs can neither show good cause to extend Mr. Noto's deposition[15] nor meet their burden to establish the prerequisites to depose these two apex witnesses, Defendants respectfully request that the Court (1) decline to extend Mr. Noto's deposition beyond the seven-hour limit and (2) issue a protective order limiting Mr. Dorsey's deposition to three hours.

***First***, Plaintiffs' request for extra time with Mr. Noto is premature—Plaintiffs cannot know that they need more than seven hours to conduct a fair examination without first deposing Mr. Noto for the time they are allotted.[16] Plaintiffs' own cases highlight their flawed approach.[17]

***Second***, Plaintiffs have failed to identify any specific grounds for extending Mr. Noto's deposition and therefore have not met their burden to establish good cause. Plaintiffs claim that they

[15] *See Stevens v. City of Red Bluff*, 2007 U.S. Dist. LEXIS 100970, at *3-4 (E.D. Cal. Jan. 19, 2007) ("'The party seeking a court order to extend the examination, or otherwise alter the limitations, is expected to show good cause to justify such an order.'") (quoting Fed. R. Civ. P. 30 advisory committee's note to 2000 amendment).

[16] *Somerset Studios, LLC v. Sch. Specialty, Inc.*, 2011 U.S. Dist. LEXIS 103927, at *13-14 (N.D. Cal. Sept. 11, 2011) (noting that "the better practice is for the deposition to go forward to determine how much is able to be covered in the seven hours and, then, if additional time is needed, for counsel to stipulate to extend the deposition for a specific additional time period").

[17] *See California Earthquake Auth.*, 2012 WL 5880342 at *3-4 (granting additional deposition time only after witness deposed for nearly a full day and plaintiff specifically identified the topics it was unable to cover in the first day of deposition); *Fleming*, 2009 WL 4040066 at *1 (same); *City of Raton*, 2009 U.S. Dist. LEXIS 43711, at *13-22 (same). Even Plaintiffs' cited exceptions prove the rule. *See Valley Forge*, 2016 WL 11033846 at *3 (extending deposition in advance only in the "particular instance" where the witness lived in a different state than counsel and "often travel[ed] out of the country"); *Black*, 2014 WL 12812162 at *3-4 (extending deposition in advance where the witness had been "slow" and "reluctant" to comply with the Court's prior order regarding written discovery and where the parties agreed that a deposition would be the more "productive and cost effective method of obtaining . . . information than pursuit of a contempt order.") Plaintiffs do not argue that any of the unusual circumstances justifying a preemptive deposition extension exists here.

need fourteen hours with Mr. Noto simply because he is "central" to this action. Plaintiffs' theory would render the Rule 30 limit meaningless for the parties to any case and has been flatly rejected by this Court.[18] Here, Plaintiffs' entire case involves a short five-month class period, two investor calls, and two SEC filings[19] and none of the factors that typically justify extending depositions beyond the presumptive limit.[20] Plaintiffs' cited authority only demonstrates the impropriety of their request given the comparatively simple and limited facts at issue here.[21]

---

[18] *See Somerset*, 2011 U.S. Dist. LEXIS 103927 at *13 (refusing to extend deposition despite witness's alleged "extensive knowledge" about 120 projects over a seven-year period and noting that "the same is probably true of many depositions"); *Steshenko v. McKay*, 2012 WL 13054713, at *2 (N.D. Cal. Jun. 22, 2012) (denying extension of deposition of plaintiff where "[a]side from merely speculating that more time beyond seven hours [wa]s needed . . . no specific grounds to justify a longer deposition ha[d] been provided").

[19] Plaintiffs misleadingly attempt to expand the "relevant time period" to include statements made nearly 10 months before and over 15 months after the Class Period. *See, e.g.*, ECF No. 81 ¶¶ 27, 36 n.10. However, the allegedly misleading statements on which Plaintiffs base their case occurred on Twitter's Q4 2014 and Q1 2015 earnings calls and in its 2014 10-K and Q1 2015 10-Q. *See id.* ¶¶ 79-111. Plaintiffs fail to explain why they require more than seven hours to fairly examine Mr. Noto on this limited set of events. *See Garcia v. Cty. of San Diego*, 2017 WL 3923682, at *2 (S.D. Cal. Sept. 7, 2017) (denying extension where "the events occurred over a short period of time—three months—and Plaintiffs have not explained why more than seven hours is required to cover [the witness's] recollections from that time."); *Stevens*, 2007 U.S. Dist. LEXIS 100970 at *3-4 (denying a request for an extension where "[t]here [wa]s nothing extraordinary in complexity about the complaint"); *Somerset*, 2011 U.S. Dist. LEXIS 103927 at *10, 13 (denying extension where relevant time period was seven years); *Pratt v. Archstone Willow Glen Apartments*, 2009 WL 2032469, at *1 (N.D. Cal. Jul. 10, 2009) (denying extension despite "many years of medical records" at issue).

