# EXHIBIT 1

**Page 1**

1  UNITED STATES DISTRICT COURT

2  NORTHERN DISTRICT OF CALIFORNIA

3  SAN FRANCISCO DIVISION

4

5  In re TWITTER INC. SECURITIES LITIGATION

6  This Document Relates To:

   ALL ACTIONS.

7

8  Case No. 3:16-cv-05314-JST (SK)

   CLASS ACTION

9  AMENDED NOTICE OF DEPOSITIONS TO NON-PARTIES

   _____

10

11

12

13  ***CONFIDENTIAL***

14  VIDEOTAPED DEPOSITION OF CELIA POON

15  San Francisco, California

16  February 1, 2019

17  VOLUME I

18

19

20

21

22  REPORTED BY:

23  JOHNNA PIPER

24  CSR 11268

25  Job No. 10050810

**Page 2**

1  UNITED STATES DISTRICT COURT

2  NORTHERN DISTRICT OF CALIFORNIA

3  SAN FRANCISCO DIVISION

4

5  In re TWITTER INC. SECURITIES LITIGATION

6  This Document Relates To:

   ALL ACTIONS.

7

8  Case No. 3:16-cv-05314-JST (SK)

   CLASS ACTION

9  AMENDED NOTICE OF DEPOSITIONS TO NON-PARTIES

   _____

10

11

12

13

14

15  Confidential Videotaped Deposition of CELIA

16  POON, Volume I, taken on behalf of Plaintiffs, at

17  One Montgomery Street, San Francisco, California,

18  beginning at 9:12 a.m. and ending at 5:11 p.m. on

19  Friday, February 1, 2019, before JOHNNA PIPER,

20  Certified Shorthand Reporter No. 11268.

21

22

23

24

25

**Page 3**

1  APPEARANCES:

2  For Plaintiffs:

3    Robbins, Geller, Rudman & Dowd, LLP
     655 West Broadway, Suite 1900

4    San Diego, California 92101
     (619) 231-1058

5    ddrosman@rgrdlaw.com

6    By:  Daniel S. Drosman, Esq.
          Christopher Kinnon, Esq.

7

8  Lead Counsel for Lead Plaintiff and the Class:

9    Motley Rice LLC
     28 Bridgeside Boulevard

10   Mt. Pleasant, South Carolina 29464
     (843) 216-9000

11   mweatherby@motleyrice.com
     by:  Meredith B. Weatherby, Esq.

12

   For the Defendants:

13

     Cooley LLP

14   3175 Hanover Street
     Palo Alto, California 94304-1130

15   (650) 843-5228
     jvs@cooley.com

16   By:  Jessica Valenzuela Santamaria, Esq.
          Brett De Jarnette, Esq.

17

18  Also Present:

19   Michele Lee, Twitter
     Terry Koelbl, Robbins, Geller, Rudman &

20   Dowd, LLP
     David Manzo, Videographer

21

22

23

24

25

**Page 4**

1  I N D E X

2  WITNESS                              EXAMINATION

3  Celia Poon

         By Mr. Drosman                        9

4

5

6  EXHIBITS

7  PLAINTIFFS'                               PAGE

8  Exhibit 197  Celia Poon's LinkedIn page     35

9  Exhibit 198  Job description for Sr. Finance  45
              Manager, Corporate FP&A

10

11  Exhibit 199  E-mail from Cassandra Fenley to  79
              kbessinger@twitter.com, et al.,

12            dated 1/12/2015, subject: Updated
              invitation: Monthly metrics

13            review @ Tue Jan 20, 2015 5pm -
              6pm (Krista Bessinger),

14            Bates-stamped TWTR_SHEN_00094095

15  Exhibit 200  E-mail from Kenney Deng to Celia  87
              Poon, et al., dated 1/19/2015,

16            subject: Metrics review 1/20
              preliminary deck, with

17            attachments, Bates-stamped
              TWTR_SHEN_00259502

18  Exhibit 201  E-mail from Celia Poon to Anthony  94
              Noto, et al., dated 10/31/2014,

19            subject: OpComm meeting -
              disclosure metrics, with

20            attachment, Bates-stamped
              TWTR_SHEN_00203897

21

22  Exhibit 202  E-mail string beginning with     102
              e-mail from Kenney Deng to

23            Anthony Noto, et al., dated
              10/31/2014, subject: Re: OpComm

24            meeting - disclosure metrics,
              with attachment, Bates-stamped

