# EXHIBIT 2

[REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED]

## Page 1

```
 1            UNITED STATES DISTRICT COURT
 2          NORTHERN DISTRICT OF CALIFORNIA
 3              SAN FRANCISCO DIVISION
 4
 5  In re TWITTER INC. SECURITIES LITIGATION
 6  This Document Relates To:
    ALL ACTIONS.
 7
 8  Case No. 3:16-cv-05314-JST (SK)
    CLASS ACTION
 9  AMENDED NOTICE OF DEPOSITIONS TO NON-PARTIES
    _____
10
11
12
13         ***ATTORNEYS' EYES ONLY***
14           VIDEOTAPED DEPOSITION OF
15                ADAM MESSINGER
16             San Francisco, California
17               February 13, 2019
18                   VOLUME I
19
20
21
22  REPORTED BY:
23  JOHNNA PIPER
24  CSR 11268
25  Job No. 10051935
```

## Page 2

```
 1            UNITED STATES DISTRICT COURT
 2          NORTHERN DISTRICT OF CALIFORNIA
 3              SAN FRANCISCO DIVISION
 4
 5  In re TWITTER INC. SECURITIES LITIGATION
 6  This Document Relates To:
    ALL ACTIONS.
 7
 8  Case No. 3:16-cv-05314-JST (SK)
    CLASS ACTION
 9  AMENDED NOTICE OF DEPOSITIONS TO NON-PARTIES
    _____
10
11
12        Attorneys' Eyes Only Videotaped
13  Deposition of ADAM MESSINGER, Volume I, taken on
14  behalf of Plaintiffs, at One Montgomery Street, San
15  Francisco, California, beginning at 9:07 a.m. and
16  ending at 4:17 p.m. on Wednesday, February 13, 2019,
17  before JOHNNA PIPER, Certified Shorthand Reporter
18  No. 11268.
19
20
21
22
23
24
25
```

## Page 3

```
 1  APPEARANCES:
 2  For Plaintiffs:
 3       Robbins, Geller, Rudman & Dowd, LLP
         655 West Broadway, Suite 1900
 4       San Diego, California 92101
         (619) 231-1058
 5       ddrosman@rgrdlaw.com
         By:  Daniel S. Drosman, Esq.
 6
 7  Lead Counsel for Lead Plaintiff and the Class (via
    Zoom):
 8
         Motley Rice LLC
 9       28 Bridgeside Boulevard
         Mount Pleasant, South Carolina 29464
10       glevin@motleyrice.com
         (843) 216-9512
11       By:  Gregg S. Levin, Esq.
12
    For the Defendants and the Witness:
13
         Cooley LLP
14       101 California Street
         San Francisco, California 94111-5800
15       (415) 693-2012
         kgoodhart@cooley.com
16       By:  Kathleen H. Goodhart, Esq.
              Laura Elliott, Esq.
17              Rob Paris, Esq.
18
    Also Present:
19
         Michele Lee, Twitter
20       Terry Koelbl, Robbins, Geller, Rudman &
         Dowd, LLP
21       Ralna Ramse, Videographer
22
23
24
25
```

## Page 4

```
 1                  I N D E X
 2  WITNESS                             EXAMINATION
 3  Adam Matthew Messinger
              By Mr. Drosman              9
 4
 5
 6               EXHIBITS
 7  PLAINTIFFS'                              PAGE
 8  Exhibit 220  LinkedIn page for Adam Messinger   42
 9  Exhibit 221  E-mail from Lon-1 Loon (12, Poly,  61
                 LCD, VC) to dick@twitter.com
10               dated 3/2/2015, subject:
                 Accepted: Operating Committee:
11               Code Red Review (pls prioritize)
                 @ Mon Mar 2, 2015 9:30am -
12               10:30am (Dick Costolo,
                 Bates-stamped TWTR_SHEN_00010634
13
    Exhibit 222  E-mail from Leslie Carroll to      74
14               Operating Committee dated
                 5/25/2015, subject: OpComm
15               AGENDAS: May 26 & June 1,
                 Bates-stamped TWTR_SHEN_00077648
16               through 49
17  Exhibit 223  E-mail from Adam Messinger to      79
                 Operating Committee dated
18               3/3/2015, subject: Core user
                 churn, Bates-stamped
19               TWTR_SHEN_00126745
20  Exhibit 224  E-mail string beginning with      109
                 e-mail from Anthony Noto to Kevin
21               Weil, et al., dated 3/14/2015,
                 subject: Re: Growth metrics for
22               2015-03-13 (MAUs: 304.55M) with
                 attachment, Bates-stamped
23               TWTR_SHEN_00227833 through 35
24  Exhibit 225  Metadata sheet                    116
25
```

