1   MOTLEY RICE LLC
    GREGG S. LEVIN (admitted *pro hac vice*)
2   LANCE V. OLIVER (admitted *pro hac vice*)
    MEGHAN S.B. OLIVER (admitted *pro hac vice*)
3   MAX N. GRUETZMACHER (admitted *pro hac vice*)
    CHRISTOPHER F. MORIARTY (admitted *pro hac vice*)
4   MEREDITH B. WEATHERBY (admitted *pro hac vice*)
    28 Bridgeside Blvd.
5   Mt. Pleasant, SC  29464
    Telephone:  843/216-9000
6   843/216-9450 (fax)

7   ROBBINS GELLER RUDMAN & DOWD LLP
    DANIEL S. DROSMAN (200643)
8   TOR GRONBORG (179109)
    LUCAS F. OLTS (234843)
9   NATHAN R. LINDELL (248668)
    SUSANNAH R. CONN (205085)
10  J. MARCO JANOSKI GRAY (306547)
    CHRISTOPHER R. KINNON (316850)
11  HEATHER G. SCHLESIER (322937)
    655 West Broadway, Suite 1900
12  San Diego, CA  92101-8498
    Telephone:  619/231-1058
13  619/231-7423 (fax)

14  *Co-Class Counsel for the Class*

15  [Additional counsel appear on signature page.]

16              UNITED STATES DISTRICT COURT

17           NORTHERN DISTRICT OF CALIFORNIA

18                  OAKLAND DIVISION

19  In re TWITTER INC. SECURITIES          )   Case No. 4:16-cv-05314-JST (SK)
    LITIGATION                             )
20  _____       )   CLASS ACTION
                                           )
21  This Document Relates To:              )   PLAINTIFFS' NOTICE OF MOTION AND
                                           )   MOTION TO EXCLUDE EXPERT
22      ALL ACTIONS.                       )   TESTIMONY OF PROFESSOR WAYNE
                                           )   GUAY; MEMORANDUM OF POINTS AND
23  _____       )   AUTHORITIES IN SUPPORT THEREOF

24                                             TRIAL DATE:  March 30, 2020

25                                             DATE:      March 3, 2020
                                               TIME:      2:00 p.m.
26                                             CTRM:      6
                                               JUDGE      The Honorable Jon S. Tigar
27

28

4813-7096-4915.v1

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 3, 2020 at 2:00 p.m. in Courtroom 6, 2nd Floor of the above-entitled court, Class Representatives KBC Asset Management NV and National Elevator Industry Pension Fund will and hereby do move to exclude testimony concerning certain opinions set forth in the Expert Report of Professor Wayne Guay dated August 7, 2019 (defined below), based on Federal Rules of Evidence 702 and 403, and related case law.

Plaintiffs' motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the materials cited therein, the pleadings and papers on file in this matter, oral argument, and such other materials and argument as may be presented.

**STATEMENT OF RELIEF SOUGHT**

Plaintiffs seek an order excluding testimony regarding the following opinions offered by Guay:

1.    That the Individual Defendants' decisions to purchase, sell, or refrain from trading in Twitter stock were "economically rational" and thus "contrary to an allegation of an intent to defraud" (Report, ¶¶8, 42, 46, 56, 92);

2.    That the Individual Defendants engaged in trading behavior during the Class Period that is "inconsistent with Plaintiffs' allegations that they used allegedly material, non-public information for their benefit" (Report, ¶¶8, 41, 42, 81, 91, 92); and

3.    Regarding the reasons for, and the "reasonableness" of, the trading behaviors of the Individual Defendants and other Twitter executives (Report, ¶¶57, 71, 77, 78, 79, 81, 82, 92).

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................1

II.  LEGAL STANDARDS ..........................................................................2

III. GUAY'S OPINION THAT THE INDIVIDUAL DEFENDANTS' TRADING BEHAVIORS ARE "ECONOMICALLY RATIONAL" SHOULD BE EXCLUDED ..........................................................................................3

IV.  GUAY'S OPINIONS REGARDING THE INDIVIDUAL DEFENDANTS' LACK OF FINANCIAL BENEFIT FROM THEIR TRADING BEHAVIOR DURING THE CLASS PERIOD SHOULD BE EXCLUDED ...........................................6

V.   GUAY'S OPINIONS REGARDING THE REASONS FOR, AND "REASONABLENESS" OF, DEFENDANTS' TRADING BEHAVIOR SHOULD BE EXCLUDED ....................................................................9

VI.  CONCLUSION ...................................................................................12

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Atmel Corp. v. Info. Storage Devices, Inc.*,
189 F.R.D. 410 (N.D. Cal. 1999) ............................................................................................5

*Biotechnology Value Fund, L.P. v. Celera Corp.*,
2015 WL 138168 (N.D. Cal. Jan. 9, 2015) ............................................................................9

*Bona Fide Conglomerate, Inc. v. SourceAmerca*,
2019 WL 1369007 (S.D. Cal. Mar. 26, 2019) .......................................................................4

*Commodity Futures Trading Comm'n v. JBW Capital*,
812 F.3d 98 (1st Cir. 2016) ....................................................................................................7

*Cooper v. Brown*,
510 F.3d 870 (9th Cir. 2007) ..................................................................................................3

*Daubert v. Merrell Dow Pharm.*,
509 U.S. 579 (1993) ................................................................................................................3

*Gold v. Lumber Liquidators, Inc.*,
323 F.R.D. 280 (N.D. Cal. 2017) .........................................................................................10

*Hangarter v. Provident Life & Accident Ins. Co.*,
373 F.3d 998 (9th Cir. 2004) ..................................................................................................8

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ..................................................................................................7

*In re Bard IVC Filters Prods. Liab. Litig.*,
2019 WL 1615080 (D. Ariz. Apr. 16, 2019) ........................................................................10

*In re Entropin, Inc. Sec. Litig.*,
487 F. Supp. 2d 1141 (C.D. Cal. 2007) ..................................................................................7

*Kumho Tire Co., Ltd. v. Carmichael*,
526 U.S. 137 (1999) ................................................................................................................3

