KELLI L. SAGER (State Bar No. 120162)
  kellisager@dwt.com
ERIC M. STAHL (State Bar No. 292637)
  ericstahl@dwt.com
SAM F. CATE-GUMPERT (State Bar No. 335715)
  samcategumpert@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California  90017-2566
Telephone:    (213) 633-6800
Facsimile:    (213) 633-6899

Attorneys for Non-Party Journalist
NICK BILTON

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| IN RE: TWITTER INC. SECURITIES LITIGATION | Case No. 4:16-CV-05314-JST (SK)<br><br>**NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA TO NON-PARTY JOURNALIST NICK BILTON**<br><br>[Declarations of Nick Bilton and Kelli L. Sager with Exhibits A-B and [Proposed] Order Concurrently Filed]<br><br>Date:        September 17, 2021<br>Time:        1:30 PM<br>Location:  Via videoconference |

DAVIS WRIGHT TREMAINE LLP

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on September 17, 2021, at 1:30 PM, or as soon thereafter as counsel may be heard, via videoconference (see Dkt. No. 624), non-party journalist Nick Bilton will, and hereby does, move this Court for an order quashing the subpoena (the "Subpoena") served on him by plaintiff KBC Asset Management NV, as class representative for the Plaintiffs ("Plaintiffs").  The Subpoena seeks to compel Mr. Bilton to testify at the trial in this matter in Oakland, California on September 22, 2021.

As set forth in more detail in the attached Memorandum of Points and Authorities, the Subpoena should be quashed under Fed. R. Civ. P. 45(d)(3)(A)(iii) because the testimony Plaintiffs are seeking from Mr. Bilton in this matter is subject to the qualified federal reporter's privilege under the First Amendment, which protects against compelled disclosure of information acquired in connection with newsgathering and reporting activities.  There is no doubt that the information sought from Mr. Bilton by Plaintiffs falls within this privilege; their own witness list identifies Mr. Bilton as a "journalist-author" who has reported extensively about Twitter, and describes the proposed topics of his testimony as his "[i]nterviews and communications while researching or writing about Twitter," and the "subjects relating to Twitter about which the witness has researched or written, including MAU [monthly active users], user growth, and user engagement [.]"  Dkt. No. 584 (Jt. Pretrial Statement) at 16-17. This is quintessential First Amendment activity.  See Memorandum, Section IV.A.

Plaintiffs cannot meet the strict standards for overcoming Mr. Bilton's constitutional protection, which requires them to demonstrate (1) that alternative sources have been exhausted; (2) that the information sought would not be cumulative; and (3) that the information sought is clearly relevant to an important issue – that is, that their claims rise or fall on the issue.  Plaintiffs cannot meet any of these requirements, let alone all of them.  Among other defects, it is clear that Plaintiffs have numerous alternative sources for any information Mr. Bilton might provide; he is not a percipient witness, and Plaintiffs' own trial witness list identifies more than a dozen fact witnesses on the topics of Twitter's alleged manipulation of user growth and engagement data, including current and former Twitter employees.  Nor can Plaintiffs meet their burden of

DAVIS WRIGHT TREMAINE LLP

demonstrating that any testimony they seek to elicit from him is not cumulative, or that it would meet the heightened relevance test required to overcome his First Amendment rights.  See Memorandum, Section IV.B.[1]

Counsel for Mr. Bilton attempted to resolve this matter with Plaintiffs' counsel, but they have declined to withdraw the trial subpoena, making this Motion necessary.  See concurrently-filed Declaration of Kelli L. Sager ¶ 5.  Counsel for the parties and Mr. Bilton agreed on a briefing and hearing schedule for this Motion, which the Court subsequently approved.  Id.; Dkt. No. 624.

This Motion is based on this Notice, the Memorandum of Points and Authorities, and the Declarations of Nick Bilton and Kelli L. Sager with Exhibits A-B, all matters of which this Court may take judicial notice, including the files and records in this action, and on such other argument as may be heard by this Court.

Dated:  August 27, 2021

DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER
ERIC M. STAHL
SAM F. CATE-GUMPERT

By:_____/s/ Kelli L. Sager_____
                Kelli L. Sager

Attorneys for Non-Party Journalist
Nick Bilton

---

[1] Mr. Bilton's state constitutional rights also should be considered; California's Constitution provides an absolute protection against compelling non-party journalists to testify about unpublished information in civil litigation.  See Memorandum, Section IV.C

2

NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA
4834-6324-1464v.1 3970207-000028

DAVIS WRIGHT TREMAINE LLP

1

## **TABLE OF CONTENTS**

2

**Page**

3

I.  SUMMARY OF ARGUMENT ............................................................................... 1

4

II.  ISSUES TO BE DECIDED.................................................................................. 3

5

III.  FACTUAL STATEMENT.................................................................................. 3

6

    A.  Non-Party Journalist And Author Nick Bilton........................................ 3

7

    B.  This Action............................................................................................... 4

8

    C.  The Trial Subpoena. ................................................................................ 5

9

IV.  PLAINTIFFS CANNOT OVERCOME THIS NON-PARTY JOURNALIST'S FIRST AMENDMENT RIGHTS.......................................................................... 7

10

11

    A.  The First Amendment Journalists' Privilege Applies To The Testimony Plaintiffs Seek From Mr. Bilton................................................................ 7

12

    B.  Plaintiffs Cannot Meet Their Burden Of Overcoming Mr. Bilton's First Amendment Rights................................................................................. 11

13

14

    C.  California's State Constitutional Shield Law Is a Special Factor That Weighs Heavily In Favor Of Quashing the Subpoena. ......................... 16

15

V.  CONCLUSION ................................................................................................ 18

16

17

18

19

20

21

22

23

24

25

26

27

28

DAVIS WRIGHT TREMAINE LLP

NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA
4834-6324-1464v.1 3970207-000028

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

<u>Alexander v. F.B.I.</u>,
   186 F.R.D. 21 (D.D.C. 1998) ................................................................. 9

<u>In re Application to Quash Subpoena to National Broadcasting Co., Inc.</u>,
   79 F.3d 346 (2d Cir. 1996) ........................................................... 14, 15

<u>Baker v. Goldman Sachs & Co.</u>,
   669 F.3d 105 (2d Cir. 2012) ................................................................ 10

<u>In re Behar</u>,
   779 F. Supp. 273 (S.D.N.Y. and C.D. Cal. 1991) ........................ 9, 13, 17

<u>Branzburg v. Hayes</u>,
   408 U.S. 665 (1972) ............................................................................. 7

<u>Bruno & Stillman, Inc. v. Globe Newspaper Co.</u>,
   633 F.2d 583 (1st Cir. 1980) .............................................................. 14

