ROBBINS GELLER RUDMAN & DOWD LLP
DANIEL S. DROSMAN (200643)
TOR GRONBORG (179109)
ELLEN GUSIKOFF STEWART (144892)
LUCAS F. OLTS (234843)
J. MARCO JANOSKI GRAY (306547)
CHRISTOPHER R. KINNON (316850)
HEATHER G. SCHLESIER (322937)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

MOTLEY RICE LLC
GREGG S. LEVIN (admitted *pro hac vice*)
LANCE V. OLIVER (admitted *pro hac vice*)
MEGHAN S.B. OLIVER (admitted *pro hac vice*)
MAX N. GRUETZMACHER (admitted *pro hac vice*)
CHRISTOPHER F. MORIARTY (admitted *pro hac vice*)
MEREDITH B. WEATHERBY (admitted *pro hac vice*)
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
Telephone:  843/216-9000
843/216-9450 (fax)

*Co-Class Counsel for the Class*

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re TWITTER INC. SECURITIES LITIGATION | Case No. 4:16-cv-05314-JST (SK) |
| This Document Relates To: | CLASS ACTION |
| ALL ACTIONS. | PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF |
| | JUDGE: Hon. Jon S. Tigar |
| | DATE: March 10, 2022 |
| | TIME: 2:00 p.m. (via videoconference) |

**TABLE OF CONTENTS**

**Page**

NOTICE OF UNOPPOSED MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT ...........................................................................1

STATEMENT OF ISSUES TO BE DECIDED ...........................................................2

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................1

I.     PRELIMINARY STATEMENT ..........................................................................1

II.    OVERVIEW OF THE LITIGATION ..................................................................2

       A.     Factual Background ................................................................................2

       B.     Procedural History .................................................................................3

III.   THE PROPOSED SETTLEMENT........................................................................6

IV.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED .............8

       A.     Plaintiffs and Class Counsel Have Adequately Represented the Class .................10

       B.     The Proposed Settlement Is the Result of Good Faith, Arm's-Length Negotiations by Informed, Experienced Counsel Who Were Aware of the Risks of the Litigation.................................................................................11

       C.     The Settlement Provides Adequate Relief for the Class .......................12

              1.     The Costs, Risks, and Delay of Trial and Appeal Support Approval of the Settlement ..........................................................14

              2.     The Proposed Method for Distributing Relief Is Effective.......16

              3.     Proposed Attorneys' Fees, Litigation Expenses, and Plaintiffs' Award...........................................................................16

              4.     Identification of Agreements .....................................................18

       D.     The Proposed Plan of Allocation Treats Class Members Equitably and Does Not Confer Preferential Treatment ..............................................19

       E.     The Remaining Ninth Circuit Factors Support Preliminary Approval of the Settlement ....................................................................................20

              1.     The Extent of Discovery Completed and the Stage of the Proceedings at Which the Settlement Was Achieved Strongly Support Preliminary Approval.................................................20

              2.     Risks of Maintaining Class Action Status Through Trial..........21

              3.     Experience and Views of Counsel .............................................21

1

2                                                                                                **Page**

3

V.      THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23, THE PSLRA,
        AS WELL AS DUE PROCESS REQUIREMENTS ..........................................................22

VI.     THE PROPOSED CLAIMS ADMINISTRATOR .........................................................23

VII.    PROPOSED SCHEDULE OF EVENTS ........................................................................24

VIII.   CONCLUSION ...............................................................................................................25

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

<strong>TABLE OF AUTHORITIES</strong>

2
<strong>Page</strong>

3
**CASES**

4
*Alberto v. GMRI, Inc.*,
5
    252 F.R.D. 652 (E.D. Cal. 2008) .........................................................20

6
*Ang v. Bimbo Bakeries USA, Inc.*,
    No. 13-cv-01196-HSG, 2020 WL 2041934
7
    (N.D. Cal. Apr. 28, 2020) ...................................................................9

8
*Cheng Jiangchen v. Rentech, Inc.*,
    No. 17-1490-GW(FFMx), 2019 WL 5173771
9
    (C.D. Cal. Oct. 10, 2019) ...................................................................13

10
*Ching v. Siemens Indus., Inc.*,
11
    No. C 11-4838 MEJ, 2013 WL 6200190
    (N.D. Cal. Nov. 27, 2013) ...................................................................23

12
*Christine Asia Co. v. Yun Ma*,
13
    No. 1:15-md-02631 (CM)(SDA), 2019 WL 5257534
    (S.D.N.Y. Oct. 16, 2019) ...................................................................18

14
*Ciuffitelli v. Deloitte & Touche LLP*,
15
    No. 3:16-cv-00580-AC, 2019 WL 1441634
    (D. Or. Mar. 19, 2019) .......................................................................20
16

17
*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974).............................................................................22
18

19
*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................. *passim*

20
*Hefler v. Wells Fargo & Co.*,
21
    No. 16-cv-05479-JST, 2018 WL 4207245
    (N.D. Cal. Sept. 4, 2018) ..............................................................18, 19

22
*Hefler v. Wells Fargo & Co.*,
23
    No. 16-cv-05479-JST, 2018 WL 6619983
    (N.D. Cal. Dec. 18, 2018),
24
    *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285
    (9th Cir. 2020)................................................................. *passim*
25

26
*In re Capstone Turbine Corp. Sec. Litig.*,
    No. CV 15-8913-DMG(RAOx), 2020 WL 7889062
27
    (C.D. Cal. Aug. 26, 2020)....................................................................7

28

**Page**

*In re Charles Schwab Corp. Sec. Litig.*,
   No. C 08-01510 WHA, 2011 WL 1481424
   (N.D. Cal. Apr. 19, 2011) ...........................................................................20

*In re Extreme Networks, Inc. Sec. Litig.*,
   No. 15-cv-04883-BLF, 2019 WL 3290770
   (N.D. Cal. July 22, 2019) ...........................................................................10

*In re Haier Freezer Consumer Litig.*,
   No. 5:11-cv-02911-EJD, 2013 WL 2237890
   (N.D. Cal. May 21, 2013) .............................................................................9

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) ........................................................................8

*In re Illumina, Inc. Sec. Litig.*,
   No. 3:16-cv-3044-L-MSB, 2021 WL 1017295
   (S.D. Cal. Mar. 17, 2021) ...........................................................................18

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ......................................................14

*In re MGM Mirage Sec. Litig.*,
   708 F. App'x 894 (9th Cir. 2017) ..........................................................12, 22

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ......................................................21

*In re Portal Software, Inc. Sec. Litig.*,
   No. C-03-5138 VRW, 2007 WL 1991529
   (N.D. Cal. June 30, 2007) ...........................................................................11

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ........................................................9

*In re TracFone Unlimited Serv. Plan Litig.*,
   112 F. Supp. 3d 993 (N.D. Cal. 2015) ........................................................15

*In re Veritas Software Corp. Sec. Litig.*,
   496 F.3d 962 (9th Cir. 2007) ......................................................................22

*In re Wireless Facilities, Inc. Sec. Litig.*,
   253 F.R.D. 630 (S.D. Cal. 2008) ................................................................22

**Page**

*In re Zynga Inc. Sec. Litig.*,
    No. 12-cv-04007-JSC, 2015 WL 6471171
    (N.D. Cal. Oct. 27, 2015) ............................................................................................13, 14, 19

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ........................................................................................10, 22

*Linney v. Cellular Alaska P'ship*,
    No. C-96-3008 DLJ, 1997 WL 450064
    (N.D. Cal. July 18, 1997),
    *aff'd*, 151 F.3d 1234 (9th Cir. 1998) ......................................................................................11

*Low v. Trump Univ., LLC*,
    881 F.3d 1111 (9th Cir. 2018) ..............................................................................................23

*Mauss v. NuVasive, Inc.*,
    No. 13CV2005 JM (JLB), 2018 WL 6421623
    (S.D. Cal. Dec. 6, 2018) ..................................................................................................14, 19

*McKnight v. Uber Techs., Inc.*,
    No. 14-cv-05615-JST, 2017 WL 3427985
    (N.D. Cal. Aug. 7, 2017) ......................................................................................................8

*McPhail v. First Command Fin. Plan., Inc.*,
    No. 05CV179-IEG-JMA, 2009 WL 839841
    (S.D. Cal. Mar. 30, 2009) ....................................................................................................17

*Mendoza v. Hyundai Motor Co.*,
    No. 15-cv-01685-BLF, 2017 WL 342059
    (N.D. Cal. Jan. 23, 2017) ....................................................................................................20

*Mild v. PPG Indus., Inc.*,
    No. 2:18-CV-04231-RGK-JEM, 2019 WL 3345714
    (C.D. Cal. July 25, 2019) ....................................................................................................11

*Moorer v. StemGenex Med. Grp., Inc.*,
    No. 16-cv-02816-AJB-AHG, 2021 WL 4993054
    (S.D. Cal. Oct. 26, 2021) ....................................................................................................23

*Nelson v. Bennett*,
    662 F. Supp. 1324 (E.D. Cal. 1987) .....................................................................................8

**Page**

*Norton v. LVNV Funding, LLC*,
No. 18-cv-05051-DMR, 2021 WL 3129568
(N.D. Cal. July 23, 2021) ........................................................................1, 4, 12, 14

*Officers for Justice v. Civil Serv. Comm'n, of City & Cnty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982) ..................................................................................23

*Pataky v. Brigantine, Inc.*,
No. 17-cv-00352-GPC-AGS, 2018 WL 3020159
(S.D. Cal. June 18, 2018) .........................................................................................12

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ...............................................................8, 11, 21, 22

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ..................................................................................17

*Terry v. Hoovestol, Inc.*,
No. 16-cv-05183-JST, 2018 WL 4283420
(N.D. Cal. Sept. 7, 2018) ......................................................................................8, 9

*Thomas v. MagnaChip Semiconductor Corp.*,
No. 14-cv-01160-JST, 2018 WL 2234598
(N.D. Cal. May 15, 2018) ........................................................................................17

*Vataj v. Johnson*,
No. 19-cv-06996-HSG, 2021 WL 5161927
(N.D. Cal. Nov. 5, 2021) ..........................................................................................22

*Vinh Nguyen v. Radient Pharms. Corp.*,
No. SACV 11-00406, 2014 WL 1802293
(C.D. Cal. May 6, 2014) ...........................................................................................19

