ROBBINS GELLER RUDMAN & DOWD LLP
DANIEL S. DROSMAN (200643)
TOR GRONBORG (179109)
ELLEN GUSIKOFF STEWART (144892)
LUCAS F. OLTS (234843)
J. MARCO JANOSKI GRAY (306547)
CHRISTOPHER R. KINNON (316850)
HEATHER G. SCHLESIER (322937)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

MOTLEY RICE LLC
GREGG S. LEVIN (admitted *pro hac vice*)
LANCE V. OLIVER (admitted *pro hac vice*)
MEGHAN S.B. OLIVER (admitted *pro hac vice*)
MAX N. GRUETZMACHER (admitted *pro hac vice*)
CHRISTOPHER F. MORIARTY (admitted *pro hac vice*)
MEREDITH B. WEATHERBY (admitted *pro hac vice*)
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
Telephone:  843/216-9000
843/216-9450 (fax)

*Co-Class Counsel for the Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re TWITTER INC. SECURITIES LITIGATION | ) ) ) |
| | ) |
| This Document Relates To: | ) ) |
| ALL ACTIONS. | ) ) ) |

Case No. 4:16-cv-05314-JST (SK)

CLASS ACTION

DECLARATION OF GREGG S. LEVIN IN
SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL
OF PROPOSED CLASS ACTION
SETTLEMENT

JUDGE:   Hon. Jon S. Tigar
DATE:    March 10, 2022
TIME:    2:00 (via videoconference)

4882-9978-1637.v2

1    I, Gregg S. Levin, hereby declare and state as follows:

2        1.    I am an attorney admitted *pro hac vice* before this Court.  I am a member attorney at

3   Motley Rice LLC ("Motley Rice"), counsel for Lead Plaintiff KBC Asset Management NV ("Lead

4   Plaintiff" or "KBC") and Court-appointed Lead Counsel.  Motley Rice and Robbins Geller Rudman

5   & Dowd LLP ("Robbins Geller") were appointed as Class Counsel in this matter by order of this

6   Court dated July 16, 2018.[1]  ECF No. 181.  I have personal knowledge of the facts set forth herein

7   and, if called upon to testify, I could and would do so truthfully and accurately.  I submit this

8   declaration, together with the attached exhibits, in support of Plaintiffs' Unopposed Motion for

9   Preliminary Approval of Proposed Class Action Settlement.[2]

10   **I.    HISTORY AND BACKGROUND OF THE LITIGATION**

11       2.    On September 16, 2016, a class action complaint was filed in this Court by Robbins

12  Geller asserting violations of the federal securities laws against Defendants.[3]  On December 22,

13  2016, the Court consolidated this and another later-filed case, appointed KBC as lead plaintiff,

14  Motley Rice as Lead Counsel, and Bleichmar, Fonti & Auld as Liaison Counsel.  ECF No. 72.  On

15  January 18, 2017, Lead Plaintiff associated Robbins Geller as additional counsel to assist in the

16  prosecution of the action.  The case was subsequently recaptioned as *In re Twitter Inc. Securities*

17  *Litigation*, No. 4:15-cv-05439-JST (the "Litigation").  ECF No. 127.

18       3.    Lead Plaintiff filed its Consolidated Amended Complaint for Violations of the

19  Federal Securities Laws (the "Complaint") on March 2, 2017.  ECF No. 81.  The Complaint asserted

20  claims on behalf of all persons who purchased or otherwise acquired Twitter common stock between

21  February 6, 2015, and July 28, 2015, inclusive (the "Class Period").  *Id*. at 1.  In short, Plaintiffs

22  alleged that during the period between February 5, 2015 and July 28, 2015, Twitter and the

23  _____

24  [1]    Exhibit 1 to this Declaration is a true and correct copy of the firm resume of Motley Rice.
     Exhibit 2 to this Declaration is a true and correct copy of the firm resume of Robbins Geller.

25  [2]    "Plaintiffs" refer to Class Representatives KBC and National Elevator Industry Pension Fund
26  ("NEIPF").

27  [3]    "Defendants" refers to Twitter and the individual defendants, Richard Costolo and Anthony
     Noto.  Noto and Costolo are collectively referred to herein as the "Individual Defendants."  The term
28  "Parties" as used herein refers collectively to the Plaintiffs and the Defendants.

1    Individual Defendants made materially false or misleading statements in violation of §10(b) of the

2    Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5 promulgated thereunder, which

3    caused the price of Twitter stock to trade at artificially inflated prices.  Plaintiffs also alleged that the

4    Individual Defendants' conduct violated §20(a) of the Exchange Act.

5          4.      Specifically, Plaintiffs alleged that Defendants misled investors during the Class

6    Period by making public statements that did not reflect the actual state of Twitter's user engagement

7    and user growth, which they contended was relevant to evaluating Twitter's potential financial

8    performance.  The alleged misstatements and omissions concerned Twitter's ratio of daily active

9    users ("DAU") to monthly active users ("MAU") (*i.e.*, "DAU/MAU"), which Plaintiffs contended

10    measured user engagement or frequency of use, and Twitter's MAU, which Plaintiffs contended

11    measured Twitter's user base.  Plaintiffs alleged that persons who purchased Twitter stock during the

12    Class Period suffered economic losses when the price of Twitter stock declined as a result of two

13    sets of corrective disclosures that revealed the problems with user engagement and user growth that

14    the challenged statements had allegedly concealed.  Twitter and the Individual Defendants deny

15    Plaintiffs' allegations.

16          5.      Defendants thereafter moved to dismiss the Complaint. ECF Nos. 91, 104.  Plaintiffs

17    opposed Defendants' motion (ECF No. 94), and on October 16, 2017, the Court granted in part and

18    denied in part Defendants' motion.  ECF No. 113.

