ROBBINS GELLER RUDMAN & DOWD LLP
DANIEL S. DROSMAN (200643)
TOR GRONBORG (179109)
ELLEN GUSIKOFF STEWART (144892)
LUCAS F. OLTS (234843)
J. MARCO JANOSKI GRAY (306547)
CHRISTOPHER R. KINNON (316850)
HEATHER G. GEIGER (322937)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

MOTLEY RICE LLC
GREGG S. LEVIN (admitted *pro hac vice*)
LANCE V. OLIVER (admitted *pro hac vice*)
MEGHAN S.B. OLIVER (admitted *pro hac vice*)
MAX N. GRUETZMACHER (admitted *pro hac vice*)
CHRISTOPHER F. MORIARTY (admitted *pro hac vice*)
MEREDITH B. WEATHERBY (admitted *pro hac vice*)
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
Telephone:  843/216-9000
843/216-9450 (fax)

*Co-Class Counsel for the Class*

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re TWITTER INC. SECURITIES LITIGATION | ) ) ) |
| | ) |
| This Document Relates To: | ) ) |
| ALL ACTIONS. | ) ) ) |

Case No. 4:16-cv-05314-JST (SK)

CLASS ACTION

CLASS COUNSEL'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, EXPENSES, AND AWARDS TO CLASS REPRESENTATIVES PURSUANT TO 15 U.S.C. §78u-4(a)(4) AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

JUDGE:   Hon. Jon S. Tigar
DATE:    November 17, 2022
TIME:    2:00 p.m. (via videoconference)

4856-0560-4661.v1

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ............................................................................1

STATEMENT OF ISSUES TO BE DECIDED .................................................................2

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................1

I.      INTRODUCTION ................................................................................................1

II.     HISTORY OF THE LITIGATION ......................................................................3

III.    THE REQUESTED FEE IS FAIR AND REASONABLE....................................4

        A.      The Court Should Award Attorneys' Fees Using the
                Percentage-of-the-Fund Method ..............................................................4

        B.      A Fee of 22.5% of the Settlement Fund Is Reasonable Under Either the
                Percentage or Lodestar Method ...............................................................6

                1.      The Requested Attorneys' Fees Are Reasonable Under the
                        Percentage Method......................................................................6

                2.      The Requested Attorneys' Fees Are Reasonable Under the
                        Lodestar Method .........................................................................8

        C.      The Factors Considered by Courts in the Ninth Circuit Support the
                Requested Fee ........................................................................................11

                1.      Class Counsel Achieved an Excellent Result for the Class ......11

                2.      The Litigation Was Uncertain and Highly Complex ...............12

                3.      The Skill Required and Quality of Work...................................15

                4.      The Contingent Nature of the Fee and the Financial Burden
                        Carried by Class Counsel.........................................................15

                5.      Awards Made in Similar Cases Support the Fee Request.........17

                6.      The Class's Reaction to Date Supports the Fee Request ..........18

IV.     COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE
        APPROVED ........................................................................................................19

V.      COUNSEL'S AWARDED FEES AND EXPENSES SHOULD BE PAID UPON
        THE COURT'S ORDER GRANTING THE AWARD .....................................20

VI.     CLASS REPRESENTATIVES' REQUEST FOR AWARDS PURSUANT TO 15
        U.S.C. §78u-4(a)(4) IS REASONABLE .........................................................22

VII.    CONCLUSION...................................................................................................24

1

**TABLE OF AUTHORITIES**

2

Page

3

**CASES**

4

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
   572 F.3d 221 (5th Cir. 2009) .................................................................12

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013)..................................................................................4

*Andrews v. Plains All Am. Pipeline L.P.*,
   2022 WL 4453864 (C.D. Cal. Sept. 20, 2022) ............................6, 8, 17

*Barbosa v. Cargill Meat Sols. Corp.*,
   297 F.R.D. 431 (E.D. Cal. 2013) ...........................................................19

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ...........................................................10

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015) .............................................................8

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)..................................................................................4

*Brown v. Hain Celestial Grp. Inc.*,
   2016 WL 631880 (N.D. Cal. Feb. 17, 2016) ........................................21

*Cheng Jiangchen v. Rentech, Inc.*,
   2019 WL 5173771 (C.D. Cal. Oct. 10, 2019)...................................8, 14

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013).............................................................................12, 13

*Craft v. Cnty. of San Bernardino*,
   624 F. Supp. 2d 1113 (C.D. Cal. 2008) .................................................10

*Farrell v. Bank of Am. Corp., N.A.*,
   827 F. App'x 628 (9th Cir. 2020) .............................................................8

*Fischel v. Equitable Life Assurance Soc'y of U.S.*,
   307 F.3d 997 (9th Cir. 2002) ....................................................................8

*Fleisher v. Phoenix Life Ins. Co.*,
   2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015).......................................17

**Page**

*Fleming v. Impax Labs. Inc.*,
   2022 WL 2789496 (N.D. Cal. July 15, 2022) ..........................................................................9

*Franco v. Ruiz Food Prods., Inc.*,
   2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) .......................................................................19

*Gutierrez v. Wells Fargo Bank, N.A.*,
   2015 WL 2438274 (N.D. Cal. May 21, 2015) .................................................................10, 17

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) .....................................................................................................19

*Hatamian v. Advanced Micro Devices, Inc.*,
   2018 WL 8950656 (N.D. Cal. Mar. 2, 2018) ...................................................................18, 23

*Hefler v. Wells Fargo & Co.*,
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018),
   *aff'd sub nom. Heffler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) ............................... *passim*

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ...............................................................................................................11

*In re 3Com Corp. Sec. Litig.*,
   No. C-97-1083-EAI, slip op. (N.D. Cal. Mar. 9, 2001) .........................................................18

*In re Amgen Inc. Sec. Litig.*,
   2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ........................................................................8

*In re Amkor Tech., Inc. Sec. Litig.*,
   2009 WL 10708030 (D. Ariz. Nov. 19, 2009) ....................................................................4, 14

*In re Apollo Grp. Sec. Litig.*,
   2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008) .........................................................14

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ...................................................................................................4

*In re Broiler Chicken Antitrust Litig.*,
   2022 U.S. Dist. LEXIS 184031 (N.D. Ill. Oct. 7, 2022).........................................................7

*In re Cardinal Health Inc. Sec. Litig.*,
   528 F. Supp. 2d 752 (S.D. Ohio 2007) ..................................................................................18

**Page**

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
    2016 WL 4126533 (N.D. Cal. Aug. 3, 2016) ............................................................6

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ...................................................................................19

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
    2020 WL 7133805 (D. Minn. Dec. 4, 2020) ..........................................................23

*In re Charles Schwab Corp. Sec. Litig.*,
    2011 WL 1481424 (N.D. Cal. Apr. 19, 2011) ........................................................11

*In re Charter Comm'ns, Inc. Sec. Litig.*,
    2005 WL 4045741 (E.D. Mo. June 30, 2005) ........................................................17

*In re DaimlerChrysler Sec. Litig.*,
    2004 U.S. Dist. LEXIS 31757 (D. Del. Feb. 5, 2004) ..........................................17

*In re Facebook Biometric Info. Priv. Litig.*,
    522 F. Supp. 3d 617 (N.D. Cal. 2021),
    *aff'd*, 2022 WL 822923 (9th Cir. Mar. 17, 2022) .................................................10

*In re Gilat Satellite Networks, Ltd.*,
    2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007) .......................................................23

*In re HP Inkjet Printer Litig.*,
    716 F.3d 1173 (9th Cir. 2013) ..................................................................................5

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ..................................................................14

*In re Initial Pub. Offering Sec. Litig.*,
    671 F. Supp. 2d 467 (S.D.N.Y. 2009) ......................................................................6

*In re JDS Uniphase Corp. Sec. Litig.*,
    2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) .......................................................16

*In re Korean Air Lines Co.*, *Antitrust Litig.*,
    2013 WL 7985367 (C.D. Cal. Dec. 23, 2013) ..........................................................4

*In re Luckin Coffee Sec. Litig.*,
    No. 1:20-cv-01293-JPC, slip op. (S.D.N.Y. July 22, 2022) ..................................17

MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES ISO AN AWARD OF
ATTORNEYS' FEES, EXPENSES, AND AWARDS TO CLASS REPRESENTATIVES - 4:16-cv-
05314-JST (SK)
4856-0560-4661.v1

- iv -

Page

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ........................................................23

*In re Merck & Co. Inc. Sec., Derv. & "ERISA" Litig.*,
   2016 WL 11575090 (D.N.J. June 28, 2016) ..............................................................6

*In re Nat'l Collegiate Athletic Ass'n Grant-in-Aid Cap Antitrust Litig.*,
   2017 WL 6040065 (N.D. Cal. Dec. 6, 2017),
   *aff'd*, 768 F. App'x 651 (9th Cir. 2019).................................................................7

*In re Nat'l Collegiate Athletic Ass'n Grant-in-Aid Cap Antitrust Litig.*,
   768 F. App'x. 651 (9th Cir. 2019) ...........................................................................4

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................5, 6, 12, 15

*In re Optical Disk Drive Prod. Antitrust Litig.*,
   2016 WL 7364803 (N.D. Cal. Dec. 19, 2016),
   *vacated and remanded on other grounds*,
   959 F.3d 922 (9th Cir. 2020) ................................................................................20

*In re Optical Disk Drive Prods. Antitrust Litig.*,
   959 F.3d 922 (9th Cir. 2020),
   *aff'd*, 804 F. App'x 445 (9th Cir. 2020)...............................................................7

*In re Oracle Corp. Sec. Litig.*,
   2009 WL 1709050 (N.D. Cal. June 19, 2009),
   *aff'd*, 627 F.3d 376 (9th Cir. 2010) ......................................................................16

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ...................................................................................12

*In re Pfizer Inc. Sec. Litig.*,
   No. 1:04-cv-09866-LTS-HBP, slip op. (S.D.N.Y. Dec. 21, 2016)............................6

*In re Rite Aid Corp. Sec. Litig.*,
   362 F. Supp. 2d 587 (E.D. Pa. 2005) .....................................................................17

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005).....................................................................................5

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   2011 WL 7575004 (N.D. Cal. Dec. 27, 2011)........................................................20

**Page**

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) ........................................................6, 7