[20] *See* Fed. R. Civ. P. 30(d) advisory committee note to 2000 amendment (listing the following factors that may be considered when ordering an extension: (1) whether the witness needs an interpreter; (2) whether the examination will cover events occurring over a long period of time; (3) whether the witness has declined to read documents sent to the witness in advance by the interrogating party, prolonging the deposition; (4) whether there is a need for multiple parties to examine the witness; (5) whether the lawyer for the witness wants to examine the witness, and (6) whether the witness is an expert); *Rutherford*, 2014 WL 12631849 at *2.

[21] *See Rutherford*, 2014 WL 12631849 at *3 (granting extension in a case involving six distinct claims and a nearly four-year time period); *California Earthquake Auth.*, 2012 WL 5880342, at *4 (granting extension where the witness's tenure with the defendant company spanned nearly fifteen years, where more than 100,000 documents had been produced since the witness's first deposition, and where the witness had "voluntarily agreed to sit for an additional few hours of testimony anyway"); *Fleming*, 2009 WL 4040066 at *1-2 (granting 2 hour and 45 minute extension where new information came to light after the witness's prior deposition and where the party seeking the extension specifically identified five categories of questions that it was unable to cover at that first deposition); *Greater New York Taxi Ass'n*, 2017 WL 4012051, at *1-2, 8 (extending deposition where the relevant time period spanned multiple years and involved claims brought by a trade association representing approximately 1,500 taxicab medallions, numerous of which were allegedly subject to retaliation by defendant); *Valley Forge*, 2016 WL 11033846 at *3 (extending deposition where the witness' role "spanned four years" in the dispute and where the case was "complex");

Plaintiffs also claim that they need extra time because Mr. Noto is "the custodian, author, sender, or recipient" of over 20,000 documents. However, the fact that Mr. Noto's name appears in a large number of documents does not establish good cause. Plaintiffs have had the vast majority of these documents for several months, which is more than "adequate time to review and prepare a sufficiently succinct deposition outline."[22] Moreover, despite Plaintiffs' misleading citation of the total number of documents involving Mr. Noto, fewer than 6,000 of these documents were authored or sent by him. Plaintiffs' reliance on documents that Mr. Noto did not author in demanding additional deposition time is telling—Plaintiffs have already wasted hours of nonparty witnesses' time reading documents into the record and seeking testimony about them from witnesses who neither authored nor recalled them.[23] They should not be permitted to continue this tactic with Mr.

---

*Hsu*, No. 8:15-cv-00865-AG-JCG (C.D. Cal. 2017) (ECF Nos. 167, 180) (extending deposition in a case involving complex subject matter and a three-year time period); *City of Raton.*, 2009 U.S. Dist. LEXIS 43722 at *20-*22 (extending deposition where witness produced thousands of pages of documents on the day of her deposition); *Arista*, 2008 WL 1752254 at *2 (extending deposition for a witness who had already been deposed where the requesting party identified the remaining topics to be addressed and where both parties agreed that the witness may have been able to testify on matters that were to be covered in the deposition of another witness who became incapacitated).

[22] *See Tatum v. Schwartz*, 2008 WL 298824, at *2 (E.D. Cal. Feb. 1, 2008).