25            TWTR_SHEN_00259313 through 15,
              TWTR_SHEN_00259316.0001 through
              10

Page 261

1 BY MR. DROSMAN:
2      Q.  Well, you told me earlier that you
3 understood the purpose of analyst day, right?
4      A.  Yes.
5      Q.  What's the purpose of analyst day?
6          MS. VALENZUELA SANTAMARIA:  Objection.
7 Asked and answered.
8          THE WITNESS:  The purpose of analyst day is
9 to show the financial opportunity externally.
10 BY MR. DROSMAN:
11     Q.  What do you mean by "externally"?
12     A.  It could be to investors; it could be to
13 analysts.
14     Q.  Externally means to the public, right?
15     A.  Correct.
16     Q.  It's fair to say Mr. Noto presented these
17 slides at analyst day to the public, right?
18     A.  That's correct.
19     Q.  Okay.  Let's take a look at page ending
20 004.  Do you see the heading on that page is "Major
21 Growth Drivers," right?
22     A.  I see that.
23     Q.  And you were involved in selecting these
24 eight metrics as major growth drivers, correct?
25         MS. VALENZUELA SANTAMARIA:  Objection.

Page 262

1 Vague and ambiguous and lacks foundation.
2          THE WITNESS:  I was involved in putting
3 together the financial model that put together these
4 numbers that I see on the -- on this slide.
5 BY MR. DROSMAN:
6      Q.  Okay.  Who chose the major growth drivers
7 to present on this slide?
8          MS. VALENZUELA SANTAMARIA:  Objection.
9 Vague and ambiguous and mischaracterizes the
10 document.
11         THE WITNESS:  Anthony Noto.
12 BY MR. DROSMAN:
13     Q.  How do you know that?
14     A.  We worked with him to build the model.
15     Q.  Okay.  And one of the listed major growth
16 drivers is 48 percent top 20 markets DAU over MAU
17 ratio, correct?
18         MS. VALENZUELA SANTAMARIA:  Objection.
19 Mischaracterizes the document; vague and ambiguous.
20         THE WITNESS:  I can -- I can read the
21 48 percent DAU MAU here.
22 BY MR. DROSMAN:
23     Q.  That's listed is one of the eight major
24 growth drivers, correct?
25         MS. VALENZUELA SANTAMARIA:  Objection.

Page 263

1 Mischaracterizes the document and vague and
2 ambiguous.
3          THE WITNESS:  Yes.  This is one of the
4 drivers that is part -- is the -- an input to the
5 model.
6 BY MR. DROSMAN:
7      Q.  What model?
8      A.  The financial model that gets to the
9 revenue that you see in the other slides.  I don't
10 know which page.  I'm flipping.  Slides 019 -- 0019.
11     Q.  Where it says "Summary of Growth
12 Opportunities"?  Is that what you're referring to?
13     A.  That's correct.
14     Q.  Well, just a matter of fact that the top 20
15 markets DAU to MAU ratio was listed as one of the
16 major growth drivers on page ending 004, correct?
17         MS. VALENZUELA SANTAMARIA:  Objection.
18 Mischaracterizes the document and vague and
19 ambiguous.
20         THE WITNESS:  The assumption 48 percent
21 goes into the model that gets to this $11.4 billion.
22 That -- that's why it is listed on the page -- on
23 004.
24 BY MR. DROSMAN:
25     Q.  Yeah.  I'm not asking you why.  I'm just