Page 237

1 Vanity Fair was doing a feature article on Twitter,
2 correct?
3     MS. GOODHART: Objection. Vague.
4     THE WITNESS: That's what the e-mail -- the
5 e-mail says we're doing that.
6 BY MR. DROSMAN:
7     Q. And you knew that Nick Bilton was the
8 author of that article?
9     A. Where does it say that?
10    MS. GOODHART: Objection. Lacks
11 foundation.
12    THE WITNESS: I -- I don't think I knew
13 that, and I don't think this e-mail says that.
14 BY MR. DROSMAN:
15    Q. Right. I'm just asking if you knew that at
16 this point.
17    A. No.
18    Q. Okay. Have you ever spoken to Nick Bilton?
19    A. Yes.
20    Q. When did you speak to Nick Bilton?
21    A. I think so. I can't tell you for sure.
22 Here's what I'm thinking of: Gabriel used to have
23 these holiday cocktails with the press, and I think
24 I met him at one of those.
25    Q. Were you ever interviewed by Mr. Bilton in

Page 238

1 connection with this Vanity Fair article?
2     A. No.
3     Q. Did you ever speak to Mr. Bilton about
4 anything having to do with Twitter?
5     MS. GOODHART: Objection. Vague.
6     THE WITNESS: I don't recall.
7 BY MR. DROSMAN:
8     Q. Did you speak to Mr. Bilton about user
9 metrics at any point?
10    A. No.
11    Q. Did you communicate in writing with
12 Mr. Bilton ever?
13    A. No.
14    Q. Your communications with Mr. Bilton were
15 all oral. Is that right?
16    MS. GOODHART: Objection. Mischaracterizes
17 the witness's testimony.
18    THE WITNESS: As I said, I think I met him
19 at one of those cocktail parties.
20 BY MR. DROSMAN:
21    Q. Why do you believe you met Mr. Bilton at
22 one of con -- those cocktail parties?
23    A. I just have a vague memory of it, that he
24 wrote that book, so he was like a someone I knew of.
25 I didn't read the book, but I remember thinking,

Page 239

1 "Oh, yeah, that's that guy." But . . .
2     MS. GOODHART: Mr. Drosman, I'm getting the
3 distinct impression that there may be a filibuster
4 going on here.
5     MR. DROSMAN: You're -- you're under the
6 incorrect impression. I'm asking --
7     MS. GOODHART: Okay. You keep looking
8 at --
9     MR. DROSMAN: -- questions.
10    MS. GOODHART: You keep looking at your
11 phone --
12    MR. DROSMAN: Oh.
13    MS. GOODHART: -- you keep looking at your
14 watch. I feel as though --
15    MR. DROSMAN: The reason --
16    MS. GOODHART: -- and I -- and I don't mean
17 to be critical here, but I don't feel as though
18 you're focused in on utilizing this witness's time
19 who is a third party, and he's generously agreed to
20 be here today. I don't feel as though you are using
21 the time efficiently, and I'm concerned about the
22 fact you seem to be much more focused on your e-mail
23 and your watch phone that on completing the
24 examination of this witness and allowing this third
25 party to leave.

Page 240

1     MR. DROSMAN: I'm very focused on this
2 witness's examination, and you're absolutely
3 incorrect that I'm in any way wasting his time.
4 These questions are absolutely critical to our case,
5 and I will continue to conduct the deposition as I
6 see fit.
7     The reason I have glanced at my watch and
8 at my e-mails during the course of the last 20
9 minutes or so is because the Court has indicated
10 that she would like to have a conference with the
11 parties, or at least the parties' counsel to discuss
12 the e-mail I sent about potential abuses during the
13 deposition. And so I want to make sure, because the
14 Court has sent us a dial-in number, that we are --
15 that we appear at that particular conference in a
16 timely fashion. I don't want to miss or be late to
17 the conference. And so I've been glancing at my
18 watch periodically so I make sure that we take a
19 break in time to make that particular conference.
20    MS. GOODHART: Okay. So, Counsel, as you
21 are looking at your e-mails and your watch and at
22 the same time utilizing this witness's time for
23 examination, you should take a break and advise all
24 counsel with respect to when the conference call is
25 going to be and explain why it is that you're not