*Lopez v. I-Flow, Inc.*,
2011 WL 1897548 (D. Ariz. Jan. 26, 2011) ..........................................................................4

*Lust ex rel. Lust v. Merrell Dow Pharms., Inc.*,
89 F.3d 594 (9th Cir. 1996) ....................................................................................................3

*Miranda v. U.S. Sec. Assocs., Inc.*,
2019 WL 2929966 (N.D. Cal. July 8, 2019) ..........................................................................4

*No. 84 Employer-Teamster Joint Council Pension Tr. Fund v.
Am. W. Holding Corp.*,
320 F.3d 920 (9th Cir. 2003) ..................................................................................................7

**Page**

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
  2018 WL 6511146 (N.D. Cal. Dec. 11, 2018)..................................................4, 6, 9

*PR Diamonds, Inc. v. Chandler*,
  364 F.3d 671 (6th Cir. 2004) ............................................................................11

*Primiano v. Cook*,
  598 F.3d 558 (9th Cir. 2010), *amended* (2010) ...............................................2, 3

*Quinn v. Fresno Cty. Sheriff*,
  2012 WL 2995477 (E.D. Cal. July 23, 2012) ......................................................8

*Rogers v. Raymark Indus., Inc.*,
  922 F.2d 1426 (9th Cir. 1991) ............................................................................3

*Siring v. Or. State Bd. of Higher Educ. ex rel. E. Or. Univ.*,
  927 F. Supp. 2d 1069 (D. Or. 2013) ...............................................................4, 5, 7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)............................................................................................7

*U.S. Equal Emp't Opportunity Comm'n v. MJC Inc.*,
  2019 WL 2992013 (D. Haw. July 9, 2019)..........................................................6

*United States v. Diaz*,
  876 F.3d 1194 (9th Cir. 2017) .......................................................................10, 11

*United States v. Pac. Gas & Elec. Co.*,
  2016 WL 1640462 (N.D. Cal. Apr. 26, 2016) .....................................................11

*United States v. Ruvalcaba-Garcia*,
  923 F.3d 1183 (9th Cir. 2019)
  *petition for cert. filed*, No. 19-6277 (Oct. 9, 2019)..............................................2

*Volterra Semiconductor Corp. v. Primarion, Inc.*,
  2013 WL 6905555 (N.D. Cal. Nov. 18, 2013) ................................................3, 10

*Wagner v. ABW Legacy Corp, Inc.*,
  2016 WL 880371 (D. Ariz. Mar. 8, 2016) ..........................................................12

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Evidence
  Rule 402 ...............................................................................................................3
  Rule 403 ...............................................................................................................4
  Rule 702 ....................................................................................................2, 3, 5, 11
  Rule 702(c)............................................................................................................4

17 C.F.R.
  §240.10b5-1 ......................................................................................................8, 9

# I.    INTRODUCTION[1]

This case concerns whether Twitter, Inc. and its former executive officers Richard Costolo and Anthony Noto (collectively, the "Individual Defendants") are liable for misleading investors about the two things most critical to Twitter's success: user growth and engagement.  Defendants offer the expert testimony of Wayne Guay, a professor of accounting at the Wharton School of Business.  His proposed testimony regarding the Individual Defendants' trading in Twitter stock impermissibly opines on Defendants' (and other Twitter executives') state of mind, improperly (and incorrectly) instructs the jury on the applicable law, and is not based on a reliable methodology or indeed any methodology at all.  For the reasons set forth below, Guay's testimony regarding the opinions set forth in ¶¶8, 41-42, 46-47, 48 n.86, 51, 56-57, 71, 77-79, 81, and 91-92 of his Report should be excluded.

*First*, Plaintiffs request that the Court exclude Guay's testimony regarding the Individual Defendants' purportedly "economically rational" reasons for their trading behaviors and his tautological conclusion that this "economically rational" conduct "cannot be used to support an allegation of an intent to defraud." *See* Report, ¶¶8, 42, 46, 56, 92.  Guay's assessment of the purity of the Individual Defendants' motivations is nothing more than an opinion about their state of mind, and should be rejected.  Furthermore, Guay's opinion that the Individual Defendants' trading behavior was "economically rational" is not helpful to the jury because it is based on a proposed standard that Guay himself has neither quantified nor defined.

*Second*, Plaintiffs request that the Court exclude Guay's testimony that the Individual Defendants' trading behaviors were "inconsistent with Plaintiffs' allegations that they used allegedly material, non-public information to their benefit." *See* Report, ¶¶8, 41-42, 81, 90-92.  This opinion ignores that a financial motive, or indeed any motive at all, is not a requirement of proving intent to defraud (and was not pled by Plaintiffs).  Guay incorrectly assumes profit motive is necessary to

---

[1]    All exhibits referenced herein are attached to the Declaration of Gregg S. Levin in Support of Plaintiffs' Motion to Exclude Expert Testimony of Professor Wayne Guay ("Levin Decl."), filed concurrently herewith.  "Report" refers to Guay's August 7, 2019 Expert Report and is attached as Exhibit A to the Levin Decl.  "Guay Depo." refers to the transcript of Guay's August 28, 2019 deposition and is attached as Exhibit B to the Levin Decl.  All emphasis is added and citations are omitted unless otherwise noted.

1    show scienter, and to allow him to testify as to this misunderstanding of the law would only mislead

2    the jury.  Furthermore, to the extent Guay proposes to testify that the Individual Defendants did not

3    sell stock during the Class Period, that is hardly a matter that requires expert testimony.

4    Accordingly, this testimony should be excluded.

5          ***Third***, Plaintiffs request exclusion of Guay's testimony regarding the purported motives for

6    and "reasonableness" of the Individual Defendants' and other Twitter executives' trades in Twitter

7    shares, including testimony regarding the cancellation of certain executives' trading plans, and

8    Noto's Class-Period purchases of stock.  *See* Report, ¶¶8, 47, 48 n.86, 51, 56-57, 71, 77-79, 81-82,

9    92.  This testimony should be excluded because it improperly addresses Defendants' and others'

10    state of mind and credibility, and  amounts to nothing more than an attempt to usurp the jury's role

11    as fact-finder.  The jury should be permitted to draw its own inferences and conclusions from the

12    available deposition testimony and document evidence – ***not*** Guay's interpretation of it.