<u>Damiano v. Sony Music Entertainment, Inc.</u>,
   168 F.R.D. 485 (D.N.J. 1996) ............................................................. 14

<u>Farr v. Pitchess</u>,
   522 F.2d 464 (9th Cir. 1975) .................................................. 7, 8, 16, 17

<u>Gonzales v. NBC</u>,
   194 F.3d 29 (2d Cir. 1999) .................................................................... 7

<u>Harbert v. Priebe</u>,
   466 F. Supp. 2d 1214 (N.D. Cal. 2006) ............................................... 15

<u>Hurry v. Fin. Industry Regulatory Auth., Inc.</u>,
   No. 17-MC-80026-LB, 2017 WL 3701955 (N.D. Cal. Apr. 7, 2017) .................................. 11

<u>Jimenez v. City of Chicago</u>,
   733 F. Supp. 2d 1268 (W.D. Wash. 2010) ........................................... 15

<u>Larez v. City of Los Angeles</u>,
   946 F.2d 630 (9th Cir. 1991) ............................................................... 11

<u>Los Angeles Memorial Coliseum Comm'n v. National Football League</u>,
   89 F.R.D. 489 (C.D. Cal. 1981) .......................................................... 17

<u>In re McCray, Richardson, Santana, Wise, & Salaam Litig.</u>,
   928 F. Supp. 2d 748, <u>aff'd</u>, 991 F. Supp. 2d 464 (S.D.N.Y. 2013) ......................... 15

DAVIS WRIGHT TREMAINE LLP

NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA
4834-6324-1464v.1 3970207-000028

McGarry v. University of San Diego,
  154 Cal. App. 4th 97 (2007).................................................................................17

Miller v. Superior Court of San Joaquin Cty.,
  21 Cal. 4th 883 (1999)...........................................................................8, 16, 17

New York Times Co. v. Superior Court,
  51 Cal. 3d 453 (1990)..................................................................................16, 17

O'Grady v. Superior Court,
  139 Cal. App. 4th 1423 (2006)...............................................................................9

Planet Aid, Inc. v. Reveal, Ctr. for Investigative Reporting,
  2019 WL 935131 (N.D. Cal. Feb. 26, 2019)...........................................................9

Re/Max Int'l v, Century 21 Real Estate Corp.,
  846 F. Supp. 910 (D. Colo. 1994).........................................................................15

Riley v. City of Chester,
  612 F.2d 708 (3d Cir. 1979)..................................................................................12

Shoen v. Shoen,
  48 F.3d 412 (9th Cir. 1995).............................................................................passim

Shoen v. Shoen,
  5 F.3d 1289 (9th Cir. 1993).............................................................................passim

In re Slack,
  768 F. Supp. 2d 189 (D.D.C. 2011) .......................................................................9

United States v. Blanton,
  534 F. Supp. 295 (S.D. Fla. 1982)..........................................................................9

United States v. Burke,
  700 F.2d 70 (2d Cir. 1983)...............................................................................13, 15

United States v. Caporale,
  806 F.2d 1487 (11th Cir. 1986)............................................................................14

United States v. Cuthbertson,
  630 F. Supp. 139 (3d Cir. 1980)......................................................................8, 14

United States v. LaRouche Campaign,
  841 F.2d 1176 (1st Cir. 1988)................................................................................8

United States v. Marcos,
  1990 WL 74521 (S.D.N.Y. 1990) .........................................................................8

United States v. Reed,
  726 F.2d 570 (9th Cir. 1984).................................................................................14

NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA

4834-6324-1464v.1 3970207-000028

DAVIS WRIGHT TREMAINE LLP

Von Bulow v. Von Bulow,
    811 F.2d 136 (2d Cir. 1987) ...................................................................................... 9

Zerilli v. Smith,
    656 F.2d 705 (D.C. Cir. 1981) ............................................................................ 11, 14

**Statutes**

California Evidence Code § 1070 ........................................................................... 3, 16

**Rules**

Federal Rules of Civil Procedure
    26(a)(2) ...................................................................................................................... 12
    45 .......................................................................................................................... 7, 18

Federal Rules of Evidence
    402 .............................................................................................................................. 12
    701 .............................................................................................................................. 12
    702 .............................................................................................................................. 12
    801(d)(2) .................................................................................................................... 15
    805 .............................................................................................................................. 15

**Constitutional Provisions**

California Constitution Article I § 2(b) .......................................................... 3, 16, 17

U.S. Constitution amend. I ........................................................................................ passim

DAVIS WRIGHT TREMAINE LLP

NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA
4834-6324-1464v.1 3970207-000028

# I.     SUMMARY OF ARGUMENT

It has long been recognized that requiring journalists to become witnesses implicates their First Amendment rights.  As the Ninth Circuit recognized almost three decades ago, compelling the disclosure of information from journalists "can constitute a significant intrusion into the newsgathering and editorial processes.  Like the compelled disclosure of confidential sources, it may substantially undercut the public policy favoring the free flow of information."  Shoen v. Shoen, 5 F.3d 1289, 1292 (9th Cir. 1993) ("Shoen I") (quotation omitted).  Consequently, the Ninth Circuit – along with other courts across the country – has recognized a qualified privilege that protects journalists from being compelled to disclose the identities of their sources or other unpublished information gathered in the course of their newsgathering work.  As the Ninth Circuit explained:

> Rooted in the First Amendment, the privilege is a recognition that society's interest in protecting the integrity of the newsgathering process, and in ensuring the free flow of information to the public, is an interest "of sufficient social importance to justify some incidental sacrifice of sources of facts needed in the administration of justice."

Id. at 1292 (citations omitted); see also id. at 1295 (journalist privilege protects against "the disadvantage of a journalist appearing to be ... a research tool ... of a private party" and "the burden on journalists' time and resources in responding to subpoenas.").

Despite these recognized constitutional principles, and decades of law applying a First Amendment-based qualified journalists' privilege, Plaintiffs in this securities fraud class action are demanding that Nick Bilton, a journalist and author who regularly writes and reports about the technology business, testify at the September trial in this matter.  Plaintiffs are not seeking Mr. Bilton's testimony because he is a percipient witness to any of the Defendants' alleged acts that purport to give rise to Plaintiffs' claims – he is not – but instead, because he researched and authored a news article for Vanity Fair in 2016 that discusses information about Twitter that Plaintiffs claim is relevant to their lawsuit.  Plaintiffs openly admit that their intent is to question Mr. Bilton about his "reporting process" and about his interviews and research in reporting about

NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA
4834-6324-1464v.1 3970207-000028

Twitter.  See Dkt. No. 523 at 21; Dkt. No. 584 at 16-17.  Indeed, Plaintiffs have not identified a single topic about which they seek to question Mr. Bilton at trial other than his journalistic work. The First Amendment journalists' privilege unquestionably applies to this Subpoena.  See Section IV.A, infra.