*Weeks v. Kellogg Co.*,
No. CV 09-08102(MMM)(RZx), 2013 WL 6531177
(C.D. Cal. Nov. 23, 2013) .........................................................................................15

*West v. Circle K Stores, Inc.*,
No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598
(E.D. Cal. June 13, 2006) ...........................................................................................9

*Wong v. Arlo Techs., Inc.*,
No. 5:19-cv-00372-BLF, 2021 WL 1531171
(N.D. Cal. Apr. 19, 2021) .............................................................................10, 13, 14

**Page**

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78j(b)......................................................................................................2
    §78t(a).......................................................................................................2
    §78u-4(a)(4)........................................................................................7, 17

Federal Rules of Civil Procedure
    Rule 23....................................................................................10, 13, 22
    Rule 23(b)(3).........................................................................................23
    Rule 23(c)(1).........................................................................................21
    Rule 23(c)(2)(B)....................................................................................22
    Rule 23(e)......................................................................................1, 9, 13
    Rule 23(e)(1)(B)......................................................................................9
    Rule 23(e)(2)......................................................................9, 10, 20, 21
    Rule 23(e)(2)(A)...................................................................................10
    Rule 23(e)(2)(B)...................................................................................11
    Rule 23(e)(2)(C)...................................................................................12
    Rule 23(e)(2)(C)(i)...............................................................................14
    Rule 23(e)(2)(C)(ii)..............................................................................16
    Rule 23(e)(2)(C)(iii).............................................................................16
    Rule 23(e)(2)(D)...................................................................................19
    Rule 23(e)(3).....................................................................................9, 19

17 C.F.R.
    §240.10b-5.......................................................................................2, 13

**SECONDARY AUTHORITIES**

Laarni T. Bulan, Laura E. Simmons,
    *Securities Class Action Settlements – 2019 Review and Analysis*
    (Cornerstone Research 2020)................................................................13

Laarni T. Bulan, Laura E. Simmons,
    *Securities Class Action Settlements – 2020 Review and Analysis*
    (Cornerstone Research 2021)................................................................13

*The Top 100 U.S. Class Action Settlements of All Time as of December 2020*
    (ISS Sec. Class Action Servs. 2021)......................................................2

1

## NOTICE OF UNOPPOSED MOTION AND MOTION
## FOR PRELIMINARY APPROVAL OF SETTLEMENT

2

**TO:     ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

3

PLEASE TAKE NOTICE that on March 10, 2022, at 2:00 p.m., or as soon thereafter as

4

counsel may be heard, Class Representatives KBC Asset Management NV ("KBC") and National

5

Elevator Industry Pension Fund ("NEIPF," and together with KBC, "Plaintiffs" or "Class

6

Representatives"), on behalf of themselves and all members of the certified Class, will and do hereby

7

move the Court for an Order, pursuant to Rule 23 of the Federal Rules of Civil Procedure: (1)

8

preliminarily approving the proposed settlement ("Settlement") of this action as set forth in the

9

Stipulation;[1] (2) approving the form and manner of giving notice of the proposed Settlement to the

10

Class; (3) scheduling a hearing before the Court to determine whether the proposed Settlement, the

11

Agreement, the proposed Plan of Allocation, and Class Counsel's motion for an award of attorneys'

12

fees and litigation expenses, including awards to the Class Representatives, should be approved; and

13

(4) providing such other and further relief as this Court deems just and proper.

14

This motion is unopposed and is based on the Memorandum of Points and Authorities below,

15

the Declaration of Alexander P. Villanova, the Levin Declaration and exhibits attached thereto, the

16

Declaration of Tor Gronborg, the Stipulation and attached exhibits, the Agreement, all prior

17

pleadings in this Litigation, and such additional evidence or argument as may be requested by the

18

Court.

19

A proposed Order Preliminarily Approving Settlement and Providing for Notice

20

("Preliminary Approval Order") with annexed exhibits is also submitted herewith.

21

22

23

24

25

---

[1]     All capitalized terms not defined herein shall have those meanings as set forth in the Stipulation of Settlement dated January 5, 2022 ("Stipulation"), a true and correct copy of which is attached as Exhibit 3 to the Declaration of Gregg S. Levin in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Proposed Class Action Settlement ("Levin Declaration"). Emphasis is added and citations are omitted throughout unless otherwise noted.

26

27

28

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether the proposed $809,500,000.00 cash recovery and the other terms of the proposed Settlement of this action are within the range of fairness, reasonableness, and adequacy to warrant the Court's preliminary approval and the dissemination of notice of its terms to Class Members.

2. Whether the Court should approve the form and substance of the proposed Notice of (1) Proposed Class Action Settlement; (2) Settlement Hearing; and (3) Motion for an Award of Attorneys' Fees and Litigation Expenses ("Settlement Notice"), Proof of Claim Form ("Proof of Claim"), and the Summary Notice, appended as Exhibits 1 through 3 to the proposed Preliminary Approval Order, as well as the manner of notifying the Class of the proposed Settlement and the Agreement.

3. Whether the Court should set a date for a hearing to determine whether the Settlement, the Agreement,  and the Plan of Allocation should be finally approved and to consider Class Counsel's application for an award of attorneys' fees and payment of expenses, including awards to the Class Representatives pursuant to 15 U.S.C. §78u-4(a)(4) ("Settlement Hearing").

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    PRELIMINARY STATEMENT**

3         Plaintiffs and Twitter have reached a proposed Settlement of this securities class action on

4  behalf of all persons and entities who purchased or otherwise acquired the publicly traded common

5  stock of Twitter during the Class Period and were damaged thereby,[2] in exchange for

6  $809,500,000.00 cash.[3]  Plaintiffs now move the Court, pursuant to Rule 23(e) of the Federal Rules

7  of Civil Procedure, applicable Ninth Circuit precedent, and the guidelines set forth in the Northern

8  District of California's Procedural Guidance for Class Action Settlements (the "Guidelines"),[4] to

9  preliminarily approve the proposed Settlement.

10        The proposed Settlement came on the literal eve of trial, after five years of hard-fought

11  litigation and at a time when the Parties were fully aware of the strengths and potential weaknesses

12  of their respective positions.[5]  As set forth below, the Settlement was reached following years-long

13  negotiations between experienced counsel, with the assistance of the Honorable Layn R. Phillips

14  (Ret.) and Phillips ADR Enterprises, a highly respected mediation firm that has extensive experience

15  in complex securities litigation.  The Settlement, which represents approximately 24% to 30% of the

16  estimated maximum damages in this case, is an excellent result for the Class and falls significantly

17  above the typical range of approvals.

18        Prior to reaching the Settlement, Plaintiffs had, among other things, (1) filed a detailed

19  Consolidated Amended Complaint for Violations of the Federal Securities Laws (the "Complaint,"

20

21  [2]       The Class Period is February 6, 2015, to July 28, 2015, inclusive.

22  [3]       Class Representatives, on behalf of themselves and each Class Member, and the Individual
   Defendants have entered into a separate agreement providing for mutual releases and dismissal with
23  prejudice of the Litigation against them contemporaneous with the dismissal of the Litigation against
   Twitter (the "Agreement").  The Agreement is attached to the Levin Declaration as Exhibit 4.

24  [4]       The Guidelines may be accessed at https://www.cand.uscourts.gov/forms/procedural-
25  guidance-for-class-action-settlements/ (last visited January 6, 2022).  While a court may "consider
   them," the Guidelines "do not carry the weight of law."  *Norton v. LVNV Funding, LLC*, No. 18-cv-
26  05051-DMR, 2021 WL 3129568, at *12 (N.D. Cal. July 23, 2021).

27  [5]       The term "Parties" as used herein refers collectively to the Plaintiffs and the Defendants.
   "Defendants" refers to Twitter and the Individual Defendants, Richard Costolo and Anthony Noto.

28  PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND MOTION FOR PRELIMINARY APPROVAL
   OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND
   AUTHORITIES IN SUPPORT THEREOF - 4:16-cv-05314-JST (SK)                                          - 1 -
   4878-3420-4165.v3

1   ECF No. 81); (2) litigated Defendants' motion to dismiss; (3) completed extensive fact discovery

2   involving the exchange of hundreds of thousands of documents between the Parties, more than two

3   dozen fact depositions, and nearly two dozen subpoenas issued to third parties; (4) successfully

4   obtained class certification; (5) distributed notice of the pendency of this action to hundreds of

5   thousands of potential Class Members; (6) completed expert discovery, involving the exchange of 19

6   expert reports from over a dozen experts and 14 expert depositions; (7) briefed and largely defeated

7   Defendants' motion for summary judgment and defeated their motion for partial reconsideration of

8   the Court's summary judgment order; (8) briefed and received rulings on 10 *Daubert* motions and 19

9   motions *in limine*; and (9) exchanged and filed trial exhibits, jury instructions, verdict forms, and

10  attended multiple final pretrial conferences.  Against this background, when evaluating the merits of

11  the Settlement, Plaintiffs recognized that, even if they were to prevail at trial, Defendants likely

12  would appeal any favorable judgment, delaying and possibly jeopardizing any recovery.

13          The Settlement is thus exceptional.  On an absolute basis, it likely will rank within the top 20

14  largest settlements obtained to date in a securities fraud class action,[6] and the recovery is an order of

15  magnitude greater (on a percentage basis) than the median recoveries generally obtained in such

16  cases.  Accordingly, Plaintiffs respectfully submit that the Settlement is in the best interests of the

17  Class, represents a significant recovery, and merits preliminary approval.

18  **II.     OVERVIEW OF THE LITIGATION**

19          **A.     Factual Background**

20          The allegations and claims in this action are familiar to the Court, and Plaintiffs only briefly

21  describe them at this preliminary approval stage.  In short, Plaintiffs alleged that during the period

22  between February 5, 2015 and July 28, 2015, Defendants made materially false or misleading

23  statements in violation of §10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), Rule

24  10b-5 promulgated thereunder, and §20(a) of the Exchange Act, which caused the price of Twitter

25  stock to trade at artificially inflated prices.  Specifically, Plaintiffs alleged that Defendants misled

---

26  [6]     As measured by ISS Securities Class Action Services.  *See* Levin Decl., Ex. 7 (The Top 100

27  U.S. Class Action Settlements of All Time as of December 2020) (ISS Sec. Class Action Servs. 2021).

28  PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF - 4:16-cv-05314-JST (SK)                                    - 2 -
4878-3420-4165.v3

investors during the identified period by making public statements that did not reflect the actual state of Twitter's user engagement and user growth, which they contended were relevant to evaluating Twitter's potential financial performance.  The alleged misstatements and omissions concerned Twitter's ratio of daily active users ("DAU") to monthly active users ("MAU") (*i.e.*, "DAU/MAU"), which Plaintiffs contended measured user engagement or frequency of use, and Twitter's MAU, which Plaintiffs contended measured Twitter's user base.  Plaintiffs alleged that persons who purchased Twitter stock during the Class Period suffered economic losses when the price of Twitter stock declined as a result of two sets of alleged corrective disclosures that revealed the problems with user engagement and user growth that the challenged statements had allegedly concealed. Defendants deny Plaintiffs' allegations.