19          6.      Defendants answered the Complaint on November 17, 2017 (ECF No. 118), amended

20    their answer on December 8, 2017 (ECF No. 119), and the Parties then began formal fact discovery.

21          7.      The Parties met and conferred extensively regarding the method and form of

22    Defendants' document productions, and briefed myriad discovery disputes for decision by the Court.

23    *See, e.g.*, ECF Nos. 134, 157, 190, 196, 203, 206, 215, 232, 242, 254, 259, 265, 273, 278, 293.

24    Ultimately, the Parties' extensive fact discovery included the exchange of more than 210,000

25    documents (encompassing millions of pages) from over 50 custodians, 27 fact witness depositions,

26    and the exchange of thousands of pages of admissions and sworn interrogatory responses.  Plaintiffs

27    also issued subpoenas to approximately 23 third parties, which produced more than 26,000

28    additional documents.  Plaintiffs themselves produced tens of thousands of pages of documents, sat

1  for depositions, provided responses to document requests, interrogatories, and requests for

2  admission, and attended mediation in this matter.

3          8.      On July 17, 2018, after briefing and argument from the Parties, the Court certified a

4  class of all persons and entities that purchased or otherwise acquired shares of the publicly traded

5  common stock of Twitter during the period from February 6, 2015, through July 28, 2015, inclusive,

6  and were damaged thereby.  *See* ECF No. 181 (the "Class Certification Order").   The Court

7  appointed KBC and NEIPF as Class Representatives and appointed Motley Rice and Robbins Geller

8  as Class Counsel.  *Id.*  On February 21, 2019, the Court issued its Order Approving Class Notice and

9  Amended Joint Proposal For Dissemination (ECF No. 238) (the "Class Notice Order"), which

10  approved the form and manner of providing notice of the pendency of the Litigation to the Class, and

11  pursuant to which required any persons or entities wishing to exclude themselves from the Class do

12  so by May 23, 2019.   In accordance with this order, Epiq Systems, Inc. ("Epiq"), the Court-

13  appointed administrator, began distributing notice of the Class Action to potential Class members on

14  April 2, 2019.  ECF No. 306.  On or about April 2, 2019, Epiq created a case-specific website on

15  which key documents were posted and where Class Members could go to obtain additional

16  information about the case.  Over 323,000 notices were mailed to potential class members and

17  nominees.  Twenty valid and timely requests to opt-out of the Litigation were returned.  *Id.*

18          9.      The Parties also conducted extensive expert discovery on issues including loss

19  causation, damages, social media user and engagement metrics, stock trading plans, corporate

20  disclosure requirements and processes, and analyst, investor, and advertiser perceptions of Twitter.

21  In total, the Parties produced 19 expert reports from 13 experts, took 14 expert depositions, and

22  produced numerous expert-related documents.

23          10.     On September 13, 2019, Defendants moved for summary judgment on all of

24  Plaintiffs' claims.  ECF No. 314.  On October 31, 2019, Defendants also moved to exclude the

25  testimony of two of Plaintiffs' critical experts: their loss causation/damages expert and their expert

26  on social media user metrics.  These motions, if granted, could have proven case dispositive.  *See*

27  ECF Nos. 373, 376.  Plaintiffs opposed each of these motions.  ECF Nos. 362, 385, 387.  On

28  January 28, 2020, the Court denied in full Defendants' motions to exclude the testimony of these two

experts.  ECF No. 421.  On that same date, the Parties also submitted seven additional motions to exclude the testimony of other experts slated to provide trial testimony.  On April 17, 2020, the Court denied, in full, Defendants' summary judgment motion (ECF No. 478), and, on April 20, 2020, the Court granted in part and denied in part the Parties' motions to exclude the testimony of several experts designated to offer opinions at trial.  ECF No. 482.  Following the Court's summary judgment order and extensive meet and confer discussions regarding the scope of admissible evidence at trial, the Parties briefed 19 motions *in limine*.  *See, e.g.*, ECF Nos. 497, 498, 527.

11.    Because of the emergence of the global COVID-19 pandemic in the spring of 2020, the then-scheduled trial date of June 22, 2020 (ECF No. 455), was vacated by the Court on May 19, 2020 (ECF No. 515), and rescheduled to commence on September 20, 2021.  ECF No. 567.