*In re Verifone Holdings, Inc. Sec. Litig.*,
2014 WL 12646027 (N.D. Cal. Feb. 18, 2014) ..................................................10, 20

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ...........................................................9

*In re Wash. Mutual, Inc. Sec. Litig*,
2011 WL 8190466 (W.D. Wash. Nov. 4, 2011) ........................................................18

*Jaffe v. Household Int'l.*,
2016 WL 10571774 (N.D. Ill. Nov. 10, 2016) ...........................................................6

*Kang v. Wells Fargo Bank, N.A.*,
2021 WL 5826230 (N.D. Cal. Aug. 12, 2021) .........................................................10

*Mauss v. NuVasive, Inc.*,
2018 WL 6421623 (S.D. Cal. Dec. 6, 2018).............................................................20

*McKnight v. Uber Techs., Inc.*,
2021 WL 4205055 (N.D. Cal. Sept. 2, 2021) ..........................................................10

*McPhail v. First Command Fin. Plan., Inc.*,
2009 U.S. Dist. LEXIS 26544 (S.D. Cal. Mar. 30, 2009) .......................................24

*Mo. v. Jenkins by Agyei*,
491 U.S. 274 (1989)...................................................................................................8

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) .............................................................................18

*Nieman v. Duke Energy Corp.*,
2015 WL 13609363 (W.D.N.C. Nov. 2, 2015)..........................................................18

*Ontiveros v. Zamora*,
303 F.R.D. 356 (E.D. Cal. 2014) .............................................................................19

*Paul, Johnson, Alston & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989) .....................................................................................8

*Peace Officers' Annuity & Benefit Fund of Ga. v. Davita Inc.*,
2021 U.S. Dist. LEXIS 131699 (D. Colo. July 15, 2021) .......................................11

MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES ISO AN AWARD OF
ATTORNEYS' FEES, EXPENSES, AND AWARDS TO CLASS REPRESENTATIVES - 4:16-cv-
05314-JST (SK)
4856-0560-4661.v1

- vi -

1

2 **Page**

3

4 *Pearlstein v. Blackberry Ltd.*,
   2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022)................................................................6

5 *Pelzer v. Vassalle*,
6    655 F. App'x 352 (6th Cir. 2016) ........................................................................21

7 *Perez v. Rash Curtis & Assocs.*,
   2021 WL 4503314 (N.D. Cal. Oct. 1, 2021)........................................................10

8 *Redwen v. Sino Clean Energy, Inc.*,
9    2013 U.S. Dist. LEXIS 100275 (C.D. Cal. July 9, 2013).....................................19

10 *Savani v. URS Pro. Sols. LLC*,
11    2014 WL 172503 (D.S.C. Jan. 15, 2014) ............................................................16

12 *Stanger v. China Elec. Motor, Inc.*,
   812 F.3d 734 (9th Cir. 2016) ........................................................................4, 15

13 *Staton v. Boeing Co.*,
14    327 F.3d 938 (9th Cir. 2003) ...............................................................................22

15 *Steiner v. Am. Broad. Co., Inc.*,
16    248 F. Appx 780 (9th Cir. 2007).........................................................................10

17 *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007)..............................................................................................4

18 *Thompson. v. Transamerica Life Ins. Co.*,
19    2020 WL 6145104 (C.D. Cal. Sept. 16, 2020) ...................................................10

20 *Vincent v. Hughes Air W., Inc.*,
21    557 F.2d 759 (9th Cir. 1977) .................................................................................4

22 *Vincent v. Reser*,
   2013 WL 621865 ( N.D. Cal. Feb. 19, 2013) .....................................................19

23 *Vinh Nguyen v. Radient Pharms. Corp.*,
24    2014 WL 1802293 (C.D. Cal. May 6, 2014) ....................................................5, 14

25 *Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ....................................................................*passim*

26 *Wehlage v. Evergreen at Arvin LLC*,
27    2012 WL 4755371 (N.D. Cal. Oct. 4, 2012)........................................................23

28

MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES ISO AN AWARD OF ATTORNEYS' FEES, EXPENSES, AND AWARDS TO CLASS REPRESENTATIVES - 4:16-cv-05314-JST (SK)
4856-0560-4661.v1

- vii -

Page

*Wing v. Asarco Inc.*,
    114 F.3d 986 (9th Cir. 1997) ................................................................15

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78u-4(a)(4) ......................................................................2, 18, 22
    §78u-4(a)(6) ................................................................................5

Federal Rules of Civil Procedure
    Rule 23 ......................................................................................20
    Rule 23(h) ..................................................................................21

17 C.F.R.
    §240.10b-5 ..................................................................................11

**SECONDARY AUTHORITIES**

Charles Silver,
    *Due Process and the Lodestar Method: You Can't Get There from Here*,
    74 Tul. L. Rev. 1809 (June, 2000) ........................................................5

Janeen McIntosh and Svetlana Starykh,
    *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review*
    (NERA Jan. 25, 2022) ...................................................................1, 12

Laarni T. Bulan & Laura E. Simmons,
    *Securities Class Action Settlements – 2021 Review and Analysis*
    (Cornerstone Research 2022) ..............................................................11

## NOTICE OF MOTION AND MOTION

**TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

PLEASE TAKE NOTICE that on November 17, 2022, at 2:00 p.m., via teleconference, in the courtroom of the Honorable Jon S. Tigar, in the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, California, Class Counsel Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and Motley Rice LLC ("Motley Rice"), on behalf of all Plaintiffs' Counsel, will move the Court for an Order awarding attorneys' fees and providing for payment of litigation expenses and awards to Class Representatives pursuant to 15 U.S.C. §78u-4(a)(4).

This Motion is based on the following Memorandum of Points and Authorities, the accompanying Joint Declaration of Daniel S. Drosman and Lance V. Oliver in Support of: (1) Class Representatives' Motion for Final Approval of Settlement and Plan of Allocation, and (2) Class Counsel's Motion for an Award of Attorneys' Fees, Expenses, and Awards to Class Representatives Pursuant to 15 U.S.C. §78u-4(a)(4) ("Joint Declaration" or "Joint Decl.") and its exhibits, the Declarations of Plaintiffs' Counsel, all prior pleadings and papers in this Litigation, the arguments of counsel, and such additional information or argument as may be required by the Court.

A proposed Order will be submitted with Class Counsel's reply submission on November 10, 2022, after the October 27, 2022 deadline for Class Members to object to the motion for fees and expenses has passed.

1

**STATEMENT OF ISSUES TO BE DECIDED**

2      1.      Whether the Court should approve as fair and reasonable Class Counsel's application

3 for an attorneys' fee award for all Plaintiffs' Counsel in the amount of 22.5% of the Settlement Fund

4 (the Settlement Amount, plus all interest accrued thereon).

5      2.      Whether the Court should approve Class Counsel's request for payment of

6 $3,570,056.21 in litigation costs and expenses incurred by Plaintiffs' Counsel in the Litigation, plus

7 all interest accrued thereon.

8      3.      Whether the Court should award Class Representatives National Elevator Industry

9 Pension Fund ("NEIPF") $6,531.00 and KBC Asset Management NV ("KBC") $28,000 pursuant to

10 15 U.S.C. §78u-4(a)(4) for their time and expenses incurred in their representation of the Class.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

After more than five years of hard-fought litigation, on the eve of trial, Class Counsel secured a cash settlement of $809,500,000.00 on behalf of the Class (the "Settlement").  The Settlement is the second-largest securities class action settlement ever obtained in the Ninth Circuit.  It yields an exceptional recovery of between 24% and 30% of the Class's estimated recoverable damages – many multiples of the median ratio of recovery-to-investor losses obtained in securities class action settlements between 2012 and 2021.  *See* Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* (NERA Jan. 25, 2022) ("NERA Report") at 24, Fig. 22, attached as Exhibit C to the Joint Declaration.

The Settlement would not have been achieved without counsel's skill, dogged pursuit, and refusal to accept a lower settlement.  Counsel expended substantial resources – approximately 73,400 hours in professional time and over $3.5 million of their own cash expenses – all without any assurance of recovery.  Given the size of the Settlement and the percentage of recovery, the result is extraordinary by any measure.

As compensation for their efforts, Class Counsel, on behalf of all Plaintiffs' Counsel, request that the Court award 22.5% of the Settlement Amount, plus the interest earned thereon.  Class Counsel's fee request is reasonable, particularly considering the extent of their efforts and the *ex-ante* risks of this case.  Defendants were represented by several of the nation's most respected securities litigators who exhausted every litigation strategy in an effort to end the Litigation without any recovery for the Class.  From the outset to the eve of trial, Class Counsel overcame each of these challenges.

Class Counsel spent a year investigating the alleged fraud before filing the initial complaint.  The complaint largely survived Defendants' motion to dismiss, and Class Counsel obtained class certification, and undertook exhaustive discovery efforts.  These efforts included, among other things, reviewing millions of pages of documents and taking and defending more than three dozen depositions.  Class Counsel litigated an array of discovery disputes, and defeated a hotly-contested summary judgment motion.  Class Counsel also worked closely with six expert witnesses to obtain

detailed expert reports on complex subjects, including loss causation, social media user and engagement metrics, stock trading plans, corporate disclosure requirements and processes, and analyst, investor, and advertiser perceptions of Twitter.  Class Counsel then fended off myriad pretrial motions to exclude Plaintiffs' trial experts and evidence and were prepared to try this case when it settled on the eve of trial.  At all stages of the action, Class Counsel exhibited diligence, hard work, and skill.

The 22.5% fee requested falls below the Ninth Circuit's 25% fee benchmark in common-fund litigation as well as the usual and customary range that clients pay lawyers to handle complex commercial cases in the private market.  A 22.5% fee award is merited here because of the outsized recovery obtained for the Class in the face of risks that Class Counsel faced in the Litigation.  *See* Joint Decl., ¶13.  A lodestar cross-check also confirms the reasonableness of the requested fee.  The lodestar multiplier of approximately 4.14 here falls well within the range of multipliers awarded in the Ninth Circuit, particularly in cases (as here) where the risk was substantial and the recovery was exceptional.  *See* Expert Declaration of Professor William B. Rubenstein ("Rubenstein Decl."), ¶¶57-62, attached as Exhibit G to the Joint Declaration.  The fee request is also supported by Class Representatives, both sophisticated institutions, a fact that is afforded significant weight in the analysis.  *See* §III.C.6, *infra*; Declaration of Robert Betts on behalf of NEIPF ("Betts Decl.") and Declaration of Bart Elst on behalf of KBC ("Elst Decl.") ("Class Representative Declarations"), attached as Exhibits E and F, respectively, to the Joint Declaration.