[23] *See, e.g.*, Ex. A at 26:8-27:10; 53:3-57:20; 70:23-78:15; Ex. E at 26:1-7; 36:3-14; 57:20-25; 58:20-59:25; Ex. B at 77:10-78:1; Ex. C at 261:2-267:3. Absent any dispute about authenticity, Plaintiffs' practice of reading unfamiliar documents to witnesses and asking those witnesses to confirm counsel's reading is improper, and Plaintiffs' cited authority is not to the contrary. *See In re Folding Carton Antitrust Litig.*, 83 F.R.D. 132, 135 (ND. Ill. 1979) (deposition questions asking the witness to "read from documents and to confirm on the record that those documents said what they said" were improper); *Deep South Oil Co. v. Metro. Ins. Co.*, 25 F.R.D. 81, 82 (S.D.N.Y.) ("[T]he taking of an oral deposition pursuant to F.R.C.P. Rule 26 should not be converted in effect into an interrogatory procedure (Rule 33) or an inspection procedure (Rule 34) by the device of asking a witness a series of questions the answer to which he does not know and then directing him to prepare or formulate answers by examining books or records, which answers would then simply amount to verbalization of what the witness found in the examined books or records."). Plaintiffs' cases are not to the contrary. *Eivaz*, 2014 WL 4698652 at *14-*15 (permitting reading of documents in deposition only where the witness "denied specific recollection of many of the events he was asked about," where the documents were used to refresh the witness's recollection and "as foundation for additional questions," and where the defending attorney did not object to counsel's questioning on the grounds that counsel was abusive or wasting time); *In re A.H. Robins Co., Inc.*, 575 F. Supp. at 725 (permitting the reading of documents during a deposition only where the "departmentalized nature of the corporate defendant create[d] certain problems in the introduction of evidence produced . . . from [defendant's] corporate files" and where the documents were read for authentication). Additionally, Plaintiffs have wasted substantial portion of the depositions taken to date asking repetitive and argumentative questions designed to harass witnesses into giving the testimony Plaintiffs want rather than their best recollections. *See, e.g.*, Ex. A at 52:14-15; Ex. D at 225:9-

Noto. Finally, even if Plaintiffs plan to ask Mr. Noto about a large number of documents, the appropriate and more efficient course of action is to "send copies of the documents to the witness sufficiently in advance of the deposition so that the witness can become familiar with them."[24]

***Third***, Plaintiffs have not met their burden to show that they are entitled to take extensive depositions of Messrs. Noto and Dorsey, both of whom indisputably are high-level executives subject to protection under the apex doctrine.[25] Plaintiffs are demanding Mr. Dorsey's deposition before completing the depositions of Messrs. Noto and Costolo and Twitter's 30(b)(6) witness, all of whom are likely to give testimony obviating the need for much of Mr. Dorsey's testimony. Moreover, Plaintiffs do not even attempt to show that Mr. Dorsey possesses ***any*** relevant, unique personal knowledge that would necessitate his deposition, let alone that the unique knowledge he possesses requires more than three hours to probe.[26] Here, Plaintiffs fail to explain why Mr. Dorsey's knowledge is not duplicative of that possessed by Mr. Noto, who was CFO throughout the relevant time period and made the alleged "corrective statements" on the July 28, 2015 earnings call, and Mr. Costolo, who was CEO for the vast majority of the class period. Because Plaintiffs cannot explain why they require seven hours to ask Mr. Dorsey about his 27-day tenure as CEO during the relevant time period and fourteen hours to question Mr. Noto about his knowledge of events spanning five-months, their request for extensive time with these apex witnesses should be denied.

---

226:15. Plaintiffs' demonstrated failure to make good use of witnesses' time weighs against granting them additional time with apex witnesses.

[24] Fed. R. Civ. P. 30(d) advisory committee's note to 2000 amendment.

[25] *See Apple Inc. v. Samsung Elecs. Co., Ltd*, 282 F.R.D. 259, 264-70 (N.D. Cal. 2012) (referring to Samsung's CEO as a "quintessential apex" witness and also applying the apex doctrine to Samsung's CFO to limit his deposition to three hours; explaining that "'[i]n determining whether to allow an apex deposition, courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods.'") (citation omitted).

[26] *See Schneider v. Chipotle Mexican Grill, Inc.*, 2017 WL 4127992, at *3 (N.D. Cal. Sept. 19, 2017) (courts routinely deny apex depositions where a plaintiff "do[es] not explain why [the witness] ha[d] *unique* personal knowledge of the facts" and where the "evidence show[ed] that [the witness] worked with other individuals, many of whom were deposed by Plaintiffs").

Respectfully submitted,

ROBBINS GELLER RUDMAN & DOWD LLP

s/ DANIEL S. DROSMAN

DANIEL S. DROSMAN (Bar No. 200643)

COOLEY LLP

s/ KATHLEEN GOODHART

KATHLEEN GOODHART (Bar No. 165659)

cc: All Counsel (via ECF)

199321662