Page 264

1 asking you whether 48 percent top 20 markets DAU
2 over MAU ratio was listed as a major growth driver
3 on page ending 004.
4          MS. VALENZUELA SANTAMARIA:  Objection.
5 Asked and answered; mischaracterizes the document
6 and vague and ambiguous.
7          THE WITNESS:  This number is part of the
8 model to drive the company into the 11.4 billion
9 revenues.
10         MR. DROSMAN:  Move to strike as
11 nonresponsive.
12     Q.  Ma'am, is 48 percent top 20 markets DAU
13 over MAU ratio listed as one of the eight major
14 growth drivers on page ending 004?
15         MS. VALENZUELA SANTAMARIA:  Objection.
16 Asked and answered; mischaracterizes the document
17 and vague and ambiguous.
18         THE WITNESS:  It's -- it's listed as one of
19 the input on slide on 004.
20 BY MR. DROSMAN:
21     Q.  And it's listed as one of the four inputs
22 on the slide ending 019, right?
23     A.  It's not four.  There's a -- it's more than
24 four there.
25

Page 341

1    Q.  Do you understand my question?  Perhaps
2 you're missing me.  Do you understand my question?
3    A.  I understand your question, and I already
4 answered your question.
5    Q.  I don't think you understand my question
6 because you haven't answered it.  My question is
7 just isolated to text, and we previously read text
8 on page ending 908, if you could follow along with
9 any.  "DAUs and DAU as a percent of MAU are measures
10 of our user engagement."  Okay?  Are you with me so
11 far?
12    A.  I read that's what you said.
13    Q.  Okay.  So my question is anywhere on page
14 ending 909 does it say the words "ad engagements are
15 a measure of our user engagements"?  Does it say
16 those words on page ending 909?
17    MS. VALENZUELA SANTAMARIA:  Objection.  The
18 document speaks for itself and is also asked and
19 answered multiple times.
20    THE WITNESS:  The engage -- the -- under ad
21 engagement, "The engagements include billable clicks
22 to expand, retreat, comment, install, or favorite is
23 a subset of user engagement."
24 BY MR. DROSMAN:
25    Q.  So you're not going to answer my

Page 342

1 question -- I'll move to strike that as
2 nonresponsive.
3    You're not going to answer my question?
4    A.  I already --
5    MS. VALENZUELA SANTAMARIA:  Objection.
6 Mischaracterizes testimony as the witness has
7 already answered the question now I think it's six
8 times.
9    THE WITNESS:  I already answered your
10 question.
11 BY MR. DROSMAN:
12    Q.  You haven't, ma'am, but I'm not going to
13 ask it again because apparently you won't answer it,
14 so we'll go ahead and conclude the deposition.
15    MR. DROSSMAN:  Unless you have questions.
16    MS. VALENZUELA SANTAMARIA:  I don't have
17 any. I think I do -- before we go off the record, I
18 want to make sure the transcript is designated
19 confidential under the protective order.
20    THE COURT REPORTER:  And do you want a copy
21 of the transcript?
22    MS. VALENZUELA SANTAMARIA:  Yes, please.
23    THE VIDEOGRAPHER:  This concludes today's
24 proceedings.  Total number of media units used was
25 seven.  We're off the record at 5:11 p.m.

Page 343

1    (TIME NOTED:  5:11 p.m.)
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 344

1       CERTIFICATE OF REPORTER
2    I, JOHNNA PIPER, a Certified Shorthand
3 Reporter, hereby certify that the witness in the
4 foregoing deposition was by me duly sworn to tell
5 the truth, the whole truth, and nothing but the
6 truth in the within-entitled cause;
7    That said deposition was taken in shorthand
8 by me, a disinterested person, at the time and place
9 therein stated, and that the testimony of the said
10 witness was thereafter reduced to typewriting, by
11 computer, under my direction and supervision;
12    That before completion of the deposition,
13 review of the transcript [X]was [ ]was not
14 requested.  If requested, any changes made by the
15 deponent (and provided to the reporter) during the
16 period allowed are appended hereto.
17    I further certify that I am not of counsel
18 or attorney for either or any of the parties to the
19 said deposition, nor in any way interested in the
20 event of this cause, and that I am not related to
21 any of the parties thereto.
22 DATED: FEBRUARY 18TH, 2019
23
24
                    _____
25                    JOHNNA PIPER, CSR NO. 11268