Page 241

1  wasting this witness's time waiting for that call.
2       MR. DROSMAN: Oh, I don't think I owe you
3  any of those explanations. I've conducted this
4  deposition in a professional, thorough way, and I'll
5  continue to do so. We have a call in approximately
6  nine minutes. We can go ahead and take a break now
7  to prepare for it if you'd like.
8       MS. GOODHART: No, no. I think we should
9  keep going until the telephone call. This witness
10 is taking time out of his life -- he's a third
11 party -- to be here today. Let's keep going until
12 it is time for the call, and the witness can take a
13 break.
14      MR. DROSMAN: Okay. I just note that for
15 somebody who at least professes to be concerned
16 about wasting the witness's time, you've spent quite
17 a bit of time speaking on the record, and I -- I do
18 say that I find that very wasteful of the witness's
19 time, and I wish you'd --
20      MS. GOODHART: And I find it --
21      MR. DROSMAN: -- stop doing that.
22      MS. GOODHART: I find it very wasteful
23 you're having third parties come in and have you
24 read documents and read documents to them. I think
25 it is incredibly wasteful. But we can take that up

Page 242

1  at a later time, Mr. Drosman. Why don't you finish
2  your examination of the witness.
3       MR. DROSMAN: I'll just note for the record
4  that you're absolutely incorrect about that. It's
5  apparent that you don't understand the purpose of
6  the deposition if you find anything I've done today
7  wasteful.
8       MS. GOODHART: It is apparent you don't
9  know how to take a deposition.
10 BY MR. DROSMAN:
11     **Q. When you spoke to Mr. Bilton at a cocktail**
12 **party, you mentioned that the cocktail party was**
13 **organized by Gabriel Stricker. Is that right?**
14     A. Yeah. Like I said, I'm not one hundred
15 percent certain I met him, but if I met him it would
16 have been at one of those things. I think I did.
17     **Q. And did you attend just one of these**
18 **cocktail parties organized by Mr. Stricker or**
19 **multiple ones?**
20     A. I think I was invited to two and came to
21 one.
22     **Q. Okay. And was Mr. Stricker -- did you have**
23 **the impression Mr. Stricker was friendly with --**
24 **with Mr. Bilton?**
25      MS. GOODHART: Objection. Vague;

Page 243

1  foundation.
2       THE WITNESS: I think Gabriel knew all the
3  reporters covering Twitter.
4  BY MR. DROSMAN:
5      **Q. As the director of communication?**
6       MS. GOODHART: Objection. Vague.
7       THE WITNESS: I don't know what his title
8  was. Was it director of communications? I thought
9  it was VP of communications.
10 BY MR. DROSMAN:
11     **Q. Okay. Why don't I show you what we'll mark**
12 **as Plaintiffs' Exhibit 238 and 239 for**
13 **identification.**
14       (Plaintiffs' Exhibits 238 and 239 were
15       marked for identification.)
16      MR. DROSMAN: Let the record reflect that
17 Plaintiffs' Exhibit 238 is metadata for a document
18 beginning on Bates number Twitter, underscore, Shen,
19 underscore, 00363183 and ending on Bates number
20 00363187, and the file name is indicated as "vanity
21 fair June issue." The custodian includes Adam
22 Messinger on the metadata is 238.
23      And Plaintiffs' Exhibit 239 consists of an
24 e-mail and attachment, and that bears Bates numbers
25 Twitter, underscore, Shen, underscore, 0036183 to