13          This Court should not countenance Defendants' attempt to confuse the issues, introduce bare

14    denials of liability disguised as expert opinion, and mislead the fact-finder with unreliable testimony

15    in the hopes of overcoming the compelling scienter-related evidence against them.   Guay's

16    testimony concerning Defendants' state of mind and credibility and his misstatements of the law

17    should be excluded.

18    **II.    LEGAL STANDARDS**

19          Federal Rule of Evidence 702 "control[s] the admissibility of" expert testimony.  *Primiano v.*

20    *Cook*, 598 F.3d 558, 563-64 (9th Cir. 2010), *amended* (2010).  Under that rule, an expert who is

21    qualified "by knowledge, skill, experience, training, or education" may offer opinion testimony if

22    "(a) the expert's [specialized knowledge] will help the trier of fact understand the evidence or to

23    determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is

24    the product of reliable principles and methods; ***and*** (d) the expert has reliably applied the principles

25    and methods to the facts of the case."   Expert testimony is reliable where "the reasoning or

26    methodology underlying the testimony is scientifically valid and can properly be applied to the facts

27    in issue," and the court is satisfied that "the expert employs in the courtroom the same level of

28    intellectual rigor that characterizes the practice of an expert in the relevant field."  *United States v.*

1   *Ruvalcaba-Garcia*, 923 F.3d 1183, 1188-89 (9th Cir. 2019) (citing *Daubert v. Merrell Dow Pharm.*,

2   509 U.S. 579, 593-94 (1993)), *petition for cert. filed*, No. 19-6277 (Oct. 9, 2019); *see also Kumho*

3   *Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999) (explaining that a court must determine

4   whether the expert, "basing testimony upon professional studies or personal experience, employs in

5   the courtroom the same level of intellectual vigor that characterizes the practice of an expert in the

6   relevant field").

7          In addition to the reliability requirement, expert testimony must also be helpful and useful to

8   the trier of fact.  Relevant expert testimony is that which will "assist the trier of fact" because "the

9   knowledge underlying it has a valid connection to the pertinent inquiry." *Primiano*, 598 F.3d at 564;

10  *see also Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007) (noting the "central concern" of Rule

11  702 is whether expert's testimony "is helpful to the jury").  "This requirement is more stringent than

12  the relevancy requirement of Rule 402 of the Federal Rules of Evidence, 'reflecting the special

13  dangers inherent in scientific expert testimony.'" *Volterra Semiconductor Corp. v. Primarion, Inc.*,

14  2013 WL 6905555, at *15 (N.D. Cal. Nov. 18, 2013). And, of course, expert testimony may be

15  excluded pursuant to Federal Rule of Evidence 403 if its probative value is outweighed by "unfair

16  prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly

17  presenting cumulative evidence." Fed. R. Evid. 403; *see Rogers v. Raymark Indus., Inc.*, 922 F.2d

18  1426, 1430 (9th Cir. 1991).

19         The burden of establishing the admissibility of expert testimony falls on the party seeking its

20  admission.  *See Lust ex rel. Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

21  **III.    GUAY'S OPINION THAT THE INDIVIDUAL DEFENDANTS' TRADING**
    **BEHAVIORS ARE "ECONOMICALLY RATIONAL" SHOULD BE**
22  **EXCLUDED**

23         Guay opines that the trading behaviors of the Individual Defendants and other Twitter

24  insiders before and during the Class Period were reflective of "***economically rational***" trading

25  behaviors of executives at newly-public companies, and thus cannot support an inference of scienter.

26  Report, ¶¶8, 42, 46, 56, 92.  Guay further opines that Defendants' transactions in Twitter stock were

27  based on "diversification, liquidity, and signaling reasons," and were therefore "economically

28  rational" and "***contrary to . . . an intent to defraud***." *Id.*, ¶42.  Guay concludes, therefore, that

1  Costolo's and Noto's trading behavior before and during the Class Period was "unsurprising" and

2  "consistent with a . . . ***non-nefarious motivation***." *See id.*, ¶¶8, 46, 56, 92.

3  Guay's attempt to provide innocent, *post-hoc* rationalizations for the Individual Defendants'

4  stock trading activities (or lack thereof) is inherently testimony about their "'intent, motive, or state

5  of mind,'" which "[c]ourts 'routinely exclude'" as "'outside the scope of expert testimony.'"

6  *Miranda v. U.S. Sec. Assocs., Inc.*, 2019 WL 2929966, at *1 (N.D. Cal. July 8, 2019) (collecting

7  cases); *see also Lopez v. I-Flow, Inc.*, 2011 WL 1897548, at *11 (D. Ariz. Jan. 26, 2011) (noting that

8  "myriad other courts have . . . excluded this type of testimony"). That is because "[e]xpert testimony

9  as to intent, motive, or state of mind offers [the jury] no more than the drawing of an inference from

10 the facts of the case." *Siring v. Or. State Bd. of Higher Educ. ex rel. E. Or. Univ.*, 927 F. Supp. 2d

11 1069, 1077 (D. Or. 2013). Guay's testimony that Defendants' trading behaviors are "contrary to an

12 allegation of an intent to defraud" (Report, ¶42) usurps the jury's role as fact-finder by telling them

13 what inferences to draw from the evidence, and is of the type that is generally excluded in securities

14 cases for that very reason. *See, e.g.*, *Bona Fide Conglomerate, Inc. v. SourceAmerca*, 2019 WL

15 1369007, at *17 (S.D. Cal. Mar. 26, 2019) ("'[e]xpert evidence should not be permitted to usurp . . .