Plaintiffs cannot meet their burden of overcoming Mr. Bilton's First Amendment rights. Before a non-party journalist can be compelled to testify about information gathered in the course of protected newsgathering, the party seeking the information must show that the information is "(1) unavailable despite exhaustion of all reasonable alternative sources; (2) noncumulative; and (3) clearly relevant to an important issue in the case."  Shoen v. Shoen, 48 F.3d 412, 416 (9th Cir. 1995) ("Shoen II").  Plaintiffs cannot satisfy any of these strict requirements, let alone all of them.

First, Plaintiffs have numerous alternative sources for any information Mr. Bilton might provide.  Indeed, the key Twitter employees referenced in Mr. Bilton's 2016 Article are identified as trial witnesses in the Plaintiffs' Joint Pre-trial Statement.  Dkt. No. 584.  Plaintiffs' witness list identifies more than a dozen witnesses that purportedly will testify about Twitter's alleged manipulation of user growth and engagement data, including the company's internal communications and public reporting about this topic during the period at issue.  Plaintiffs also undoubtedly have engaged in substantial discovery during the course of this lawsuit, which would have provided them with internal records from Twitter concerning all of the alleged events at issue.  In contrast, Mr. Bilton is not a percipient witness to any of the events described in the Article, nor have Plaintiffs suggested that he has first-hand information about these topics. Thus, Plaintiffs not only have multiple alternative sources of information, but any testimony they would seek from Mr. Bilton would be entirely cumulative, at best.[2]

Second, Plaintiffs also cannot show that Mr. Bilton's testimony is highly relevant to their case, such that their claims will rise or fall on his testimony; to the contrary, his reporting process is entirely irrelevant to any issue in dispute.  His First Amendment rights cannot be overcome

---

[2] Plaintiffs' own Amended Complaint asserted that the information in Mr. Bilton's Article was corroborated by the accounts of **eleven** confidential witnesses whose identities were known to Plaintiffs.  Dkt. No. 81 ¶ 78.

DAVIS WRIGHT TREMAINE LLP

simply because Plaintiffs hope he might offer testimony that they could use for impeachment, or speculate that he might have some other useful information.  See Section IV.B, infra.

In addition, because this matter concerns a California-based journalist, reporting about a California company, this Court should consider the important policies reflected in California's Shield Law, which was elevated to California's state constitution more than forty years ago.  See Cal. Const. Art. I § 2(b); Cal. Evid. Code § 1070.  The California Shield Law bars civil litigants from compelling the disclosure of unpublished information or sources from a non-party journalist.  Although this lawsuit is a federal proceeding, the strong public policy rationale for protecting journalists from becoming witnesses for a party is nonetheless instructive to this Court's consideration of the important First Amendment interests at stake.  See IV.C, infra.

For all of these reasons, Mr. Bilton respectfully requests that this Court quash the Subpoena served on him, and release him from any obligation to testify at the trial in this matter.

## II.        ISSUES TO BE DECIDED

1.        Whether Plaintiffs' subpoena to journalist Nick Bilton seeks testimony protected by the qualified First Amendment journalists' privilege.

2.        Whether Plaintiffs have met their burden of overcoming the qualified First Amendment journalists' privilege by proving that any admissible testimony Mr. Bilton could provide is (a) unavailable despite exhaustion of all reasonable alternative sources; (b) non-cumulative; and (c) clearly relevant to an important issue in the case.

## III.       FACTUAL STATEMENT

### A.        Non-Party Journalist And Author Nick Bilton

Nick Bilton is a journalist and author, based in Los Angeles.  Declaration of Nick ("Bilton Decl.") ¶ 2.  Since 2016, Mr. Bilton has worked as a special correspondent for Vanity Fair, which publishes a monthly magazine and website.  Id.  He also is a contributor to the cable business news channel CNBC, and to a podcast co-published by Vanity Fair and Cadence13 called "Inside the Hive."  Id.  Between 2003 and 2016, he worked for the New York Times, most recently as a technology reporter and columnist.  Mr. Bilton has researched and written on a variety of topics as a journalist and author, focusing primarily on technology.  Id.  He has written

NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA
4834-6324-1464v.1 3970207-000028

three books, including the New York Times-bestseller "Hatching Twitter: A True Story of Money, Power, Friendship, and Betrayal," published in 2013 (the "Book"), which recounted the origins of Twitter and the various power struggles between its founders; the Book was selected as "Best Book of the Year" by the Wall Street Journal.  Id.  In June 2016, Vanity Fair published an article written by Mr. Bilton, titled "Twitter Is Betting Everything on Jack Dorsey.  Will It Work?" (the "Article").

Mr. Bilton's work as a journalist – especially as one who reports on internal corporate affairs at large technology companies – depends on his sources understanding that he is independent, and not allied with the individuals or businesses he covers.  Bilton Decl. ¶ 9.  He is concerned that if sources view him as a potential investigative tool for private litigants, they will be deterred from speaking with him or providing information to him.  Id.  Mr. Bilton believes that testifying as a witness in this case, for (or against) either side, could impede his ability to gather and provide information to the public about matters of significant public concern, and could compromise his future reporting about issues in the technology industry that are likely to be issues during the trial, as well as about Twitter specifically.  Id.  He also is concerned that identifying sources to whom he had promised confidentiality, or disclosing the source of any material provided to him on background, would effectively destroy his ability to get information from sources in the future.  Id.

**B.    This Action.**

This matter was filed as a securities class action on September 16, 2016.  The operative consolidated Amended Complaint identifies KBC Asset Management NV as the lead plaintiff, and names as defendants Twitter, Inc., its former CEO Richard Costolo, and its former Chief Financial Officer Anthony Noto (collectively, "Defendants").  Dkt. No. 81 ("Amended Complaint") ¶¶ 12-15.  The Amended Complaint asserts two counts of securities fraud on behalf of a class of investors who acquired Twitter common stock between February 5, 2015 and July 28, 2015 (the "Class Period").  Id. ¶¶ 2, 158, 164-170.  Plaintiffs allege that Defendants misstated and manipulated its user engagement metrics, including by making false and misleading statements concerning Twitter's Monthly Active Users ("MAU") and Daily Active

NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA
4834-6324-1464v.1 3970207-000028

Users ("DAU"), two metrics commonly used to measure user growth on social networks like Twitter, in a manner that artificially inflated the price of Twitter stock.  Id. ¶¶ 3-8, 124, 134.