### B.     Procedural History

On September 16, 2016, a class action complaint was filed by Robbins Geller Rudman & Dowd LLP ("Robbins Geller") asserting violations of the federal securities laws against Defendants. ECF No. 1.  On December 22, 2016, the Court consolidated this and another later-filed case, appointed KBC as Lead Plaintiff, Motley Rice LLC ("Motley Rice") as Lead Counsel, and Bleichmar, Fonti & Auld as Liaison Counsel. ECF No. 72. On January 18, 2017, KBC associated Robbins Geller as additional counsel to assist in the prosecution of the action.  The case subsequently was recaptioned as *In re Twitter Inc. Securities Litigation*, No. 4:16-cv-05314-JST. ECF No. 127.

Lead Plaintiff filed the Complaint on March 2, 2017.  ECF No. 81.  The Complaint asserted claims on behalf of all persons who purchased or otherwise acquired Twitter's common stock between February 6, 2015, and July 28, 2015, inclusive.  *Id*. at 1.  Defendants thereafter moved to dismiss the Complaint.  ECF Nos. 91, 104.  Plaintiffs opposed Defendants' motion (ECF No. 94), and on October 16, 2017, the Court granted in part and denied in part Defendants' motion.  ECF No. 113.

Defendants answered the Complaint on November 17, 2017 (ECF No. 118), amended their answer on December 8, 2017 (ECF No. 119), and the Parties began formal fact discovery.

1    Discovery was hard-fought: the Parties held extensive discussions regarding the method and form of

2    Defendants' document productions, including the search terms, custodians, and methods that

3    Defendants would employ in responding to Plaintiffs' discovery requests, and briefed myriad

4    discovery disputes for decision by the Court. *See, e.g.*, ECF Nos. 134, 157, 190, 196, 203, 206, 215,

5    232, 242, 254, 259, 265, 273, 278, 293. Ultimately, the Parties' extensive fact discovery included

6    the exchange of more than 210,000 documents (encompassing millions of pages) from over 50

7    custodians, 27 fact witness depositions, and the exchange of thousands of pages of admissions and

8    sworn interrogatory responses. Plaintiffs also issued subpoenas to approximately 23 third parties,

9    which produced more than 26,000 additional documents. Plaintiffs themselves produced tens of

10   thousands of pages of documents, sat for depositions, provided responses to document requests,

11   interrogatories, and requests for admission, and attended mediation in this matter.

12          On July 17, 2018, after briefing and argument from the Parties, the Court certified a class of

13   all persons and entities that purchased or otherwise acquired shares of the publicly traded common

14   stock of Twitter during the period from February 6, 2015, through July 28, 2015, inclusive, and were

15   damaged thereby.[7] *See* ECF No. 181 (the "Class Certification Order"). The Court appointed KBC

16   and NEIPF as Class Representatives and appointed Motley Rice and Robbins Geller as Class

17   Counsel. *Id.* On February 21, 2019, the Court issued its Order Approving Class Notice and

18   Amended Joint Proposal for Dissemination (the "Class Notice Order") (ECF No. 238), which

19   required any persons or entities wishing to exclude themselves from the Class do so by May 23,

20   2019. After the Court issued the Class Notice Order, the Court-appointed administrator, Epiq

21   Systems, Inc. ("Epiq"), began distributing notice of the Class Action to potential Class members on

22   April 2, 2019. ECF No. 306. Twenty valid and timely requests to opt-out of the Litigation were

23   returned. *Id.*

24

25   ───────────────────
     [7]      Guideline §1(b) states that, "if a litigation class has been certified," "[t]he motion for
26   preliminary approval should state . . . any differences between the settlement class and the class
     certified and an explanation as to why the differences are appropriate in the instant case." Here, the
27   certified class is identical to that contained in the Settlement, a factor that "weighs in favor of
     preliminary approval." *Norton*, 2021 WL 3129568, at *12.

28

The Parties also conducted extensive expert discovery on issues including loss causation, damages, social media user and engagement metrics, stock trading plans, corporate disclosure requirements and processes, and analyst, investor, and advertiser perceptions of Twitter. In total, the Parties produced 19 expert reports from 13 experts, took 14 expert depositions, and produced numerous expert-related documents.

On September 13, 2019, Defendants moved for summary judgment on all of Plaintiffs' claims. ECF No. 314. On October 31, 2019, Defendants also moved to exclude the testimony of two of Plaintiffs' critical experts: their loss causation/damages expert and their expert on social media user metrics. These motions, if granted, could have proven case dispositive. *See* ECF Nos. 373, 376. Plaintiffs opposed each of these motions. ECF No. 362, 385, 387. On January 28, 2020, the Court denied in full Defendants' motions to exclude the testimony of these two experts. ECF No. 421. On that same date, the Parties also submitted seven additional motions to exclude the testimony of other experts slated to provide trial testimony. On April 17, 2020, the Court denied, in full, Defendants' summary judgment motion (ECF No. 478), and, on April 20, 2020, the Court granted in part and denied in part the Parties' motions to exclude the testimony of several experts designated to offer opinions at trial. ECF No. 482. On May 18, 2020, the Court granted Defendants' motion for clarification, dismissing certain alleged misstatements from the case. ECF No. 509. Following the Court's summary judgment order and extensive meet and confer discussions regarding the scope of admissible evidence at trial, the Parties briefed 19 motions *in limine*. *See, e.g.*, ECF Nos. 497, 498, 527.

Because of the emergence of the global COVID-19 pandemic in the spring of 2020, the then-scheduled trial date of June 22, 2020 (ECF No. 455), was vacated by the Court on May 19, 2020 (ECF No. 515), and the trial ultimately was rescheduled to commence on September 20, 2021. ECF No. 567.

In the interim, the Parties, among other things, negotiated and submitted to the Court a proposed joint pretrial statement that included trial exhibits and deposition designations (ECF No. 584), proposed jury instructions (ECF No. 585), competing verdict forms (ECF Nos. 586, 587),

and attended final pretrial conferences on June 21 and July 12, 2021 (ECF Nos. 589, 599), during which various trial-related matters were presented and argued to the Court.  The Parties also briefed and argued additional motions in the closing weeks prior to the scheduled trial start date, including whether Defendants should be permitted to substitute one of their proposed experts (ECF No. 603); whether Plaintiffs should be permitted to use leading questions with trial witnesses associated with Defendants (ECF No. 605); whether the Court should reconsider its summary judgment order (ECF No. 611); and whether Plaintiffs should be permitted to call a non-party journalist to testify at trial. ECF No. 629.

During the course of the Litigation, the Parties engaged a neutral third-party mediator, the Hon. Layn R. Phillips (Ret.).  Judge Phillips held direct settlement discussions on at least three occasions between August 31, 2018, and August 17, 2021, and convened various teleconferences and meetings regarding a potential resolution of the action throughout that period and subsequently, up to and including the days prior to the scheduled start of trial on September 20, 2021.  On September 19, 2021 – the last day prior to the date scheduled for jury selection – an agreement was reached to settle the Litigation for $809,500,000.00, subject to approval by the Court.

**III.    THE PROPOSED SETTLEMENT**

The Settlement requires Twitter to pay, or cause to be paid, $809,500,000.00 (the "Settlement Amount"), which amount, plus all interest and accretions thereto, comprises the Settlement Fund. Stipulation, ¶2.2.  The Settlement Amount was deposited into the Escrow Account on October 8, 2021, *id.*, and currently is earning interest for the benefit of the Class.

Notice to the Class and the cost of settlement administration will be funded by the Settlement Fund.  Stipulation, ¶2.9.  Plaintiffs propose Epiq, a nationally-recognized class action settlement administrator, be retained, subject to the Court's approval.  Epiq previously was approved by the Court to distribute notice of the class action.  ECF No. 238.  The proposed notice plan, plan of allocation, and plan for claims processing is discussed below in §IV.C.2 and in the Levin Declaration submitted herewith.

1    The Notice provides that Class Counsel will move for final approval of the Settlement, the

2    Agreement, and: (a) an award of attorneys' fees in the amount of no more than 22.5% of the

3    Settlement Fund; (b) payment of expenses or charges resulting from the prosecution of the Litigation

4    not in excess of $4 million; and (c) any interest on such amounts at the same rate and for the same

5    period as earned by the Settlement Fund.  Further, as explained in the Notice, Class Representatives

6    intend to request an amount not to exceed $40,000 in the aggregate pursuant to 15 U.S.C. §78u-

7    4(a)(4) in connection with their representation of the Class.

8          Once Notice and Administration Expenses, Taxes, Tax Expenses, and Court-approved

9    attorneys' fees and expenses and any award to Class Representatives pursuant to 15 U.S.C. §78u-

10   4(a)(4) in connection with their representation of the Class have been paid from the Settlement Fund,

11   the remaining amount (the "Net Settlement Fund"), shall be distributed pursuant to the Court-

12   approved Plan of Allocation to Authorized Claimants.  Stipulation, ¶5.2.  These distributions shall be

13   repeated until the balance remaining in the Settlement Fund is *de minimis*.  *Id.*, ¶5.10.  Any *de*

14   *minimis* balance that still remains in the Net Settlement Fund after such reallocation(s) and

15   payment(s) and that is not feasible or economical to reallocate shall be donated to the Investor

16   Protection Trust, a 501(c)(3) non-profit dedicated to investor education and protection (subject to

17   Court approval).[8]  *Id.*  The Plan of Allocation treats all Class Members equitably based on the timing

18   of their Twitter common stock purchases, acquisitions, and sales.