12.    In the interim, the Parties, among other things, negotiated and submitted to the Court a proposed joint pretrial statement that included trial exhibits and deposition designations (ECF No. 584), proposed jury instructions (ECF No. 585), competing verdict forms (ECF Nos. 586, 587), and attended final pretrial conferences on June 21 and July 12, 2021 (ECF Nos. 589, 599), during which various trial-related matters were presented and argued to the Court.  The Parties also briefed and argued additional motions in the closing weeks prior to the scheduled trial start date, including whether Defendants should be permitted to substitute one of their proposed experts (ECF No. 603); whether Plaintiffs should be permitted to use leading questions with trial witnesses associated with Defendants (ECF No. 605); whether the Court should reconsider its summary judgment order (ECF No. 611); and whether Plaintiffs should be permitted to call a non-party journalist to testify at trial. ECF No. 629.

13.    During the course of the Litigation, the Parties engaged a neutral third-party mediator, the Hon. Layn R. Phillips (Ret.).  Judge Phillips held direct settlement discussions on at least three occasions between August 31, 2018, and August 17, 2021, and convened various teleconferences and meetings regarding a potential resolution of the action throughout that period and subsequently, up to and including the days prior to the scheduled start of trial on September 20, 2021.  On September 19, 2021 – the last day prior to the date scheduled for jury selection – an agreement was

reached to settle the Litigation for $809,500,000.00, subject to approval by the Court (the "Settlement").

14.     On January 5, 2022, Plaintiffs and Twitter executed the Stipulation of Settlement (the "Stipulation"),[4] a true and correct copy of which is attached hereto as Exhibit 3.[5]  Annexed as exhibits to the Stipulation are the following documents:

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| A | Preliminary Approval Order |
| A-1 | Notice |
| A-2 | Proof of Claim Form |
| A-3 | Summary Notice |
| B | Final Judgment and Order |

## II.     INFORMATION ABOUT THE SETTLEMENT

15.     The Settlement requires Twitter to pay, or cause to be paid, $809,500,000.00 (the "Settlement Amount"), which amount, plus all interest and accretions thereto, comprises the Settlement Fund.  Stipulation, ¶2.2.  The Settlement Amount was deposited into the Escrow Account on October 8, 2021, *id.*, and currently is earning interest for the benefit of the Class.

16.     Notice to the Class and the cost of settlement administration will be funded by the Settlement Fund.  Stipulation, ¶2.9.  Plaintiffs propose Epiq, a nationally-recognized class action settlement administrator, be retained, subject to the Court's approval.  Following a competitive selection process, Epiq was previously approved by the Court to distribute notice of the class action following the Class Certification Order.

17.     The Notice provides that Class Counsel will move for final approval of the Settlement and: (a) an award of attorneys' fees in the amount of no more than 22.5% of the Settlement Amount; (b) payment of expenses or charges resulting from the prosecution of the Litigation not in excess of

---

[4]     Class Representatives, on behalf of themselves and each Class Member, and the Individual Defendants have entered into a separate agreement providing for mutual releases and dismissal with prejudice of the Litigation against them contemporaneous with the dismissal of the Litigation against Twitter (the "Agreement").  The Agreement is attached hereto as Exhibit 4.

[5]     All capitalized terms not otherwise defined herein, have the same meanings as set forth in the Stipulation.

1   $4 million; and (c) any interest on such amounts at the same rate and for the same period as earned

2   by the Settlement Fund.  Further, as explained in the Notice, Plaintiffs intend to request an amount

3   not to exceed $40,000 in the aggregate pursuant to 15 U.S.C. §78u-4(a)(4) in connection with their

4   representation of the Class.

5         18.     Once Notice and Administration Expenses, Taxes, Tax Expenses and Court-approved

6   attorneys' fees and expenses and any award to Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4) in

7   connection with their representation of the Class have been paid from the Settlement Fund, the

8   remaining amount, the Net Settlement Fund, shall be distributed to Authorized Claimants pursuant to

9   the Court-approved Plan of Allocation.  Stipulation, ¶5.2.  These distributions shall be repeated until

10  the balance remaining in the Settlement Fund is *de minimis*.  *Id*., ¶5.10.  Any *de minimis* balance that

11  still remains in the Net Settlement Fund after such reallocation(s) and payments and that is not

12  feasible or economical to reallocate shall be donated to the Investor Protection Trust, a 501(c)(3)

13  non-profit dedicated to investor education and protection (subject to Court approval).  *Id*.  The Plan

14  of Allocation treats all Class Members equitably based on the timing of their Twitter common stock

15  purchases, acquisitions, and sales.

16        19.     In exchange for the benefits provided under the Stipulation, all Class Members –

17  except those who previously submitted valid and timely exclusion requests pursuant to the Notice of

18  Pendency of Class Action provided in April 2019 – will release any and all claims and causes of

19  action of every nature and description, whether known or unknown, whether arising under federal,

20  state, common or foreign law, that Plaintiffs or any other members of the Class asserted or could

21  have asserted in any forum that (a) arise out of, are based upon, or relate in any way to any of the

22  allegations, acts, transactions, facts, events, matters, occurrences, representations, or omissions

23  involved, set forth, alleged, or referred to, in the Litigation, or which could have been alleged in the

24  Litigation, and (b) arise out of, are based upon, or relate in any way to the purchase, acquisition,

25  holding, sale, or disposition of any Twitter securities during the Class Period.  Stipulation, ¶¶1.25,

26  4.1.