Likewise, Plaintiffs' Counsel's litigation costs, charges, and expenses of $3,570,056.21 (plus interest accrued thereon) should be awarded in full as they were reasonably and necessarily incurred in the prosecution of the Litigation.  Finally, the Class Representatives should also be awarded their modest time and expenses as provided by the Private Securities Litigation Reform Act of 1995 ("PSLRA").  15 U.S.C. §78u-4(a)(4).

In accordance with the Preliminary Approval Order, over 401,000 copies of the Notice have been mailed to potential Class Members and their nominees through October 10, 2022, and the Summary Notice was published in *The Wall Street Journal* and transmitted over *PR Newswire*.  *See* Declaration of Bradford H. Amann Regarding: (A) Dissemination of the Settlement Notice and

1    Claim Form; and (B) Publication of the Summary Settlement Notice ("Epiq Decl."), ¶¶10, 12,

2    attached as Exhibit D to the Joint Declaration.  The Notice advised potential Class Members that

3    Class Counsel would apply for an award of attorneys' fees in an amount not to exceed 22.5% of the

4    Settlement Fund, payment of litigation expenses not to exceed $4 million, and aggregate PSLRA

5    awards to the Class Representatives not to exceed $40,000.  Epiq Decl., Ex. B, Notice at 2.  The fees

6    and expenses sought do not exceed the amounts projected in the Notice.  The deadline set by the

7    Court to object to the requested attorneys' fees and expenses has not yet passed, but, to date, no

8    objections to the requested attorneys' fees and expenses have been received.  Joint Decl., ¶118.[1]

9            In short, Class Counsel respectfully submit that the requested fee is fair and reasonable.[2]

10   ## II.      HISTORY OF THE LITIGATION

11          As set forth in this District's Procedural Guidance for Class Action Settlements ("Northern

12   District Guidelines"), Final Approval, §2, the Court is directed to "the history and facts set out in the

13   motion for final approval" regarding "the case history and background facts" relevant to the

14   Settlement, which will not be repeated here.[3]  Suffice it to say, Class Counsel have invested

15   substantial time and money in the prosecution of the Litigation, including investigating background

16   facts, interviewing witnesses, drafting the Complaint, briefing dispositive motions, conducting

17   discovery, reviewing documents, working with experts, preparing for, taking and defending fact and

18   expert depositions, and preparing for trial, all in furtherance of, and resulting in, the Settlement now

19   before this Court.

20

21

22

23   ───────────────

[1]     The deadline for the filing of objections is October 27, 2022.  Should any objections be received,
24   Class Counsel will address them in their reply papers, due on November 10, 2022.

25   [2]     Plaintiffs' Counsel includes Class Counsel Robbins Geller Rudman & Dowd LLP and Motley
     Rice LLC and other counsel who worked on this case: Bleichmar Fonti & Auld LLP and Labaton
26   Sucharow LLP.

27   [3]     Specifically, *see* (i) Class Representatives' Memorandum of Points and Authorities in Support of
     Motion for Final Approval of Settlement and Plan of Allocation, as well as (ii) the Joint Declaration
28   both filed contemporaneously herewith.

1

III.     **THE REQUESTED FEE IS FAIR AND REASONABLE**

2

A.     **The Court Should Award Attorneys' Fees Using the Percentage-of-the-Fund Method**

3

4

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common

5

fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's

6

fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  The Ninth

7

Circuit similarly holds that "a private plaintiff, or his attorney, whose efforts create, discover,

8

increase or preserve a fund to which others also have a claim is entitled to recover from the fund the

9

costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769

10

(9th Cir. 1977); *accord In re Nat'l Collegiate Athletic Ass'n Grant-in-Aid Cap Antitrust Litig.*, 768

11

F. App'x. 651, 653 (9th Cir. 2019).  Courts correctly recognize that fee awards incentivize attorneys

12

to represent class clients who might otherwise be denied access to counsel on a contingency basis.

13

*See Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016).  An award of reasonable

14

attorneys' fees in securities class actions thus serves the public interest.  As the Supreme Court has

15

repeatedly emphasized, private securities actions are "an essential supplement to criminal

16

prosecutions and civil enforcement actions" brought by the United States Securities Exchange

17

Commission ("SEC").  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007).  *See*

18

*also Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 478 (2013) ("'meritorious private

19

actions to enforce federal antifraud securities laws are an essential supplement to criminal

20

prosecutions and civil enforcement actions'").[4]

21

Although courts have discretion to employ either the percentage of recovery or lodestar

22

method (*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011)), "[t]he use

23

of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth

24

Circuit for awarding attorneys' fees and permits the Court to focus on a showing that a fund

25

conferring benefits on a class was created through the efforts of plaintiffs' counsel." *In re Korean*

26

*Air Lines Co.*, *Antitrust Litig.*, 2013 WL 7985367, at *1 (C.D. Cal. Dec. 23, 2013); *see also In re*

27

*Amkor Tech., Inc. Sec. Litig.*, 2009 WL 10708030, at *1 (D. Ariz. Nov. 19, 2009) (stating

28

---

[4]     Citations are omitted and emphasis is added throughout unless otherwise indicated.

percentage-of-recovery method most appropriate to award attorneys' fees in securities class action); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) ("[U]se of the percentage method in common fund cases appears to be dominant."). Thus, the Ninth Circuit has expressly and consistently approved the use of the percentage method in common fund cases. *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th Cir. 2002).

The PSLRA likewise contemplates that fees be awarded on a percentage basis, authorizing attorneys' fees and expenses to counsel that do not exceed "'a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class.'" 15 U.S.C. §78u-4(a)(6); *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) ("[T]he percentage-of-recovery method was incorporated in the [PSLRA].").

The rationale for compensating counsel in common fund cases on a percentage basis is sound. First, it is consistent with the practice in the private marketplace where contingent fee attorneys are customarily compensated by a percentage of the recovery. *See Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014). Second, the percentage approach more closely aligns "the lawyers' interests with achieving the highest award for the class members" in the shortest amount of time. *Id.* "[C]ourts try to . . . [tie] together the interests of class members and class counsel" by "tether[ing] the value of an attorneys' fees award to the value of the class recovery . . . [t]he more valuable the class recovery, the greater the fees award . . . [a]nd vice versa." *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013). In fact, the percentage of the fund method so closely harmonizes the interests of class counsel and the absent plaintiffs, that a "consensus" has developed that includes "leading academics, researchers at the RAND Institute for Civil Justice, and many judges . . . [i]ndeed, it is difficult to find anyone who contends otherwise." Charles Silver, *Due Process and the Lodestar Method: You Can't Get There from Here*, 74 Tul. L. Rev. 1809, 1819-20 (June, 2000). On the other hand, the Ninth Circuit has recognized that the lodestar method creates the perverse incentive for counsel to "expend more hours than may be necessary on litigating a case." *Vizcaino*, 290 F.3d at 1050 n.5.

### B.     A Fee of 22.5% of the Settlement Fund Is Reasonable Under Either the Percentage or Lodestar Method

Whether assessed under the percentage-of-recovery or lodestar approach, the fee request of 22.5% of the Settlement Fund – representing a multiplier of approximately 4.14 – is fair and reasonable.

#### 1.     The Requested Attorneys' Fees Are Reasonable Under the Percentage Method

Class Counsel seek a fee of 22.5% of the Settlement Fund.  "Because the [22.5] percent award requested is below the [25%] 'benchmark' percentage for a reasonable fee award in the Ninth Circuit it is 'presumptively reasonable.'" *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Heffler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).  In fact, "in most common fund cases, the award exceeds that benchmark." *Omnivision*, 559 F. Supp. 2d at 1047.

This request is also within the range of percentage fees that courts in this Circuit have awarded in large complex class actions.  *See, e.g.*, *Andrews v. Plains All Am. Pipeline L.P.*, 2022 WL 4453864, at *4 (C.D. Cal. Sept. 20, 2022) (awarding 32% of $230 million settlement); *Hefler*, 2018 WL 6619983, at *16 (awarding 20% of $480 million settlement); *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 4126533, at *1 (N.D. Cal. Aug. 3, 2016) (awarding 27.5% of $576 million settlement); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 WL 1365900, at *8 (N.D. Cal. Apr. 3, 2013) (awarding 28.5% fee on $1.08 billion settlement).

A 22.5% fee award is also consistent with awards in large securities fraud cases in other circuits.  *See, e.g.*, *Pearlstein v. Blackberry Ltd.*, 2022 WL 4554858, at *11 (S.D.N.Y. Sept. 29, 2022) (awarding 33% of $165 million settlement); *In re Pfizer Inc. Sec. Litig.*, No. 1:04-cv-09866-LTS-HBP, slip op. at 2 (S.D.N.Y. Dec. 21, 2016) (ECF 727) (awarding 28% of $486 million settlement); *Jaffe v. Household Int'l.*, 2016 WL 10571774, at *1 (N.D. Ill. Nov. 10, 2016) (awarding 24.68% of $1.575 billion settlement); *In re Merck & Co. Inc. Sec., Derv. & "ERISA" Litig.*, 2016 WL 11575090, at*5-*6 (D.N.J. June 28, 2016) (awarding 20% fee in $1.062 billion settlement); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 & n.354 (S.D.N.Y. 2009) (awarding 33.3% of $586 million settlement).

1    A comparison to other cases, however, is merely the starting point.  In setting a fee award

2  here, the most important factors for this Court are the results and risks of ***this*** case, which exceed

3  comparator cases in almost all respects.  The monetary result speaks for itself.  As for the risks, Class

4  Counsel here did not have the luxury of piggybacking on a prior admitted fraud, financial

5  restatement, or parallel governmental investigation with a consequent share price decline.  To the

6  contrary, Class Counsel investigated this *sui generis* matter independently and successfully litigated

7  the case notwithstanding the serious risk of no recovery at all.  This supports an award at the higher

8  end of the range of awarded fee percentages.  *See* Rubenstein Decl., ¶¶47, 58.  *See also In re Broiler*

9  *Chicken Antitrust Litig.*, 2022 U.S. Dist. LEXIS 184031, at *7 (N.D. Ill. Oct. 7, 2022) (awarding

10  33% fee in $181 million settlement in case "[w]ithout the benefit of a prior government investigation

11  to guide them. . . .").