Page 244

1  187.
2      **Q. Let me know when you're through reviewing**
3  **the document, please.**
4      A. Want me to read this article?
5      **Q. You can review as much of it as you -- as**
6  **you feel necessary, and, of course, I'll afford you**
7  **additional time during my questions to review more**
8  **of it if you see -- if you need that time?**
9       MS. GOODHART: So, Counsel, this is a very,
10 very lengthy article, and it would be a complete
11 waste of the witness's time. Again, I'm going to
12 ask you to please be cognizant of the fact that you
13 are asking third parties to come and sit for
14 depositions where you asking them to read documents.
15 BY MR. DROSMAN:
16     **Q. If you'd prefer, I can just begin asking**
17 **you questions without giving you a chance to review**
18 **the document, sir. I'm happy to do that. Would you**
19 **like the opportunity to review it, or would you**
20 **prefer that I ask you questions without an**
21 **opportunity to review?**
22      MS. GOODHART: Well, why don't you tell
23 us --
24      MR. DROSMAN: Well, what I'm -- I'm asking
25 the witness a question.

Page 245

1   Q. Can you answer that question?
2       MS. GOODHART: That's not fair. That's
3   harassing. I am going to object. You are harassing
4   the witness.
5       MR. DROSMAN: Objection. Noted.
6   Q. Sir, can you answer that question? Do you
7   want time to review the document or would you prefer
8   that I ask questions now?
9   A. Does the time I spend reading against this
10  count against your time?
11  Q. It does.
12  A. Great. I'll read this.
13  Q. Okay.
14      MR. DROSMAN: We're going to go ahead and
15  take a break for a call with the Court, so we'll go
16  off the record.
17      THE VIDEOGRAPHER: Going off the record,
18  the time is 3:27 p.m.
19      (Recess taken.)
20      THE VIDEOGRAPHER: We're back on the record
21  at 3:51 p.m.
22  BY MR. DROSMAN:
23  Q. And, Mr. Messinger, you understand that
24  you're still under oath?
25  A. Yes.

Page 246

1   Q. When we broke, I believe you were reading
2   Plaintiffs' Exhibit 239. Is that right?
3   A. Yes.
4   Q. If you could just put that aside for a
5   moment, I'm just going to ask you a few questions.
6   Then we'll go back to 239. Okay.
7       Can you please provide me with your
8   residence address for the record?
11  Q. Okay. And when we talked about your
12  preparation for deposition, you mentioned that you
13  prepared in person on two separate days, right?
14  A. Yes.
15  Q. The first day that you prepared in person,
16  where did you meet?
17  A. At the Cooley office, 101 California.
18  Q. Okay. And the second day that you prepared
19  in person, where did you meet?
20  A. The same.
21  Q. Okay. And you recall that I asked you
22  whether a certain document that I showed you
23  refreshed -- was the document that refreshed your
24  recollection during your preparation. Do you
25  remember that question?

Page 247

1   A. I do.
2   Q. Could you take a look at Plaintiffs'
3   Exhibit 230.
4   A. Okay.
5   Q. Plaintiffs' Exhibit 230 contains the
6   attachment beginning on page 840 entitled "Growth
7   Handbook." Do you see that?
8   A. I do.
9   Q. And you're listed as one of the editors of
10  the growth handbook, right?
11  A. I am listed in that way, yes.
12  Q. Is this the document that refreshed your
13  recollection that you were reviewed in preparation
14  for your deposition?
15  A. I'm not sure.
16  Q. Okay. We can turn now back to Plaintiffs'
17  Exhibit 239 for identification. That's the
18  e-mail -- the cover e-mail plus the Vanity Fair
19  article. And I'm only going to direct you to two
20  paragraphs in that article -- well, three -- three
21  paragraphs in the article. Of course, I'll afford
22  you any time that you'd like after I ask a question
23  to review the document or the surrounding
24  paragraphs.
25      So if you would prefer that I continue my

Page 248

1   examination now, I'm happy to do that. If you'd
2   rather read the document, that's up to you.
3   A. I'll read it --
4       (Reporter requests clarification.)
5       THE WITNESS: I'll read it in its totality,
6   please.
7       MS. GOODHART: And I'd like to mark the
8   entire transcript "attorneys' eyes only" pursuant to
9   the protective order.
10  BY MR. DROSMAN:
11  Q. Have you had a chance to read the document?
12  A. Yep.
13  Q. Okay. Great. Directing your attention to
14  the first page of Plaintiffs' Exhibit 239, see it's
15  an e-mail from Alexandra Valasek?
16  A. I see that name on the "from" line, yes.
17  Q. Do you know who that is?
18  A. No. No, I don't recall who that is.
19  Q. She's -- all right. Her signature block
20  below indicates that she's from the communications
21  department at Twitter. You see that?
22  A. I do.
23  Q. That doesn't jog your memory at all?
24  A. Nope.
25  Q. Okay. And then it -- the e-mail was sent