16 the role of the jury in applying the law to the facts before it'"); *Oracle Am.*, *Inc. v. Hewlett Packard

17 *Enter. Co.*, 2018 WL 6511146, at *3 (N.D. Cal. Dec. 11, 2018) (noting that "'it is the jury that

18 decides'" whether the facts "'warrant an inference that [defendant] acted knowingly'"); Amended

19 Minute Order at 2, *In re JDS Uniphase Corp. Sec. Litig.*, No. 02-01486CW (N.D. Cal. Oct. 9, 2007)

20 (ECF No. 1692) at 2 (regarding Guay, holding that he "can talk about facts, but cannot draw

21 inferences"). Because the jury is "capable of drawing its own inferences" regarding whether

22 Defendants acted knowingly, Guay's testimony is neither necessary nor helpful. *Siring*, 927 F.

23 Supp. 2d at 1077.

24 Guay's opinion that the Individual Defendants' trading behavior was "economically rational"

25 also should be excluded because no methodology supports it. *See* Fed. R. Evid. 702(c) (testimony

26 must be "the product of reliable principles and methods"). Guay makes no effort to articulate or

27 apply reliable principles or methodology to compare the actions of his hypothetical rational actors to

28 the actions of the Individual Defendants. Rather, Guay testified that "economically rational" does

1  not have a specific definition, but is "a very, very, very broad term" that can be used to "describe all

2  sorts of actions" taken "by . . . all types of people."  Guay Depo. at 45:7-23; *see also id*. at 43:25-

3  46:2 (testifying that "economically rational" is not "a term of art," "doesn't have a specific

4  definition," "depends on the context," and that "others may have different definitions").  Pushed for

5  clarification, Guay simply stated that "economically rational" is a term that "applies to a lot of

6  decisions that individuals make in all sorts of settings."  *Id*. at 45:19-23.

7          Using this untestable standard, in turn, provides Guay with the unfettered ability to assume

8  away Defendants' fraud.  Guay confirmed that "economically rational" and "non-fraudulent" are

9  synonymous for purposes of his opinions – in other words, because he judges the Individual

10  Defendants' behavior to be "economically rational" (whatever that means), it cannot be fraudulent.

11  *Id*. at 46:3-10, 46:23-47:6, 47:18-48:8.  Nor does Guay articulate a methodological basis for

12  determining that the Individual Defendants' trading behavior meets his definition of "economically

13  rational," however inscrutable it may be.  He did not communicate with Costolo or Noto, did not

14  review their personal financial records, and did not inquire about their compensation, finances,

15  consumption needs, or total wealth (aside from what is contained in publicly-available information

16  in SEC filings) before opining that their financial decisions were "economically rational,"

17  "unsurprising," and "consistent with a . . . non-nefarious motivation."  Report, ¶¶42, 46, 92; *see also*

18  Guay Depo. at 33:14-34:8, 52:4-9, 54:10-14.  Indeed, Guay's testimony is not based on anything

19  other than what he would "expect to observe in a world where there was no intent to defraud."  Guay

20  Depo. at 46:23, 48:15; *see also id*. at 47:18-48:8 (Defendants' trading "behavior is consistent with

21  what I would expect these executives to be doing in the absence of the allegations to defraud");

22  106:14-21 ("the trading behavior is what I would expect from executives that are trading for [non-

23  fraudulent] reasons").

24          The foregoing testimony is entirely speculative and inadmissible.  *Siring*, 927 F. Supp. 2d at

25  1078 (prohibiting expert from opining about "the unexpressed reasons for [defendants'] decisions").

26  Guay's approach regarding what behavior can be considered "economically rational" and thus *ipso*

27  *facto* "non-nefarious" is also devoid of any measurable analysis and therefore fails to satisfy the

28  requirements of Rule 702.  *See, e.g.*, *Atmel Corp. v. Info. Storage Devices, Inc.*, 189 F.R.D. 410, 416

1    (N.D. Cal. 1999) (excluding expert testimony because opinion was merely "conclusory statement"

2    offered without any methodology under which expert arrived at conclusion); *see also U.S. Equal*

3    *Emp't Opportunity Comm'n v. MJC Inc.*, 2019 WL 2992013, at *5 (D. Haw. July 9, 2019)

4    (excluding as unreliable expert's opinion where proponent had not shown the opinion was "based on

5    something more than [the expert's] subjective belief").

6           The Court should exclude Guay's testimony that the Individual Defendants' trading behavior

7    was "economically rational" and "contrary to an intent to defraud" (Report, ¶¶8, 42, 46, 56, and 92)

8    because it is improper opinion about Defendants' intent and state of mind, unsupported by any

9    methodology, and based only on Guay's speculation.

10   **IV.    GUAY'S OPINIONS REGARDING THE INDIVIDUAL DEFENDANTS'
            LACK OF FINANCIAL BENEFIT FROM THEIR TRADING BEHAVIOR**
11   **        DURING THE CLASS PERIOD SHOULD BE EXCLUDED**

12          Guay also opines that, if executives are going to engage in fraudulent behavior that deceives

13   investors, they expect to receive some benefit (typically financial) from it.  *See* Report, ¶¶8, 41-42,

14   81, 91-92; Guay Depo. at 40:12-41:4, 61:18-62:7.  Based on this unsupported assumption regarding

15   the mental state of corporate executives, Guay further opines that "the absence of stock sales during

16   the Class Period (as well as the lack of arguments that the Individual Defendants received any other

17   financial benefits from the alleged fraud through bonuses or other forms of compensation) shows

18   that the ***Individual Defendants received no financial profit from the fraud*** Plaintiffs allege in this

19   case." Report, ¶41.  *See also* Guay Depo. at 98:10-99:8, 206:15-211:9.  Readily conceding that he

20   "[does not] know what the actual mental state of either [Individual] [D]efendant was" (*Id*. at 68:22-

21   24), Guay nevertheless concludes in circular fashion that the lack of financial benefit shows there

22   was no intent to deceive.  Report, ¶8 (finding trading behavior that did not result in a "benefit" to be

23   "inconsistent with Plaintiffs' allegations" of fraud); Guay Depo. 105:15-107:16 (that the Individual

24   Defendants were "foregoing [sic] financial profits" from stock sales "would be inconsistent with the

25   plaintiffs' allegations").  As above, these incursions into the Individual Defendants' state of mind are

26   impermissible and should be excluded.  *See Oracle*, 2018 WL 6511146, at *3  (precluding expert

27   testimony on "'intent, motive, or state of mind'").  Guay is not capable of, and should not be

28

1   permitted to, testify about what Defendants believed or expected would be the result of their

2   fraudulent behavior.  *Siring*, 927 F. Supp. 2d at 1077.