Plaintiffs assert that their fraud allegations are supported by numerous sources, including Twitter's SEC filings, Twitter's public conference calls and press releases, and "interviews with former employees of [Twitter]" conducted by class counsel.  Id. ¶¶ 1, 66-77.  Among the sources chronicled in the 86-page Amended Complaint are the alleged accounts of eleven "Confidential Witnesses," who are described as having direct knowledge supporting Plaintiffs' claims that Twitter manipulated user metrics.  See, e.g., id. ¶ 66 (Confidential Witness 1, a senior manager on the Growth and Engineering team involved in "projects that were designed to drive MAU growth."); id. ¶ 68 (Confidential Witness 3 with information on so-called "zombie users" who allegedly "signed onto Twitter once a month because they were prompted to sign in through an email or other services that require a Twitter login," thereby raising MAU numbers); id. ¶ 72 (Confidential Witness 6, who worked in Twitter's Trust and Safety Department and who allegedly had information suggesting Twitter was overreporting engagement metrics).

Plaintiffs' Amended Complaint also references the June 2016 Article written by Mr. Bilton.  Id. ¶ 78.  According to Plaintiffs' Amended Complaint, "The witness accounts and information provided by Twitter employees in [the Article] **corroborate** the accounts of the CWs [confidential witnesses] cited herein and further support a strong inference that Defendants acted with scienter."  Id. (emphasis added).  Plaintiffs focus on a portion of the Article that discusses internal Twitter management discussions about user growth in 2015, including statements attributed to Defendants Costolo (whom Dorsey replaced as CEO) and Noto, and former Twitter communications director Gabriel Stricker.  Id. ¶ 78.

Plaintiffs have listed Mr. Costolo, Mr. Noto and Mr. Stricker as witnesses who "will testify" at trial.  Dkt. No. 584 (Jt. Pretrial Statement) at 17, 20, 23.

## C.    The Trial Subpoena.

On July 29, 2021, Plaintiffs served Mr. Bilton with the Subpoena, demanding his attendance to testify at the trial in this case on September 22, 2021.  Bilton Decl. ¶ 6, Ex. B.

DAVIS WRIGHT TREMAINE LLP

NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA
4834-6324-1464v.1 3970207-000028

There is no dispute that Plaintiffs intend to question Mr. Bilton about information he obtained in the course of his news reporting.  In their witness list, Plaintiffs identify Mr. Bilton is a "journalist-author" who authored both the Book and the Article.  Dkt. No. 584 (Jt. Pretrial Statement) at 16-17.  Plaintiffs assert that they intend to question Mr. Bilton specifically about his "[i]nterviews and communications **while researching or writing about Twitter**" and "[t]he subjects relating to Twitter **about which the witness has researched or written**, including MAU, user growth, and user engagement."  Id. (emphasis added); see also Dkt. No. 523 (Plaintiffs' Opposition to Defendants' Motions In Limine) at 21 (Plaintiffs intend to question Mr. Bilton about his "**reporting process** and his first-hand **interviews and research that led to the Article**") (emphasis added).

Mr. Bilton is not a percipient witness to the alleged conduct at issue here; Plaintiffs do not claim that they are seeking testimony from him because they believe he has any direct knowledge or information relevant to any of Plaintiffs' claims.  Any information Mr. Bilton has concerning Twitter was gathered in the course of his work as a journalist and author.  Bilton Decl. ¶¶ 3, 8.  In the course of his newsgathering efforts, he obtained information from sources to whom he promised confidentiality; he also agreed not to identify particular information as coming from a particular source.  Bilton Decl. ¶ 4.

Counsel for Mr. Bilton has conferred with Plaintiffs' counsel in an attempt to resolve this matter, explaining Mr. Bilton's objections to the Subpoena as seeking information protected from compelled disclosure by the recognized journalists' privilege.  Declaration of Kelli L. Sager ("Sager Decl.") ¶ 4.  Although Plaintiffs' counsel stated that they do not intend to ask Mr. Bilton about the identity of any confidential sources, they do seek to ask him about whether unnamed and unidentified Twitter employees told him about the statements attributed to particular individuals in the Article.  Sager Decl. ¶ 4.  After two conference calls, Plaintiffs' counsel declined to withdraw the Subpoena.[3]

---

[3] Counsel for Mr. Bilton and counsel for the parties subsequently stipulated to a shortened briefing time and hearing date, and submitted a stipulation with those dates, which the Court subsequently approved.  Dkt. No. 624.

NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA
4834-6324-1464v.1 3970207-000028

DAVIS WRIGHT TREMAINE LLP

## IV.     PLAINTIFFS CANNOT OVERCOME THIS NON-PARTY JOURNALIST'S FIRST AMENDMENT RIGHTS.

Because Plaintiffs' trial subpoena to Mr. Bilton purports to "require[] disclosure of privileged or other protected matter," it must be quashed.  Fed. R. Civ. P. 45(d)(3)(A)(iii).  Plaintiffs seek to force Mr. Bilton to testify about information he gathered entirely in his work as a journalist and author, in the course of reporting about Twitter.  Bilton Decl. ¶¶ 3, 8, Ex. B; Dkt. No. 584 at 16.  The information sought from Mr. Bilton squarely falls within the protections of the First Amendment-based journalists' privilege.  Because Plaintiffs cannot meet their burden of overcome the qualified privilege's strict requirements, the Subpoena should be quashed.

### A.     The First Amendment Journalists' Privilege Applies To The Testimony Plaintiffs Seek From Mr. Bilton.

As the United States Supreme Court recognized almost fifty years ago, "without some protection for seeking out the news, freedom of the press could be eviscerated."  Branzburg v. Hayes, 408 U.S. 665, 681 (1972).  Although the Court in Branzburg found, under the particular circumstances presented there, that the reporters could not refuse to testify before a federal grand jury about their personal observations about the commission of alleged crimes, a majority of the Justices also recognized the need for First Amendment protection.  Id.  Following the Branzburg decision, the Ninth Circuit and other courts interpreted it as endorsing a qualified privilege for journalists against compelled disclosure of information acquired in the course of gathering and reporting news.  See, e.g., Farr v. Pitchess, 522 F.2d 464, 467 (9th Cir. 1975); Shoen I, 5 F.3d at 1292 & n.5.  As the Ninth Circuit has explained, compelling a journalist to become a witness, even if the testimony sought does not include confidential sources,[4] "harms the press' ability to gather information" and poses the risk that "journalists might well be shunned by persons who might otherwise give them information."  Id. at 1295; see also Gonzales v. NBC, 194 F.3d 29, 35

---

[4] Here, Mr. Bilton's reporting does involve promises of confidentiality to his sources.  Bilton Decl. ¶ 4.  Although Plaintiffs have claimed they do not intend to seek the identities of his confidential sources, they simultaneously have indicated that they do seek to have him identify whether the information in his Article came from a certain group of individuals at Twitter.  Sager Decl. ¶ 4.