19         In exchange for the benefits provided under the Stipulation, all Class Members – except those

20   who previously submitted valid and timely exclusion requests pursuant to the Notice of Pendency of

21   Class Action provided in April 2019 – will release any and all claims and causes of action of every

---

[8]    Founded in 1993, the Investor Protection Trust serves as an independent source of non-commercial investor education.  *See* www.investorprotection.org/ipt-activities/?fa=about.  Pursuant to Guideline §8, the Investor Protection Trust is an appropriate *cy pres* designee here.  *See, e.g.*, *In re Capstone Turbine Corp. Sec. Litig.*, No. CV 15-8913-DMG(RAOx), 2020 WL 7889062, at *2 (C.D. Cal. Aug. 26, 2020) (approving distribution plan and ordering that, "[a]t such time as Lead Counsel, in consultation with the Claims Administrator, determines that no additional distributions are cost-effective, then the funds will be donated to Investor Protection Trust"); *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *11 (N.D. Cal. Dec. 18, 2018) ("[T]he Court concludes that the Investor Protection Trust's mission of educating investors makes it an appropriate *cy pres* beneficiary.") , *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).  Neither the Parties nor their counsel have any relationship with the Investor Protection Trust to disclose.

28   PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF - 4:16-cv-05314-JST (SK)                           - 7 -
4878-3420-4165.v3

1    nature and description, whether known or unknown, whether arising under federal, state, local,

2    common, statutory, governmental, administrative, or foreign law, or any other law, rule or

3    regulation, at law or in equity, that they, or their successors, assigns, executors, administrators,

4    representatives, attorneys, and agents, in their capacities as such (i) asserted in the Litigation, or (ii)

5    could have been asserted in any court or forum that arise out of, are based upon, or relate in any way

6    to any of the allegations, acts, transactions, facts, events, matters, occurrences, representations, or

7    omissions involved, set forth, alleged, or referred to, in the Litigation, and that relate in any way,

8    directly or indirectly, to the purchase, sale, acquisition, disposition, or holding of any Twitter

9    securities during the Class Period.[9]  Stipulation, ¶¶1.25, 4.1; Agreement, ¶¶1.14, 4.1.

10   **IV.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED**

11          As a matter of public policy, settlement is a strongly favored method for resolving disputes,

12   "particularly where complex class action litigation is concerned."  *In re Hyundai & Kia Fuel Econ.*

13   *Litig.*, 926 F.3d 539, 556 (9th Cir. 2019).  Settlement of complex cases contributes to the efficient

14   utilization of scarce judicial resources and achieves the speedy resolution of justice.  *See, e.g.*,

15   *McKnight v. Uber Techs., Inc.*, No. 14-cv-05615-JST, 2017 WL 3427985, at *2 (N.D. Cal. Aug. 7,

16   2017) ("The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class

17   actions.").  With respect to "complex securities actions" like this one, "federal courts [have] long

18   recognized the public policy in favor of . . . settlement."  *Nelson v. Bennett*, 662 F. Supp. 1324, 1334

19   (E.D. Cal. 1987) ("'[T]here is an overriding public interest in settling and quieting litigation.  This is

20   particularly true . . . . in these days of burgeoning federal litigation, [where] the promotion of

21   settlement is, as a practical matter, an absolute necessity.'").  Moreover, the Ninth Circuit "has long

22   deferred to the private consensual decision of the parties" in such cases.  *Rodriguez v. W. Publ'g*

23   *Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

24   ---

[9]       When a litigation class has been certified, Guideline §1(d) requires explanation regarding
25   "any differences between the claims to be released and the claims certified for class treatment."
     Here, the release is tailored to the allegations in the Complaint and claims that could have been
26   brought based on the factual underpinnings of those allegations.  Courts look approvingly on releases
     that do not "'go[] beyond the scope of the present litigation,'" are "based on the facts of the
27   complaint," and are made "with[] regard to the breadth of Plaintiffs' allegations in the complaint."
     *Terry v. Hoovestol, Inc.*, No. 16-cv-05183-JST, 2018 WL 4283420, at *5 (N.D. Cal. Sept. 7, 2018).

28

1    Approval of class action settlements normally proceeds in two stages: (i) preliminary

2 approval, followed by notice to the class; and (ii) final approval.  *See, e.g.*, *West v. Circle K Stores,*

3 *Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006).  By this

4 motion, Plaintiffs request that the Court take the first step in the approval process by granting

5 preliminary approval of the Settlement.   At the preliminary approval stage, the court must

6 "determine whether the settlement falls 'within the range of possible approval.'"  *Terry*, 2018 WL

7 4283420, at *1 (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal.

8 2007)).  Courts grant preliminary approval when the proposed settlement: "(1) appears to be the

9 product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential

10 treatment to class representatives or other segments of the class; (3) falls within the range of possible

11 approval; and (4) has no obvious deficiencies."  *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-01196-

12 HSG, 2020 WL 2041934, at *4 (N.D. Cal. Apr. 28, 2020).   If the court "finds the proposed

13 settlement fair to its members," it will then "schedule[] a fairness hearing where it will make a final

14 determination of the class settlement."  *In re Haier Freezer Consumer Litig.*, No. 5:11-cv-02911-

15 EJD, 2013 WL 2237890, at *3 (N.D. Cal. May 21, 2013).

16    In addition, the Federal Rules of Civil Procedure require judicial approval for a settlement of

17 claims brought as a class action:[10]

18    (2) *Approval of the Proposal*.  If the proposal would bind class members, the court
     may approve it only if after a hearing and only on finding that it is fair, reasonable,
19    and adequate after considering whether: (A) the class representatives and class
     counsel have adequately represented the class; (B) the proposal was negotiated at
20    arm's length; (C) the relief provided for the class is adequate, taking into account: (i)
     the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed
21    method of distributing relief to the class, including the method of processing class-
     member claims; (iii) the terms of any proposed award of attorney's fees, including
22    timing of payment; and (iv) any agreement required to be identified under Rule
     23(e)(3); and (D) the proposal treats class members equitably relative to each other.
23
24 Fed. R. Civ. P. 23(e)(2).  While these Rule 23(e) factors focus on core concerns of procedure and

25 substance of a settlement, they are not intended to fully displace factors previously adopted by courts

---

26 [10]    The issue at preliminary approval turns on whether the Court "will likely be able to: (i)
     approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the
27    proposal."  Fed. R. Civ. P. 23(e)(1)(B).  As to the latter requirement, the Court need not determine
     whether it could certify a class here because it already has certified the Class.  *See* ECF No. 181.
28

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF - 4:16-cv-05314-JST (SK)                              - 9 -
4878-3420-4165.v3

to evaluate settlements. *See, e.g.*, *Wong v. Arlo Techs., Inc.*, No. 5:19-cv-00372-BLF, 2021 WL 1531171, at *5 (N.D. Cal. Apr. 19, 2021) ("[T]he Court applies the framework set forth in Rule 23 with guidance from the Ninth Circuit's precedent . . . ."). In this respect, the Ninth Circuit has long considered the following factors when evaluating a class settlement, some of which overlap with Rule 23(e)(2):

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also, e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (discussing the *Hanlon* factors).

As discussed below, the proposed Settlement readily satisfies each of the factors identified under Rule 23(e)(2), as well as the applicable Ninth Circuit *Hanlon* factors and Northern District Guidelines. Therefore, Notice of the proposed Settlement should be sent to the Class in advance of the final Settlement Hearing.

## A.   Plaintiffs and Class Counsel Have Adequately Represented the Class

Plaintiffs and Class Counsel have adequately represented the Class as required by Rule 23(e)(2)(A). The Settlement is the result of approximately five years of diligent prosecution of this action on behalf of the Class. *See Hefler*, 2018 WL 6619983, at *6 (finding Rule 23(e)(2)(A) satisfied for purposes of finally approving settlement and reiterating "Class Counsel had vigorously prosecuted this action through dispositive motion practice, extensive . . . discovery, and formal mediation"); *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2019 WL 3290770, at *7 (N.D. Cal. July 22, 2019) (same).

Similarly, the Ninth Circuit tasks trial courts with resolving two questions to determine "legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. The Court previously found Plaintiffs and Class Counsel adequate to represent the Class, *see* Class Certification Order at 13, and no evidence to the

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 4:16-cv-05314-JST (SK)
4878-3420-4165.v3

- 10 -

1    contrary has since emerged.  Moreover, Plaintiffs and Class Counsel have no interests antagonistic to

2    other Class Members; Plaintiffs' claims are typical of the Class's claims; and their interest in

3    obtaining the largest possible recovery for Twitter investors is aligned with that of the Class.  *Mild v.*

4    *PPG Indus., Inc.*, No. 2:18-CV-04231-RGK-JEM, 2019 WL 3345714, at *3 (C.D. Cal. July 25,

5    2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement

6    Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of

7    the Settlement Class members.").  Finally, the substantial monetary recovery obtained after the five

8    years of litigation preceding the Settlement speaks for itself and is an excellent result for Plaintiffs

9    and the Class.

10       **B.    The Proposed Settlement Is the Result of Good Faith, Arm's-Length
              Negotiations by Informed, Experienced Counsel Who Were Aware of**

11            **the Risks of the Litigation**

12       Rule 23(e)(2)(B) asks whether a proposed settlement is procedurally adequate, *i.e.*, whether

13   "the proposal was negotiated at arm's length."  There is an initial presumption that a proposed

14   settlement is fair and reasonable when it is "the product of arms-length negotiations."  *In re Portal*

15   *Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007).

16   The Ninth Circuit and the district courts within it "put a good deal of stock in the product of an arms-

17   length, non-collusive, negotiated resolution." *Rodriquez*, 563 F.3d at 965; *accord Linney v. Cellular*

18   *Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997), *aff'd*, 151

19   F.3d 1234 (9th Cir. 1998) ("The involvement of experienced class action counsel and the fact that

20   the settlement agreement was reached in arm's length negotiations, after relevant discovery had

21   taken place create a presumption that the agreement is fair.").