27

28

## A.    The Releases

20.    Under the terms of the proposed Settlement, upon the Effective Date, Class Representatives shall have, and each and every Releasing Plaintiff Party shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever waived, released, relinquished, discharged, and dismissed with prejudice each and every one of the Released Claims against each and every one of the Released Defendant Parties and shall forever be barred and enjoined from asserting, commencing, instituting, prosecuting, continuing to prosecute, or maintaining in any court of law or equity, arbitration tribunal, or other forum any and all of the Released Claims against any and all of the Released Defendant Parties, whether or not such Releasing Plaintiff Party executes and delivers the Proof of Claim or shares in the Net Settlement Fund.  *See* Stipulation, ¶4.1.

21.    The term "Released Claims" means any and all claims, demands, losses, rights, and causes of action of any nature whatsoever, that have been or could have been asserted in the Litigation, could have been asserted in any forum, or could in the future be asserted in any forum, whether known claims or Unknown Claims, whether foreign or domestic, whether arising under federal, state, local, common, statutory, governmental, administrative, or foreign law, or any other law, rule or regulation, at law or in equity, whether class, individual, direct, derivative, representative, on behalf of others in nature, whether fixed or contingent, whether accrued or unaccrued, whether liquidated or unliquidated, whether matured or unmatured, whether brought directly or indirectly against any of the Released Defendant Parties that Class Representatives, any member of the Class, or their successors, assigns, executors, administrators, representatives, attorneys, and agents, in their capacities as such (i) asserted in the Litigation, or (ii) could have been asserted in any court or forum that arise out of, are based upon, or relate in any way to any of the allegations, acts, transactions, facts, events, matters, occurrences, representations, or omissions involved, set forth, alleged, or referred to, in the Litigation, or which could have been alleged in the Litigation, and that relate in any way, directly or indirectly, to the purchase, sale, acquisition, disposition, or holding of any Twitter securities during the Class Period.  Released Claims does not include (i) claims to enforce the Settlement; (ii) any claims of any person or entity that submitted a

1   request for exclusion as set forth in Appendix 1 to the Stipulation; or (iii) claims of Future Excluded

2   Persons, if any.  Released Claims include "Unknown Claims."  Stipulation, ¶1.25.

3          22.    The term "Released Defendant Parties" is defined in the Stipulation, *see* ¶1.26, and

4   means each and all of Defendants, Defendants' Counsel, and any of their Related Parties.  The term

5   "Related Parties," in turn, means any Person's former, present or future parents, subsidiaries,

6   divisions, controlling persons, associates, related entities and affiliates, any entity in which a Person

7   has a controlling interest, and each and all of their respective present and former employees,

8   members, partners, principals, officers, directors, controlling shareholders, agents, attorneys,

9   advisors (including financial or investment advisors), accountants, auditors, consultants,

10  underwriters, investment bankers, commercial bankers, entities providing fairness opinions, general

11  or limited partners or partnerships, limited liability companies, members, joint ventures and insurers

12  and reinsurers or co-insurers of each of them; as well as the predecessors, successors, estates,

13  Immediate family members, spouses, heirs, executors, trusts, trustees, administrators, agents, legal or

14  personal representatives, assigns, and assignees of each of them, in their capacity as such.  (For

15  purposes of the Stipulation, the Individual Defendants and Twitter are each other's Related Parties.)

16  *See* Stipulation, ¶1.24 & n.3.

17          **B.     The Anticipated Recovery Under the Settlement**

18          23.    This $809,500,000 Settlement amounts to an estimated average recovery per eligible

19  share in the range of $2.34 and $2.82, before the deduction of Court-approved fees and expenses and

20  costs of notice and claims administration.

21          24.    Class Counsel will request attorneys' fees in an amount not to exceed 22.5% of the

22  Settlement Fund and payment of expenses not to exceed $4 million.  Further, as explained in the

23  Notice, Plaintiffs intend to request an amount not to exceed $40,000 in the aggregate pursuant to 15

24  U.S.C. §78u-4(a)(4) in connection with their representation of the Class.  The costs of the notice and

25  claims administration process, are estimated to be approximately $1,500,000 to $1,750,000.  *See*

26  Declaration of Alexander P. Villanova of Epiq in Support of Settlement Notice Plan ("Villanova

27  Decl."), ¶15.  After deduction of the foregoing fees, costs, and expenses, the estimated average cost

28  per affected share is between $0.54 and $0.65 per share.