12    As this Court has observed, some judges have reasoned that cases with large-dollar common

13  funds (so-called mega-fund cases) call for lower percentage awards.  *See, e.g.*, ECF 658 at 8, ¶25

14  (Order Preliminarily Approving Settlement and Providing for Notice).  But the Ninth Circuit has

15  rejected the application of any such bright line rule with respect to this subset of cases.  *See, e.g.*,

16  *Vizcaino*, 290 F.3d at 1047 (declining to adopt principle that "'the percentage of an award generally

17  decreases as the amount of the fund increases'"); *In re Optical Disk Drive Prods. Antitrust Litig.*,

18  959 F.3d 922, 933 (9th Cir. 2020) ("[The Ninth Circuit has] already declined to adopt a bright-line

19  rule requiring the use of sliding-scale fee awards for class counsel in megafund cases."), *aff'd*, 804 F.

20  App'x 445 (9th Cir. 2020); *In re Nat'l Collegiate Athletic Ass'n Grant-in-Aid Cap Antitrust Litig.*,

21  2017 WL 6040065, at *7 (N.D. Cal. Dec. 6, 2017) ("To . . . apply the increase-decrease principle and

22  reduce an otherwise reasonable fee simply because this is a 'megafund' case would be

23  unreasonable."), *aff'd*, 768 F. App'x 651 (9th Cir. 2019); *TFT-LCD*, 2013 WL 1365900, at *8

24  (rejecting argument that "a sliding scale model" must be used "due to the size of the Settlement

25  Fund" and awarding 28.5% fee award on $1.08 billion settlement recovery).

26    As discussed in §III.C. below, the various factors to be considered by the Court, including the

27  outstanding result achieved and the substantial risks, support the reasonableness of a requested

28  22.5% fee award in this case.

MEMORANDUM OF POINTS AND AUTHORITIES - 4:16-cv-05314-JST (SK)                      - 7 -

## 2.    The Requested Attorneys' Fees Are Reasonable Under the Lodestar Method

To assess the reasonableness of a fee awarded under the percentage-of-the-fund method, courts may (but are not obligated to) cross-check the proposed award against counsel's lodestar. *Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 630 (9th Cir. 2020) (refusing to mandate "a [cross-check] requirement"); *Plains All Am.*, 2022 WL 4453864, at *2 (finding a cross-check unnecessary given the circumstances); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) (noting that "analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit"). A lodestar cross check is "neither mathematical precision nor bean counting." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015); *accord Hefler*, 2018 WL 6619983, at *14 (Tigar, J.) (confirming that "'trial courts need not, and indeed should not, become green-eyeshade accountants'" in context of lodestar crosscheck, and noting that "the Court seeks to 'do rough justice, not to achieve auditing perfection'").

"Courts 'calculate[] the fee award by multiplying the number of hours reasonably spent by a reasonable hourly rate and then enhancing that figure, if necessary, to account for the risks associated with the representation.'" *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *10 (C.D. Cal. Oct. 10, 2019) (alteration in original) (quoting *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)). Moreover, it is appropriate to use counsel's current hourly rates, rather than historical ones, which compensates for the delay in payment and the loss of interest on the funds. *See Mo. v. Jenkins by Agyei*, 491 U.S. 274, 284 (1989); *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1010 (9th Cir. 2002).[5] This Court has previously applied current rates when evaluating lodestars. *See Hefler*, 2018 WL 6619983, at *14 n.17.

As detailed here and in the accompanying declarations of Plaintiffs' Counsel, 73,445.11 hours of attorney and para-professional time were expended prosecuting the Litigation for the benefit of the Class for over five years, through January 7, 2022. Plaintiffs' Counsel's lodestar, derived by multiplying the hours spent on the Litigation by each attorney and litigation professional by their

---

[5]    In any event, the differences here between the lodestars under current or historical rates is minimal, and under either approach the resulting multiplier is within the range of court-approved multipliers.

1    current hourly rates, is $43,931,080.75.   At historical rates, Plaintiffs' Counsel's lodestar is

2    $42,057,929.75.  Accordingly, the requested fee of 22.5% represents a multiplier of 4.14 Plaintiffs'

3    Counsel's lodestar at current rates and 4.33 at historical rates.  Here, the hours spent to obtain the

4    results are more than reasonable.  Class Counsel obtained a landmark settlement by pushing the case

5    to the brink of trial.  As detailed in the Joint Declaration and in Plaintiffs' Counsel's Declarations,

6    there is no question that the hours expended were necessary.  *See also* Rubenstein Decl., ¶¶46-48.[6]

7           Class Counsel's hourly rates, too, are reasonable.  Rubenstein Decl., ¶¶17-38.  For attorneys

8    with 16 years of experience or less, Plaintiffs' Counsel's average rate is lower than the average

9    approved in settlements in this District.  *Id.*, ¶24, Ex. D.  For the senior attorneys with supervisory

10   roles, the rate is slightly higher than average.   *Id.*   That is unsurprising, considering that Class

11   Counsel have been recognized as among the top in their profession.  *Id.*   Further, Class Counsel's

12   rates have recent judicial approval by other members of this Court.  *See Fleming v. Impax Labs. Inc.*,

13   2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (approving hourly rates of $760 to $1,325 for

14   partners, $895 to $1,150 for counsel, and $175 to $520 for associates, and finding Robbins Geller's

15   "billing rates in line with prevailing rates in this district for personnel of comparable experience,

16   skill, and reputation"); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods.*

17   *Liab. Litig.*, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving "blended average hourly

18   billing rate" of $529 per hour "for all work performed and projected" and "billing rates ranging from

19   $275 to $1,600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals" for Motley

20   Rice and other plaintiffs' firms); *State of Wash. v. McKesson Drug Corp. et al.*, No. 19-2-06975-9,

21   Findings of Fact and Conclusions of Law and Order Awarding Plaintiffs' Attorney Fees And Costs

22   Associated with State's Fee Petition, at 5 (King Cnty. Super. Ct. Sept. 1, 2021) (noting "Motley Rice

23   sets its hourly rates for attorneys practicing in complex civil litigation consistent with the rates

24   charged nationally for similar services by lawyers of reasonably comparable skill, experience, and

25   reputation").

---

26   [6]   The actual realized multiplier has already, and will continue to decline over time as Class
     Counsel devote additional attorney time to preparing final approval materials as well as overseeing
27   processing of claims by the Claims Administrator and the distribution of the Settlement funds to
     Class Members with valid claims.  No additional counsel fees will be sought for such work.
28

1    The last piece of the cross-check analysis is the risk multiplier.  "Courts regularly award

2    lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers."

3    *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) (citing *Vizcaino*, 290 F.3d at

4    1052-54); *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (noting

5    "ample authority" for multiplier of 5.2 and collecting cases with substantially higher multipliers); *see*

6    *also In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 633 (N.D. Cal. 2021)

7    (awarding fee in $650 million common fund settlement representing 4.71 multiplier, finding that

8    "the results obtained and the risks at trial warrant a higher-end multiplier"), *aff'd*, 2022 WL 822923

9    (9th Cir. Mar. 17, 2022); *McKnight v. Uber Techs., Inc.*, 2021 WL 4205055, at *7 (N.D. Cal. Sept. 2,

10   2021) (Tigar, J.) (noting that a "fee award [that] results in a multiplier of 4.14" is not "remarkable"

11   when "the settlement represented an 'excellent result' for the class"); *Kang v. Wells Fargo Bank,*

12   *N.A.*, 2021 WL 5826230, at *18 (N.D. Cal. Aug. 12, 2021) (awarding class counsel 22% of the

13   Settlement Fund with a resulting multiplier of 5.2); *Perez v. Rash Curtis & Assocs.*, 2021 WL

14   4503314, at *5 (N.D. Cal. Oct. 1, 2021) (approving a multiplier of 4.8); *Thompson. v. Transamerica*

15   *Life Ins. Co.*, 2020 WL 6145104, at *4 (C.D. Cal. Sept. 16, 2020) ("The Court's lodestar cross-check

16   analysis of the fee award yields a current multiplier of 4.2, which is within the range of appropriate

17   multipliers recognized by this Court and by other courts within the Ninth Circuit."); *Gutierrez v.*

18   *Wells Fargo Bank, N.A.*, 2015 WL 2438274, at *7 (N.D. Cal. May 21, 2015) (approving a 5.5

19   multiplier in a $203 million settlement); *In re Verifone Holdings, Inc. Sec. Litig.*, 2014 WL

20   12646027, at *2 (N.D. Cal. Feb. 18, 2014) ("[A]lthough the lodestar cross-check reveals a high

21   multiplier – 4.3 . . . the Court finds that the multiplier here is acceptable in light of the very

22   substantial risks involved.").  Moreover, Ninth Circuit has determined in the context of a cross-check

23   that a multiplier of 6.85 was "well within the range of multipliers that courts have allowed." *Steiner*

24   *v. Am. Broad. Co., Inc.*, 248 F. Appx 780, 783 (9th Cir. 2007).

25   As more fully explained in the Joint Declaration, this is not a typical case in terms of either

26   the risk undertaken by Class Counsel or the results achieved for the Class.  Accordingly, if the

27   lodestar cross-check returns a multiplier above the average – but well within the range deemed

28   permissible by the Ninth Circuit – it would serve to confirm the appropriateness of the instant fee

request.  Here, the cross-check calculation, without accounting for the substantial amount of work that remains to be done to complete this Settlement, results in a risk multiplier of 4.14, which is reasonable under the circumstances.

### C.   The Factors Considered by Courts in the Ninth Circuit Support the Requested Fee

Application of the factors that courts in this Circuit consider when determining whether a fee is fair also strongly support the reasonableness of the requested 22.5% fee.  These include: (1) the results achieved; (2) the risks of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and financial burden carried by the plaintiffs; (5) awards made in similar cases; (6) the reaction of the class; and (7) a lodestar cross-check.  *Vizcaino*, 290 F.3d at 1048-50.