Page 257

```
 1            CERTIFICATE OF REPORTER
 2        I, JOHNNA PIPER, a Certified Shorthand
 3  Reporter, hereby certify that the witness in the
 4  foregoing deposition was by me duly sworn to tell
 5  the truth, the whole truth, and nothing but the
 6  truth in the within-entitled cause;
 7        That said deposition was taken in shorthand
 8  by me, a disinterested person, at the time and place
 9  therein stated, and that the testimony of the said
10  witness was thereafter reduced to typewriting, by
11  computer, under my direction and supervision;
12        That before completion of the deposition,
13  review of the transcript [X]was [ ]was not
14  requested.  If requested, any changes made by the
15  deponent (and provided to the reporter) during the
16  period allowed are appended hereto.
17        I further certify that I am not of counsel
18  or attorney for either or any of the parties to the
19  said deposition, nor in any way interested in the
20  event of this cause, and that I am not related to
21  any of the parties thereto.
22  DATED: FEBRUARY 18TH, 2019
23
24       _____
25            JOHNNA PIPER, CSR NO. 11268
```

Page 258

```
 1         DECLARATION UNDER PENALTY OF PERJURY
 2  Case Name: In re Twitter Inc. Securities Litigation
 3  Date of Deposition: 02/13/2019
 4  Job No.: 10051935
 5
 6        I, ADAM MESSINGER, hereby certify
 7  under penalty of perjury under the laws of the State of
 8  _____ that the foregoing is true and correct.
 9        Executed this _____ day of
10  _____, 2019, at _____.
11
12
13       _____
14              ADAM MESSINGER
15
16  NOTARIZATION (If Required)
17  State of _____
18  County of _____
19  Subscribed and sworn to (or affirmed) before me on
20  this _____ day of _____, 20__,
21  by_____,    proved to me on the
22  basis of satisfactory evidence to be the person
23  who appeared before me.
24  Signature: _____ (Seal)
25
```

Page 259

```
 1  DEPOSITION ERRATA SHEET
 2  Case Name: In re Twitter Inc. Securities Litigation
    Name of Witness: Adam Messinger
 3  Date of Deposition: 02/13/2019
    Job No.: 10051935
 4  Reason Codes:  1. To clarify the record.
                   2. To conform to the facts.
 5                 3. To correct transcription errors.
 6  Page _____ Line _____ Reason _____
 7  From _____ to _____
 8  Page _____ Line _____ Reason _____
 9  From _____ to _____
10  Page _____ Line _____ Reason _____
11  From _____ to _____
12  Page _____ Line _____ Reason _____
13  From _____ to _____
14  Page _____ Line _____ Reason _____
15  From _____ to _____
16  Page _____ Line _____ Reason _____
17  From _____ to _____
18  Page _____ Line _____ Reason _____
19  From _____ to _____
20  Page _____ Line _____ Reason _____
21  From _____ to _____
22  Page _____ Line _____ Reason _____
23  From _____ to _____
24  Page _____ Line _____ Reason _____
25  From _____ to _____
```

Page 260

```
 1  DEPOSITION ERRATA SHEET
 2  Page _____ Line _____ Reason _____
 3  From _____ to _____
 4  Page _____ Line _____ Reason _____
 5  From _____ to _____
 6  Page _____ Line _____ Reason _____
 7  From _____ to _____
 8  Page _____ Line _____ Reason _____
 9  From _____ to _____
10  Page _____ Line _____ Reason _____
11  From _____ to _____
12  Page _____ Line _____ Reason _____
13  From _____ to _____
14  Page _____ Line _____ Reason _____
15  From _____ to _____
16  Page _____ Line _____ Reason _____
17  From _____ to _____
18  Page _____ Line _____ Reason _____
19  From _____ to _____
20  Page _____ Line _____ Reason _____
21  From _____ to _____
22  _____ Subject to the above changes, I certify that the
            transcript is true and correct
23  _____ No changes have been made. I certify that the
            transcript  is true and correct.
24
         _____
25              ADAM MESSINGER
```