3          Guay's opinions regarding the Individual Defendants' "personal profit" or "personal benefit"

4   as it relates to their scienter are also excludable because Guay egregiously misstates the law and

5   allowing him to essentially instruct the jury based on his misunderstanding would be confusing,

6   misleading, and improper.  Guay's testimony on this topic reveals his lack of familiarity with the

7   legal standard for scienter and his corresponding mistaken assumption that scienter requires a

8   showing of motive, whether financial or otherwise.  Guay testified that he understands scienter

9   "from a layperson's perspective, to mean motivations or incentives to engage in certain types of

10   behavior."  Guay Depo. at 14:1-5; *see also id.* at 66:4-19 ("from my general experience . . . part of

11   these complaints is generally to show that the executives had some motive to engage in the

12   behavior"); 104:24-105:6 ("Q. And you're not aware of the legal significance of the fact that

13   defendants received no financial profit from their fraud . . . correct? A. I don't think I know what the

14   legal significance is."); 199:15-19 ("Q. And you don't know the legal significance of the fact that

15   they did or did not make financial gains on the question of their state of mind? A. I don't.").  But the

16   law is clear that motive is ***not*** required to demonstrate scienter.  The Ninth Circuit holds that

17   "[s]cienter can be established even if the officers who made the misleading statements did not sell

18   stock during the class period."  *No. 84 Employer-Teamster Joint Council Pension Tr. Fund v. Am.*

19   *W. Holding Corp.*, 320 F.3d 920, 944 (9th Cir. 2003).  And the Supreme Court holds that "the

20   absence of a motive allegation is not fatal" to a claim for securities fraud.  *Tellabs, Inc. v. Makor*

21   *Issues & Rights, Ltd.*, 551 U.S. 308, 325 (2007).[2]  This Circuit's Model Civil Jury Instruction on

22   scienter, accordingly, does not make ***any*** reference to motive, let alone to "personal profit."  *See*

23   Ninth Circuit Civil Model Jury Instructions, No. 18.5 Securities – Knowingly.  Because intent to

24   ─────────────

[2]   *Accord In re Entropin, Inc. Sec. Litig.*, 487 F. Supp. 2d 1141, 1148-53 (C.D. Cal. 2007)
25   (rejecting argument that "scienter [is] negated because [Defendants] did not sell their stock . . . when
they could have realized a substantial profit"); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th
26   Cir. 1992) (reversing summary judgment on issue of scienter despite lack of insider sales where
evidence showed defendants' actual knowledge); *Commodity Futures Trading Comm'n v. JBW*
27   *Capital*, 812 F.3d 98, 108 (1st Cir. 2016) (lack of stock sales did not "rebut a finding of scienter"
where there was "direct evidence not only that [defendant] had accurate information . . . but also that
28   he intentionally or recklessly withheld that information from investors").

1  deceive – scienter – is not dependent upon insider trading or personal financial motive, Guay's

2  testimony rests on a faulty legal premise. It should therefore be excluded as misleading and

3  irrelevant. *See Quinn v. Fresno Cty. Sheriff*, 2012 WL 2995477, at \*8-\*9 (E.D. Cal. July 23, 2012)

4  (excluding expert who did not apply correct legal standard because expert's testimony could

5  "confuse and mislead the jury").[3]

6           It is true that the Ninth Circuit permits an expert to "'be called upon to aid the jury in

7  understanding the facts in evidence, even though reference to those facts is couched in legal terms.'"

8  *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004). But what

9  remains of Guay's testimony – once it is divorced from the improper state-of-mind opinions and

10  mistaken legal principles – is bare fact testimony that the Defendants did not sell any stock during

11  the Class Period. Certainly, the jury does not require an expert to "aid" them "in understanding" that

12  purported fact (which is, in any event, not entirely true: during the Class Period, Noto leveraged

13  191,581 shares worth over $8 million to satisfy his tax liabilities, and Costolo did the same with $3

14  million worth of shares). *Hangarter*, 373 F.3d at 1017. The jury likewise requires no help in

15  understanding that if the Defendants did not sell stock, they also "did not profit through selling at

16  allegedly inflated prices." Report, ¶91. Guay concedes as much. Guay Depo. at 108:23-109:14

17  ("A. My point is a simple one, that by allowing the [Rule 10b5-1] plan to continue, [Costolo] would

18  have sold those shares at a higher price relative to what the price was at the end of the class period

19  than if he had canceled the plan. Q. And . . . we know that just from looking at the historical stock

20  prices. A. Well, yes, *so that's true just based on the stock prices*. The inference of it being

21  inconsistent with the plaintiffs' allegations would be that, by doing that, he had some foregone [sic]

22

---

23  [3]    It should be noted that Plaintiffs do not agree that Defendants had no motive to commit fraud.
      As the Court has already recognized, "the[] Complaint does not rely on allegations of an improper
24    financial motive to demonstrate scienter, nor does it reference stock sales," but instead Plaintiffs
      claim "that Defendants were motivated by an attempt to live up to the overly optimistic promises
25    made at Analyst Day." ECF No. 113 at 40. Guay acknowledged at his deposition that his opinions
      "relate to economic behavior and economic incentives," and that if Plaintiffs alleged "some other
26    kind of benefit, then that wasn't clear to [him]." Guay Depo. at 62:24-63:8, 64:4-11; *see also id.* at
      210:25-211:4 ("my understanding is that plaintiffs are alleging that somehow Mr. Costolo and Mr.
27    Noto received some benefit from this material non-public information"). Guay also agreed that
      executives can be motivated by a variety of ***non***-financial objectives, including preserving their jobs
28    and reputations. Guay Depo. at 99:9-100:5.