DAVIS WRIGHT TREMAINE LLP

(2d Cir. 1999) (compelled testimony "risk[s] the symbolic harm of making [the reporter] appear

to be an investigative arm of the judicial system, the government, or private parties.").  To

protect these vital interests, the Ninth Circuit recognized a "partial First Amendment shield" that

"protects journalists against compelled disclosure in all judicial proceedings, civil and criminal

alike."  Shoen I, 5 F.3d at 1292 (quoting Farr, 522 F.2d at 467).

This qualified privilege shields journalists against the compelled disclosure of both

confidential and non-confidential information.  See Shoen I, 5 F.3d at 1294.  As the Ninth Circuit

has recognized, this protection is necessary because compelling journalists to provide even non-

confidential information "'can constitute a significant intrusion into the newsgathering and

editorial processes.  Like the compelled disclosure of confidential sources, it may substantially

undercut the public policy favoring the free flow of information that is the foundation for the

privilege.'"  Id., quoting United States v. Cuthbertson, 630 F.2d 139, 147 (3d Cir. 1980).  The

privilege is essential to protect "the vitality of the newsgathering process," given the "'lurking

and subtle threat to journalists and their employers if disclosure of outtakes, notes, and other

unused information, even if nonconfidential, becomes routine and casually, if not cavalierly,

compelled.'"  Shoen II, 48 F.3d at 416, quoting United States v. LaRouche Campaign, 841 F.2d

1176, 1182 (1st Cir. 1988).  These threats from compelled disclosure include "damaging

confidential sources' trust in the press' capacity to keep secrets and, in a broader sense, by

converting the press in the public's mind into an investigative arm of … the courts….  If

perceived as an adjunct of … the courts, journalists might well be shunned by persons who might

otherwise give them information without a promise of confidentiality[.]."  Shoen I, 5 F.3d at

1295-96 (citation omitted).  See also Miller v. Superior Court of San Joaquin Cty., 21 Cal. 4th

883, 886 (1999) (noting the threat to press autonomy from subpoenas "is particularly clear in

light of the press's unique role in society….  Because journalists not only gather a great deal of

information, but publicly identify themselves as possessing it, they are especially prone to be

called upon by litigants seeking to minimize the costs of obtaining needed information."); United

States v. Marcos, 1990 WL 74521, at *2 (S.D.N.Y. 1990) ("[m]any doors will be closed to

reporters who are viewed as investigative resources for litigants").  Consequently, the journalists'

privilege has been found to apply even where a reporter's testimony "is sought only to authenticate or confirm otherwise nonconfidential or public information." In re Slack, 768 F. Supp. 2d 189, 194 (D.D.C. 2011) ("[i]f a reporter's privilege did not apply to nonconfidential information, it would result 'in a wholesale exposure of press files to litigant scrutiny [and] would burden the press with heavy costs of subpoena compliance'"); United States v. Blanton, 534 F. Supp. 295, 296-297 (S.D. Fla. 1982) (quashing subpoena to reporter seeking verification about published statements).

There is no question that this constitutional protection applies to Mr. Bilton, a journalist and author, whom Plaintiffs identified as a witness expressly because of his newsgathering and reporting conduct. Dkt. No. 584. As the Ninth Circuit has noted, the First Amendment journalists' privilege applies to individuals, like Mr. Bilton, who engage in newsgathering to disseminate information to the public. See Shoen I, 5 F.3d at 1293 ("the journalist's privilege is designed to protect investigative reporting, regardless of the medium used to report the news to the public."), citing Von Bulow v. Von Bulow, 811 F.2d 136 (2d Cir. 1987) (applying privilege to book author). See also O'Grady v. Superior Court, 139 Cal. App. 4th 1423, 1467 (2006) (First Amendment privilege applies to all individuals who "gather, select, and prepare, for purposes of publication to a mass audience, information about current events of interest and concern to that audience."). Its protections are broadly applied to all manner of information obtained by journalists. See, e.g., Planet Aid, Inc. v. Reveal, Ctr. for Investigative Reporting, 2019 WL 935131, at *2 (N.D. Cal. Feb. 26, 2019) (applying privilege to journalist's conversation even where some of the topics were not intended for publication); Alexander v. F.B.I., 186 F.R.D. 21, 50 (D.D.C. 1998) (journalist's shield protected former presidential aide George Stephanopoulos from compelled disclosure with respect to his memoir recounting his White House experiences); In re Behar, 779 F. Supp. 273, 275-276 (S.D.N.Y. and C.D. Cal. 1991) (quashing Church of Scientology's subpoena to journalist for information used in first-person account of harassment by Church attorneys and investigators).

Plaintiffs' witness list identifies Mr. Bilton as a "journalist-author" who has written about Twitter, and describes his topics of testimony as "[i]interviews and communications while

DAVIS WRIGHT TREMAINE LLP

DAVIS WRIGHT TREMAINE LLP

researching or writing about Twitter" and "[t]he subjects relating to Twitter about which the witness has researched or written[.]"  Dkt. No. 584, at 16-17; Dkt. No. 523 at 21 (Plaintiffs intend to question Mr. Bilton about his "reporting process" for the Article).  Mr. Bilton gathered information and wrote the Article in his capacity as a special correspondent for Vanity Fair; he also has written a book about Twitter; and makes his living gathering and disseminating information to the public.  Bilton Decl. ¶¶ 2, 3.  He has never told anyone, other than those involved in his research and writing, the identity of his confidential sources, or disclosed the sources of specific statements in his Article, nor has he shared any unpublished information outside of his newsgathering and reporting process.  In short, there can be no serious dispute that Mr. Bilton is protected by the First Amendment journalists' privilege.

Although Plaintiffs claim that they do not intend to seek testimony regarding Mr. Bilton's confidential sources (Sager Decl. ¶ 4), that does not entitle them to call Mr. Bilton as a witness at trial; it simply is not possible for them to question him without seeking information that the First Amendment protects.  As the Second Circuit Court of Appeals explained, in upholding an order quashing a subpoena, "even the most basic questions" about a journalist's work would require him to disclose "unpublished details of the newsgathering process."  Baker v. Goldman Sachs & Co., 669 F.3d 105, 109-10 (2d Cir. 2012) (applying New York shield statute; rejecting argument that subpoenaing party should be allowed to ask "whether the published information … was accurately reported").  That is even more true here, give that the very information Plaintiffs acknowledge they want from Mr. Bilton involves disclosing sources for particular statements that his Article does not identify.