22       Here, the proposed Settlement was achieved only after multiple mediation sessions, including

23   three direct mediation sessions with Judge Phillips – an experienced mediator with considerable

24   knowledge, experience, and expertise in the field of federal securities law – as well as various

25   teleconferences and correspondences regarding a potential resolution of the Litigation, up to and

26   including the days prior to the scheduled start of trial on September 20, 2021.  Class and Defendants'

27   Counsel prepared and presented submissions to Judge Phillips concerning their respective views on

28

1   the merits of the Litigation, along with supporting evidence obtained through discovery, and the

2   negotiations were at all times adversarial and performed at arm's length.  The protracted negotiations

3   under the supervision of a neutral experienced mediator are evidence that the $809,500,000

4   Settlement was reached at arm's length.  *See Hefler*, 2018 WL 6619983, at *6 ("[T]he Settlement

5   was the product of arm's length negotiations through two full-day mediation sessions and multiple

6   follow-up calls supervised by former U.S. District Judge Layn Phillips."); *In re MGM Mirage Sec.*

7   *Litig.*, 708 F. App'x 894, 897 (9th Cir. 2017) (noting district court approved settlement reached

8   "after extensive negotiations before a nationally recognized mediator, retired U.S. District Judge

9   Layn R. Phillips").

10          Moreover, Plaintiffs had not only completed exhaustive fact and expert discovery at the time

11  they negotiated the Settlement on behalf of the Class, but the Settlement was reached just prior to the

12  commencement of trial.  "A settlement is presumed to be fair if reached in arms-length negotiations

13  after relevant discovery has taken place." *Pataky v. Brigantine, Inc.*, No. 17-cv-00352-GPC-AGS,

14  2018 WL 3020159, at *3 (S.D. Cal. June 18, 2018).  The contours of the trial (such as which

15  witnesses would be permitted to testify or what types of evidence generally would be permitted) also

16  were known at the time of settlement.  In sum, Class Counsel, experienced securities litigators, were

17  armed with extensive information generated through five years of litigation at the time the Parties

18  (with Judge Phillips' assistance) negotiated the Settlement.

19          **C.      The Settlement Provides Adequate Relief for the Class**

20          Pursuant to Rule 23(e)(2)(C), the Court also must consider whether "the relief provided for

21  the class is adequate, taking into account" four relevant factors that are addressed below.[11]  While

22  each of these factors supports preliminary approval of the Settlement, as an initial matter, the

---

[11]    In addition to the fourth *Hanlon* factor ("the amount offered in settlement"), which is subsumed within the Rule 23(e)(2)(C) analysis, courts also evaluate the requirements of Guideline §1(e) with regard to "'[t]he anticipated class recovery under the settlement, the potential class recovery if plaintiffs had fully prevailed on each of their claims, and an explanation of the factors bearing on the amount of the compromise.'" *See*, *e.g.*, *Norton*, 2021 WL 3129568, at *13 (alteration in original).

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF - 4:16-cv-05314-JST (SK)                                              - 12 -
4878-3420-4165.v3

1   $809,500,000 recovery achieved by the Settlement is undeniably an excellent result for the Class.[12]

2   *See Wong*, 2021 WL 1531171, at *9 ("'The relief that the settlement is expected to provide to class

3   members is a central concern,' though it is not enumerated among the factors of Rule 23(e).")

4   (quoting 2018 Advisory Committee Notes to Fed. R. Civ. P. 23).

5          Here, the Settlement recovers approximately 24% to 30% of the estimated recoverable

6   damages as calculated by Plaintiffs' damages expert.  This is 7.5 to 9 times the median percentage

7   recovery for cases settled with estimated damages of $1 billion or more in 2020 (3.2%) and 18 to 23

8   times the median recovery, on a percentage basis, of similar cases settled in 2019 (1.3%).[13]  *See*

9   *Hefler*, 2018 WL 6619983, at *8 (finding 15% recovery weighed in favor of approving settlement as

10  it was "higher than recoveries achieved in other securities fraud class actions of similar size (over $1

11  billion in estimated damages), which settled for median recoveries of 2.5 percent between 2008 and

12  2016, and 3 percent in 2017"); *In re Zynga Inc. Sec. Litig.*, No. 12-cv-04007-JSC, 2015 WL

13  6471171, at *11 (N.D. Cal. Oct. 27, 2015) (14% recovery "exceeds the typical recovery" in

14  securities fraud class action settlements); *Cheng Jiangchen v. Rentech, Inc.*, No. 17-1490-

15  GW(FFMx), 2019 WL 5173771, at *9 (C.D. Cal. Oct. 10, 2019) ("A 10% recovery of estimated

16  damages is a favorable outcome in light of the challenging nature of securities class action cases.").

17  As discussed more fully below, the benefits conferred on Class Members by the Settlement far

18  outweigh the costs, risks, and delay of further litigation, and the attorneys' fees and expenses to be

19  requested are reasonable.  Accordingly, the relief provided by the Settlement is adequate and

20  supports approval.

21

22

---

23  [12]     Guideline §1(h) requires discussion of "whether . . . money originally designated for class recovery will revert to any defendant."  No such reversion is present here.

24  [13]     *See, e.g.*, Levin Decl., Ex. 5 (Laarni T. Bulan, Laura E. Simmons, *Securities Class Action*

25  *Settlements – 2019 Review and Analysis* at 6, Fig. 5 (Cornerstone Research 2020) (finding median settlement as a percentage of estimated damages was 1.3% in 2019 for Rule 10b-5 cases involving

26  over $1 billion in damages); Levin Decl., Ex. 6 (Laarni T. Bulan, Laura E. Simmons, *Securities Class Action Settlements – 2020 Review and Analysis* at 6, Fig. 5 (Cornerstone Research 2021))

27  (finding median settlement as a percentage of estimated damages was 3.2% in 2020 for Rule 10b-5 cases involving over $1 billion in damages).

28  PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - 4:16-cv-05314-JST (SK)          - 13 -
4878-3420-4165.v3

### 1. The Costs, Risks, and Delay of Trial and Appeal Support Approval of the Settlement

The factors presented by Rule 23(e)(2)(C)(i) are satisfied because the $809,500,000 recovery provides a significant and immediate benefit to the Class, especially in light of the costs, risks, and delay posed by continued litigation.[14]   "'[S]ecurities actions are highly complex and . . . securities class litigation is notably difficult and notoriously uncertain.'"  *Hefler*, 2018 WL 6619983, at *13; *see also Mauss v. NuVasive, Inc.*, No. 13CV2005 JM (JLB), 2018 WL 6421623, at *6 (S.D. Cal. Dec. 6, 2018) (recognizing that "[s]ecurities class actions are complex actions to litigate" and often involve "complex and highly risky trial and likely post-trial appeals and motion practice").

While Plaintiffs at all times remained confident in their ability to ultimately prove their claims at trial, they would be required to prove all elements of their claims to prevail, while Defendants needed to succeed on only one defense to potentially defeat the entire action.  Here, Defendants advanced several arguments disputing both liability and damages; for example, Defendants raised numerous challenges disputing the falsity of their alleged misstatements and vigorously disputed scienter.  *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) ("[T]he issue[] of scienter . . . [is] complex and difficult to establish at trial.").  Defendants also challenged Plaintiffs' theory of loss causation and damages, arguing that the metrics at the heart of Plaintiffs' case were immaterial to investors and that the alleged corrective stock price movements were caused by factors unrelated to Plaintiffs' allegations.  *See Zynga*, 2015 WL 6471171, at *9 ("[I]n 'any securities litigation case, it [is] difficult for [plaintiff] to prove loss causation and damages at trial.'" (second and third alterations in original)).  Moreover, while jurors would undoubtedly be generally familiar with social media platforms such as Twitter, the sheer complexity of the underlying issues here – including social media user and engagement metrics and their impact on Twitter's growth and revenues – and the fact that Defendants engaged competing

---

[14]   Rule 23(e)(2)(C)(i) essentially incorporates the first three traditional *Hanlon* factors.  *See, e.g.*, *Wong*, 2021 WL 1531171, at *8 (citing *Hanlon*, 150 F.3d at 1026); *Norton*, 2021 WL 3129568, at *5 ("The first three [*Hanlon*] factors are addressed together and require the court to assess the plaintiff's 'likelihood of success on the merits and the range of possible recovery' versus the risks of continued litigation and maintaining class action status through the duration of the trial.").

1   expert witnesses to testify in support of Defendants' major defenses, were substantial obstacles to

2   Plaintiffs' potential for success at trial. *See, e.g.*, *Weeks v. Kellogg Co.*, No. CV 09-

3   08102(MMM)(RZx), 2013 WL 6531177, at *13 (C.D. Cal. Nov. 23, 2013) ("The fact that this issue,

4   which is at the heart of plaintiffs' case, would have been the subject of competing expert testimony

5   suggests that plaintiffs' ability to prove liability was somewhat unclear; this favors a finding that the

6   settlement is fair.").

7          Barring the Settlement, this case would require the expenditure of substantial additional sums

8   of time and money at trial and beyond, with no guarantee that any additional benefit would be

9   provided to the Class.  Even if Plaintiffs succeeded at the "Phase One" portion of the trial and met

10  their burdens with respect to falsity, materiality, scienter, class-wide reliance under the "fraud on the

11  market" presumption, loss causation, the measure of per-share damages (if any), and control person

12  liability, the case would still be far from over.  In this respect, during the "Phase Two" component of

13  the case, Defendants would have had the opportunity to challenge an individual Class Member's

14  membership in the Class, challenge the presumption of reliance as to each Class Member (including

15  Plaintiffs), and challenge the amount of damages due each Class Member. *See, e.g.*, ECF No. 499 at

16  1.  Such a process would have been lengthy, complex, and extremely costly.  Moreover, Defendants

17  would almost certainly file an appeal after either or both phases of the case – a process that would

18  further extend the litigation for years and risk reversal of any plaintiffs' verdict.  Conversely, the

19  Settlement confers a substantial and immediate benefit on the Class, and avoids the risks associated

20  with obtaining a wholly speculative (though potentially larger) sum in the future.

21         In sum, Defendants had "plausible defenses that could have ultimately left class members

22  with a reduced or non-existent recovery," which weighs in favor of approving the Settlement. *In re*

23  *TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 999 (N.D. Cal. 2015).  Defendants have

24  denied any wrongdoing, and would have presented a multi-pronged defense to Plaintiffs' claims at

25  trial and in subsequent appeals.  The Settlement thus balances the risks, costs, and delay inherent in

26  complex cases.  Given the risks of continued litigation and the time and expense that would be

27

28

1    incurred to prosecute the Litigation through trial and beyond, the $809,500,000 Settlement is a

2    meaningful recovery that is in the Class's best interests.