25.     If Plaintiffs had succeeded at trial, **and** if the jury awarded Plaintiffs the maximum amount of damages – *i.e.*, Plaintiffs' best-case scenario – estimated recoverable damages would have been approximately $2.69 to $3.37 billion.   Thus, the $809,500,000 Settlement represents approximately 24% to 30% of the recoverable damages potentially available if Plaintiffs had fully prevailed at trial.  This represents 7.5 to 9 times the median percentage recovery for cases settled with estimated damages of $1 billion or more in 2020 (3.2%), and 18 to 23 times the median recovery of similar cases settled in 2019 (1.3%).[6]

26.     Among the factors bearing on the fairness of the compromise reached are Class Counsel's extensive investigation, the amount of discovery conducted, and legal research of the claims asserted in the Litigation, which helped counsel evaluate, refine, and sharpen their understanding of the strengths and weaknesses of Plaintiffs' claims, including:

(a)     In drafting the Complaint and during the PSLRA automatic discovery stay, counsel conducted an extensive factual investigation, which included: (a) a detailed review of (i) Twitter's Securities Exchange Commission ("SEC") filings, press releases, conference calls, news reports, blog postings, and other public statements made by Defendants prior to, during, and after the Class Period; (ii) public documents, reports, announcements, and news articles concerning Twitter; (iii) research reports by securities and financial analysts; and (iv) economic analyses of stock price movement and pricing data; (b) conducting numerous fact interviews with former employees and third parties; and (c) a review and analysis of other publicly available material and data;

(b)     In opposing the Defendants' motion to dismiss, counsel further engaged in extensive legal research relating to the strengths and weaknesses of the claims asserted in this Litigation; and

---

[6]     *See, e.g.*, Laarni T. Bulan, Laura E. Simmons, *Securities Class Action Settlements – 2019 Review and Analysis* at 6, Fig. 5 (Cornerstone Research 2020) (finding median settlement as a percentage of estimated damages was 1.3% in 2019 for Rule 10b-5 cases involving over $1 billion in damages) (attached hereto as Ex. 5); Laarni T. Bulan, Laura E. Simmons, *Securities Class Action Settlements – 2020 Review and Analysis* at 6, Fig. 5 (Cornerstone Research 2021) (noting median settlement as a percentage of estimated damages was 3.2% in 2020 for Rule 10b-5 cases involving over $1 billion in damages) (attached hereto as Ex. 6).

(c)         Following the Court's denial, in large part, of Defendants' motion to dismiss, counsel (i) completed extensive fact discovery involving the exchange of hundreds of thousands of documents between the Parties, more than two dozen fact depositions, and nearly two dozen subpoenas issued to third parties; (ii) completed expert discovery, involving the exchange of 19 expert reports from over a dozen experts and 14 expert depositions; (iii) briefed and defeated Defendants' motion for summary judgment and their motion for partial reconsideration of the Court's summary judgment order; (iv) briefed and received rulings on 10 *Daubert* motions and 19 motions *in limine*; and (v) exchanged and filed trial exhibits, jury instructions, verdict forms, and attended multiple final pretrial conferences.

27.     Based on publicly available information, documents obtained through counsel's pre-Complaint investigation, formal discovery, research and analysis conducted in connection with the numerous briefs that were filed in the Litigation, and discussions with experts, Class Counsel believe that Plaintiffs would have been able to prove their claims at trial.

28.     Class Counsel also recognize that Plaintiffs faced considerable risks at trial, and on any post-trial appeal. By way of example, in order for the Plaintiffs to prevail, they would first have to establish that Defendants made an actionable materially false or misleading statement or omitted material information. At trial, Defendants undoubtedly would have argued that Plaintiffs could not demonstrate that any of the challenged statements were fraudulent, maintaining as they have throughout the action that nothing they said was false, deceptive, or misleading when these statements were made.

29.     Plaintiffs and Class Counsel carefully considered such risks during the lead up to the trial and throughout the settlement discussions with Defendants and Judge Phillips. The Settlement eliminates these and other risks, enabling the Class to recover a substantial sum of money, while avoiding continued litigation and the unpredictability of a jury trial.

30.     Barring the Settlement, this case would require the expenditure of substantial additional sums of time and money at trial and beyond, with no guarantee that any additional benefit would be provided to the Class. Even if Plaintiffs succeeded at the "Phase One" portion of the case and met their burden with respect to falsity, materiality, scienter, class-wide reliance under the

1  "fraud on the market" presumption, loss causation, the measure of per-share damages (if any), and

2  control person liability, the case would still be far from over.  During the "Phase Two" component of

3  the case, Defendants would have had the opportunity to challenge individual Class Members'

4  membership in the Class; challenge the presumption of reliance as to each Class Member (including

5  Plaintiffs); and challenge the amount of damages due each Class Member.  *See, e.g.*, ECF No. 499 at

6  1.  Such a process would have been lengthy, complex, and extremely costly.

7       31.    Moreover, Defendants would almost certainly file an appeal after either or both

8  phases of the trial – a process that would further extend the litigation for years, and risk reversal of

9  any plaintiffs' verdict.  Conversely, the Settlement confers a substantial and immediate benefit on

10  the Class, and avoids the risks associated with obtaining a wholly speculative (but potentially larger)

11  sum in the future.

12       32.    On an absolute basis, the Settlement likely will rank within the top 20 largest

13  settlements obtained to date in a securities fraud action,[7] and the recovery is an order of magnitude

14  greater (on a percentage basis) than the median recoveries generally obtained in securities class

15  actions.  Class Counsel further submits that the Settlement is in the best interests of the Class,

16  represents a significant recovery, and merits preliminary approval.

17      **C.**    **The Proposed Plan of Allocation of the Settlement Fund**

18       33.    The Plan of Allocation is detailed in the Notice.  *See* Notice at 12-17.  The Notice

19  also will be posted online at www.TwitterSecuritiesLitigation.com.