### 1.   Class Counsel Achieved an Excellent Result for the Class

Courts have consistently recognized that the result achieved is "the most critical factor" to consider in making a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Hefler*, 2018 WL 6619983, at *13.  Here, against substantial risks, Class Counsel obtained an excellent recovery for the Class, both in terms of overall amount ($809,500,000.00) and as a percentage of the estimated recoverable damages (24%-30%).  *See, e.g.*, *In re Charles Schwab Corp. Sec. Litig.*, 2011 WL 1481424, at *4 (N.D. Cal. Apr. 19, 2011) (Alsup, J.) (observing that $200 million settlement represented 35.9% of the estimated damages and remarking that when "a substantial percentage of [the class's] requested damages" was obtained, "this is a good settlement for the class"); *Peace Officers' Annuity & Benefit Fund of Ga. v. Davita Inc.*, 2021 U.S. Dist. LEXIS 131699, at *7 (D. Colo. July 15, 2021) (underscoring that settlement which recovered "between 31% and 43% of the Class's damages – eight to eleven times greater than the median 3.9% recovery in similar actions," was "a significant achievement which, in the Court's view, further supports granting the fee request").  Indeed, this recovery is more than 7.5 times the median percentage recovery for cases settled with estimated damages of $1 billion or more in 2021, and at least 18 times the median ratio of settlements-to-investor losses in 2021.[7]  The $809,500,000.00 recovery places the Settlement in

---

[7]   *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements – 2021 Review and Analysis* at 6, 14 (Cornerstone Research 2022) (finding median settlements as a percentage of estimated damages was 4.2% in 2021 for Rule 10b-5 cases involving over $1 billion in damages and

1    the top-20 largest securities class action settlements since the enactment of the PSLRA, and is the

2    second largest ever obtained in the Ninth Circuit.[8]

3                    **2.      The Litigation Was Uncertain and Highly Complex**

4           The "complexity of the issues and the risks" undertaken are also important factors in

5    determining a fee award. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995); *see also*

6    *Vizcaino*, 290 F.3d at 1048 ("Risk is a relevant circumstance."). "'[I]n general, securities actions are

7    highly complex and . . .  securities class litigation is notably difficult and notoriously uncertain.'"

8    *Hefler*, 2018 WL 6619983, at *13.  Indeed, "[t]o be successful, a securities class-action plaintiff

9    must thread the eye of a needle made smaller and smaller over the years by judicial decree and

10   congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir.

11   2009).  For these reasons, in securities class actions, fee awards often exceed the 25% benchmark

12   recognized in the Ninth Circuit. *Omnivision*, 559 F. Supp. 2d at 1047.

13          This Litigation was uniquely complex and risky.  Plaintiffs' claims involved alleged

14   misrepresentations and omissions of information concerning Twitter's user growth and engagement.

15   *See* Joint Decl., ¶19.  The issues raised were highly technical, and litigating this case required Class

16   Counsel to develop a sophisticated understanding of Twitter's engagement metrics, and their

17   importance to both the Company and the financial markets.

18          Despite their ultimate success, Class Counsel assumed significant risk at every procedural

19   step of the Litigation. *See generally* Joint Decl.  Defendants argued emphatically in their motion to

20   dismiss that they were not required to disclose certain engagement metrics, and that Plaintiffs had

21   not established falsity or scienter.  ECFs 91-1, 104.  Notwithstanding those contentions, Plaintiffs

22   largely prevailed.  Defendants then opposed class certification, arguing that appointing NEIPF and

23   its counsel would contravene the PSLRA and harm the Class, and further contended that Lead

24   Plaintiff's market efficiency expert did not proffer a suitable model under *Comcast Corp. v.*

25   *Behrend*, 569 U.S. 27 (2013), and instead impermissibly made "general assertions about the typical

26   ───────────────────────────

     6.2% for cases of all sizes between 2017 and 2021 in cases settled after a ruling on summary

27   judgment motions); NERA Report at 24, Fig. 22 (noting median ratio of settlements to investor
     losses was 1.8% in 2021), attached as Exhibits A and C, respectively, to the Joint Declaration.

28   [8]    *See The Top 100 U.S. Class Action Settlements of All-Time*, at 7 (ISS SCAS 2022).

1    calculation of damages in securities actions, without tying them to the facts of this case." *See* ECF

2    162 at 7-21.  Yet Class Representatives prevailed again, and achieved a certified class.

3         Plaintiffs faced even greater risks at summary judgment, where Defendants pressed every

4    available factual and legal argument.  In particular, Defendants maintained that discovery had

5    disproved Class Representatives' theory that Twitter's failure to disclose an alleged decline in the

6    number of daily logins ("DAU") rendered Twitter's statements regarding user growth and

7    engagement misleading.  ECF 352-3 at 1.  Defendants claimed that discovery established that DAU

8    did not decline as alleged and further that "Defendants [had] acted with candor and in good faith in

9    disclosing to the market useful and accurate user growth and engagement information."  *Id.*

10        Defendants also presented evidence countering Class Representatives' loss causation

11   theories, maintaining that they had failed to account for numerous confounding, non-fraud related

12   disclosures that Twitter made on April 28 and July 28, and failed to disentangle the stock price

13   movement caused by those disclosures from the alleged fraud-related disclosures.  *Id*. at 2.  The

14   Court denied Defendants' motion.  ECF 478.  The parties also filed competing motions to exclude

15   several of the others' experts.  Joint Decl., ¶67.

16        Two of those motions were directed to the testimony of Sam Hui and Steven Feinstein.  (Mr.

17   Hui was Class Counsel's key expert on social media user growth and engagement metrics and Dr.

18   Feinstein was Class Counsel's expert on loss causation and damages.)  The exclusion of either one of

19   these experts could well have impacted a ruling on summary judgment.  *See* Joint Decl., ¶61.  On

20   January 28, 2020, the Court denied Defendants' motions to exclude the testimony of Hui and

21   Feinstein.  ECF 421.  Even after navigating summary judgment and Defendants' (subsequently

22   rejected) request for reconsideration, Class Representatives still bore the substantial risk of a six-

23   week-long liability-phase jury trial.  Defendants' counsel were determined to undercut Class

24   Representatives' case through pre-trial motions, moving to exclude critical categories of evidence

25   and exhibits.  *See* Joint Decl., ¶67.

26        At trial, the case would have turned largely on expert testimony concerning highly technical

27   subject matters and the credibility of fact witnesses – nearly all of whom were represented by

28   defense counsel (or were still employed at Twitter).  Defendants needed only to defeat one element

of Class Representatives' claims to prevail, and there was a significant risk the jury would agree with Defendants' experts and find no liability, no damages, or award far less than Class Representatives sought to recover.  *See, e.g.*, *Vinh Nguyen*, 2014 WL 1802293, at *2 (noting, in securities class action, that "[p]roving and calculating damages required a complex analysis, requiring the jury to parse divergent positions of expert witnesses in a complex area of the law.  The outcome of that analysis is inherently difficult to predict and risky").

Defendants also raised numerous challenges disputing the falsity of their alleged misstatements and vigorously disputed (and continue to dispute) their scienter.  *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) ("[T]he issue[] of scienter . . . [is] complex and difficult to establish at trial.").  Moreover, even if Class Representatives obtained a favorable verdict at the liability phase, at the second phase of trial, Defendants would have had the opportunity to challenge each Class Members' presumption of reliance and damages due them.  Joint Decl., ¶107.

Should the Class's claims had survived the second phase of trial, they would ***still*** have faced the risk of partial or complete reversal in post-trial proceedings.  *See, e.g.*, *In re Apollo Grp. Sec. Litig.*, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008) (granting motion for a judgment as a matter of law, overturning $277 million verdict in favor of plaintiffs based on insufficient evidence of loss causation); *Rentech, Inc.*, 2019 WL 5173771, at *9 ("'The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees.'"); *Amkor*, 2009 WL 10708030, at *2 (approving fee award of 25% where class counsel had "borne all the ensuing risk – including the risk of affirmance on Plaintiffs' appeal, surviving dispositive motions, obtaining class certification, proving liability, causation and damages, prevailing in a 'battle of the experts,' and litigating the Action through trial and possible appeals").

Thus, there existed a significant risk that class-wide recoverable damages would have been far less than $809.5 million.  Therefore, the $809.5 million Settlement, achieved in the face of these significant risks, amply supports the requested 22.5% fee award.

### 3. The Skill Required and Quality of Work

The quality of Class Counsel's representation further supports the reasonableness of the requested fee. Not only did Class Counsel successfully litigate the case through several potentially dispositive motions, but they brought the case to the brink of trial, forcing settlement only days before jury selection. Moreover, Class Counsel are nationally recognized leaders in securities class actions and complex litigation. *See* www.rgrdlaw.com; www.motleyrice.com. The firms have a track record of trying cases, or settling cases at a premium on the eve of trial after moving trial teams and support personnel around the country. Clients retain Class Counsel to benefit from their experience and resources in order to obtain the largest possible recovery for the class in question. Here, Class Counsel's skill and experience brought about an exceptional result, further supporting the requested fee award.

The standing of opposing counsel should also be weighed because such standing reflects the challenge faced by Class Counsel. *See, e.g.*, *Wing v. Asarco Inc.*, 114 F.3d 986, 989 (9th Cir. 1997). Defendants chose nationally known and highly capable representation from Cooley LLP and Simpson Thacher & Bartlett LLP, both well-regarded and prestigious firms.[9] These firms spared no effort or expense on behalf of Defendants in their zealous defense. Class Representatives' ability to obtain a favorable result for the Class while litigating against these formidable defense firms and their well-financed clients further evidences the quality of Class Counsel's work and weighs in favor of awarding the requested fee.

### 4. The Contingent Nature of the Fee and the Financial Burden Carried by Class Counsel

It has long been recognized that attorneys are entitled to an enhanced fee when their compensation is contingent in nature. *See, e.g.*, *Omnivision*, 559 F. Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee."); *Stanger*, 812 F.3d at 741

---

[9] *See, e.g.*, Vault, *2023 Vault Law 100*, https://legacy.vault.com/best-companies-to-work-for/law/top-100-law-firms-rankings (ranking Simpson Thacher & Bartlett LLP as the 8th and Cooley LLP as the 19th most prestigious law firms in the United States).