1    profits, yes."). Because "an expert should be allowed to state findings as to what happened ***only*** as

2    to those specific aspects as to which his specialized knowledge [and] training . . . are critical to the

3    analysis," Guay's testimony is improper and should be excluded. *See Biotechnology Value Fund,*

4    *L.P. v. Celera Corp.*, 2015 WL 138168, at *1 (N.D. Cal. Jan. 9, 2015) (emphasis in original).

5            Guay's testimony that "the Individual Defendants received no financial profit from the

6    fraud . . . allege[d] in this case" (Report, ¶41) should be excluded as impermissible expert opinion on

7    state of mind, premised on an incorrect understanding of the law, and on a matter well within the

8    common understanding of the average juror.

9    **V.    GUAY'S OPINIONS REGARDING THE REASONS FOR, AND
             "REASONABLENESS" OF, DEFENDANTS' TRADING BEHAVIOR
10           SHOULD BE EXCLUDED**

11           Continuing his improper excursion into others' motives, Guay proposes to testify regarding

12   the reasons for, and reasonableness of, these trading decisions: Costolo's sale of $33.4 million in

13   Twitter stock before the Class Period; Costolo's and other executives' subsequent cancellation in

14   February 2015 of their Rule 10b5-1 trading plans (effectively preventing them from further trading);

15   and Noto's purchase of Twitter stock during the Class Period. Specifically, Guay proposes to testify

16   that:

17   •    Costolo's $33.4 million sale of Twitter stock before the Class Period was
          "***unsurprising***," and was both "***consistent with***" and "***motivated by***" a need to
18        diversify his portfolio (Report, ¶¶8, 47, 48 n.86, 51, 56);

19   •    The cancellation of trading plans by Costolo and other executives (including the
          Chair of the Board, the President of Global Revenue, and Twitter's General Counsel)
20        in February 2015 was "***motivated*** at least in part by . . . the investment community's
          reaction" to Costolo's above-referenced stock sales and is "consistent" both with
21        "***concern***[]" over "how their actions were perceived by the public" and the
          executives' "***desire*** . . . to demonstrat[e] to the public that they believed in the long-
22        term value of the Company" (Report, ¶¶57, 71, 77-79, 81-82); and
23

24   •    Noto's purchase of 13,294 shares (1% of his total Twitter stock holdings) was
          "because of his ***confidence*** in the Company" and "to send a positive signal to the
25        market" (Report, ¶92).

26           As with the other deficient opinions identified herein, Guay's testimony as to "why [Costolo,

27   Noto, and other Twitter executives] did or did not take a particular action" are excludable as

28   impermissible expert testimony on these individuals' state of mind. *Oracle*, 2018 WL 6511146, at

1   *3; *see also Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280, 294 (N.D. Cal. 2017) ("[I]ntent,

2   motive, [and] state of mind" are "issues better left to a jury.").  Put simply, Guay may not opine

3   about Costolo's, Noto's, and other executives' "choices" or "decision-making."  *In re Bard IVC*

4   *Filters Prods. Liab. Litig.*, 2019 WL 1615080, at *4 (D. Ariz. Apr. 16, 2019).

5        Moreover, Guay's opinions regarding why the Individual Defendants and others purchased,

6   sold, or did not sell Twitter stock are based on nothing more than his unquestioning acceptance of

7   selected deposition testimony and documents.  Guay acknowledged during his deposition that he did

8   not "know with certainty why . . . they did what they did at any point in time."  Guay Depo. at 135:1-

9   5; *see also id.* at 60:15-19 (agreeing that he "would not" be able to offer an opinion on Defendants'

10  state of mind).  Nevertheless, Guay definitively concludes the Defendants' trading behavior is

11  "***based on diversification, liquidity and signaling reasons***," and "cannot be used to support an

12  allegation of an intent to defraud."  Report, ¶8; *see also id.*, ¶47 (citing a triple-hearsay email for the

13  reasons Costolo sold stock leading up the Class Period); ¶¶79-80 (chastising Plaintiffs' expert for not

14  "accepting Mr. Costolo's explanation" for his trading plan cancellation, and crediting the same

15  testimony);[4] ¶92 (opining on Noto's "stated intent" for purchasing shares based on a private email

16  Noto wrote).  This testimony is plainly an improper opinion on witness credibility and should be

17  excluded on that basis.  *Volterra*, 2013 WL 6905555, at *25 ("It is well-established that an expert

18  may not invade the province of the jury by testifying about the credibility of witnesses.").

19        Underscoring that Guay seeks simply to "'substitute [his] judgment for the jury's,'" *United*

20  *States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017), is the fact that Guay did not apply any particular

21  expertise or experience in reaching his conclusions, but merely accepted the Defendants'

22  explanations for their trading behavior at face value.  *See, e.g.*, Report, ¶¶47, 80, 92.  Indeed, Guay

23  failed to perform any analysis above and beyond what the jury could perform: he confirms he has not

24  reviewed either Defendants' personal financial records, has not done any analysis of Noto's total

25  _____

26  [4]   Guay's testimony on this topic is particularly problematic because it is disconnected from
    Costolo's actual deposition testimony.  At deposition, Costolo was unable to state with any certainty
    why he canceled his trading plan.  *Compare* Deposition Transcript of Richard Costolo, dated

27  March 25, 2019 (Ex. C) at 325:7-23 *with* Guay Depo. at 181:21-185:18.  Guay ultimately conceded
    during his deposition that "there's a possibility" that other factors beyond media scrutiny could have

28  played a role in Costolo's cancellation of his trading plan.  *Id.* at 185:13-18.

1   wealth relative to his Class-Period stock purchases, and has not considered whether Costolo or any

2   other executives were aware of material non-public information at the time of their sales or their

3   cancellations. *See* Guay Depo. at 33:14-34:8; 85:1-86:14; 148:1-10; 159:6-160:16. At deposition,

4   Guay could only describe his methodology as "looking at" whether the evidence was "consistent or

5   inconsistent" with Plaintiffs' allegations – which is precisely the function of the jury. Guay Depo. at

6   92:15-23; *see also id.* at 160:18-22. Guay's proposed testimony that Costolo, Noto, and others had

7   "non-nefarious" reasons (Report, ¶92) for their trading does no more than summarize cherry-picked

8   documents and testimony without any application of specialized knowledge, and draw speculative

9   inferences about these executives' state of mind. Because weighing the evidence and drawing

10  inferences from it are tasks exclusively within the jury's purview, Guay's testimony about the

11  reasons for Defendants' trading should be excluded. *See United States v. Pac. Gas & Elec. Co.*,

12  2016 WL 1640462, at *2 (N.D. Cal. Apr. 26, 2016) ("[I]t would be improper for [plaintiff's expert]

13  to 'simply rehash otherwise admissible evidence about which he has no personal knowledge.'").