For example, even foundational questions directed to Mr. Bilton about the Article's reporting of statements purportedly made in an internal Twitter meeting inevitably would seek disclosure of information about his sources, along with his "techniques for conducting his investigation" – information that the journalists' privilege squarely protects.  Id.  Moreover, even if Plaintiffs did not ask about the identities of sources, that would not restrict defense counsel from doing so.  As a Magistrate Judge in this District recognized, in ordering a subpoena to be quashed notwithstanding a similar promise from the subpoenaing party, "to mount an effective

NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA
4834-6324-1464v.1 3970207-000028

defense, [Twitter] would need to cross-examine" Mr. Bilton broadly about his reporting, further exposing him to the very burdens the constitutional privilege is meant to prevent.  In short, the Subpoena must be quashed because the testimony proposed "necessarily call for [Mr. Bilton] to reveal [privileged] information."  Hurry v. Fin. Industry Regulatory Auth., Inc., No. 17-MC-80026-LB, 2017 WL 3701955, at *1 (N.D. Cal. Apr. 7, 2017) (M.J. Beeler) (granting motion to quash deposition subpoena to non-party journalist because "the subpoena appears targeted only at privileged information," despite the subpoenaing party's promise not to "seek information protected by California's shield law").[5]

**B.     Plaintiffs Cannot Meet Their Burden Of Overcoming Mr. Bilton's First Amendment Rights.**

Under controlling Ninth Circuit law, a litigant may not obtain information that falls within the scope of the First Amendment journalists' privilege absent "a showing that the requested material is (1) unavailable despite exhaustion of all reasonable alternative sources; (2) noncumulative; and (3) clearly relevant to an important issue in the case."  Shoen II, 48 F.3d at 416 (emphases added).  Consistent with the constitutional policies underlying the privilege, courts apply this test strictly, to "ensure that compelled disclosure is the exception, not the rule." Id.  See also Zerilli v. Smith, 656 F.2d 705, 712 (D.C. Cir. 1981) ("if the privilege does not

---

[5] In opposing Twitter's Motions In Limine to exclude Mr. Bilton's testimony, Plaintiffs relied on Larez v. City of Los Angeles, 946 F.2d 630, 644 (9th Cir. 1991), for the proposition that it is permissible to allow a non-party reporter's testimony about quotations appearing in a newspaper.  See Dkt. No. 523 at 21.  That case did not even address – let alone decide – any issue related to the journalists' privilege.  946 F.2d at 641.  There, the district court admitted newspaper articles quoting statements made by Los Angeles Police Chief Daryl Gates at a press conference, but found testimony from the reporters who had written those articles to be "unnecessary."  Id. at 642.  The Court of Appeals reversed, finding that Gates' out-of-court statements were hearsay, and that the defendant was prejudiced by the admission of the articles because he was not able to cross-examine reporters about the statements.  Id. at 644.  The Circuit panel did not discuss whether the reporters could have been compelled to testify without violating their First Amendment rights.  But it does make clear that allowing Plaintiffs to question Mr. Bilton should not be permitted at all, if cross-examination would not be available to the Defendants – which it would not be here, given Mr. Bilton's clear First Amendment rights to protect his confidential sources and other unpublished information.

NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA
4834-6324-1464v.1 3970207-000028

DAVIS WRIGHT TREMAINE LLP

prevail in all but the most exceptional cases, its value will be substantially diminished"). Defendants cannot meet their burden as to <u>any</u> of these First Amendment requirements.

<u>First</u>, Plaintiffs cannot demonstrate that they have exhausted all reasonable alternative sources for any relevant and admissible information sought from Mr. Bilton.[6]  The exhaustion requirement is stringent: "compelled disclosure from a journalist must be a <u>last resort</u> after pursuit of other opportunities has failed." <u>Shoen I</u>, 5 F.3d at 1297-98 (emphasis added).  The subpoenaing party must make a "strong showing" that "there is <u>no</u> other source for the information requested." <u>Riley v. City of Chester</u>, 612 F.2d 708, 716-17 (3d Cir. 1979) (emphasis added) (exhaustion requirement cannot be satisfied by "a general assertion of necessity" or "conclusory statements"; reversing contempt finding against reporter who refused to identify confidential source where there were other available witnesses).

To the extent Plaintiffs seek to ask Mr. Bilton about Twitter's alleged activity regarding "MAU, user growth and user engagement" (Dkt. No. 584 at 17), they have many available alternative sources.  Most obviously, the Twitter executives whose 2015 activities are referenced in the Article – individual Defendants Costolo and Noto, and Mr. Stricker – all are available to Plaintiffs at trial, and all of them are identified on Plaintiffs' witness list. <u>Id.</u> at 17, 20, 23.[7] Plaintiffs also list an additional <u>twelve fact witnesses</u> that will testify about Twitter's internal communication and public reporting about MAU, DAU, and user growth and engagement during the Class Period, including Twitter's chief technical officer, the co-head of its Growth Team, its president of Global Revenue, a vice president of Finance, and senior vice presidents of

---

[6] As a threshold matter, Plaintiffs must identify **relevant and admissible** testimony they believe Mr. Bilton has to offer.  <u>See</u> Fed. R. Evid. 402; <u>Shoen II</u>, 48 F.3d at 416 ("actual relevance" required to overcome privilege).  Instead, the topics Plaintiffs have identified for Mr. Bilton are entirely irrelevant to this case, and cannot possibly suffice to overcome the journalists' privilege.  Plaintiffs want Mr. Bilton to testify about his "reporting process," and his interviews and other research he did as a journalist.  Dkt. No. 523 at 21; Dkt. No. 584, at 16-17.  These issues are irrelevant, as Mr. Bilton's reporting is not the subject of any claim or defense in this action.  Any testimony Mr. Bilton might offer about statements made by his sources or others would be hearsay.  <u>See</u> n.9, <u>supra</u>.  Any view Mr. Bilton might offer about the significance of his Article, or of any statement or omission by Defendants, would be inadmissible as undisclosed opinion testimony.  <u>See</u> Fed. R. Evid. 701, 702; Fed. R. Civ. P. 26(a)(2).

[7] Mr. Costolo and Mr. Noto also are listed as defense trial witnesses, as is Jack Dorsey. <u>Id.</u> at 24, 25.