3          **2.**      **The Proposed Method for Distributing Relief Is Effective**

4          The method for distributing relief to eligible claimants and for processing Class Members'

5    claims includes standard, well-established, and effective procedures for processing claims and

6    efficiently distributing the Net Settlement Fund, and is therefore an effective method of distribution

7    to the Class under Rule 23(e)(2)(C)(ii).  The notice plan includes direct mail notice to all those who

8    can be identified with reasonable effort supplemented by publication of the Summary Notice in *The*

9    *Wall Street Journal* and once over a national newswire service.  The Notice and Summary Notice

10   also will be posted on the case website established in connection with the Class Notice.[15]

11         The claims process also includes a standard claim form that requests the information

12   necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation.  The Plan of

13   Allocation will govern how Class Members' claims will be calculated and, ultimately, how money

14   will be distributed to Authorized Claimants.  The Plan of Allocation was prepared with the

15   assistance of Plaintiffs' damages expert and is based primarily on the expert's event study and

16   analysis estimating the amount of artificial inflation in the price of Twitter common stock during the

17   Class Period.

18         **3.**      **Proposed Attorneys' Fees, Litigation Expenses, and Plaintiffs'**
              **Award**

19

20         Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees,

21   including timing of payment."[16]  Class Counsel intend to seek an award of attorneys' fees of no more

22   than 22.5% of the Settlement Fund and expenses in an amount not to exceed $4 million, plus interest

23   on both amounts.  Class Counsel will provide more detailed information in their forthcoming

---

[15]    In connection with the dissemination of the Notice of Pendency of this action, a case-specific
website was created on or about April 2, 2019, where key documents are posted and Class Members
can go to obtain additional information about the Litigation.  *See* Levin Decl., ¶8.

[16]    Guideline §6 requires discussion of "information about the fees" counsel intends to request,
"their lodestar calculation," "the relationship among the amount of the award, the amount of the
common fund, and counsel's lodestar calculation," and "whether and in what amounts they seek
payment of costs and expenses."

1   application for attorneys' fees and expenses that will be filed with the Court prior to the final

2   settlement approval hearing.

3          A proposed attorneys' fee of up to 22.5% of the Settlement Fund is reasonable in light of the

4   work required to reach the Settlement and is less than the "benchmark" often referenced by courts in

5   the Ninth Circuit.  *See, e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003) ("'This circuit

6   has established 25% of the common fund as a benchmark award for attorney fees.'").  The proposed

7   attorney fee award here is based on a lodestar of approximately $43,900,000.00 in time expended

8   over the past five years of litigation.  *See* Levin Decl., ¶54.  A fee award of 22.5% of the Settlement

9   Fund would result in a multiplier of approximately 4.15.  This multiplier is reasonable and within the

10  range of lodestar multipliers courts in this Circuit regularly approve.  If preliminary approval is

11  granted, Class Counsel will present their total lodestar with their fee application prior to the final

12  settlement approval hearing.

13         Class Counsel also intend to seek payment of their litigation expenses in an amount not to

14  exceed $4 million.  *See* Levin Decl., ¶55.  Class Counsel will provide appropriate detail in support of

15  any request for reimbursement of litigation expenses with their fee and expense application prior to

16  final approval.  Class Counsel will request that any award of fees and expenses be paid at the time

17  the Court makes its award.  Stipulation, ¶6.2.

18         Finally, Class Counsel also intend to seek an award of up to $40,000 for Class

19  Representatives, pursuant to 15 U.S.C. §78u-4(a)(4), as reimbursement for their costs and expenses

20  related to their representation of the Class.  *Thomas v. MagnaChip Semiconductor Corp.*, No. 14-cv-

21  01160-JST, 2018 WL 2234598, at *5 (N.D. Cal. May 15, 2018) (lead plaintiffs' efforts (meeting

22  with counsel to prepare for deposition, providing deposition testimony, producing documents,

23  communicating with counsel about the action and evaluating settlement proposals) "warrant

24  incentive awards"); *McPhail v. First Command Fin. Plan., Inc.*, No. 05CV179-IEG-JMA, 2009 WL

25  839841, at *8 (S.D. Cal. Mar. 30, 2009) (noting "requested reimbursement is consistent with

26  payments in similar securities cases").  Class Counsel believe this amount is fully supported by the

27

28
PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF - 4:16-cv-05314-JST (SK)                              - 17 -

1    work undertaken throughout the Litigation, which will be set forth in greater detail in connection

2    with Plaintiffs' fee and expense motion.

3         Approval of the requested attorneys' fees is separate from approval of the Settlement, and the

4    Settlement may not be terminated based on any ruling with respect to attorneys' fees.  Stipulation,

5    ¶6.4.

6                      **4.      Identification of Agreements**

7         Class Members were provided with the opportunity to opt out of the Class in response to the

8    Notice of Pendency.[17]  As such, a second opportunity to request exclusion is not provided here.[18]

9    Nevertheless, should the Court decline to enforce its previous Order requiring that all exclusions be

10   received by May 23, 2019, the Parties have agreed, out of an abundance of caution, to a

11   supplemental agreement (the "Supplemental Agreement") providing Twitter with the option to

12   terminate the Settlement within 10 days of the Court's order allowing Class Members a second opt-

13   out right, or at a later time if Class Members who request exclusion from the Class meet the

14   conditions set forth in the Supplemental Agreement.  Stipulation, ¶7.8.  As is standard practice in

15   securities class actions, the Supplemental Agreement is identified in the Stipulation, but its terms are

16   confidential to avoid creating incentives for a small group of class members to opt out solely to

17   leverage the threshold to exact an individual settlement.  *See Hefler v. Wells Fargo & Co.*, No. 16-

18   cv-05479-JST, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination

19   option triggered by the number of class members who opt out of the Settlement does not by itself

20   render the Settlement unfair.") ("*Hefler II*"); *In re Illumina, Inc. Sec. Litig.*, No. 3:16-cv-3044-L-

21   MSB, 2021 WL 1017295, at *4 (S.D. Cal. Mar. 17, 2021).  "This type of agreement is standard in

22   securities class action settlements and has no negative impact on the fairness of the Settlement."

23   *Christine Asia Co. v. Yun Ma*, No. 1:15-md-02631 (CM)(SDA), 2019 WL 5257534, at *15

24   ─────────────
     [17]     *See* ECF No. 238 at 3 ("Class Members shall be bound by all determinations and judgments
25   in this action, whether favorable or unfavorable, unless such persons and entities request exclusion
     from the Class in a timely and proper manner . . . . A Class Member wishing to make such a request
26   shall mail the request in written form by first class mail, postmarked no later than ninety (90)
     calendar days after the Court's [February 21, 2019] entry of this Order.").

27   [18]     *See infra* note 23.

28

1   (S.D.N.Y. Oct. 16, 2019).  As such, Plaintiffs are filing this confidential Supplemental Agreement

2   (with a motion to file under seal) contemporaneously herewith.  *See Hefler II*, 2018 WL 4207245, at

3   *7 (sealing supplemental agreement and finding "compelling reasons to keep this information

4   confidential in order to prevent third parties from utilizing it for the improper purpose of obstructing

5   the settlement").

6          Further, as indicated earlier, Class Representatives, on behalf of themselves and each Class

7   Member, and the Individual Defendants entered into the Agreement providing for mutual releases

8   and dismissal with prejudice of the Litigation against them contemporaneous with the dismissal of

9   the Litigation against Twitter.  *See* Levin Decl., Ex. 4.

10         There are otherwise no agreements requiring identification under Rule 23(e)(3).

11     **D.     The Proposed Plan of Allocation Treats Class Members Equitably
               and Does Not Confer Preferential Treatment**

12         Rule 23(e)(2)(D) asks whether the proposal (here, the Plan of Allocation) treats class

13  members equitably relative to each other.[19]   Drafted with the assistance of Plaintiffs' damages

14  expert, the Plan of Allocation is fair, reasonable, and adequate; it does not "'improperly grant'" the

15  Plaintiffs or any other Class Member "'preferential treatment.'"  *Zynga*, 2015 WL 6471171, at *10;

16  *see also Vinh Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC (MLGx), 2014 WL

17  1802293, at *5 (C.D. Cal. May 6, 2014) ("A settlement in a securities class action case can be

18  reasonable if it 'fairly treats class members by awarding a pro rata share to every Authorized

19  Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths

20  and weaknesses of class members' individual claims and the timing of purchases of the securities at

21  issue.'").  Specifically, the Plan of Allocation provides formulas for calculating the recognized claim

22  of each Class Member, based on each such Person's purchases or acquisitions of Twitter common

23  stock on the open market during the Class Period and if or when they sold.  "'A plan of allocation

24  that reimburses class members based on the extent of their injuries is generally reasonable.'"

25  *NuVasive*, 2018 WL 6421623, at *4.

26

27  [19]     Guideline §1(f) states that the "motion for preliminary approval" should discuss the
    "proposed allocation plan for the settlement fund."

28  PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND MOTION FOR PRELIMINARY APPROVAL
    OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND
    AUTHORITIES IN SUPPORT THEREOF - 4:16-cv-05314-JST (SK)                                     - 19 -
    4878-3420-4165.v3

1      Each Authorized Claimant, including the Plaintiffs, will receive a *pro rata* distribution

2 pursuant to the Plan of Allocation.  No special formula for distribution will apply to Plaintiffs.  *See*

3 *Ciuffitelli v. Deloitte & Touche LLP*, No. 3:16-cv-00580-AC, 2019 WL 1441634, at *18 (D. Or.

4 Mar. 19, 2019) ("The Proposed Settlement does not provide preferential treatment to Plaintiffs or

5 segments of the class. . . . [T]he proposed Plan of Allocation compensates all Class Members and

6 [Plaintiffs] equally in that they will receive a *pro rata* distribution based of [sic] the Settlement Fund

7 based on their net losses.").