20       34.    Under the proposed Plan of Allocation, each Authorized Claimant will receive his,

21  her, or its *pro rata* share of the Net Settlement Fund, which is the Settlement Fund, plus any and all

22  interest earned thereon, less any:  (i) Taxes; (ii) Notice and Administration Expenses; (iii) litigation

23  expenses awarded by the Court; (iv) attorneys' fees awarded by the Court; and (v) any amounts

24  awarded pursuant to 15 U.S.C. §78u-4(a)(4) in connection with Plaintiffs' representation of the

25  Class.

26

27  [7]    *See, e.g.*, The Top 100 U.S. Class Action Settlements of All Time as of December 2020 (ISS

28  Securities Class Action Services 2021) (attached hereto as Ex. 7).

DECLARATION OF GREGG S. LEVIN - 4:16-cv-05314-JST (SK)    - 11 -
4882-9978-1637.v2

35.     Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

36.     The Plan of Allocation provides for distribution of the Net Settlement Fund among Authorized Claimants on a *pro rata* basis based on a "Recognized Loss" formula that is based on the timing of the purchases and sales of Twitter common stock and the declines that occurred in the price of the stock following the alleged corrective disclosures.

37.     An individual Claimant's recovery under the Plan of Allocation will depend upon a number of factors, including, *inter alia*, the number of Twitter shares represented by valid claims filed by other Claimants and the number of shares of Twitter common stock the Claimant purchased, acquired, or sold during the Class Period.  This is a widely accepted approach to the fair distribution of settlement funds in securities class action settlements.  Class Counsel believe that the Plan of Allocation will result in a fair and equitable distribution of the Net Settlement Fund among Class Members who submit valid claims.

**D.     The Settlement Administrator**

38.     Class Counsel propose that the Court appoint Epiq as the Claims Administrator for the Settlement in order to provide all notices approved by the Court to Class Members, to process Claim Forms, and to administer the Settlement.  Epiq is a recognized leader in legal administration services for class action settlements and legal noticing programs.

39.     Following the Class Certification Order, Class Counsel conducted a competitive selection process and selected Epiq to administer the Class Notice, and the Court approved Epiq as the Class Notice Administrator.

40.     In the last two years, Epiq has administered, or is currently administrating, the following settlements in which Class Counsel served as Lead Counsel or Co-Lead Counsel: *Klein v. Altria Group, et al.*, No. 3:20-cv-00075-DJN (E.D. Va.); *Halcom v. Genworth Life Insurance Co.*, No. 3:21-cv-19 (E.D. Va.); *In re Jeld-Wen Holding, Inc. Securities Litigation*, No. 3:20-cv-112 (E.D. Va.); *Bautista v. Valero Marketing & Supply Co.*, No. 3:15-cv-5557 (N.D. Cal.); *Skochin v. Genworth Life Insurance Co.*, No. 3:19-cv-49 (E.D. Va.); *Sokolow v. LJM Funds Management, Ltd.*,

1   No. 1:18-cv-1039 (N.D. Ill.); and *Galestan v. OneMain Holdings, Inc.*, No. 1:17-cv-1016

2   (S.D.N.Y.).  *See* Villanova Decl., ¶3.

3          41.    At this time, only a rough estimate of the total Notice and Administration Expenses

4   can be provided, as the costs are highly dependent on how many notices are ultimately mailed, how

5   many claims are ultimately received, and the amount of work necessary to fully and accurately

6   process those claims.  *Id.*, ¶¶14-15.  Epiq estimates that the total Notice and Administration

7   Expenses for the Litigation may be in the range of $1,500,000 to $1,750,000.  *Id.*, ¶15.

8          **E.     There Are No Reversions to the Defendants**

9          42.    Under the terms of the Stipulation, no portion of the Settlement Amount will revert to

10  Twitter.  *See* Stipulation, ¶2.12.

11  **III.    THE NOTICE PROGRAM**

12         **A.     The Notice Distribution Plan**

13         43.    In accordance with the proposed Preliminary Approval Order, attached as Exhibit A

14  to the Stipulation filed herewith, Class Counsel will cause the Claims Administrator to mail, by first-

15  class mail, individual copies of the Notice and Proof of Claim Form to all potential Class Members

16  who received the Notice of Pendency.  Epiq will also provide the Notice and Claim Form to the

17  brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of

18  stock.

19         44.    Contemporaneously with the mailing of the Notice, Class Counsel will cause the

20  Claims Administrator to post downloadable copies of the Notice and Proof of Claim Form on the

21  previously-established website, www.TwitterSecuritiesLitigation.com.  Additionally, not later than

22  seven (7) calendar days after the Notice Date, the Claims Administrator shall cause the Summary

23  Notice to be published once in the national edition of *The Wall Street Journal* and once over a

24  national newswire service.

25         45.    Class Counsel believe that this method of notice will provide Class Members with a

26  full and fair opportunity to consider the proposed Settlement.  Courts routinely find that these

27  methods of notice are sufficient.  *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *5

28  (N.D. Cal. Dec. 18, 2018) (finding notice sufficient when potential class members were mailed

1   notice packets and notice "was published in *The Wall Street Journal* and the *Los Angeles Times*, as

2   well as transmitted over the *PR Newswire*").