1   ("Risk multipliers incentivize attorneys to represent class clients, who might otherwise be denied

2   access to counsel, on a contingency basis.  This incentive is especially important in securities

3   cases."); *see also, e.g.*, Rubenstein Decl., ¶¶50-52.  Indeed, there have been many class actions in

4   which counsel for the plaintiffs took on the risk of pursuing claims on a contingency basis, expended

5   thousands of hours and dollars, yet received no remuneration whatsoever despite their diligence and

6   expertise.  *See Savani v. URS Pro. Sols. LLC*, 2014 WL 172503, at *5 (D.S.C. Jan. 15, 2014) ("In

7   complex and multi-year class action cases, the risks of the litigation are immense and the risk of

8   receiving little or no recovery is a major factor in awarding attorney's fees.  ***The risk of no recovery***

9   ***in complex cases of this sort is not merely hypothetical***.").  Even a plaintiff who evades summary

10  judgment and succeeds at trial may find a favorable verdict in its favor overturned on appeal or on a

11  post-trial motion.

12          The risk of no recovery for a class and its counsel in complex cases of this type is very real.

13  For example, in *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*,

14  627 F.3d 376 (9th Cir. 2010), a case that Robbins Geller prosecuted, the court granted summary

15  judgment to defendants after eight years of litigation, after plaintiff's counsel incurred over

16  $7 million in out-of-pocket expenses, and worked over 100,000 hours, representing a lodestar of

17  approximately $40 million (in 2010 dollars).  In another Ninth Circuit PSLRA case, after a lengthy

18  trial involving securities claims against JDS Uniphase Corporation, the jury reached a verdict in

19  defendants' favor.  *See In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556 (N.D. Cal. Nov. 27,

20  2007).

21          Here, Plaintiffs' Counsel have received no compensation during the course of the Litigation

22  and invested over 73,400 hours for a total lodestar of approximately $43.9 million and incurred

23  expenses of over $3.5 million in prosecuting this case.  Additional (uncompensated) work in

24  connection with the Settlement and claims administration already has been undertaken, and will be

25  required going forward.  Any fee award has always been contingent on the result achieved and on

26  this Court's discretion.  *See Hefler*, 2018 WL 6619983, at *13 ("Plaintiffs' Counsel bore a heavy

27  financial burden in expending substantial resources – a claimed lodestar of over $29 million – on a

28  contingency basis.").

1    Because the fee in this matter was entirely contingent, the only certainty was that there would

2   be no fee without a successful result.  Nevertheless, Class Counsel committed significant resources

3   of both time and money to vigorously prosecute this action, and successfully brought it to a highly

4   favorable conclusion for the Class's benefit.  *See generally* Joint Declaration.  The contingent nature

5   of counsel's representation thus supports approval of the requested fee.  *See Plains All Am.*, 2022

6   WL 4453864, at *3 (in awarding 33% fee on $165 million settlement in case "litigated . . . to the

7   point of trial," court found "the substantial risks borne by Class Counsel in pursuing this class action

8   for seven years with no guarantee of recovering fees or litigation expenses also militates in favor of

9   finding the requested fee award reasonable").

10                  **5.       Awards Made in Similar Cases Support the Fee Request**

11                  Class Counsel's fee request is also supported by awards made in similar cases.  As discussed

12   in §III.B.1., the 22.5% fee request is below the Ninth Circuit's 25% benchmark and within the range

13   of fee percentages awarded in comparable settlements.  As further addressed in §III.B.2., the

14   resulting multiplier of 4.14 on Plaintiffs' Counsel's lodestar is also within the range of lodestar

15   multipliers applied in cases of this nature with substantial contingency fee risks.  *See* Rubenstein

16   Decl., ¶¶56-57; *see also, e.g.*, *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *1 (S.D.N.Y.

17   Sept. 9, 2015) (awarding fee resulting in a 4.87 multiplier where class would "receive over $130

18   million in total value" and when the settlement was reached only "on the eve of trial, after class

19   certification and decertification briefing and rulings, voluminous cross-motions for summary

20   judgment and rulings, and the submission of the Joint Preliminary Trial Report, exhibit and witness

21   lists, objections, and deposition designations, *voir dire* questions, and proposed jury instructions");

22   *Gutierrez*, 2015 WL 2438274, at *7 (approving a 5.5 multiplier in a $203 million settlement); *In re*

23   *Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 589 (E.D. Pa. 2005) (approving a 6.96 multiplier in a

24   $126.6 million settlement); *In re DaimlerChrysler Sec. Litig.*, 2004 U.S. Dist. LEXIS 31757, at *5

25   (D. Del. Feb. 5, 2004) (approving multiplier of 4.2 in a $300 million settlement); *In re Charter*

26   *Comm'ns, Inc. Sec. Litig.*, 2005 WL 4045741, at *18 (E.D. Mo. June 30, 2005) (approving 5.61

27   multiplier in $146,250,000 settlement); *In re Luckin Coffee Inc. Sec. Litig.*, No. 1:20-cv-01293-JPC,

28   slip op. at 2-3 (S.D.N.Y. July 22, 2022) (ECF 338) (approving a multiplier of 4.64 in a $175 million

1  settlement); *Nieman v. Duke Energy Corp.*, 2015 WL 13609363 (W.D.N.C. Nov. 2, 2015)

2  (approving multiplier of 6.43 in $146,250,000 settlement); *In re Cardinal Health Inc. Sec. Litig.*, 528

3  F. Supp. 2d 752 (S.D. Ohio 2007) (approving a multiplier of 5.9 in a $600 million settlement); *In re*

4  *3Com Corp. Sec. Litig.*, No. C-97-1083-EAI, slip op. at 10 (N.D. Cal. Mar. 9, 2001) (ECF 180)

5  (awarding fee representing a 6.67 multiplier in a $259 million settlement).

6  **6.  The Class's Reaction to Date Supports the Fee Request**

7  Courts within in the Ninth Circuit also consider the reaction of the class when deciding

8  whether to award the requested fee.  *See, e.g.*, *In re Wash. Mutual, Inc. Sec. Litig*, 2011 WL

9  8190466, at *2 (W.D. Wash. Nov. 4, 2011) (noting, in approving fee request, that "no substantive

10  objections to the amount of fees and expenses requested were filed"); *accord* Northern District

11  Guidelines, Final Approval, §1.  While a certain number of objections are to be expected in a large

12  class action such as this, "the absence of a large number of objections to a proposed class action

13  settlement raises a strong presumption that the terms of a proposed class action settlement . . . are

14  favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523,

15  529 (C.D. Cal. 2004); *Hefler*, 2018 WL 6619983, at *15 ("As with the Settlement itself, the lack of

16  objections from institutional investors 'who presumably had the means, the motive, and the

17  sophistication to raise objections' [to the attorneys' fee] weighs in favor of approval.").

18  Class Members were informed in the Notice that Class Counsel would move the Court for an

19  award of attorneys' fees in an amount not to exceed 22.5% of the Settlement Fund, for payment of

20  litigation expenses not to exceed $4 million, and for statutory awards to Class Representatives not to

21  exceed an aggregate amount of $40,000, pursuant to the PSLRA (15 U.S.C. §78u-4(a)(4)).  Class

22  Members were also advised of their right to object to the fee and expense request, and that such

23  objections are to be filed with the Court no later than October 27, 2022.

24  While the October 27, 2022 deadline to object to the fee and expense application has not yet

25  passed, to date, not a ***single*** objection has been received.  Should any objections be received, Class

26  Counsel will address them in their reply papers.  Finally, Class Representatives, institutions with

27  substantial stakes in the litigation, have approved the percentage sought here.  *See Hatamian v.*

28  *Advanced Micro Devices, Inc.*, 2018 WL 8950656, at *2 (N.D. Cal. Mar. 2, 2018) (approving fee

1   where request "reviewed and approved as fair and reasonable by Class Representatives, sophisticated

2   institutional investors").  This is as Congress intended when it enacted the PSLRA.  *In re Cendant*

3   *Corp. Litig.*, 264 F.3d 201, 220 (3d Cir. 2001).  *See* Betts Decl., ¶5; Elst Decl., ¶6.

4   **IV.   COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE
        APPROVED**

5

6           Plaintiffs' Counsel further request an award of their litigation expenses in the amount of

7   $3,570,056.21.  These expenses were incurred in prosecuting and resolving the action on behalf of

    the Class.
8

9           "Attorneys who create a common fund are entitled to the reimbursement of expenses they

10  advanced for the benefit of the class." *Vincent v. Reser*, 2013 WL 621865, at *5 ( N.D. Cal. Feb. 19,

11  2013).  In assessing whether counsel's expenses are compensable in a common fund case, courts

    look to whether the particular costs are of the type typically billed by attorneys to paying clients in
12
    the marketplace.  *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as
13
    part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to
14
    a fee-paying client.'"); *Hefler*, 2018 WL 6619983, at *44.  Here, the expenses sought by Plaintiffs'
15
    Counsel are of the type that are routinely charged to hourly paying clients and, therefore, should be
16
    reimbursed out of the common fund.[10]  *See Vincent*, 2013 WL 621865, at *5 (granting award of costs
17
    and expenses for "'three experts and the mediator, photocopying and mailing expenses, travel
18
    expenses, and other reasonable litigation related expenses'"); *Redwen v. Sino Clean Energy, Inc.*,
19
    2013 U.S. Dist. LEXIS 100275, at *32 (C.D. Cal. July 9, 2013) (reimbursing "expenses for
20
    mediation fees, copying, telephone calls, expert expenses, research costs, travel, postage,
21
    messengers, and filing fees"); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 454 (E.D. Cal.
22

23

24  ───────────────────────
    [10] These include expenses associated with, among other things, experts and consultants, service of
25  process, online legal and factual research, travel, and mediation.  A large component of Class
    Counsel's expenses is for the costs of experts and consultants, all of whom were qualified and
26  necessary to litigate this action.  Courts in this Circuit regularly approve reimbursements for expert
    fees.  *See, e.g., Franco v. Ruiz Food Prods., Inc.*, 2012 WL 5941801, at *22 (E.D. Cal. Nov. 27,
27  2012) (noting expert fees are among the "types of fees . . . routinely reimbursed"); *Ontiveros v.
    Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (granting expense reimbursement to class counsel
28  and noting "itemized costs relating to . . . expert fees" were "reasonable litigation expenses").