14         Guay's opinion that Noto's purchase of Twitter stock during the Class Period was "'to send a

15  positive signal to the market'" (Report, ¶92) is excludable on the additional bases that Guay once

16  again misapprehends the law and addresses a matter that is within the common understanding of the

17  average juror. As discussed above, Guay is not a legal expert, and admits he "do[es] [not] know

18  what legal significance it has if an executive purchases shares at an inflated price." Guay Depo. at

19  86:11-14. Yet, he appears poised to opine that Noto's purchase of Twitter shares amounting to less

20  than 1% of his total Twitter holdings negates Plaintiffs' claim of securities fraud. Report, ¶¶8, 92.

21  But the purchase of shares does not insulate an executive from liability for securities fraud or negate

22  a finding of scienter. *See, e.g.*, *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 691 (6th Cir. 2004)

23  ("We also reject the Individual Defendants' contention that their purchase of shares during the Class

24  Period refutes any inference that they knowingly or recklessly mislead the market to increase the

25  stock's price."). Guay should not be allowed to mislead the jury into believing that the law says

26  otherwise. *Diaz*, 876 F.3d at 1197 ("[T]his court has repeatedly affirmed that 'an expert witness

27  cannot give an opinion as to . . . an ultimate issue of law.'"); Fed. R. Evid. 702.

28

1    Moreover, once Guay's opinion regarding Noto's stock purchase is stripped of the improper

2    state of mind and legal opinions, all that is left is the unremarkable fact that Noto incurred a cost that

3    he would otherwise have avoided "if he had not purchased these shares during the Class Period."

4    Report, ¶92. Guay said at deposition that he was "simply . . . point[ing] out that" Noto's share

5    purchase "would have cost him financially." Guay Depo. at 75:17-76:9; *see also id.* at 77:2-11

6    ("A. . . . if the plaintiffs' allegations are correct, this would have been costly . . . for Mr. Noto.

7    Q. And that's all? A. Primarily as a summary, yes, with respect to that purchase."); *see also id.* at

8    81:18-82:10 (noting that if the share price was inflated, Noto's purchase was "financially costly").

9    As Guay admits, "[w]hat [he] did with respect to Mr. Noto's trades is simply a calculation." Guay

10    Depo. 85:1-13. The jury is absolutely capable of doing the same "calculation," and do not require

11    Guay (or any other expert) to explain to them that Noto's purchase "cost him a fair bit of cash."

12    Guay Depo. at 76:10-21; *see Wagner v. ABW Legacy Corp, Inc.*, 2016 WL 880371, at *8 (D. Ariz.

13    Mar. 8, 2016) (excluding expert testimony that was "within the common understanding of the jury").

14    **VI.    CONCLUSION**

15    For the reasons stated herein, Plaintiffs respectfully request that the Court exclude Guay's

16    testimony (1) that the Individual Defendants' decisions to purchase, sell, or refrain from trading in

17    Twitter stock were "economically rational" and thus "contrary to an allegation of an intent to

18    defraud" (Report, ¶¶8, 42, 46, 56, 92); (2) that the Individual Defendants engaged in trading

19    behavior during the Class Period that is "inconsistent with Plaintiffs' allegations that they used

20    allegedly material, non-public information for their benefit" (Report, ¶¶8, 41, 42, 81, 91, 92); and

21    (3) regarding the reasons for, and the "reasonableness" of, the trading behaviors of the Individual

22    Defendants and other Twitter executives (Report, ¶¶57, 71, 77, 78, 79, 81, 82, 92).

23    DATED: January 28, 2020                    Respectfully submitted,

24

25    _____
                                 s/ GREGG S. LEVIN
26                                 GREGG S. LEVIN

27

28

1
2             MOTLEY RICE LLC
             GREGG S. LEVIN

MOTLEY RICE LLC
GREGG S. LEVIN
LANCE V. OLIVER
MEGHAN S.B. OLIVER
MAX N. GRUETZMACHER
CHRISTOPHER F. MORIARTY
MEREDITH B. WEATHERBY
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
Telephone:  843/216-9000
843/216-9450 (fax)
glevin@motleyrice.com
moliver@motleyrice.com
mgruetzmacher@motleyrice.com
cmoriarty@motleyrice.com
mweatherby@motleyrice.com

ROBBINS GELLER RUDMAN & DOWD LLP
DANIEL S. DROSMAN
TOR GRONBORG
LUCAS F. OLTS
NATHAN R. LINDELL
SUSANNAH R. CONN
J. MARCO JANOSKI GRAY
CHRISTOPHER R. KINNON
HEATHER G. SCHLESIER
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
ddrosman@rgrdlaw.com
torg@rgrdlaw.com
lolts@rgrdlaw.com
nlindell@rgrdlaw.com
sconn@rgrdlaw.com
mjanoski@rgrdlaw.com
ckinnon@rgrdlaw.com
hschlesier@rgrdlaw.com

*Co-Class Counsel for the Class*

BLEICHMAR FONTI & AULD LLP
LESLEY E. WEAVER
555 12th Street, Suite 1600
Oakland, CA  94607
Telephone:  415/445-4003
415/445-4020 (fax)
lweaver@bfalaw.com

*Liaison Counsel*

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on January 28, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ GREGG S. LEVIN
GREGG S. LEVIN

MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
Telephone:  843/216-9000
843/216-9450 (fax)

E-mail:  glevin@motleyrice.com

**Mailing Information for a Case 4:16-cv-05314-JST In re Twitter Inc. Securities Litigation**

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ramzi Abadou**
  ramzi.abadou@ksfcounsel.com,Ashley.Errington@ksfcounsel.com