---

12

DAVIS WRIGHT TREMAINE LLP

Engineering and Product.  Id. at 15-23.  Even in their Amended Complaint, Plaintiffs claimed to have information from individuals they described as insiders who worked at Twitter before or during the Class Period; Plaintiffs alleged that these individuals (then described as "confidential witnesses," but presumably identified in discovery) all have direct knowledge of information related to the alleged manipulation of MAU, reliance on "zombie users," and other information forming the basis for the class claims.[8]  See Amended Complaint ¶¶ 66-77.  Unlike Mr. Bilton, all of these witnesses are identified as percipient witnesses to Defendants' relevant activities, and all of them can testify without implicating First Amendment protections against compelled disclosure.

In short, there is no need for Mr. Bilton's testimony on these topics.  See Shoen I, 5 F.3d at 1297-98 (privilege barred subpoena where a "patently available other source" exists for the requested information).  Plaintiffs have not met the exhaustion requirement.

Second, Plaintiffs cannot meet their burden of demonstrating that the information sought from Mr. Bilton is non-cumulative.  "When testimony sought from a reporter would be cumulative of other evidence, it cannot be 'necessary or critical' to an action so as to override the First Amendment privilege."  In re Behar, 779 F. Supp. 273, 275-276 (S.D.N.Y. and C.D. Cal. 1991).  See also United States v. Burke, 700 F.2d 70, 77-78 (2d Cir. 1983) (quashing subpoena where information sought "would be merely cumulative and would not defeat [the reporters'] First Amendment privilege").  Here, Plaintiffs admit that the information Mr. Bilton reported in his Article merely "corroborate[s] the accounts of the [11 confidential witnesses]," cited in the Amended Complaint, regarding alleged data manipulation by Twitter.  Amended Complaint ¶ 78 (emphasis added).  Given Mr. Bilton's lack of any first-hand knowledge regarding Twitter's alleged manipulation of or communication about user growth and engagement, Plaintiffs cannot identify any information Mr. Bilton has on these topics that would not be cumulative of the testimony of the many fact witnesses they have identified, as well as other evidence they undoubtedly obtained in discovery about their claims.

---

[8] Presumably these "confidential witnesses" are among the individuals identified and included on Plaintiffs' witness list; if not, they are additional "alternative sources" with direct information about the alleged conduct at issue.

NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA

4834-6324-1464v.1 3970207-000028

DAVIS WRIGHT TREMAINE LLP

Third, Plaintiffs cannot show that the information they seek from Mr. Bilton is remotely relevant to an "important" trial issue, if it is relevant at all. See n.6, supra. As the Ninth Circuit has emphasized, the party seeking to overcome the journalist's privilege "must [make] a showing of actual relevance; a showing of potential relevance will not suffice." Shoen II, 48 F.3d at 416 (emphasis added). This constitutional standard is strictly applied. To demonstrate relevance, the subpoenaing party must show that the testimony at issue "go[es] to the 'heart of the matter'" and is "crucial to the case." Zerilli, 656 F.2d at 713. See also Damiano v. Sony Music Entertainment, Inc., 168 F.R.D. 485, 497 (D.N.J. 1996) (information sought must relate to a "central element" of the case). It is not sufficient that the information simply would be "useful." In re Application to Quash Subpoena to National Broadcasting Co., Inc., 79 F.3d 346, 351 (2d Cir. 1996) (applying New York shield law). Instead, there must be a finding that the claim for which the information is to be used "virtually rises or falls" on the admission of the materials. Id. Put another way, the party issuing the subpoena to the reporter must show that the information sought is "highly relevant" and is "necessary to the proper presentation of the case." United States v. Caporale, 806 F.2d 1487, 1504 (11th Cir. 1986). See also Cuthbertson, 651 F.2d at 196 (party seeking information from journalist must show it is "crucial to the claim").

Plaintiffs cannot meet this exacting standard. Plaintiffs are not seeking Mr. Bilton's testimony as a percipient witness with any first-hand knowledge about alleged misconduct within Twitter; Mr. Bilton has never been employed at Twitter. Bilton Decl. ¶ 8. Instead, Plaintiffs subpoenaed Mr. Bilton's testimony to learn more about his "reporting process," and to question him about his interviews and other research he did as a journalist. Dkt. No. 523 at 21; Dkt. No. 584, at 16-17. But these issues are not even relevant, much less critical or necessary, to Plaintiffs' claims.

To the extent that Plaintiffs are hoping to obtain some other unspecified information from Mr. Bilton, that speculative desire does not come close to meeting the heightened relevance test required by the constitutional reporter's privilege. See United States v. Reed, 726 F.2d 570, 577 (9th Cir. 1984) (subpoena cannot function as "a blind fishing expedition seeking unknown evidence"); see also Bruno & Stillman, Inc. v. Globe Newspaper Co., 633 F.2d 583, 597 (1st Cir.

NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA
4834-6324-1464v.1 3970207-000028

1980) (federal reporters' privilege does not permit "fishing expedition"); Harbert v. Priebe, 466 F. Supp. 2d 1214, 1216 (N.D. Cal. 2006) (subpoena barred where "mere belief" that information from newspaper might help case did not meet "clearly relevant" factor).

Finally, to the extent that Plaintiffs hopes to use Mr. Bilton's testimony to impeach any of Defendants' witnesses, that too is an insufficient basis for overcoming the reporter's privilege. See In re McCray, Richardson, Santana, Wise, & Salaam Litig., 928 F. Supp. 748, 758, aff'd, 991 F. Supp. 2d 464 (S.D.N.Y. 2013) ("impeachment material is ordinarily not critical or necessary to the maintenance or defense of a claim") (citing In re Application to Quash Subpoena to National Broadcasting Co., Inc., 79 F.3d at 352); see also United States v. Burke, 700 F.2d 70, 77-78 (2d Cir. 1983) (possibility of gaining cumulative impeachment evidence was inadequate to overcome journalist's First Amendment privilege); Re/Max Int'l v. Century 21 Real Estate Corp., 846 F. Supp. 910, 912 (D. Colo. 1994) (rejecting attempt to depose reporter where "[t]he only possible value in deposing [the reporter] is to impeach [a witness's] testimony."); Jimenez v. City of Chicago, 733 F. Supp. 2d 1268, 1273 (W.D. Wash. 2010) (quashing subpoena to journalist where the "only explicit relevance claimed (the impeachment of a third party) is merely collateral" to underlying lawsuit).[9]  Accordingly, Mr. Bilton's testimony does not meet the high threshold required to be "clearly relevant to an important issue in the case."  Shoen II, 48 F.3d at 416.

Because Plaintiffs cannot establish any of the requirements for overcoming the privilege, let alone all of them, the Subpoena should be quashed.