### E.    The Remaining Ninth Circuit Factors Support Preliminary Approval of the Settlement

9      Each of the relevant *Hanlon* factors that are not co-extensive with the Rule 23(e)(2) analysis

10 above (*i.e.*, the third, fifth, and sixth *Hanlon* factors) also support preliminary approval.[20]

### 1.    The Extent of Discovery Completed and the Stage of the Proceedings at Which the Settlement Was Achieved Strongly Support Preliminary Approval

13      The fifth *Hanlon* factor (the extent of discovery completed and the stage of the proceedings

14 at which the settlement was achieved) unquestionably supports preliminary approval of the

15 Settlement.  As the Settlement was reached just before trial was due to start and discovery had long

16 since been completed, the Parties had a thorough understanding of the arguments, evidence, and

17 witnesses that would be presented at trial.  Accordingly, there can be no question that Plaintiffs were

18 able to knowledgably evaluate the merits of the Settlement by the time it was reached.  As discussed

19 more fully above, Plaintiffs' decision to enter into the Settlement was based on their understanding

20 of the strengths and potential weaknesses of their claims and Defendants' defenses.  *See In re*

21 *Charles Schwab Corp. Sec. Litig.*, No. C 08-01510 WHA, 2011 WL 1481424, at *5 (N.D. Cal.

22 Apr. 19, 2011) ("[T]he class settlements were reached on the eve of trial when class counsel . . .

---

[20]     "Because there is no governmental entity involved in this litigation," the seventh *Hanlon* factor ("presence of a governmental participant") is inapplicable.  *Mendoza v. Hyundai Motor Co.*, No. 15-cv-01685-BLF, 2017 WL 342059, at *7 (N.D. Cal. Jan. 23, 2017).  Regarding the eighth *Hanlon* factor ("the reaction of the class members to the proposed settlement"), the Class's reaction is not yet available for consideration because notice of the Settlement has not yet been provided to the Class.  *See e.g.*, *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) (noting "'a full fairness analysis is unnecessary at this stage'" because some factors bearing on the propriety of settlement cannot be assessed prior to a final approval hearing).

1   were thus well aware of the issues and attendant risks involved in going to trial as well as the

2   adequacy of the amount of the class settlement.").

3              **2.      Risks of Maintaining Class Action Status Through Trial**

4              Given the imminence of trial at the time the Settlement was reached, Class Counsel believe

5   the risk of maintaining class action status through to the end of trial (the third *Hanlon* factor) was

6   minimal.  Nevertheless, because Rule 23(c)(1) provides that a class certification order may be altered

7   or amended at any time prior to a decision on the merits, Defendants still could have moved to

8   decertify the Class or shorten the Class Period up until the time the jury reached a verdict.  *See*

9   *Rodriguez*, 563 F.3d at 966.

10             **3.      Experience and Views of Counsel**

11             The opinion of experienced counsel (the sixth *Hanlon* factor) as to the merit of class

12  settlement after arm's length negotiation is entitled to considerable weight.  *See Hefler*, 2018 WL

13  6619983, at *9 ("That counsel advocate in favor of this Settlement weighs in favor of its approval.").

14  Class Counsel each have significant experience in securities and other complex class action litigation

15  and have negotiated numerous other substantial class action settlements throughout the country.  *See*

16  Levin Decl., Exs. 1-2.  Here, "[t]here is nothing to counter the presumption that . . . Counsel's

17  recommendation is reasonable."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D.

18  Cal. 2008).

19             Since being appointed by this Court, Class Counsel largely defeated Defendants' motion to

20  dismiss, obtained class certification, aggressively pursued discovery critical to the claims asserted,

21  largely defeated Defendants' motion for summary judgment and prepared the case for trial.  As a

22  result of this experience and with the assistance of sophisticated experts when appropriate, Class

23  Counsel had gained a firm understanding of the strengths and weaknesses of the claims by the time

24  the Settlement was reached, with trial only a day away.

25             In sum, each factor identified under Rule 23(e)(2) and by the Ninth Circuit is satisfied.  The

26  Settlement is fair, adequate, and reasonable, and meets each of the applicable factors such that notice

27  of the Settlement should be sent to the Class.

28

## V.  THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23, THE PSLRA, AS WELL AS DUE PROCESS REQUIREMENTS

Rule 23(c)(2)(B) requires the Court to "direct to class members the best notice that is practicable under the circumstances."  The notice must describe "'the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  *Lane*, 696 F.3d at 826 (quoting *Rodriguez*, 563 F.3d at 962).  The PSLRA further requires that "every settlement notice must include a statement explaining a plaintiff's recovery."  *In re Wireless Facilities, Inc. Sec. Litig.*, 253 F.R.D. 630, 636 (S.D. Cal. 2008); *see also In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 969 (9th Cir. 2007).

Here, Plaintiffs propose to give interested parties notice in two ways:  (i) individual copies of the Notice, together with a copy of the Proof of Claim, will be sent by first class mail, postage prepaid, to all potential Class Members who received the Notice of Pendency; and (ii) by publication of a summary version of the Notice in *The Wall Street Journal* and transmittal over a national newswire service, as well as online at the website www.TwitterSecuritiesLitigation.com.  *See* Declaration of Alexander P. Villanova of Epiq in Support of Settlement Notice Plan ("Villanova Decl."), ¶¶5, 11.  The proposed methods for providing notice satisfy the requirements of Rule 23, the PSLRA, and due process.  *See, e.g.*, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (requiring notice be sent to all class members "whose names and addresses may be ascertained through reasonable effort"); *MGM*, 708 F. App'x at 896; *Vataj v. Johnson*, No. 19-cv-06996-HSG, 2021 WL 5161927, at *5 (N.D. Cal. Nov. 5, 2021) (finding notice by mail and published in a newswire with national distribution "provided the best notice practicable to the class members").

The form and substance of the notice program are sufficient.  The proposed forms of notice describe the terms of the Stipulation and the Class's recovery in absolute dollars and, as required by the PSLRA, on an estimated per share basis (both gross and net); the considerations that caused Plaintiffs and Class Counsel to conclude that the Settlement is fair, adequate, and reasonable; the maximum attorneys' fees and expenses and Class Representative awards that may be sought;[21] the

---

[21]     The proposed Notice also readily satisfies the Guidelines.  *See* Levin Decl., ¶49.

1   procedure and deadline for objecting to the Settlement;[22] the procedure and deadline for participating

2   in the Settlement and instructions on how to complete and submit a Proof of Claim to the Claims

3   Administrator (both on paper and electronically); the proposed Plan of Allocation for the settlement

4   proceeds; and the date, time, and place of the Settlement Hearing.  *See Ching v. Siemens Indus., Inc.*,

5   No. C 11-4838 MEJ, 2013 WL 6200190, at *6 (N.D. Cal. Nov. 27, 2013) ("The Court finds that the

6   Class Notice adequately describes the nature of the action, summarizes the terms of the settlement,

7   identifies the class and provides instruction on how to . . . object, and sets forth the proposed fees

8   and expenses to be paid to Plaintiff's counsel and the settlement administrator in clear,

9   understandable language.").  The Notice also provides contact information for Class Counsel and

10  Epiq, the proposed Claims Administrator, as well as information regarding the website created for

11  the case.

12  ## VI.     THE PROPOSED CLAIMS ADMINISTRATOR

13         Pursuant to Guideline §2, Class Counsel propose that the Court appoint Epiq as the Claims

14  Administrator for the Settlement in order to provide all notices approved by the Court to Class

15  Members, to process Proofs of Claim, and to administer the Settlement.  Epiq was approved by the

16  Court as the administrator for the previously issued Class Notice, *see* Class Notice Order,[23] and is a

17

18  ---

[22]     Class Members were provided with the opportunity to opt out of the Class in response to the
19  Notice of Pendency.  *See* Class Notice Order (requiring that all exclusion requests be received by
    May 23, 2019).  As such, a second opportunity to request exclusion is not provided here.  *See, e.g.*,
20  *Moorer v. StemGenex Med. Grp., Inc.*, No. 16-cv-02816-AJB-AHG, 2021 WL 4993054, at *6 (S.D.
    Cal. Oct. 26, 2021) ("Ninth Circuit authority supports that no such [second exclusion] option should
21  be permitted . . . . [when] the Class Members were previously offered the opportunity in the original
    class notices to either remain in the case or seek exclusion").  As the Ninth Circuit has explained:

22              [There is] no authority of any kind suggesting that due process requires that
23          members of a Rule 23(b)(3) class be given a second chance to opt out.  We think it
            does not. . . . [T]o hold that due process requires a second opportunity to opt out after
24          the terms of the settlement have been disclosed to the class would impede the
            settlement process so favored in the law.

25  *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1121 (9th Cir. 2018) (first alteration in original) (quoting
26  *Officers for Justice v. Civil Serv. Comm'n, of City & Cnty. of San Francisco*, 688 F.2d 615, 635 (9th
    Cir. 1982)).

27  [23]     Following the Court's Class Certification Order, Class Counsel selected Epiq in a
28  competitive selection process.  In the past two years, Class Counsel have retained Epiq six times in

PLAINTIFFS' NOTICE OF UNOPPOSED MOTION AND MOTION FOR PRELIMINARY APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF - 4:16-cv-05314-JST (SK)                                    - 23 -
4878-3420-4165.v3

recognized leader in legal administration services for class action settlements and legal noticing programs in the country, *see* Levin Decl., ¶38.

At this time, only a rough estimate of the total Notice and Administration Expenses can be provided as the costs are highly dependent on how many notices are ultimately mailed as well as emails sent, and how many claims are ultimately received and processed. Epiq will send the Notice to all individuals and entities who received the Notice of Pendency. It estimates that Notice and Administration Expenses for the Litigation may be in the range of $1,500,000 to $1,750,000. Villanova Decl., ¶17. These costs and expenses, which are necessary in order to fully and properly administer notice and claims administration, represent approximately 0.2% of the total value of the Settlement. All Notice and Administration Expenses will be paid from the Settlement Fund.

## VII.    PROPOSED SCHEDULE OF EVENTS

If the Court grants preliminary approval to the proposed Settlement, Plaintiffs respectfully propose the following schedule:

| EVENT | PROPOSED TIME FOR COMPLIANCE |
|---|---|
| Deadline for mailing the Notice and Proof of Claim to Class Members ("Notice Date") | 20 calendar days after entry of the Preliminary Approval Order |
| Deadline for publishing the Summary Notice | 7 calendar days after the Notice Date |
| Deadline for submitting Proofs of Claim | 90 calendar days after the Notice Date |
| Deadline for filing papers in support of final settlement approval, Plan of Allocation, and request for attorneys' fees and expenses | 35 calendar days before the Settlement Hearing |
| Deadline for filing an objection to the Settlement, Plan of Allocation or request for attorneys' fees and expenses | 21 calendar days before the Settlement Hearing |
| Deadline for filing reply memoranda in support of final settlement approval, Plan of Allocation, and request for attorneys' fees and expenses, and in response to any objections to the Settlement | 7 calendar days before the Settlement Hearing |

connection with class notice, claims processing, or settlement administration matters. *See* Levin Decl., ¶40.

| EVENT | PROPOSED TIME FOR COMPLIANCE |
|---|---|
| Settlement Hearing | Approximately 100 calendar days after the entry of the Preliminary Approval Order, or later at the Court's convenience |

## VIII. CONCLUSION

The proposed $809,500,000 Settlement is an outstanding result for the Class. The Class should have its chance to evaluate it. For the reasons set forth above, Plaintiffs respectfully request that the Court preliminarily approve the proposed Settlement, and enter the Preliminary Approval Order.