3       **B.    The Notice Contents Are Adequate**

4       46.    A settlement notice must describe "'the terms of the settlement in sufficient detail to

5   alert those with adverse viewpoints to investigate and to come forward and be heard.'"  *Lane v.*

6   *Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d

7   948, 962 (9th Cir. 2009)).  The PSLRA further requires that "every settlement notice must include a

8   statement explaining a plaintiff's recovery."  *In re Wireless Facilities, Inc. Sec. Litig.*, 253 F.R.D.

9   630, 636 (S.D. Cal. 2008).  As more fully explained in the accompanying Unopposed Motion for

10  Preliminary Approval of Proposed Class Action Settlement, the notice program not only satisfies the

11  requirements of due process, Rule 23(c)(2), and the PSLRA (15 U.S.C. §78u-4(a)(7)), it does so in

12  easily understandable language.

13      47.    The proposed forms of notice describe the terms of the Stipulation and the Class's

14  recovery; the factors that Plaintiffs and their counsel considered in determining that the Settlement is

15  fair, adequate, and reasonable; the maximum attorneys' fees and expenses that may be sought; the

16  procedure for objecting to the Settlement and the deadline to do so; the procedure for participating in

17  the Settlement and instructions on how to complete and submit a Proof of Claim to the Claims

18  Administrator and the deadline to do so; the proposed Plan of Allocation for the settlement proceeds;

19  and the date, time, and place of the Settlement Hearing.  The Notice also provides contact

20  information for Class Counsel and the Claims Administrator, as well as information regarding the

21  case-specific website.

22      48.    Class Counsel respectfully submit that the form of the notice contemplated here

23  satisfies the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. §78u-4(a)(7).  Here,

24  the Notice and Summary Notice fairly apprise the prospective members of the Class of the terms of

25  the proposed Settlement and of the options that are open to them in connection with the proceedings.

26  *See, e.g.*, *Ching v. Siemens Indus., Inc.*, 2013 WL 6200190, at *6 (N.D. Cal. Nov. 27, 2013) ("The

27  Court finds that the Class Notice adequately describes the nature of the action, summarizes the terms

28  of the settlement, identifies the class and provides instruction on how to opt out and object, and sets

forth the proposed fees and expenses to be paid to Plaintiff's counsel and the settlement administrator in clear, understandable language."); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 124 (S.D.N.Y. 1997) (finding settlement notice adequate when "level of detail apprises the class members of the salient terms of the settlement and affords them a reasonable opportunity to present any objections").

49.     In addition, the notices include the information required by the Northern District of California's Procedural Guidance for Class Action Settlements ("Class Settlement Guidelines"):

> (i)     the contact information for Class Counsel to answer questions; *see* Notice at 2, 19; Summary Notice at 2;

> (ii)    the settlement website address, which will be maintained by Epiq and which will contain links to the Notice, the motions for preliminary approval and final approval of settlement, *see* Notice at 1, 19; Summary Notice at 2; and

> (iii)   instructions on how to access the case docket via PACER or in person using the language suggested in item 3 of the Class Settlement Guidelines, *see* Notice at 19).

50.     All blank placeholders found in the Notice, Proof of Claim Form, and Summary Notice will be filled in once the Court sets those dates and the documents are finalized prior to mailing and publication.

## IV.     OBJECTIONS AND EXCLUSIONS

51.     The notice program instructs potential Class Members who wish to object to the Settlement, the proposed Plan of Allocation, or counsel's motion for an award of attorneys' fees and expenses how and when to do so.  *See* Notice at 18; Summary Notice at 2.  The Notice instructs any potential objector to send their written objection to the Court, and makes clear that the Court can only approve or deny the Settlement.  Notice at 18.  The instructions in the Notice substantively follow the suggested language in the Class Settlement Guidelines.

52.     Class Members were provided with the opportunity to opt out in response to the Notice of Pendency.  *See* Class Notice Order (requiring that all exclusion requests be received by May 23, 2019).  As such, a second opportunity to request exclusion is not provided here.  *See, e.g.*, *Moorer v. StemGenex Med. Grp., Inc.*, 2021 WL 4993054, at *6 (S.D. Cal. Oct. 26, 2021) ("Ninth Circuit authority supports that no such [second exclusion] option should be permitted . . . [when] the

1   Class Members were previously offered the opportunity in the original class notices to either remain

2   in the case or seek exclusion").  As the Ninth Circuit has explained:

3           [There is] no authority of any kind suggesting that due process requires that members
            of a Rule 23(b)(3) class be given a second chance to opt out.  We think it does

4           not. . . . [T]o hold that due process requires a second opportunity to opt out after the
            terms of the settlement have been disclosed to the class would impede the settlement

5           process so favored in the law.

6   *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1121 (9th Cir. 2018) (first alteration in original) (quoting

7   *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 635 (9th Cir. 1982)).  Nevertheless, should

8   the Court permit an additional opt-out opportunity, the Class Representatives and Twitter have

9   agreed, out of an abundance of caution, to a supplemental agreement (the "Supplemental

10  Agreement") providing Twitter with the option to terminate the Settlement within 10 days of the

11  Court's allowing Class Members a second opt-out right, or at a later time if Class Members who

12  request exclusion from the Class meet the conditions set forth in the Supplemental Agreement.