1   2013) ("[T]ravel, mediation fees, photocopying, [a] private investigator to locate missing Class

2   Members, and delivery and mail charges . . . are routinely reimbursed.").

3          The Notice informed Class Members that Class Counsel would apply for payment of

4   litigation expenses in an amount not to exceed $4 million.  *See* Epiq Decl., Ex. B Notice at 2.  The

5   amount of expenses for which payment is now sought, $3,570,056.21, is less than the amount

6   published in the Notice, to which no Class Member has objected.

7   **V.     COUNSEL'S AWARDED FEES AND EXPENSES SHOULD BE PAID**
    **        UPON THE COURT'S ORDER GRANTING THE AWARD**

8          Class Representatives request that the entirety of Class Counsel's awarded fees and expenses

9   be paid upon the Court's order granting such award, as provided in the Stipulation of Settlement

10  ("Stipulation").  *See* Stipulation, ¶6.2.  ECF 653-4.  Nonetheless, if the Court opts to defer any

11  attorneys' fees, Class Counsel request that the Court defer no more than $3.5 million.

12         The Stipulation provides that Class Counsel will receive their fees upon award by the Court.

13  Federal courts across the country regularly approve such payment provisions in complex class

14  actions.  *See, e.g.*, *In re Optical Disk Drive Prod. Antitrust Litig.*, 2016 WL 7364803, at *13 (N.D.

15  Cal. Dec. 19, 2016) (stating such "provisions are common practice in the Ninth Circuit"), *vacated*

16  *and remanded on other grounds*, 959 F.3d 922 (9th Cir. 2020); *In re TFT-LCD (Flat Panel)*

17  *Antitrust Litig.*, 2011 WL 7575004, at *1 (N.D. Cal. Dec. 27, 2011) (noting that federal "routinely

18  approve settlements that provide for payment of attorneys' fees prior to final disposition")

19  (collecting cases); *Verifone*, 2014 WL 12646027, at *2 (noting that payment upon fee approval

20  provisions pose no problem under the PSLRA); *Mauss v. NuVasive, Inc.*, 2018 WL 6421623, at *13

21  (S.D. Cal. Dec. 6, 2018) (approving payment of fee award in PSLRA case within 10 days of

22  judgment).

23         Nonetheless, this Court's recently amended Standing Order provides that it will "typically

24  withhold between 10% and 25% of the attorney's fees granted at final approval until after the post-

25  distribution accounting has been filed."  This provision parallels the Advisory Committee's Notes to

26  Rule 23, which provide that in some cases deferral is appropriate.  None of the concerns that

27

28

1   undergird this suggestion, however, are present here.  *See* Fed. R. Civ. P. 23(h), Advisory

2   Committee's Notes to 2003 Amendment.

3          The Notes, for example, suggest deferral "may be appropriate" where the relief to the class is

4   composed of "future payments" or is otherwise variable in nature.  *See id*.  In such a case, deferral

5   allows a court to better assess the actual value of the payments the Class receives and, in turn,

6   measure the fairness of counsel's fee.  That concern is of no moment here, because the value of the

7   Class's claims are neither variable nor dependent upon future events.[11]  Once approved, the Plan of

8   Allocation sets that value and the Class will receive the entirety of the Net Settlement Fund.  *See*

9   ECF 653-4, §5.  A deferral could also be appropriate if there is a concern that, once paid, Class

10  Counsel is no longer incentivized to serve the Class through final distribution.  Here again, in this

11  case no such concern exists.  Class Counsel are well-funded, experienced securities fraud litigators.

12  *See* Joint Decl., ¶115.  In scores of other past cases, they have served the Class's interests through

13  final distribution with no need for the deferral of fees.  The same will be true here – Class Counsel

14  will devote whatever time is necessary to ensure the distribution is completed accurately and in a

15  timely fashion.  *See id*.

16          Finally, deferring fees in this case may be counterproductive.  Immediate payment of Class

17  Counsel's fees and expenses will not burden the Class.  *See Pelzer v. Vassalle*, 655 F. App'x 352,

18  365 (6th Cir. 2016) (noting provision providing for payment upon issuance of an order of final

19  approval "does not harm the class members in any discernible way, as the size of the settlement fund

20  available to the class will be the same regardless of when the attorneys get paid"); *see also Brown v.*

21

22  [11]  The extraordinary result here is underscored by the fact that Class Counsel not only vigorously
    negotiated for every last penny, as is evidenced by the amount of the Settlement – Class Counsel did
23  not stop at $750 million or even $800 million, but pushed and pushed right to the end for the very
    last dollar – resulting in these extra $9.5 million.  And, even after that extraordinary number was
24  obtained, Class Counsel also demanded that the settlement payment be made immediately, not
    following preliminary approval as is most often agreed to by plaintiffs' counsel.  *See, e.g., Hefler v.*
25  *Wells Fargo & Co.*, Stipulation and Agreement of Settlement, 4:16-cv-05479-JST, ECF 225-1, ¶8
    (N.D. Cal. July 31, 2018), ECF 225-1, ¶18 ("In consideration of the settlement of the Released
26  Plaintiffs' Claims against Defendants' Releasees, Wells Fargo shall pay or cause to be paid the
    Settlement Amount into the Escrow Account by the later of: (a) fifteen (15) business days after the
27  date of entry by the Court of an order preliminarily approving the Settlement; or (b) ten (10) business
    days after Wells Fargo's receipt from Lead Counsel of [payment] information.").  That continued
28  advocacy has itself to date yielded an additional $6.7 million for the Class in the way of interest.

*Hain Celestial Grp. Inc.*, 2016 WL 631880, at *10 (N.D. Cal. Feb. 17, 2016) (approving fee payment provision because while "[t]he plaintiffs' counsel has the option of being paid fees before resolution of any appeal; they also must return them immediately if the settlement is overturned on appeal"). On the other hand, deferral will unfairly impact Class Counsel.  To date, Class Counsel have not been paid for over six years of work.  Moreover, Class Counsel stopped assessing the Class for its time as of the date of filing of the Stipulation.  Thus, any deferred fee is compensation that Class Counsel has earned, but cannot access and which it will not be able to access for potentially another year or more.  This effectively devalues Class Counsel's payment.  Class Counsel thus respectfully submit that payment of Class Counsel's fee and expenses upon Court approval, without deferral, is appropriate.  If the Court deems a deferral necessary, it should be small amount considering the large size of the settlement.

## VI.    CLASS REPRESENTATIVES' REQUEST FOR AWARDS PURSUANT TO 15 U.S.C. §78u-4(a)(4) IS REASONABLE

Class Representatives seek an award of $34,531.00, collectively, pursuant to 15 U.S.C. §78u-4(a)(4), in connection with their representation of the Class, as detailed in the accompanying Class Representative Declarations.  Under the PSLRA, a class representative may seek an award of reasonable costs and expenses directly relating to the representation of the class.  *See* 15 U.S.C. §78u-4(a)(4); *see also Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (holding that named plaintiffs are eligible for "reasonable" payments as part of a class action settlement).

When evaluating the reasonableness of a lead plaintiff award, courts may consider factors such as "'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation'" among others.  *Id.* (ellipse in original).  Moreover, the Northern District of California Procedural Guidelines for Class Action Settlements state that "[a]ll requests for service awards must be supported by evidence of the value provided by the proposed awardees, the risks they undertook in participating, the time they spent on the litigation, and any other justifications for

the awards."[12]  As detailed in the Class Representative Declarations, Class Representatives devoted extensive time and effort monitoring the Litigation and directing Class Counsel, including reviewing and commenting on case filings, providing input on discovery strategy, devoting considerable time and effort to collect materials responsive to Defendants' requests for production of documents and other written discovery, sitting for deposition, and providing input on the parties' mediation efforts. Class Representative KBC focused approximately 200 hours of its employees' time on various aspects of this Action, and Class Representative NEIPF likewise spent considerable time participating and overseeing the Litigation; yet, the requested awards are modest in light of the total value of the settlement overseen by these plaintiffs.  Moreover, both Class Representatives also undertook risks in pursuing these claims.  *See, e.g.*, *Wehlage v. Evergreen at Arvin LLC*, 2012 WL 4755371, at *5 (N.D. Cal. Oct. 4, 2012) (finding award justified for plaintiffs "lending their names to this case, and thus subjecting themselves to public attention"); *In re CenturyLink Sales Pracs. & Sec. Litig.*, 2020 WL 7133805, at *13 (D. Minn. Dec. 4, 2020) (award justified because "[c]lass [r]epresentatives participated and willingly took on the responsibility of prosecuting the case and publicly lending their names to this lawsuit, opening themselves up to scrutiny and attention from both the public and media").

Class Representatives were actively involved through every step of the action, and under such circumstances, courts have approved as reasonable awards for class representatives that are comparable to those requested here.  *See Hatamian*, 2018 WL 8950656, at *4 (Gonzalez Rogers, J.) (granting PSLRA service award of $14,875.00 to KBC for approximately 106 hours devoted to the litigation); *see also, e.g.*, *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009) (awarding $144,657 to the New Jersey Attorney General's Office and $70,000 to the Ohio Funds "to compensate them for their reasonable costs and expenses incurred in managing this litigation and representing the Class," and holding that their efforts were "precisely the types of activities that support awarding reimbursement of expenses to class representatives"); *In*

---

[12]   Northern District of California Procedural Guidelines for Class Action Settlements (last modified Aug. 4, 2022), https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/.

1  *re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *18-*19 (E.D.N.Y. Sept. 18, 2007)

2  (approving $10,000 award, representing 25 hours at $300 per hour, plus other time); *McPhail v. First*

3  *Command Fin. Plan., Inc.*, 2009 U.S. Dist. LEXIS 26544, at *24-*25 (S.D. Cal. Mar. 30, 2009)

4  (approving awards ranging up to $10,422.30 and noting that "the requested reimbursement is

5  consistent with payments in similar securities cases").