- **Jeffrey S. Abraham**
  jabraham@aftlaw.com

- **Peretz Bronstein**
  peretz@bgandg.com

- **Alexis Susan Coll-Very**
  acoll-very@stblaw.com,cterricone@stblaw.com

- **Susannah Ruth Conn**
  SConn@rgrdlaw.com,Msonney@rgrdlaw.com,crosini@rgrdlaw.com,SConn@ecf.courtdrive.com,tdevries@rgrdlaw.com,e_file_sd@rgrdlaw.com,NHines@rgrdlaw.com

- **Patrick V. Dahlstrom**
  pdahlstrom@pomlaw.com

- **Anne Kathleen Davis**
  adavis@bfalaw.com

- **Brett Hom De Jarnette**
  bdejarnette@cooley.com,galancr@cooley.com

- **Daniel S. Drosman**
  DanD@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_sd@rgrdlaw.com,tkoelbl@rgrdlaw.com,DanD@ecf.courtdrive.com,e_file_sf@rgrdlaw.com

- **John C. Dwyer**
  dwyerjc@cooley.com,giovannonib@cooley.com,eFilingNotice@cooley.com,efiling-notice@ecf.pacerpro.com

- **Laura Marie Elliott**
  lelliott@cooley.com,dfoster@cooley.com,efiling-notice@ecf.pacerpro.com

- **Joseph A. Fonti**
  jfonti@bfalaw.com,ndennany@bfalaw.com

- **Janet A Gochman**
  jgochman@stblaw.com

- **Kathleen Howard Goodhart**
  kgoodhart@cooley.com,eFilingNotice@cooley.com,efiling-notice@ecf.pacerpro.com,cclark@cooley.com,jpalaganas@cooley.com

- **Marc Gorrie**
  mgorrie@pomlaw.com

- **Tor Gronborg**
  torg@rgrdlaw.com

- **Max Nikolaus Gruetzmacher**
  mgruetzmacher@motleyrice.com,kquillin@motleyrice.com

- **Alex C. Hemmer**
  alex.hemmer@wilmerhale.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com

- **James Michael Hughes**
  jhughes@motleyrice.com,erichards@motleyrice.com,kweil@motleyrice.com

- **Joseph Marco Janoski Gray**
  mjanoski@rgrdlaw.com,tdevries@rgrdlaw.com

- **Lewis S. Kahn**
  lewis.kahn@ksfcounsel.com

- **Christopher J. Keller**
  ckeller@labaton.com,5497918420@filings.docketbird.com,lpina@labaton.com,drogers@labaton.com,electroniccasefiling@labaton.com

- **Christopher Ryan Kinnon**
  ckinnon@rgrdlaw.com,CKinnon@ecf.courtdrive.com

- **James Glenn Kreissman**
  jkreissman@stblaw.com,janie.franklin@stblaw.com,sblake@stblaw.com

- **Gregg S. Levin**
  glevin@motleyrice.com,sturman@sturman.ch,lmclaughlin@motleyrice.com,erichards@motleyrice.com,kweil@motleyrice.com

- **Jeremy A Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com,lpvega@pomlaw.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com

- **Nathan R. Lindell**
  nlindell@rgrdlaw.com

- **Alejandro Nicholas Mayorkas**
  alejandro.mayorkas@wilmerhale.com,WHDocketing@wilmerhale.com

- **Francis P. McConville**
  fmcconville@labaton.com,HChang@labaton.com,lpina@labaton.com,drogers@labaton.com,9849246420@filings.docketbird.com,electroniccasefiling@labaton.com

- **Dean Michael McGee**
  dean.mcgee@stblaw.com

- **Kim Elaine Miller**
  kim.miller@ksfcounsel.com,dawn.hartman@ksfcounsel.com

- **Christopher Francis Moriarty**
  cmoriarty@motleyrice.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **William H. Narwold**
  bnarwold@motleyrice.com,mjasinski@motleyrice.com,ajanelle@motleyrice.com

- **Stephen Cassidy Neal**
  sneal@cooley.com,wilsonla@cooley.com

- **Lance V. Oliver**
  loliver@motleyrice.com

- **Meghan Shea Blaszak Oliver**
  moliver@motleyrice.com

- **Lucas F. Olts**
  Lolts@rgrdlaw.com,e_file_sd@rgrdlaw.com,LOlts@ecf.courtdrive.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,egoodman@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Michael J Pendell**
  mpendell@motleyrice.com

- **Charles J. Piven**
  piven@browerpiven.com

- **Aarti G. Reddy**
  areddy@cooley.com,efiling-notice@ecf.pacerpro.com,cdickerson@cooley.com

- **Rosemary M. Rivas**
  rrivas@zlk.com,rmah@zlk.com,jtash@zlk.com,jkornhaber@zlk.com

- **Quentin Alexandre Roberts**
  quentin.roberts@diamondmccarthy.com

- **Laurence Matthew Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net

- **Scott H. Saham**
  scotts@rgrdlaw.com,ScottS@ecf.courtdrive.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com

- **Shane Palmesano Sanders**
  ssanders@robbinsllp.com,notice@robbinsllp.com

- **Jessica Valenzuela Santamaria**
  jsantamaria@cooley.com,galancr@cooley.com

- **Heather G. Schlesier**
  hschlesier@rgrdlaw.com,HSchlesier@ecf.courtdrive.com

- **Simona Gurevich Strauss**
  sstrauss@stblaw.com,sblake@stblaw.com

- **Phong L. Tran**
  phongt@johnsonfistel.com

- **David Conrad Walton**
  davew@rgrdlaw.com

- **Meredith B. Weatherby**
  mbmiller@motleyrice.com

- **Lesley Elizabeth Weaver**
  lweaver@bfalaw.com,emily-aldridge-5965@ecf.pacerpro.com,lesley-weaver-4669@ecf.pacerpro.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,ShawnW@ecf.courtdrive.com,kmccarty@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Jonathan K. Youngwood**
  jyoungwood@stblaw.com,ManagingClerk@stblaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)