---

[9] Any "impeachment" evidence Plaintiffs might seek to elicit from Mr. Bilton – such as verifying that an individual actually made a statement attributed to him or her in the Article, for example – is likely to be inadmissible.  The Article consists entirely of out-of-court statements and, in some cases, multiple layers of hearsay.  Each out-of-court statement would have to fall within a hearsay exception to be admissible.  See Fed. R. Evid. 805.  But Plaintiffs cannot establish the foundation for any exception (for example, by determining whether Mr. Bilton's source for a particular assertion does or does not qualify as a "party-opponent" under Fed. R. Evid. 801(d)(2)) without impermissibly delving into the identities of Mr. Bilton's confidential sources, which they have promised not to do.  Sager Decl. ¶ 4.

DAVIS WRIGHT TREMAINE LLP

1    **C.      California's State Constitutional Shield Law Is a Special Factor That Weighs**

2             **Heavily In Favor Of Quashing the Subpoena.**

3             In addition to the specific requirements established in <u>Shoen II</u>, the Ninth Circuit has

4    instructed that in non-grand jury cases, courts must weigh the "First Amendment privilege and

5    the opposing need for disclosure … in light of the surrounding facts and a balance struck to

6    determine where lies the paramount interest."   <u>Farr v. Pitchess</u>, 522 F.2d 464, 468 (9th Cir.

7    1975).  In California, that judicial weighing should include consideration of the <u>absolute</u>

8    protection that California law provides to journalists.  This protection, enshrined in Article I,

9    § 2(b) of the state Constitution ("Shield Law"), provides that a "<u>reporter</u>, or other person

10   connected with or employed upon a newspaper, <u>magazine</u>, or other periodical publication …

11   shall not be adjudged in contempt . . . <u>for refusing to disclose the source of any information</u>

12   <u>procured while so connected or employed</u> … <u>or for refusing to disclose any unpublished</u>

13   <u>information</u> obtained or prepared in gathering, receiving or processing of information for

14   communication to the public."  Cal. Const., Art. I § 2(b) (emphasis added); <u>see also</u> Cal. Evid.

15   Code § 1070 (nearly identical provision).  As the California Supreme Court explained, in

16   describing both the federal and state protections for reporters:

17            A comprehensive reporter's immunity … has the effect of safeguarding "the

18            autonomy of the press."  [¶]  The threat to press autonomy [from subpoenas] is

19            particularly clear in light of the press' unique role in society.  As the institution

20            that gathers and disseminates information, journalists often serve as the eyes and

21            ears of the public.  Because journalists not only gather a great deal of information,

22            but publicly identify themselves as possessing it, they are especially prone to be

23            called upon by litigants seeking to minimize the costs of obtaining needed

24            information.

25   <u>Miller</u>, 21 Cal. 4th at 898 (citations omitted).

26            The protection of California's constitutional shield law is <u>absolute</u> when a party to a state

27   civil proceeding seeks to compel testimony from a non-party journalist.  <u>E.g.</u>, <u>New York Times</u>

28   <u>Co. v. Superior Court</u>, 51 Cal. 3d 453, 461 (1990) (Shield Law does not require balancing of

DAVIS WRIGHT TREMAINE LLP

16

competing interests in civil proceedings where journalist is not party); <u>Miller</u>, 21 Cal. 4th at 890. Plaintiffs seek to compel Mr. Bilton, who is not a party to this action, to testify about his research, reporting process, interviews, and communications – information that he obtained or prepared in gathering, receiving or processing of information for communication to the public, which unquestionably falls within the Shield Law's broad definition of "unpublished information." <u>See</u> Cal. Const., Art. I § 2(b) ("unpublished information" includes "information not disseminated to the public," including but not limited to "all notes … or other data of whatever sort not itself disseminated to the public through a medium of communication, whether or not published information based upon or related to such materials has been disseminated."). Were this a state civil case, or a federal case involving state-law claims, California's Shield Law would provide absolute protection against compelling Mr. Bilton to testify about his sources or unpublished information. <u>New York Times</u>, 51 Cal. 3d at 461; <u>McGarry v. University of San Diego</u>, 154 Cal. App. 4th 97, 120-21 (2007) (Shield Law absolutely protected against compelled disclosure from non-party in civil action).

Even where California's Constitution is not binding, authorities interpreting and applying this important state interest still have persuasive value, given the broad First Amendment-based balancing of interests. <u>See</u> <u>Farr</u>, 522 F.2d at 468. As this Court has recognized, "California law and federal common law appear to coincide" with respect to the principles underlying the state Shield Law and the federal journalists' privilege. <u>Los Angeles Memorial Coliseum Comm'n v. National Football League</u>, 89 F.R.D. 489, 495 (C.D. Cal. 1981). The "broad scope of California's shield law and the fact that it has now been embodied in one of the first articles of the state's constitution reflect a paramount public interest in the maintenance of a vigorous, aggressive and independent press capable of participating in robust, unfettered debate over controversial matters, an interest which has always been a principal concern of the First Amendment." <u>Id.</u> (quotation omitted). <u>See</u> <u>also</u> <u>In re Behar</u>, 779 F. Supp. at 274 (considering policies underlying New York's "Shield Law" in evaluating subpoena to journalist because "[w]hile the federal law of privilege controls, courts have also considered the applicable state law in the jurisdiction where the reporter's deposition was noticed").

NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA
4834-6324-1464v.1 3970207-000028

It is especially appropriate for the Court to consider the principles underlying California's Shield Law here, because the Subpoena is directed to a California-based journalist, concerning his newsgathering and reporting about a California-based company.  Mr. Bilton's reporting on Twitter, and about other large technology companies that influence contemporary life, has provided precisely the type of information that the Shield Law is designed to protect.  Enforcing the Subpoena and compelling him to testify would undermine his ability to function as a journalist, and could deter future sources from coming forward, depriving the public of vital information about companies that have significant impacts on their daily lives.  See Bilton Decl. ¶ 9.  The Court should quash the Subpoena, to avoid infringing Mr. Bilton's federal and state constitutional rights, and to protect the public interest in valuable news reporting.

## V.    CONCLUSION

For the reasons set forth above, the Subpoena directed to non-party journalist and author Nick Bilton should be quashed, pursuant to F.R.C.P. 45, because it seeks information that is protected by the qualified First Amendment journalists' privilege.

Dated:  August 27, 2021

DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER
ERIC M. STAHL
SAM F. CATE-GUMPERT


By:_____/s/ Kelli L. Sager_____
            Kelli L. Sager

Attorneys for Non-Party Journalist
Nick Bilton

DAVIS WRIGHT TREMAINE LLP