DATED: January 7, 2022

Respectfully submitted,

ROBBINS GELLER RUDMAN & DOWD LLP
DANIEL S. DROSMAN
TOR GRONBORG
ELLEN GUSIKOFF STEWART
LUCAS F. OLTS
J. MARCO JANOSKI GRAY
CHRISTOPHER R. KINNON
HEATHER G. SCHLESIER

s/ Daniel S. Drosman
DANIEL S. DROSMAN

655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)
ddrosman@rgrdlaw.com
torg@rgrdlaw.com
elleng@rgrdlaw.com
lolts@rgrdlaw.com
mjanoski@rgrdlaw.com
ckinnon@rgrdlaw.com
hschlesier@rgrdlaw.com

1

2
MOTLEY RICE LLC
GREGG S. LEVIN
3
LANCE V. OLIVER
MEGHAN S.B. OLIVER
4
MAX N. GRUETZMACHER
CHRISTOPHER F. MORIARTY
5
MEREDITH B. WEATHERBY
28 Bridgeside Blvd.
6
Mt. Pleasant, SC  29464
Telephone:  843/216-9000
7
843/216-9450 (fax)
glevin@motleyrice.com
8
loliver@motleyrice.com
moliver@motleyrice.com
9
mgruetzmacher@motleyrice.com
cmoriarty@motleyrice.com
10
mweatherby@motleyrice.com

11
*Co-Class Counsel for the Class*

12
BLEICHMAR FONTI & AULD LLP
LESLEY E. WEAVER
13
555 12th Street, Suite 1600
Oakland, CA  94607
14
Telephone:  415/445-4003
415/445-4020 (fax)
15
lweaver@bfalaw.com

16
*Liaison Counsel*

17

18

19

20

21

22

23

24

25

26

27

28

1          CERTIFICATE PURSUANT TO LOCAL RULE 5-1(i)(3)

2          I, Daniel S. Drosman, am the ECF User whose identification and password are being used to

3   file this document.  Pursuant to Local Rule 5-1(i)(3), I attest that concurrence in the filing of the

4   document has been obtained from each of the other signatories.

5          Dated:  January 7, 2022

6                                                    s/ Daniel S. Drosman
                                                   DANIEL S. DROSMAN
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

<u>CERTIFICATE OF SERVICE</u>

2

I hereby certify under penalty of perjury that on January 7, 2022, I authorized the electronic

3

filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send

4

notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I

5

hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the

6

non-CM/ECF participants indicated on the attached Manual Notice List.

7

s/ Daniel S. Drosman
DANIEL S. DROSMAN

8

9

ROBBINS GELLER RUDMAN
& DOWD LLP

10

655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058

11

619/231-7423 (fax)

12

E-mail:  ddrosman@rgrdlaw.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4878-3420-4165.v3

# Mailing Information for a Case 4:16-cv-05314-JST In re Twitter Inc. Securities Litigation

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jeffrey S. Abraham**
  jabraham@aftlaw.com

- **Peretz Bronstein**
  peretz@bgandg.com

- **Patrick J. Carome**
  patrick.carome@wilmerhale.com,WHDocketing@wilmerhale.com

- **Sam F Cate-Gumpert**
  SamCategumpert@dwt.com,vickyisensee@dwt.com

- **Alexis Susan Coll-Very**
  acollvery@goodwinlaw.com,JMcKenzie@goodwinlaw.com

- **Patrick V. Dahlstrom**
  pdahlstrom@pomlaw.com

- **Anne Kathleen Davis**
  adavis@bfalaw.com

- **Brett Hom De Jarnette**
  bdejarnette@cooley.com,jcorrell@cooley.com

- **Daniel S. Drosman**
  DanD@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_sd@rgrdlaw.com,tkoelbl@rgrdlaw.com,DanD@ecf.courtdrive.com,e_file_sf@rgrdlaw.com

- **John C. Dwyer**
  dwyerjc@cooley.com,eFilingNotice@cooley.com,efiling-notice@ecf.pacerpro.com,emadrigal@cooley.com

- **Laura Marie Elliott**
  lelliott@cooley.com,dfoster@cooley.com,efiling-notice@ecf.pacerpro.com

- **Joseph A. Fonti**
  jfonti@bfalaw.com,ecfnotifications@bfalaw.com,ndennany@bfalaw.com

- **Janet A Gochman**
  jgochman@stblaw.com,3892155420@filings.docketbird.com,cterricone@stblaw.com

- **Kathleen Howard Goodhart**
  kgoodhart@cooley.com,eFilingNotice@cooley.com,efiling-notice@ecf.pacerpro.com,jpalaganas@cooley.com

- **Marc Gorrie**
  mgorrie@pomlaw.com

- **Tor Gronborg**
  torg@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Max Nikolaus Gruetzmacher**
  mgruetzmacher@motleyrice.com,vdavis@motleyrice.com,kquillin@motleyrice.com

- **Ellen Anne Gusikoff-Stewart**
  elleng@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com

- **James Michael Hughes**
  jhughes@motleyrice.com,erichards@motleyrice.com,kweil@motleyrice.com

- **Joseph Marco Janoski Gray**
  mjanoski@rgrdlaw.com,cbarrett@rgrdlaw.com,msonney@rgrdlaw.com,tdevries@rgrdlaw.com

- **Christopher J. Keller**
  ckeller@labaton.com,5497918420@filings.docketbird.com,lpina@labaton.com,drogers@labaton.com,electroniccasefiling@labaton.com

- **Christopher Ryan Kinnon**
  ckinnon@rgrdlaw.com,CKinnon@ecf.courtdrive.com

- **James Glenn Kreissman**
  jkreissman@stblaw.com,kourtney.kinsel@stblaw.com,justin.calderon@stblaw.com,eric.mccaffree@stblaw.com,abigail.dugan@stblaw.com,1058725420@filings.docke

- **Gregg S. Levin**
  glevin@motleyrice.com,sturman@sturman.ch,lmclaughlin@motleyrice.com,erichards@motleyrice.com,kweil@motleyrice.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,fgravenson@pomlaw.com,ipareja@pomlaw.com

- **Nathan R. Lindell**
  nlindell@rgrdlaw.com,Nlindell@ecf.courtdrive.com,MKuwashima@rgrdlaw.com

- **Francis P. McConville**
  fmcconville@labaton.com,HChang@labaton.com,lpina@labaton.com,drogers@labaton.com,9849246420@filings.docketbird.com,electroniccasefiling@labaton.com

- **Dean Michael McGee**
  dean.mcgee@stblaw.com

- **Sonal N. Mehta**
  sonal.mehta@wilmerhale.com,Felicia.Roy@wilmerhale.com,whdocketing@wilmerhale.com,Leizel.Galon@wilmerhale.com,Claire.Bergeron@wilmerhale.com

- **Christopher Francis Moriarty**
  cmoriarty@motleyrice.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **William H. Narwold**
  bnarwold@motleyrice.com,mjasinski@motleyrice.com,ajanelle@motleyrice.com

- **Stephen Cassidy Neal**
  sneal@cooley.com,wilsonla@cooley.com

- **Lance V. Oliver**
  loliver@motleyrice.com

- **Meghan Shea Blaszak Oliver**
  moliver@motleyrice.com

- **Lucas F. Olts**
  Lolts@rgrdlaw.com,morgank@ecf.courtdrive.com,e_file_sd@rgrdlaw.com,LOlts@ecf.courtdrive.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,jalieberman@pomlaw.com,ahood@pomlaw.com,lobas@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,fgravenson@pomlaw.

- **Michael J Pendell**
  mpendell@motleyrice.com

- **Charles J. Piven**
  piven@browerpiven.com

- **Aarti G. Reddy**
  areddy@cooley.com,dfoster@cooley.com,galancr@cooley.com,efiling-notice@ecf.pacerpro.com

- **Rosemary M. Rivas**
  rmr@classlawgroup.com,2746730420@filings.docketbird.com

- **Quentin Alexandre Roberts**
  quentin.roberts@diamondmccarthy.com

- **John Alexander Robinson**
  jrobinson@stblaw.com,1629454420@filings.docketbird.com

- **Laurence Matthew Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net,lrosen@ecf.courtdrive.com

- **Kelli L. Sager**
  kellisager@dwt.com,vickyisensee@dwt.com

- **Scott H. Saham**
  scotts@rgrdlaw.com,ScottS@ecf.courtdrive.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com,e_file_SD@rgrdlaw.com

- **Shane Palmesano Sanders**
  ssanders@robbinsllp.com,notice@robbinsllp.com

- **Jessica Valenzuela Santamaria**
  jsantamaria@cooley.com,jfernandes@cooley.com,emadrigal@cooley.com

- **Heather G. Schlesier**
  hschlesier@rgrdlaw.com,cbarrett@rgrdlaw.com,HSchlesier@ecf.courtdrive.com

- **Eric Matthew Stahl**
  ericstahl@dwt.com,christinekruger@dwt.com,seadocket@dwt.com

- **Simona Gurevich Strauss**
  sstrauss@stblaw.com,janie.franklin@stblaw.com,sblake@stblaw.com

- **Phong L. Tran**
  phongt@johnsonfistel.com

- **David Conrad Walton**
  davew@rgrdlaw.com

- **Meredith B. Weatherby**
  mbmiller@motleyrice.com

- **Lesley Elizabeth Weaver**
  lweaver@bfalaw.com,emily-aldridge-5965@ecf.pacerpro.com,lesley-weaver-4669@ecf.pacerpro.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,ShawnW@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Jonathan K. Youngwood**
  jyoungwood@stblaw.com,7448332420@filings.docketbird.com,ManagingClerk@stblaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)