13  Stipulation, ¶7.8.  Class Representatives and Twitter have jointly moved to file the Supplemental

14  Agreement under seal.

15  **V.      ATTORNEYS' FEES AND LITIGATION EXPENSES**

16          53.     For their efforts on behalf of the Class, Class Counsel will apply for a percentage of

17  the common fund fee award to compensate them for the services they have rendered on behalf of the

18  Class.  Class Counsel will apply to the Court for an award of attorneys' fees in an amount not to

19  exceed 22.5% of the Settlement Fund (plus interest earned at the same rate as the Settlement Fund).

20          54.     Counsel's total lodestar is approximately $43,900,000.00.  The anticipated requested

21  fee results in a multiplier of approximately 4.15 to counsel's current total lodestar.  (Counsel's

22  current total lodestar does not include, among other things, time that will be spent responding to

23  Class Members' inquiries, or work related to drafting the preliminary and final approval motions.)

24          55.     Class Counsel also will apply for payment of expenses from the Settlement Fund in

25  an amount not to exceed $4 million.  These expenses were paid or incurred in connection with the

26  institution, prosecution, and resolution of the claims against Defendants.

27          56.     Class Counsel also intend to seek an award of up to $40,000 in the aggregate for

28  Class Representatives, pursuant to 15 U.S.C. §78u-4(a)(4), as reimbursement for their time and

1  expenses expended representing the Class.  Class Counsel believe this amount is fully supported by

2  the work undertaken throughout the action, which will be set forth in greater detail in declarations

3  submitted in connection with Plaintiffs' fee and expense motion.

4       57.    Approval of the requested attorneys' fees is separate from approval of the Settlement,

5  and the Settlement may not be terminated based on any ruling with respect to attorneys' fees.  *See*

6  Stipulation, ¶6.4.

7  **VI.**   ***CY PRES* AWARD**

8       58.    The Net Settlement Fund will be distributed to Authorized Claimants, and if any

9  funds remain after the initial distribution (for example, due to uncashed or returned checks), further

10  distributions to Authorized Claimants who would receive at least $10.00 from such a re-distribution

11  will be conducted as long as they are cost effective.  The Parties propose that any *de minimis* balance

12  that still remains in the Net Settlement Fund after such reallocation(s) and payments and that is not

13  feasible or economical to reallocate shall (subject to Court approval) be donated to the Investor

14  Protection Trust.[8]  Stipulation, ¶5.10.

15  **VII.**   **TIMELINE**

16       59.    In connection with preliminary approval of the Settlement, Plaintiffs are requesting

17  that the Court establish: (i) dates by which notice of the Settlement will be distributed to Class

18  Members; (ii) a date by which Class Members who wish to object to any aspect of Settlement, Plan

19  of Allocation and/or request for attorneys' fees and expenses must submit that objection; and (iii) a

20  date on which the Court will hold the Settlement Hearing.

21       60.    The following is the schedule being proposed here:

| EVENT | PROPOSED TIME FOR COMPLIANCE |
|---|---|
| Deadline for mailing the Notice and Proof of Claim to Class Members ("Notice Date") | 20 calendar days after entry of the Preliminary Approval Order |

---

[8] Founded in 1993, the Investor Protection Trust serves as an independent source of non-commercial investor education.  It has worked with the States and at the national level to provide independent, objective investor education to assist individuals in making informed investment decisions.  *See* www.investorprotection.org/ipt-activities/?fa=about.

| EVENT | PROPOSED TIME FOR COMPLIANCE |
|---|---|
| Deadline for publishing the Summary Notice | 7 calendar days after the Notice Date |
| Deadline for submitting Proofs of Claim | 90 calendar days after the Notice Date |
| Deadline for filing papers in support of final settlement approval, Plan of Allocation, request for attorneys' fees and expenses | 35 calendar days before the Settlement Hearing |
| Deadline for filing an objection to the Settlement, request for attorneys' fees or expenses | 21 calendar days before the Settlement Hearing |
| Deadline for filing reply memoranda in support of final settlement approval, Plan of Allocation, and request for attorneys' fees and expenses, and in response to any objections to the Settlement | 7 calendar days before the Settlement Hearing |
| Settlement Hearing | Approximately 100 calendar days after entry of the Preliminary Approval Order, or later at the Court's convenience |

61.     Under this proposed schedule, potential Class Members will have well over thirty-five (35) days to object to the Settlement and/or the motion for attorneys' fees and expenses.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on January 7, 2022, at Mount Pleasant, South Carolina.

*s/ Gregg S. Levin*
GREGG S. LEVIN

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE PURSUANT TO LOCAL RULE 5-1(i)(3)

I, Daniel S. Drosman, am the ECF User whose identification and password are being used to file this document.  Pursuant to Local Rule 5-1(i)(3), I attest that concurrence in the filing of the document has been obtained from each of the other signatories.

Dated:  January 7, 2022

s/ Daniel S. Drosman
DANIEL S. DROSMAN