6  **VII.     CONCLUSION**

7           Class Counsel obtained an excellent result for the Class.  Based on the foregoing and the

8  entire record, Class Representatives and Class Counsel respectfully request that the Court: (i) award

9  Class Counsel attorneys' fees of 22.5% of the Settlement Amount and payment of $3,570,056.21 in

10  litigation expenses, plus interest on both amounts at the same rate as earned by the Settlement Fund,

11  and (ii) awards to Class Representatives of $34,531.00, as permitted by the PSLRA.

12  DATED:  October 13, 2022                     Respectfully submitted,

13                                                               ROBBINS GELLER RUDMAN & DOWD LLP
                                                                 DANIEL S. DROSMAN
14                                                               TOR GRONBORG
                                                                 ELLEN GUSIKOFF STEWART
15                                                               LUCAS F. OLTS
                                                                 J. MARCO JANOSKI GRAY
16                                                               CHRISTOPHER R. KINNON
                                                                 HEATHER G. GEIGER

17

18                                                                    s/ DANIEL S. DROSMAN
                                                                 DANIEL S. DROSMAN
19
                                                                 655 West Broadway, Suite 1900
20                                                               San Diego, CA  92101-8498
                                                                 Telephone:  619/231-1058
21                                                               619/231-7423 (fax)
                                                                 ddrosman@rgrdlaw.com
22                                                               torg@rgrdlaw.com
                                                                 elleng@rgrdlaw.com
23                                                               lolts@rgrdlaw.com
                                                                 mjanoski@rgrdlaw.com
24                                                               ckinnon@rgrdlaw.com
                                                                 hgeiger@rgrdlaw.com
25

26

27

28

1

2  MOTLEY RICE LLC
   GREGG S. LEVIN
3  LANCE V. OLIVER
   MEGHAN S.B. OLIVER
4  MAX N. GRUETZMACHER
   CHRISTOPHER F. MORIARTY
5  MEREDITH B. WEATHERBY
   28 Bridgeside Blvd.
6  Mt. Pleasant, SC  29464
   Telephone:  843/216-9000
7  843/216-9450 (fax)
   glevin@motleyrice.com
8  moliver@motleyrice.com
   mgruetzmacher@motleyrice.com
9  cmoriarty@motleyrice.com
   mweatherby@motleyrice.com

10 *Co-Class Counsel for the Class*

11 BLEICHMAR FONTI & AULD LLP
   LESLEY E. WEAVER
12 555 12th Street, Suite 1600
   Oakland, CA  94607
13 Telephone:  415/445-4003
   415/445-4020 (fax)
14 lweaver@bfalaw.com

15 *Liaison Counsel*

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on October 13, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ DANIEL S. DROSMAN
DANIEL S. DROSMAN

ROBBINS GELLER RUDMAN
 & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)

Email:  ddrosman@rgrdlaw.com

# Mailing Information for a Case 4:16-cv-05314-JST In re Twitter Inc. Securities Litigation

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jeffrey S. Abraham**
  jabraham@aftlaw.com

- **Peretz Bronstein**
  peretz@bgandg.com

- **Patrick J. Carome**
  patrick.carome@wilmerhale.com,WHDocketing@wilmerhale.com

- **Sam F Cate-Gumpert**
  SamCategumpert@dwt.com,vickyisensee@dwt.com

- **Alexis S. Coll**
  ascoll@goodwinlaw.com,JMcKenzie@goodwinlaw.com,jhernandez@goodwinlaw.com

- **Patrick V. Dahlstrom**
  pdahlstrom@pomlaw.com

- **Anne Kathleen Davis**
  adavis@bfalaw.com

- **Brett Hom De Jarnette**
  bdejarnette@cooley.com,eFilingnotice@cooley.com,jalvarezlopez@cooley.com,efiling-notice@ecf.pacerpro.com

- **Daniel S. Drosman**
  DanD@rgrdlaw.com,tholindrake@rgrdlaw.com,e_file_sd@rgrdlaw.com,tkoelbl@rgrdlaw.com,DanD@ecf.courtdrive.com

- **John C. Dwyer**
  dwyerjc@cooley.com,eFilingNotice@cooley.com,efiling-notice@ecf.pacerpro.com,emadrigal@cooley.com

- **Laura Marie Elliott**
  lelliott@cooley.com,dfoster@cooley.com,efilingnotice@cooley.com,efiling-notice@ecf.pacerpro.com

- **Joseph A. Fonti**
  jfonti@bfalaw.com,ecfnotifications@bfalaw.com,ndennany@bfalaw.com

- **Janet A Gochman**
  jgochman@stblaw.com,3892155420@filings.docketbird.com,cterricone@stblaw.com

- **Kathleen Howard Goodhart**
  kgoodhart@cooley.com,eFilingNotice@cooley.com,efiling-notice@ecf.pacerpro.com,jpalaganas@cooley.com

- **Marc Gorrie**
  mgorrie@pomlaw.com

- **Tor Gronborg**
  torg@rgrdlaw.com,E_File_SD@rgrdlaw.com

- **Max Nikolaus Gruetzmacher**
  mgruetzmacher@motleyrice.com,vdavis@motleyrice.com,kquillin@motleyrice.com

- **Ellen Anne Gusikoff-Stewart**
  elleng@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **J. Alexander Hood , II**
  ahood@pomlaw.com

- **James Michael Hughes**
  jhughes@motleyrice.com,erichards@motleyrice.com,kweil@motleyrice.com

- **Joseph Marco Janoski Gray**
  mjanoski@rgrdlaw.com,msonney@rgrdlaw.com,tdevries@rgrdlaw.com

- **Christopher J. Keller**
  ckeller@labaton.com,5497918420@filings.docketbird.com,lpina@labaton.com,drogers@labaton.com,electroniccasefiling@labaton.com

- **Christopher Ryan Kinnon**
  ckinnon@rgrdlaw.com,CKinnon@ecf.courtdrive.com

- **James Glenn Kreissman**
  jkreissman@stblaw.com,kourtney.kinsel@stblaw.com,justin.calderon@stblaw.com,eric.mccaffree@stblaw.com,abigail.dugan@stblaw.com,1058725420@filings.docke

- **Gregg S. Levin**
  glevin@motleyrice.com,sturman@sturman.ch,lmclaughlin@motleyrice.com,erichards@motleyrice.com,kweil@motleyrice.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com

- **Jeremy A. Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com,fgravenson@pomlaw.com,ipareja@pomlaw.com

- **Nathan R. Lindell**
  nlindell@rgrdlaw.com,Nlindell@ecf.courtdrive.com

- **Francis P. McConville**
  fmcconville@labaton.com,HChang@labaton.com,lpina@labaton.com,drogers@labaton.com,9849246420@filings.docketbird.com,electroniccasefiling@labaton.com

- **Dean Michael McGee**
  dean.mcgee@stblaw.com

- **Sonal N. Mehta**
  sonal.mehta@wilmerhale.com,Felicia.Roy@wilmerhale.com,whdocketing@wilmerhale.com,Leizel.Galon@wilmerhale.com,Claire.Bergeron@wilmerhale.com

- **Christopher Francis Moriarty**
  cmoriarty@motleyrice.com,lmclaughlin@motleyrice.com,kweil@motleyrice.com

- **Danielle Suzanne Myers**
  dmyers@rgrdlaw.com,shawnw@rgrdlaw.com,dmyers@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **William H. Narwold**
  bnarwold@motleyrice.com,mjasinski@motleyrice.com,ajanelle@motleyrice.com

- **Stephen Cassidy Neal**
  sneal@cooley.com,wilsonla@cooley.com

- **Lance V. Oliver**
  loliver@motleyrice.com

- **Meghan Shea Blaszak Oliver**
  moliver@motleyrice.com

- **Lucas F. Olts**
  Lolts@rgrdlaw.com,morgank@ecf.courtdrive.com,e_file_sd@rgrdlaw.com,LOlts@ecf.courtdrive.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,jalieberman@pomlaw.com,ahood@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw.com,fgravenson@poml

- **Michael J Pendell**
  mpendell@motleyrice.com

- **Charles J. Piven**
  piven@browerpiven.com

- **Aarti G. Reddy**
  areddy@cooley.com,dfoster@cooley.com,galancr@cooley.com,efiling-notice@ecf.pacerpro.com

- **Rosemary M. Rivas**
  rmr@classlawgroup.com,2746730420@filings.docketbird.com

- **Quentin Alexandre Roberts**
  qroberts@sullivanblackburn.com,aiemee.low@diamondmccarthy.com

- **John Alexander Robinson**
  jrobinson@stblaw.com,1629454420@filings.docketbird.com

- **Laurence Matthew Rosen**
  lrosen@rosenlegal.com,larry.rosen@earthlink.net,lrosen@ecf.courtdrive.com

- **Kelli L. Sager**
  kellisager@dwt.com,vickyisensee@dwt.com

- **Scott H. Saham**
  scotts@rgrdlaw.com,ScottS@ecf.courtdrive.com

- **Juan Carlos Sanchez**
  jsanchez@rgrdlaw.com,e_file_SD@rgrdlaw.com

- **Shane Palmesano Sanders**
  ssanders@robbinsllp.com,notice@robbinsllp.com

- **Heather G. Schlesier**
  hgeiger@rgrdlaw.com,cbarrett@rgrdlaw.com,HSchlesier@ecf.courtdrive.com

- **Eric Matthew Stahl**
  ericstahl@dwt.com,christinekruger@dwt.com,seadocket@dwt.com

- **Simona Gurevich Strauss**
  sstrauss@stblaw.com,janie.franklin@stblaw.com,sblake@stblaw.com

- **Phong L. Tran**
  phongt@johnsonfistel.com

- **Jessica Valenzuela**
  JValenzuela@gibsondunn.com,KBarry@gibsondunn.com

- **David Conrad Walton**
  davew@rgrdlaw.com

- **Meredith B. Weatherby**
  mbmiller@motleyrice.com

- **Lesley Elizabeth Weaver**
  lweaver@bfalaw.com,emily-aldridge-5965@ecf.pacerpro.com,lesley-weaver-4669@ecf.pacerpro.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,ShawnW@ecf.courtdrive.com,e_file_sd@rgrdlaw.com

- **Jonathan K. Youngwood**
  jyoungwood@stblaw.com,7448332420@filings.docketbird.com,ManagingClerk@stblaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)